# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SC HEALTHCARE HOLDING, LLC, *et al*.,[1] | Case No. 24-10443 (TMH) |
| Debtors. | (Joint Administration Requested) |

**MOTION TO SHORTEN NOTICE PERIOD WITH RESPECT TO (1) EMERGENCY MOTION OF X-CALIBER FUNDING LLC FOR AN ORDER (I) DISMISSING THE SUBJECT CHAPTER 11 CASES, (II) FOR ABSTENTION, OR (III) TO APPOINT RECEIVER AS CHAPTER 11 TRUSTEE, AND (2) EMERGENCY MOTION OF X-CALIBER FUNDING LLC TO EXCUSE RECEIVER'S COMPLIANCE <u>WITH 11 U.S.C. §543(a) & (b)</u>**

X-Caliber Funding LLC, in its capacity as servicer for U.S. Bank, N.A., as trustee of XCAL 2019-IL-1 MORTGAGE TRUST, as lender ("<u>Lender</u>"),  by and through its undersigned counsel, respectfully moves the Court for entry of an order shortening the notice period with respect to the (1) *Emergency Motion Of X-Caliber Funding LLC for an Order (I) Dismissing the Subject Chapter 11 Cases, (II) for Abstention or (III) To Appoint Receiver as Chapter 11 Trustee* (the "<u>Motion to Dismiss</u>"),  and (2) *Emergency Motion of X-Caliber Funding LLC to Excuse Receiver's Compliance with 11 U.S.C. §543(A) & (B)* (the "<u>Turnover Motion</u>", together with the Motion to Dismiss, the "<u>Emergency Motions</u>") filed contemporaneously herewith,[2] and in support of this motion (the "<u>Motion</u>") respectfully states as follows:

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of debtors in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information will be made available on a website of the Debtors' proposed claims and noticing agent at www.kccllc.net/Petersen.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Emergency Motions.

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.      Venue for this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The bases for the relief requested are section 102(1) and 105(a) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 2002 and 9006, and Local Rules 6004-1 and 9006-1.[3]

**BACKGROUND**

4.      Lender is owed in excess of $31 million in senior secured debt by, and secured by all assets of, the following sixteen debtors: El Paso HCC, LLC; Flanagan HCC, LLC; Kewanee AL, LLC; Knoxville AL, LLC; Legacy Estates AL, LLC; Marigold HCC LLC; Monmouth AL LLC; and Polo LLC (collectively, "Subject Owner Debtors") and Debtors El Paso HCO, LLC; Flanagan HCO, LLC; CYE Kewanee HCO, LLC; CYE Knoxville HCO, LLC; Legacy HCO, LLC; Marigold HCO, LLC; CYE Monmouth HCO LLC; and Polo HCO, LLC (collectively, "Subject Operator Debtors," and together with Subject Owner Debtors, "Subject Debtors").

5.      Subject Debtors, and the approximately 125 of their affiliates that filed chapter 11 petitions sought to be jointly administered here, own and operate senior care facilities throughout Illinois (all debtors seeking joint administration of their cases here are collectively referred to herein as the "Petersen Enterprise Debtors"). Each facility has an independent owner and operator. Subject Debtors own and operate eight (8) of these facilities.

---

[3]      Pursuant to Local Rule 9013-1(f), Lender hereby consents to the entry of a final judgment or order in connection with this Motion if it is determined that this Court cannot—absent the consent of the parties—enter such final judgment or order consistent with Article III of the United States Constitution.

6.      Almost two months ago, on January 25, 2024, the United States District Court for the Northern District of Illinois (the "District Court") entered an order appointing a receiver over Subject Debtors, thereby divesting Subject Debtors of the corporate authority to file their bankruptcy cases due to, among other things, their defaults under their loan agreement with Lender, financial distress, failure to maintain insurance, failure to maintain the health, safety and welfare of the residents of their senior care facilities, and comingling of funds.

