IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SC Healthcare Holding, LLC, *et al.,* [1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 24-10443 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 38 & 97**<br>**Hearing Date: April 23, 2024 at 11:00 a.m.** |

**UNITED STATES TRUSTEE'S OBJECTION AND RESERVATION
OF RIGHTS IN RESPONSE TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION
FINANCING, (II) GRANTING SECURITY INTERESTS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (III) GRANTING ADEQUATE PROTECTION
TO CERTAIN PREPETITION SECURED CREDIT PARTIES, (IV) MODIFYING THE
AUTOMATIC STAY, (V) AUTHORIZING THE DEBTORS TO ENTER INTO
AGREEMENTS WITH JMB CAPITAL PARTNERS LENDING, LLC, (VI)
AUTHORIZING NONCONSENSUAL USE OF CASH COLLATERAL, (VII)
SCHEDULING A FINAL HEARING, AND (VIII) GRANTING RELATED RELIEF**

In support of his objection and reservation of rights ("Objection") to *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay, (V) Authorizing the Debtors to Enter Into Agreements With JMB Capital Partners Lending, LLC, (VI) Authorizing Nonconsensual Use of Cash Collateral, (VII) Scheduling a Final Hearing,*

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of debtors in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information will be made available on a website of the Debtors' proposed claims and noticing agent at www.kccllc.net/Petersen, or by contacting the undersigned proposed counsel for the Debtors.

*And (VIII) Granting Related Relief* (D.I. 38) (the "<u>DIP Motion</u>"), Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("<u>U.S. Trustee</u>"), by and through his undersigned counsel, states:

**PRELIMINARY STATEMENT**

1.  Debtors seek final Court approval of a DIP Facility[2] in an aggregate principal amount of up to $45,000,000 (the "<u>DIP Commitment</u>"). The DIP Motion sought nonconsensual priming liens in favor of the DIP Lender. As set forth in the original DIP Term Sheet, the interest rate was 12%, the commitment fee was 2%, and the exit fee was 4%. The combined 18% interest rate did not include other costs and fees such as a non-refundable work fee of $75,000 and the fees, costs, disbursements and expenses of the DIP Lender, including counsel fees and costs.

2.  During the first day hearing, in exchange for agreeing to delay decision on whether HUD mortgage liens could be primed, the DIP Lender demanded that the exit fee be doubled, from 4% to 8% for the entire DIP Commitment. The combined rate then increased to 22%. As the Court observed, this was "extraordinary," particularly considering the nonconsensual priming liens being granted as to other properties on the first day of the cases.

3.  The U.S. Trustee objects to both the original and the increased combined DIP Loan rates. First, upon information and belief, both are above market. Second, the DIP Lender knew going into the hearing there would be issues with the nonconsensual priming liens it sought and should have known that federal law precluded the priming of HUD mortgage liens. There was no basis to support doubling the exit fee, and acceptance of this change was not an acceptable exercise of the Debtors' business judgment.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the DIP Motion.

2

**JURISDICTION AND STANDING**

4. This Court has jurisdiction to hear the DIP Motion and this Objection.

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the DIP Motion.

**BACKGROUND**

7. On March 20, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The DIP Motion was filed on March 21, 2024. The initial Court hearing ("First Day Hearing") in the cases occurred the next day (March 22, 2024).

8. The DIP Term Sheet, attached to the DIP Motion as Exhibit 1, identified the DIP Loan terms, which included 12% per annum interest, plus a 2% commitment fee and a 4% exit fee.

9. The Debtors estimate they owe approximately $45,732,300 under certain healthcare facility loans insured by the United States Department of Housing and Urban Development ("HUD"), and there are at least ten Debtor entities and lender parties that received

3

these loans. During the First Day Hearing, there was extensive argument on the nonconsensual priming liens sought by the DIP Lender as they related to the HUD-insured loans, in addition to argument regarding the liens held by many other pre-petition secured creditors. As to the HUD loans, issues were raised as to whether federal law permitted the priming of HUD liens.

