## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC** *et al.*, | Case No. 24-10443 (TMH) |
| **Debtors.**[1] | Jointly Administered |
| | **Re: Docket Nos. 264 & 341** |

### ORDER (I) APPROVING ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTORS' ACQUIRED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES OTHER THAN ASSUMED LIABILITIES AND PERMITTED ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above captioned debtors and debtors in possession (collectively, the "Debtors") for an order (this "Sale Order"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing and approving, among other things, (a) entry into that certain Asset Purchase Agreement, dated June 26, 2024 (as amended, supplemented, amended and restated, or otherwise modified from time to time, and including all exhibits, schedules, and annexes thereto, the "Agreement"), a copy of

---

[1]  The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584.  The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614.  Due to the large number of debtors in these Chapter 11 Cases, whose cases are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information is available on a website of the Debtors' claims and noticing agent at www.kccllc.net/Petersen.

[2]  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion, the Agreement (as defined herein), or the Bidding Procedures Order (as defined herein).

which is annexed hereto as **Exhibit A**, (b) the proposed sale or sales (the "Sale" or the "Sale Transactions") of all or substantially all of the Acquired Assets (the "Acquired Assets") of the Debtors free and clear of all encumbrances (including Outstanding Liabilities, as defined in the Agreement) and other than designated Assumed Liabilities and Permitted Encumbrances (collectively, the "Encumbrances") in accordance with and subject to the terms and conditions contained in the Agreement and this Sale Order to the Initial Buyer, New Operator, and Land Buyer (as those terms are defined in the Agreement) (collectively, the "Buyer"), (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases in connection therewith (the "Assigned Contracts"), and (d) granting related relief; and this Court having entered an order [Docket No. 341] (the "Bidding Procedures Order") approving, among other things, the dates, deadlines,  bidding procedures (the "Bid Procedures"), procedures for the assumption and assignment of Assigned Contracts and the determination of Cure Claims (as defined below) thereunder (the "Assumption and Assignment Procedures") with respect to, and notice of, the Sale; and this Court having previously entered that certain Bid Protections Order [Docket No. 596]; and the Debtors having conducted an Auction in accordance with the Bidding Procedures Order on July 2, 2024; and this Court having conducted a hearing on the Motion commencing on July 10, 2024 at 10:00 a.m. prevailing Eastern Time (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and this Court having (i) reviewed and considered the Motion, all relief related thereto, the objections thereto, and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at or in connection with the Sale Hearing and (ii) found that, after an extensive marketing process by the Debtors, the Buyer has submitted the highest or otherwise best bid for the subject Acquired Assets; and that adequate and sufficient notice of the Bid Procedures, the Agreement, and all transactions contemplated thereunder and in this Sale Order were given

pursuant to and consistent with the Bidding Procedures Order; and that reasonable and adequate

notice of the Motion and Bidding Procedures Order having been provided to all persons required

to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules;

and that all interested parties having been afforded an opportunity to be heard with respect to the

Motion and all relief related thereto; and that jurisdiction exists for this Court to consider the

Motion and after due deliberation thereon; and upon the arguments and statements in support of

the Motion presented at the Sale Hearing before this Court; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and

other parties in interest; and it further appearing that the legal and factual bases set forth in the

Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due

deliberation thereon; and good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS AND DETERMINATIONS:[3]**

A.      **Jurisdiction and Venue**.  This Court has jurisdiction to hear and determine the

Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and

the *Amended Standing Order of Reference* from the United States District Court for the District of

Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue

of these Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and

1409.

B.      **Statutory Predicates**.   The statutory bases for the relief sought in the Motion are

sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007,

---

[3]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

and 9014, and Local Rules 2002-1 and 6004-1.

**C.**    **Final Order**.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order.

**D.**    **Notice**.    As evidenced by the certificates of service previously filed with this Court [Docket Nos. 314, 367, 373, 516, 526, 534, and 598] proper, timely, adequate, and sufficient notice of the Motion, Agreement, Auction, Sale Hearing, Sale, and transactions contemplated thereby has been provided in accordance with the Bidding Procedures Order, sections 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008.    The Debtors have complied with all obligations to provide notice of the Motion as set forth in the Bidding Procedures Order.    The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Agreement, Auction, or Sale Hearing is or shall be required.    The disclosures made by the Debtors concerning the Motion, the Agreement, the Auction, and Sale Hearing were good, complete, and adequate.    The requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