7.      The District Court appointed Michael F. Flanagan, a senior care expert with decades of experience, as receiver ("Receiver") over all of Subject Debtors' operations and assets following Subject Debtors' default under its loan obligations to Lender.

8.      Upon Receiver's appointment, he found the receivership facilities in complete financial and physical disarray.  Debtors were under investigation for physical and sexual abuse at a facility and had significant health and safety findings from the State.  Vendors had shut off or threatened to shut off services and critical vendors were owed over $4.6 million, $3.5 million of which was over 90 days old.  Employees were using their own money to purchase supplies at the facilities.  Debtors' GLPL insurance had terminated retroactively to January 2023 for non-payment.  Medicaid was actively recouping over $1.7 million in past due bed taxes.  An MDS nurse had been working with an expired license for over a year, there was no infection preventionist at a facility, and numerous administrators didn't have a license.  One facility had an inoperative lift meaning that residents in a wheelchair could not access other floors, at another facility a generator had not been repaired and it went out during the dangerously cold winter freeze, and at another facility the memory care unit and dining room are shut down due to water leaks.

9.      Without a doubt, Debtors completely disregarded the health, safety and welfare of the residents and should not be trusted with control and management of Subject Facilities again.

And this disregard was not limited to the recent months due to a lack of cash. Debtors' egregious conduct was repetitive over a number of years preceding the receivership.

10.     Since his appointment, Receiver and his retained management company have stabilized the situation to ensure proper resident care and are working toward and/or have secured long term solutions. Moreover, Receiver has completely separated Subject Debtors from the rest of the Petersen enterprise. Receiver has secured GLPL insurance for Subject Debtors and paid, with funding from Lender, the non-refundable premium. Receiver has entered into new contracts with vendors. Receiver has moved billing, payroll and all operational management from the Petersen centralized management to management by his own new manager. Receiver has cleared health and safety survey issues at the facilities and is working with the Illinois Department of Public Health to implement plans to correct Subject Debtors' years of neglect. All of these efforts were funded by Lender.

11.     Undoing this process is not an easy or quick task. It would take significant time and money and have adverse effects on employees, residents and the facilities themselves.

12.     Not surprisingly, since Receiver's appointment and implementation of his management company, employees reported significantly improved morale at receivership facilities. Employees have stated that they would not stay if Debtors' enterprise was returned to management. Families of residents at Debtors' facilities that are not subject to receivership have called asking to be admitted to receivership facilities under receivership. Vendors (including critical vendors such as therapy providers) have cut off services to Debtors' non-receivership facilities, but have continued to provide services to receivership facilities due to the appointment of Receiver and his management company.

13.     Subject Debtors' petition for bankruptcy is not about effectuating a reorganization. Subject Debtors' financial and operational condition renders that a virtual impossibility. Rather Subject Debtors' bankruptcy petition is merely a pretext to try to circumvent the District Court's receivership order, reappoint the management team that caused Subject Debtors to fall into financial and operational ruin, and improperly cross-collateralize assets to require performing assets to support non-performing assets within the Petersen enterprise.

14.     Lender is herewith filing its Emergency Motions to protect the health, safety and welfare of the residents.

## RELIEF REQUESTED

15.     Lender respectfully requests, pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e), that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) shortening the notice required for a hearing on the Emergency Motions, so that such Emergency Motions may be heard as soon as possible.

16.     Emergency relief is necessitated here to protect the health, welfare and safety of residents and operations of Subject Debtors.  Transition of Subject Debtors from Receiver and then back to Receiver upon ruling on the Emergency Motions would be extremely detrimental to operations and a waste of the already thin resources of Subject Debtors.

17.     The pending bankruptcy cases of Subject Debtors and question as to whether Receiver will remain in place, is causing significant concern at the facilities by employees and residents.  Many have indicated they will not stay if management is returned to Petersen.  Staff is particularly hard to find in this environment and loss of any staff due to the threat of Petersen returning to management would be detrimental to operations.  Loss of residents would also be detrimental to operations as Subject Debtors would lose revenue as a result.