10. During a break in the First Day Hearing, the DIP Lender and the Debtors agreed to not impose priming liens on the properties associated with the HUD loans as part of an interim DIP approval order, in exchange for the exit fee being raised from 4% to 8%. The Court found the combined 22% rate to be extraordinary and commented that it would be the subject of discussion at the final hearing. Tr. 3/22/24 (First Day Hrg.), p. 133.

11. An Amended Interim Order approving the DIP Loan ("DIP Interim Order") was entered on March 26, 2024. (D.I. 97).

12. On April 9, 2024, the U.S. Trustee appointed an official committee of unsecured creditors. (D.I. 131).

13. Debtors represented in the DIP Motion that they intended "to propose a more concrete protection before the full DIP Commitment (as defined in the Proposed Interim Order) is incurred and will be discussing with all relevant parties in interest in the coming weeks regarding these protections." DIP Mot. ¶ 8. As of the filing of this Objection, the U.S. Trustee is not aware of any changes having been made to the DIP Loan or the proposed final form of order.

## ARGUMENT

14. In seeking approval of a post-petition loan, a debtor has the burden of proving that, "[t]he terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del 2011) (citations omitted). A debtor also must establish that it is "unable to obtain unsecured

credit per 11 U.S.C. § 364(b)," and that "[t]he credit transaction is necessary to preserve the assets of the estate." *Id.*; *see also In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

15. In determining whether to approve a debtor's request under section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment. *See U.S. Bank Trust Nat'l Assn v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 287 (Bankr. S.D.N.Y 2013). "[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

16. A 22% interest rate does not meet the requirements of being "fair" and "reasonable." *In re L.A. Dodgers*, 457 B.R. at 312. This is particularly true here. Initially, the DIP Motion sought approval of non-consensual priming liens at a combined 18% rate. The DIP Lender and the Debtors were aware that they were seeking unusual relief, particularly for a First Day Hearing. The 4% increase of the cost of the financing in exchange for sparing the HUD loan Debtors (a relatively small pool of the total number of Debtors) from being primed was not fair or reasonable. The question of whether the HUD liens may be primed under applicable law is an issue for the Court to consider at the upcoming April 23, 2024 hearing. The increased cost of the loan indicates the DIP Lender is leveraging the bankruptcy process not to benefit the estate, but to benefit itself. The DIP financing should not be approved as within the reasonable business judgment of the Debtors. *See Ames*, 115 B.R. at 40.

17. The U.S. Trustee leaves the Debtors to their burden to establish it is a reasonable business judgement to borrow funds at the interest rates set forth in the Amended Interim DIP

Order and attached DIP Term Sheet and to establish that the DIP Lender is a good faith lender entitled to the protections of section 364(e) of the Code.

18. The U.S. Trustee reserves all rights with respect to any further revised DIP Loan terms.

WHEREFORE, the U.S. Trustee requests that this Court grant such relief consistent with this Objection as this Court deems appropriate, fair and just.

Dated: April 19, 2024
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE FOR**
**REGIONS 3 & 9**

By: */s/ Linda Richenderfer*
    Linda Richenderfer (DE #4138)
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox35
    Wilmington, Delaware 19801
    Phone: (302) 573-6492
    Fax:    (302) 573-6497
    Email: linda.richendedfer@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Linda Richenderfer, hereby attest that on April 19, 2024, I caused to be served a copy of this *United States Trustee's Objection and Reservation of Rights in Response to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay, (V) Authorizing the Debtors to Enter Into Agreements With JMB Capital Partners Lending, LLC, (VI) Authorizing Nonconsensual Use of Cash Collateral, (VII) Scheduling a Final Hearing, And (VIII) Granting Related Relief* by electronic service on the registered parties via the Court's CM/ECF system and also served a courtesy copy via electronic mail on certain parties in interest.

By: */s/ Linda Richenderfer*
Linda Richenderfer