**E.**    In accordance with the Bidding Procedures Order, the Debtors have served a notice of the Assigned Contracts (the "Cure Notice"), as evidenced by the Certificate of Service [Docket No. 535], which Cure Notice identifies all defaults and actual pecuniary loss to the non-Debtor party resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the non-Debtor parties can assert under the Assigned Contracts, whether legal or equitable, secured or unsecured,

matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Assigned Contracts (the foregoing amounts as stated in the Cure Notice, collectively referred to as the "Cure Claims") upon each non-Debtor counterparty to an Assigned Contract.  The service and provision of the Cure Notice were good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Assigned Contracts or establishing a Cure Claim for the respective Assigned Contract.  Non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assigned Contract and the Cure Claim set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline to file an objection to the stated Cure Claims (a "Cure Objection") has expired and, to the extent any such party timely filed a Cure Objection, all such Cure Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties.  To the extent that any such party did not timely file a Cure Objection by July 3, 2024 at 5:00 p.m. (prevailing Eastern Time) (the "Cure Objection Deadline"), such party shall be deemed to have consented to the (i) assumption and assignment of the Assigned Contract and (ii) proposed Cure Claim set forth on the Cure Notice (except as may otherwise be agreed by the Debtors, the non-Debtor counterparty, and the Buyer).

F.    **Corporate Authority**.  Each Debtor (i) has full corporate power and authority to execute the Agreement and all other documents contemplated thereby (collectively, the "Transaction Documents"), and the Debtors' sale of the Acquired Assets has been duly and

validly authorized by all necessary corporate action, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Transaction Documents, (iii) has taken all corporate action necessary to authorize and approve the Agreement, all other Transaction Documents, and the consummation of the transactions contemplated thereby, (iv) has duly executed and delivered the Agreement, and (v) no consents or approvals, other than those expressly provided for in the Transaction Documents, are required for the Debtors or the Buyer to consummate such transactions.

G.      The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.    Neither the Debtors nor Buyer is entering into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

H.      The Debtors are the sole and lawful owners of the Acquired Assets.    Subject to sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Acquired Assets to Buyer, in accordance with the Agreement, will be, as of the Closing Date (as defined in the Agreement), a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Claims, Encumbrances, and Healthcare Liabilities (as defined below).    Claims, as defined in the Agreement, shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtors or claims liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these

Chapter 11 Cases, and whether imposed by Agreement  applicable law, equity, or otherwise (including, without limitation, rights with respect to claims and encumbrances (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Buyer's interests in the Acquired Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use, or any other type of tax, or (iii) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities or permitted encumbrances.  Healthcare Liabilities shall mean all Recapture Claims (as defined in the Agreement), Medicare advance payments, civil monetary penalties, or other governmental fines or penalties, bed taxes, and any similar fee with respect to the Acquired Assets, including such liabilities and amounts already due and payable and amounts accrued with respect to the period prior to the Closing Date but not yet due and payable.

I.      **Sale in Best Interests of the Debtors' Estates**.  Good and sufficient reasons for approval of the Agreement and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.   The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among

other things, the immediate consummation of the Sale to Buyer is necessary and appropriate to maximize the value of the Debtors' estates. The Sale does not constitute a *sub rosa* chapter 11 plan.

J.      **Business Judgment**. Sound business reasons exist for the Sale. Entry into the Transaction Documents, and the consummation of the transactions contemplated thereby, including the Sale and the assumption and assignment of the Assumed Contracts, constitutes an exercise of the Debtors' sound business judgment and such acts are in the best interests of each Debtor, its estate, and all parties in interest. The Court finds that each Debtor has articulated good and sufficient business reasons justifying the Sale Transaction. Such business reasons include, but are not limited to, the following: (i) the Agreement constitutes the highest and best offer for the Acquired Assets; (ii) the Buyer has agreed to assume the Assumed Liabilities; (iii) the Sale maximizes the value of the Debtors' estates; and (iv) unless the Sale and all of the other transactions contemplated by the Transaction Documents are concluded expeditiously, as provided for in the Motion, the Bid Procedures, and pursuant to the Agreement, recoveries to creditors may be diminished.

K.      The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

L.      **Arm's-Length Transaction and Good Faith of Buyer and Seller**. The Agreement was negotiated, proposed, and entered into by the Debtors and Buyer without collusion, in good faith, and as the result of arm's-length bargaining positions and is

substantively and procedurally fair to all parties. Buyer is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.   Neither any of the Debtors nor Buyer has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders.   Buyer is purchasing the Acquired Assets, in accordance with the Agreement, in good faith, and is a good faith Buyer within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections afforded by such provision and otherwise has proceeded in good faith in all respects in connection with the Debtors' Chapter 11 Cases.   As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order and, among other things:   (a) the Debtors and Buyer complied with the provisions in the Bidding Procedures Order; (b) Buyer agreed to subject its bid to the competitive Bid Procedures set forth in the Bidding Procedures Order; (c) Buyer in no way induced or caused the chapter 11 filing by the Debtors; and (d) all payments to be made by Buyer in connection with the Sale have been disclosed.