18.     While Lender is filings this motion with respect to both Emergency Motions for convenience of the Court, Lender seeks such relief for each Emergency Motion independent of the other Emergency Motion.

## BASIS FOR RELIEF REQUESTED

19.     Local Rule 9006-1(c)(i) provides that "all motion papers shall be filed and served at least fourteen (14) days prior to the hearing date."  Bankruptcy Rule 2002(a)(2) requires twenty-one (21) days' notice of a proposed use, sale, or lease of property of the estate other than in the ordinary course of business.

20.     However, Bankruptcy Rule 9006(c)(1) and Local Rule 9006-1(e) permit the Court to shorten time periods set by the Bankruptcy Rules "for cause shown" or for "exigencies justifying shortened notice."  Fed. R. Bankr. P. 9006(c); Del. Bankr. L.R. 9006-1(e).  Bankruptcy Courts routinely grant motions to shorten notice given the exigencies and the "accelerated time frame of bankruptcy proceedings." *In re Phila. Newspapers, LLC*, 690 F.3d 161, 172 (3d Cir. 2012); *Hester v. NCNB Nat'l Bank*, 899 F.2d 361, 364 n.3 (5th Cir. 1990) ("[M]otions for material reductions in the notice period are routinely granted by bankruptcy courts.").

21.     Lender submits that cause exists to grant the relief requested herein because should Subject Debtors be granted the relief requested by their bankruptcy petitions, the Subject Debtors will be placed right back into the hands of the owners who allowed Subject Debtors to fall into financial and ethical ruin that they were prior to the appointment of the Receiver. Such change in control would render the Receivership Order moot and divest the Receiver of his ability to prevent the same mismanagement and also his ability to protect the health and welfare of their residents.

22.     Accordingly, Lender is filing the Emergency Motions today but submits that there is no prejudice to any party as a result of the timing for filing the Emergency Motions.

23.     To compensate for the reduced notice period, Lender will serve the Emergency Motions by overnight delivery (and where possible by electronic mail or facsimile) on the following parties: (a) the U.S. Trustee; (b) counsel to the Debtors; (c) counsel to the DIP Lender; and (c) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

24.     Accordingly, Lender respectfully submits that sufficient cause and exigent circumstances exist that justify shortening notice with respect to the Emergency Motions.

## NOTICE AND LOCAL RULE 9006-1(e) AVERMENT

25.     Before filing this Motion to Shorten, counsel to Lender notified proposed counsel to the Debtor regarding this request for relief. Debtor has yet to take a position on this Motion to Shorten. Due to the timing of the filing of this Motion to Shorten, counsel to Lender will contact the Office of the U.S. Trustee and counsel to the DIP Lender (as defined in the DIP Motion) after filing the Motion and the Motion to Shorten to discuss the expedited nature of this filing.

26.     Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) counsel to the Debtors; (c) counsel to DIP Lender; and (c) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.

WHEREFORE, Lender respectfully requests the Court enter an order substantially in the form attached hereto as **Exhibit A**: granting (i) the relief requested in this Motion and (ii) such other relief as may be equitable and just.

Dated: March 21, 2024          **BLANK ROME LLP**
      Wilmington, Delaware          By: */s/ Jordan L. Williams*
                            Lawrence R. Thomas III (No. 6935)
                            Jordan L. Williams (No. 7128)
                            1201 N. Market Street, Suite 800
                            Wilmington, Delaware 19801
                            Telephone:     (302) 425-6400

Facsimile:       (302) 425-6464
Email: Lorenzo.thomas@blankrome.com
          Jordan.williams@blankrome.com
-and-
Kenneth J. Ottaviano (*pro hac vice* forthcoming)
Paige B. Tinkham (*pro hac vice* forthcoming)
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone:     (312) 776-2500
Facsimile:      (215) 569-5555
Email:  Ken.Ottaviano@blankrome.com
          Paige.Tinkham@blankrome.com

*Counsel for X-Caliber Funding LLC*