**M.** **Highest or Otherwise Best Offer**. The Bid Procedures are reasonable and appropriate and represent the best available method for conducting the sale process in a manner that maximizes value for the benefit of the Debtors' estates.  The Debtors' marketing and sales process with respect to the Acquired Assets in accordance with the Bid Procedures afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Acquired Assets.   The Debtors conducted a marketing process in accordance

with, and have otherwise complied in all respects with, the Bid Procedures and the Bidding Procedures Order.   A reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Acquired Assets.   The Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.   The Debtors' determination that the Agreement constitutes the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duties and constitutes a valid and sound exercise of the Debtors' business judgment.

N.   **Consideration**.   The consideration provided by Buyer pursuant to the Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formally the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, or the District of Columbia. No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than Buyer.   Approval of the Motion, the Agreement, and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

O.   **No Successor**.   The transactions contemplated under the Agreement do not amount to a consolidation, merger, or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates; there is not substantial continuity between Buyer and the Debtors; there is no continuity of enterprise between the Debtors and Buyer; Buyer is not a mere continuation of the Debtors or their estates; and Buyer is not a successor or assignee of the Debtors or their estates

for any purpose, including, but not limited to, under any federal, state, or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, healthcare, escheat, or unclaimed property laws, or other law, rule, or regulation (including. without limitation. filing requirements under any such laws, rules. or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation, or doctrine, and Buyer and its affiliates shall have no liability or obligation for any Healthcare Liabilities, or under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq. or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act.   Except for the Assumed Liabilities or Permitted Encumbrances, the (i) transfer of the Acquired Assets to Buyer and (ii) assumption and assignment to Buyer of the Assigned Contracts do not and will not subject Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any

theory of antitrust or successor or transferee liability.

**P.** **Free and Clear**. The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full and therefore, the Debtors may sell the Acquired Assets free and clear of any Claims on or Encumbrances in the property, other than as expressly contemplated by the Agreement.

**Q.** **Free and Clear Findings Required by Buyer**. Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the Sale to Buyer and the assumption of any Assumed Liabilities or Permitted Encumbrances by Buyer were not free and clear of all Claims, Healthcare Liabilities, and Encumbrances other than the Assumed Liabilities or Permitted Encumbrances. The Debtors may sell the Acquired Assets free and clear of any Claims, Healthcare Liabilities, and Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each entity with an Encumbrance, lien, Claim, or interest in the Acquired Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Encumbrance, lien, claim, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of Claims, Encumbrances, or Healthcare Liabilities who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of Encumbrances are adequately protected by having their Encumbrances attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such

Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

R.    **Cure/Adequate Assurance**.  The assumption and assignment of the Assigned Contracts pursuant to the terms of this **Sale Order** is integral to the Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  The Debtors complied with the Assumption and Assignment Procedures in all respects.   Payment of the Cure Claims by the Buyer and/or the Debtors, as applicable,[4] shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.   Buyer's financial wherewithal to consummate the transactions contemplated by the Agreement and the evidence presented at the Sale Hearing demonstrating Buyer's ability to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

---

[4]    Pursuant to the Agreement, the Buyer shall satisfy on the Closing Date all Cure Claims up to the Cure Cap, and Debtors shall be responsible for any and all Cure Claims (exclusive of Post-Signing and Pre-Closing Cure Claims, which shall be Buyer's responsibility) in excess of the Cure Cap.  Buyer shall be responsible for any and all Post-Signing and Pre-Closing Cure Claims to the extent they exceed the Cure Cap.

**S.**     Any objections to the assumption and assignment of any of the Assigned Contracts by Buyer in accordance with the Agreement are hereby overruled.     To the extent that any counterparty failed to object to the proposed Cure Claims timely, such counterparty is deemed to have consented to such Cure Claims and the assumption and assignment of its respective Assigned Contract(s) to Buyer in accordance with the Agreement.

**T.**     Notwithstanding anything to the contrary in this Sale Order, with respect to each non-residential lease of real property that is transferred to the Buyer (an "<u>Assumed Lease</u>"), from and after the Closing Date, the Buyer shall have both the benefit and burdens under such Assumed Leases as of the Closing Date, including, without limitation, those burdens which have accrued as of the Closing Date but are not yet due under the terms of such Assumed Lease (and thus are not payable as a Cure Claim pursuant to section 365(b) of the Bankruptcy Code), including, without limitation: (i) any adjustments or reconciliations (including, without limitation, any year-end adjustments or reconciliations) in respect of common area maintenance, insurance, and other charges and expenses that become due under the Assumed Leases; (ii) any percentage rent (if applicable) that becomes due under the Assumed Leases; (iii) any and all property taxes due and payable under the Assumed Leases; and (iv) any indemnification obligations that become due under the Assumed Leases; <u>provided</u> that nothing in this Sale Order shall be deemed or construed to amend, modify or supplement any Assumed Lease. All rights of the Debtors and their estates, the Buyer, and the counterparties to the Assumed Leases with respect to such matters are reserved.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.     **<u>Motion is Granted</u>**.  The Motion is granted as provided herein.

2.      **Objections Overruled**.  All objections and responses to the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with this Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice.

a.      **X-Caliber Objection**. X-Caliber Funding LLC, in its capacity as servicer for U.S. Bank, N.A., and X-Caliber Capital, LLC, as lender, filed *X-Caliber Funding LLC's and X-Caliber Capital, LLC's Notice of Non-Consent to Sale* on July 3, 2024 [Dkt. No. 610] (the "X-Caliber Objection"), objecting to, among other things, the sale to Buyer of the assets of the Receivership Debtors and the X-Caliber HUD Entities (both as defined in the X-Caliber Objection). The X-Caliber Objection is resolved by this Order as follows:  Each of the Receivership Debtors and the X-Caliber HUD Entities are hereby deemed to be an Excluded Facility (as such term is defined in the Agreement) and all assets (including, for avoidance of doubt, any Acquired Assets) of the Receivership Debtors and the X-Caliber HUD Entities are hereby deemed Excluded Assets (as such term is defined in the Agreement). For the sake of clarity, nine facilities are deemed Excluded Facilities.  The Receivership Debtors and the X-Caliber HUD Entities are not and shall not be sold to Buyer under the Agreement, any Transactions Documents, or this Order and adjustments to the Purchase Price set forth in Section 2.09 of the Agreement shall be made accordingly.

b.      **Committee Objection**.  The objections lodged by the Official Committee of Unsecured Creditors (the "Committee") shall be resolved as follows:  In addition to the Excluded Assets set forth on Section 2.02 of the Disclosure Schedule attached to the Agreement, the following assets shall be deemed Excluded Assets under the Agreement:  (a) any Claim or

Action against any Persons who are insiders (as that term is defined in Section 101(31) of the Bankruptcy Code), Affiliates, members, officers, directors, owners or employees of the Debtors, including, without limitation certain hotels and a sports arena; (b) any Claims or Actions against the Debtors' prepetition lenders; (c) any Claims or Actions to recover intercompany transfers relating to the Debtors, the Debtors' insiders, Affiliates, the Debtors' members, owners, employees, officers or directors or any Affiliates of the Debtors' officers or directors; and (d) any planes, watercraft, marine equipment, marine vehicles, and any private residences.  The Committee and any chapter 7 trustee ("Chapter 7 Trustee") or trustee appointed under a confirmed plan of reorganization or liquidation in these Cases (the "Plan Trustee") shall have the same rights as the Debtors under the Agreement to access personnel and books and records that are in the possession of the Buyer.  In addition, the Committee and any Chapter 7 Trustee or Plan Trustee shall be given at least sixty (60) days' notice prior to destruction of any of the Debtors' books and records whether in the possession of the Buyer or the Debtors.

3.     **Approval of the Sale**.  The Agreement, and all Transaction Documents, and all of the terms and conditions thereof, are hereby approved in all respects.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors and the Buyer are hereby authorized to (a) execute any additional instruments or documents that may be reasonably necessary or appropriate to implement the Agreement, provided that such additional documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the Agreement and the instruments to the Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Agreement, including (1) the assumption and assignment to Buyer (in accordance with the Agreement) of the Assigned Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the

Agreement and the Sale, (2) the execution and delivery of all appropriate Agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Agreement and that satisfy the requirements of applicable law, (3) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Agreement, and (4) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other Sale Document (as defined below).  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

4.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Encumbrances, Claims, Healthcare Liabilities, or other interests in, against, or on all or any portion of the Acquired Assets (whether known or unknown), Buyer, and all successors and assigns of Buyer, the Acquired Assets, and any trustees, if any, subsequently appointed in the Chapter 11 Cases or upon a conversion of the Chapter 11 Cases to chapter 7 under the Bankruptcy Code.  This Sale Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, Buyer, and the respective successors and assigns of each of the foregoing.  For clarity, this Sale Order shall not be construed as:  (a) approving the proposed purchase price allocation attached to the Agreement as Exhibit E for any purpose other than the Purchase Price adjustments per the Agreement; (b) authorizing the Debtors to disburse any of the sale proceeds (the "Sale Proceeds") received

from the Buyer to any of the Prepetition Secured Parties; or (c) authorizing any Prepetition Secured Party to apply any escrows and/or reserves to its outstanding debt.  Upon Closing, absent further order of the Court, all Sale Proceeds (including any from the Illini Facility (as defined at Docket No. 613)) shall be placed in a segregated account maintained by the Debtors' Estates at a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware (the "Segregated Account").  The Segregated Account shall be separate from any other accounts held by the Debtors.

5.    **Transfer of Acquired Assets Free and Clear of Encumbrances**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to Buyer in accordance with the Agreement, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest Buyer with title in and to the Acquired Assets and, other than the Assumed Liabilities or Permitted Encumbrances, Buyer shall take title to and possession of the Acquired Assets free and clear of all Claims, Healthcare Liabilities, Encumbrances and other interests of any kind or nature whatsoever, including, but not limited to, successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such Encumbrances and other interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms of such Encumbrances with the same validity, force, and effect, and in the same order of priority, which such Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

6.    Unless otherwise expressly included in the definition of "Assumed Liabilities" or "Permitted Encumbrances" in the Agreement, Buyer shall not be responsible for any Claims, Healthcare Liabilities, or Encumbrances, including in respect of the following: (a) any labor or

employment Agreements; (b) any mortgages, deeds of trust, and security interests; (c) any pension, welfare, compensation, or other employee benefit plans, Agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act, (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive Environmental Response Compensation and Liability Act, (xv) state discrimination laws, (xvi) state unemployment compensation laws or any other similar state laws, or (xvii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) any laws or regulations relating to the Healthcare Liabilities; (i) to the extent not included in the foregoing, any of the Excluded Liabilities under the Agreement; and (j) any theories of successor or transferee liability.

7.      All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to Buyer in accordance with the Agreement on the Closing Date or at such time thereafter as Buyer may request. On the Closing Date, each of the Debtors' creditors are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Encumbrances

or other interests in the Acquired Assets, if any, as such Encumbrances may have been recorded or may otherwise exist.

8.        If any person or entity that has filed statements or other documents or Agreements evidencing Encumbrances on, against, or in, all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities or Permitted Encumbrances) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Encumbrances, liens, claims, interests, or other interests that the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and Buyer is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Acquired Assets.

9.        On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to Buyer of the Debtors' interests in the Acquired Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Claims, Healthcare Liabilities, and Encumbrances or other interest of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities or Permitted Encumbrances, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments or agencies, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office,

or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.  A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances and other interests of record except those assumed as Assumed Liabilities or Permitted Encumbrances.

10.     **Prohibition of Actions Against Buyer**.  Except for the Assumed Liabilities or Permitted Encumbrances, or as otherwise expressly provided in this Sale Order or the Agreement, Buyer shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets or other Assumed Liabilities or Permitted Encumbrances expressly identified in the Agreement, including, but not limited to, any liability for any Claims, Healthcare Liabilities, or Encumbrances, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date.

11.     Except with respect to the Assumed Liabilities or Permitted Encumbrances, or as otherwise expressly provided for in this Sale Order or the Agreement, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities or agencies, lenders, trade creditors, litigation claimants, and other creditors, holding Claims, rights with respect to Healthcare Liabilities, Encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent,

liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Acquired Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Acquired Assets to Buyer in accordance with the Agreement, are hereby forever barred, estopped, and permanently enjoined from asserting against Buyer, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Encumbrances in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Buyer, its successors, Acquired Assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against Buyer, its successors, or their Acquired Assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against Buyer, its successors, their Acquired Assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Buyer or its successors, including, without limitation, with respect to Healthcare Liabilities; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the Agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, provider agreement, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

12.    To the greatest extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, provider agreement, and governmental authorization or approval of the Debtors with respect to the Acquired Assets to the extent transferred in the Agreement, and all such licenses, permits, registrations, provider agreements, and governmental authorizations and approvals are deemed to have been transferred to Buyer as of the Closing Date.

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to Buyer in accordance with the terms of the Agreement and this Sale Order.

14.     Buyer has given substantial consideration under the Agreement for the benefit of the Debtors, their estates, and their creditors.  The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Buyer by all holders of Encumbrances or liens against or interests in, or Claims against, any of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities or Permitted Encumbrances. The consideration provided by Buyer for the Acquired Assets under the Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

15.     Notwithstanding the foregoing, nothing herein shall prevent the Debtors from pursuing an action against Buyer arising under the Agreement or the related documents.

16.     **<u>Assumption and Assignment of Contracts</u>**.  The Debtors are hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to Buyer, in accordance with the Agreement, effective upon the Closing Date, the Assigned Contracts free and clear of all Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities or Permitted Encumbrances) and (b) execute and deliver to Buyer such documents or other instruments as Buyer deems may be reasonably necessary to assign and transfer the Assigned Contracts and the Assumed Liabilities or Permitted Encumbrances to Buyer in accordance with the Agreement.

17.     With respect to the Assigned Contracts:  (a) each Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (c) the

Debtors may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of each Assigned Contract, in accordance with the Agreement, have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of Buyer in accordance with the Agreement, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by Buyer in accordance with the Agreement; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

18.     All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as reasonably practicable by payment of the Cure Claims by the Debtors or the Buyer, as applicable.[5]  To the extent that any counterparty to an Assigned

---

[5]     Pursuant to the Agreement, the Buyer shall satisfy on the Closing Date all Cure Claims up to the Cure Cap, and Debtors shall be responsible for any and all Cure Claims (exclusive of Post-Signing and Pre-Closing Cure Claims,

Contract did not object to its Cure Claim by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Claim and the assumption and assignment of its respective Assigned Contract(s) to Buyer in accordance with the Agreement.

19.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, Buyer, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the Cure Notice reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assigned Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to Buyer of the Assigned Contracts in accordance with the Agreement.

20.     Upon the Debtors' assignment of the Assigned Contracts to Buyer under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Claims, no default shall exist under any Assigned Contract, and no counterparty to any Assigned Contract shall be permitted (a) to declare a default by Buyer under such Assigned Contract or (b) otherwise take action against Buyer as a result of Debtors' financial condition, bankruptcy, or failure to perform any of their obligations under the relevant Assigned Contract. Each non-Debtor party to an Assigned Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Buyer, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, including those constituting Excluded Liabilities or, against Buyer, any counterclaim, defense, setoff, recoupment, or any other Claim asserted or assertable against

---

which shall be Buyer's responsibility) in excess of the Cure Cap.  Buyer shall be responsible for any and all Post-Signing and Pre-Closing Cure Claims to the extent they exceed the Cure Cap.

the Debtors and (ii) imposing or charging against Buyer any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignment to Buyer of any Assigned Contract in accordance with the Agreement.  The validity of such assumption and assignment of each Assigned Contract shall not be affected by any dispute between the Debtors and any non-Debtors party to an Assigned Contract relating to such contract's respective Cure Claims.

21.     From and after the Closing Date, the Buyer shall have both the benefit and burdens under Assumed Leases as of the Closing Date, including, without limitation, those burdens which have accrued as of the Closing Date but are not yet due under the terms of such Assumed Lease (and thus are not payable as a Cure Claim pursuant to section 365(b) of the Bankruptcy Code), including, without limitation: (i) any adjustments or reconciliations (including, without limitation, any year-end adjustments or reconciliations) in respect of common area maintenance, insurance, and other charges and expenses that become due under the Assumed Leases; (ii) any percentage rent (if applicable) that becomes due under the Assumed Leases; (iii) any and all property taxes due and payable under the Assumed Leases; and (iv) any indemnification obligations that become due under the Assumed Leases; provided that nothing in this Sale Order shall be deemed or construed to amend, modify or supplement any Assumed Lease. All rights of the Debtors and their estates, the Buyer, and the counterparties to the Assumed Leases with respect to such matters are reserved.

22.     Except as provided in the Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities or Permitted Encumbrances, and all holders of such Encumbrance, lien, claim, and interest are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property, or their Acquired Assets or estates.  The failure of the Debtors

or Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assigned Contracts.

23.     Notwithstanding anything herein to the contrary and subject to the Agreement, prior to the Closing Date, Buyer may remove any contract or lease from the list of Assigned Contracts (and thereby exclude such Contract from the definition of Assigned Contracts) pursuant to the procedures set forth in the Agreement.  To the extent applicable, the Debtors shall file a schedule of the final Assigned Contracts promptly after the Closing Date.

24.     **Good Faith**.  The transactions contemplated by the Agreement are undertaken by Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts) with Buyer, unless such authorization is duly stayed pending such appeal. Buyer is a good faith Buyer of the Acquired Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

25.     **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

26.     **Non-Material Modifications**.   The Agreement and any related Agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

27.     **Amounts Payable by Debtors**.   Any amounts payable by any Debtor under the Agreements or any of the documents delivered by any Debtor in connection with the Agreement shall be paid in the manner provided in the Agreement and the Bidding Procedures Order, without further order of this Court, shall be allowed administrative claims in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, shall have the other protections provided in the Bidding Procedures Order, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtor, except by an express Agreement with Buyer, its successors, or assigns.

28.     **Government Entities**.   Notwithstanding any provision in the Motion, the Bid Procedures, the Bid Procedures Order, the Cure Notice, the Asset Purchase Agreement, the Operations Transfer Agreement, this Order, or any other Transaction Document, nothing in the Transaction Documents shall: (1) authorize the assumption, sale, assignment or other transfer to the Buyer of any federal (i) grants, (ii) grant funds, (iii) contracts between the Debtor and the United States or its agencies, including but not limited to agreements, contracts, awards, licenses, certificates, authorizations, and applications, (iv) property, including but not limited to, any intellectual property and patents belonging to the United States or any of its agencies or components thereof, (v) leases, or (vi) other interests belonging to the United States or its agencies (collectively, "Federal Interests") without compliance by the Debtors and the Buyer with all terms of the Federal Interests and with all applicable legal requirements, obligations, and approvals under

31825798.3

non-bankruptcy law; (2) be interpreted to set cure amounts or to require the United States to novate, approve or otherwise consent to the sale, assumption, assignment or other transfer of any Federal Interests; (3) waive, alter or otherwise limit the United States' property rights, including but not limited to, inventory, patents, intellectual property, licenses, and data; (4) affect the setoff or recoupment rights of the United States or any department, agency, or instrumentality of the United States and such rights are preserved; (5) authorize the sale, assumption, assignment or other transfer of any governmental unit's (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable requirements, obligations and approvals under non-bankruptcy laws; (6) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (7) confer exclusive jurisdiction to the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (8) divest any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order; (9) unless New Operator is authorized in writing by Old Operator pursuant to a Change of Ownership ("CHOW") process, permit the New Operator to use any Medicare provider number or Medicare provider agreement of an Old Operator, absent approval by the United States Department of Health and Human Services ("HHS"), acting through the Centers for Medicare and Medicaid Services ("CMS"), of a CHOW application; (10) require or permit CMS to issue Medicare reimbursements to any individual or entity other than the Old Operator prior to the completion of a CHOW; (11) exclude, extinguish, exculpate or release any obligation or liability associated with a Medicare provider agreement, as required pursuant to the Medicare Act and Medicare regulations, including without limitation, any pre-CHOW overpayments, civil penalties, or other enforcement remedies, liabilities arising from the Old Operator's compliance history, and all other obligations and liabilities associated with such

provider agreement, and any transfer of a Medicare provider agreement shall be subject to all such liabilities and obligations associated with the provider agreement; or (12) affect or impair any party's rights with respect to jurisdiction over any disputes concerning the Debtors' Medicare Provider Agreement pursuant to Section 1395ii of the Medicare Act, and Section 405(h) of the Social Security Act (42 U.S.C. §405(h)).  Pursuant to Section 3.04(d) of the Agreement, known outstanding federal civil monetary penalties and overpayment claims related to the Debtors Medicare provider agreements will be paid by the Debtors from the Sale Proceeds at closing.

29.  **DIP Lender's Liens and Claims**: Nothing in this Order shall alter or amend the rights of JMB Capital Partners Lending, LLC (the "DIP Lender") under the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay; (V) Authorizing the Debtors to Enter Into Agreements with JMB Capital Partners Lending, LLC, (VI) Authorizing Use of Cash Collateral, and (VII) Granting Related Relief* (the "Final DIP Order") [Docket No. 313]. As provided in the Final DIP Order, the Debtors shall hold all cash proceeds received from the Sale in escrow at a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware until all DIP Obligations (as defined in the Final DIP Order) are paid in full, and such proceeds from the Sale shall be subject to the liens and super-priority claims granted in favor of the DIP Lender under the Final DIP Order and may not be distributed or otherwise used until all DIP Obligations are paid in full.

30.  **Agreement with Surety**.  Notwithstanding any other provision of this Order, any sale agreement or any related Transaction Documents, the rights of Hartford Fire Insurance Company, or their past, present or future parents, subsidiaries or affiliates (individually and collectively as the "Surety") against the Debtors and/or their non-debtor affiliates in connection

with or arising out of: (i) any surety bonds and/or related instruments previously or in the future issued and/or executed by the Surety on behalf of any of the Debtors and/or any of their non-debtor affiliates (each, a "Bond" and collectively, the "Bonds"); (ii) any indemnity or indemnity-related agreement, including that certain General Indemnity Agreement dated May 1, 2023, executed by certain of the Debtors and non-debtors, including Petersen Health Operations, LLC; Petersen Health Care-Farmer City, LLC; Petersen Health Care-Illini, LLC; Midwest Health Operations, LLC; Petersen Health Network, LLC (non-debtor); Petersen Health Care-Roseville, LLC; Swansea HCO, LLC; Watseka HCO, LLC; Bement HCO, LLC; Eastview HCO, LLC; Prairie City HCO, LLC; Tarkio HCO, LLC;  Westside HCO, LLC; XCH, LLC; Collinsville HCO, LLC; Effingham HCO, LLC; Robings HCO, LLC; Tuscola HCO, LLC; Shangri La HCO, LLC; Havana HCO, LLC; Rosiclare HCO, LLC; Petersen Health Care Management, LLC; Twin HCO, LLC; SABL, LLC; Lebanon HCO, LLC; Royal HCO, LLC; Petersen Health Care, Inc; Vandalia HCO, LLC; Aledo HCO, LLC; McLeansboro HCO, LLC; Shelbyville HCO, LLC; Arcola HCO, LLC; Piper City HCO, LLC [Piper HCO, LLC is listed as a Debtor]; SJL Health Systems, Inc.; Petersen Management Company, LLC; Petersen Health Junction, LLC (non-debtor); Petersen Health & Wellness, LLC; Petersen Health Quality, LLC;  Petersen Health Properties, LLC; Petersen Health Business, LLC; Petersen Health Group, LLC; Sullivan HCO, LLC, Aspen HCO, LLC; Decatur HCO, LLC; Pleasant View HCO, LLC; Petersen Health Care II, Inc.; Charleston HCO, LLC (non-debtor); Cumberland HCO, LLC (non-debtor); El Paso HCO, LLC; Flanagan HCO, LLC; Marigold HCO, LLC; Polo HCO, LLC; Casey HCO, LLC; Kewanee HCO, LLC; North Aurora HCO, LLC and non-debtor Mark B. Petersen., as indemnitor, in favor of the Surety, as indemnitee (the "Indemnity Agreement"); and (iii) any related documents, ((i), (ii), and (iii), collectively, are hereafter referred to as the "Surety Documents"), are neither affected nor impaired by the Transaction Documents.  Each of the Bonds will be replaced by the Stalking Horse Bidder on or

before the closing date of the sale pursuant to the Transaction Documents such that the Bonds are fully released and fully discharged such that the Surety's actual or potential liability thereunder is extinguished ("Discharge Obligation").  Notwithstanding any other provision in the Transaction Documents, if the Discharge Obligation is not complied with, and a claim or claims is or are asserted against any of the Bonds, then the Surety shall be granted access to, and may make copies of, any books and records that may be held by the Debtors or the buyer relating to any such claim. The Surety shall be given sixty (60) days' prior written notice of any proposed destruction of such books and records.   No Buyer has indicated that it wishes to assume the Surety Documents.  For the avoidance of doubt, the Surety Documents may not be assumed, assumed and assigned, or otherwise used in any manner for the direct or indirect benefit of any Buyer, any of the Debtors or any other related entities.  Notwithstanding any other provision in the Transaction Documents, all set-off and recoupment rights of Surety and any obligee or beneficiary under any of the Bonds are preserved against the Debtors and their non-debtor affiliates, and, to the extent applicable, said set-off and recoupment rights shall attach to the proceeds of any sale in the same priority as already exists.  To be clear, utility service providers' rights in prepetition utility deposits prime any rights of a Buyer in any such prepetition utility deposits.  No liens shall attach to the Adequate Assurance Deposit Account (utility provider postpetition reserve account), nor to any prepetition deposits held by a utility service provider, except as to any reversionary interest of the Debtors.  The Debtors and Buyer shall not seek to recover any reversionary interest in the Adequate Assurance Deposit Account until after it has made full and final payment to all utility service providers with an interest in any funds in the Adequate Assurance Deposit Account, prior to terminating any account with the utility service providers as of the closing date, as provided in paragraph 3.04 of the Asset Purchase Agreement.

31.     **Illini Facility and Related Escrows**. Nothing in this order (A) limits, authorizes or rules upon (i) any right of the Debtors to cause the Illini Facility (as defined at Docket No. 613) to be brought into the Debtors' estates or be made subject to these Chapter 11 Cases or to seek the release of reserves related to the Illini Facility (the actions described in this romanette (i) collectively "Illini Facility Rights") or (ii) any right of Berkadia Commercial Mortgage LLC ("Berkadia") to object to or otherwise take action with respect to any exercise of, or motion regarding, any Illini Facility Rights; or (B) authorizes any sale free and clear of Encumbrances of any part of the Illini Facility that is not property of the Debtors' estate as of the date of this order; provided, however, that if the Debtors have caused all obligations owed to Berkadia on the Heritage Loan (as defined at docket No. 613) under the relevant loan documents and applicable law to be irrevocably paid in full in cash to Berkadia on the Closing Date in exchange for a written release by Berkadia of its mortgage lien on the Illini Facility, then the Debtors are authorized by this Order to exercise whatever rights they may have or acquire to effectuate a sale of the full Illini Facility as part of the Sale.

32.     **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Agreement or this Sale Order.

33.     **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof. Time is of the essence in closing the transactions referenced herein, and the Debtors and Buyer intend to close the Sale as soon as practicable.  Any party objecting to this Sale

Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

34.     **Calculation of Time**.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006.

35.     **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Agreement, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyer its right, title, and interest in and to the Acquired Assets.

36.     **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, all amendments thereto, and any waivers and consents thereunder, and each of the Agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to Buyer in accordance with the Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the Agreement, (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, (c) protect Buyer against any Encumbrances or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

Dated: July 11th, 2024
Wilmington, Delaware

THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE

31825798.3                                                34