**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| SC Healthcare Holding, LLC, *et al.,* [1] | Case No. 24-10443 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1365 & 1366**<br>**Hearing Date: April 17, 2025 at 10:00 a.m.**<br>**Objection Deadline for UST: April 15,**<br>**2024 at 11:00 a.m.** |

**UNITED STATES TRUSTEE'S OBJECTION AND RESERVATION
OF RIGHTS IN RESPONSE TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I)
APPROVING THE COMBINED PLAN AND DISCLOSURE STATEMENT ON AN
INTERIM BASIS FOR SOLICITATION PURPOSES ONLY; (II) ESTABLISHING THE
DEADLINE FOR ADMINISTRATIVE EXPENSES CLAIMS; (III) ESTABLISHING
SOLICITATION AND VOTING PROCEDURES; (IV) APPROVING THE FORM OF
BALLOTS AND SOLICITATION MATERIALS; (V) ESTABLISHING THE VOTING
RECORD DATE; (VI) FIXING THE DATE, TIME, AND PLACE FOR THE
COMBINED HEARING AND THE DEADLINES FOR FILING OBJECTIONS
THERETO; AND (VII) GRANTING RELATED RELIEF**

In support of his objection and reservation of rights ("Objection") to *Debtors' Motion for
Entry of an Order (I) Approving the Combined Plan and Disclosure Statement on an Interim Basis
for Solicitation Purposes Only; (II) Establishing the Deadline for Administrative Expenses
Claims; (III) Establishing Solicitation and Voting Procedures; (IV) Approving the Form of Ballots
and Solicitation Materials; (V) Establishing the Voting Record Date; (VI) Fixing the Date, Time,
and Place for the Combined Hearing and the Deadlines for Filing Objections Thereto; and (VII)*

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for
SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL
61614. Due to the large number of debtors in these Chapter 11 Cases, for which the Debtors have requested joint
administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not
provided herein. A complete list of such information will be made available on a website of the Debtors' proposed
claims and noticing agent at www.kccllc.net/Petersen, or by contacting the undersigned proposed counsel for the
Debtors.

*Granting Related Relief* (D.I. 1366) (the "Solicitation Procedures Motion"), Andrew R. Vara, the United States Trustee for Regions 3 and 9 ("U.S. Trustee"), by and through his undersigned counsel, states:

## PRELIMINARY STATEMENT

1.      The U.S. Trustee objects to the Solicitation Procedures Motion because the Debtors' *Combined Disclosure Statement and Chapter 11 Plan of Liquidation* ("Proposed Plan") (D.I. 1365) does not contain the required adequate information to allow a "hypothetical reasonable investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).  Missing essential information includes, *inter alia,* estimated recoveries for voting classes, a Liquidation Analysis, and the basis for the request that the estates of the over 100 Debtors be substantively consolidated for plan purposes.

2.      The confirmability of the Proposed Plan is in question.  The omission of important financial information and the Debtors' failure to submit timely Monthly Operating Reports for the period after November 2024, make an analysis of the Proposed Plan's feasibility impossible.  Solicitation costs for an unconfirmable plan will only decrease the estates' de minimis cash position.

3.      Further, the Proposed Plan includes does not advise creditors of potential causes of action against CEO and Director Mark Petersen and/or officers who worked for him prior to the filing of the bankruptcy cases.  As currently drafted, the Proposed Plan  includes indemnification and exculpation of parties against whom estate causes of action have not yet been resolved, including Mr. Petersen and certain officers.

## JURISDICTION AND STANDING

4.      This Court has jurisdiction to hear the Solicitation Procedures Motion and this

Objection.

5.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.),* 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the Solicitation Procedures Motion.

## **BACKGROUND**

### A.      General Case Background

7.      On March 20, 2024 (the "Petition Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

8.      On April 9, 2024, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").  (D.I. 131).

9.      On April 10, 2024, the Court appointed Suzanne Koenig as patient care ombudsman pursuant to section 333(a) of the Bankruptcy Code.  (D.I. 137 and 160). The PCO has conducted site visits of the Debtors' Facilities and filed periodic reports, the most recently on April 11, 2025. *See, e.g.,* D.I. 394, 751, 908 and 1388.

10.     On May 21, 2024, the Court approved Debtors' bidding procedures.  (D.I. 341). The bid deadline was extended multiple times.  On July 3, 2024, Debtors filed a *Notice of*

*Successful Bidders*.  (D.I. 608).  After a July 10, 2024 hearing, the Court approved sales of the

Debtors' assets to multiple purchasers.  (*See, e.g.* D.I. 653 and 655).  Sales closed in December

2024.  (*See, e.g.,* D.I. 1071, 1072 and 1073).

11.     On July 29, 2024, the Court approved procedures for the sale, transfer or

abandonment of de minimis assets.  (D.I. 720).

12.     On November 12, 2024, Mr. Petersen filed a Motion to Dismiss two of the Debtors

that own property valued at approximately $3.5 million.  (D.I. 1989).  Mr. Petersen admits in the

Motion to Dismiss that he was the authorized signatory for both of these Debtors at the time their

petitions were filed.  He asserts that "due to a serious illness that impacted his ability to review the

petitions and related documents and authorize the filings" he had, through a power of attorney,

granted officer Marikay Snyder authority to approve these filings.  (*Id.* ¶ 21).  The hearing on this

motion has been adjourned until May 28, 2025, which is almost two weeks *after* the proposed

voting deadline.[2]

13.     On January 19, 2025, Column Financial, Inc. ("Column") filed a motion to convert

these cases to chapter 7.  (D.I. 1206 and 1207).  Column asserted that after the sale of the assets,

Debtors were administratively insolvent and were continuing to accrue administrative expenses

that were substantially diminishing the estates.  Column subsequently entered into a settlement

with the Debtors and the Committee that resolved the Motion to Convert and addressed solely

Column's claims and collateral.  (D.I. 1310).

14.     Because lenders had liens on multiple properties that were not all necessarily

purchased by the same buyer, the sale proceeds had to be allocated by location.  On February 21,

---

[2] Upon information and belief, there are numerous filed and unfiled issues and claims pending between Mr. Petersen, the Debtors and the Committee that have not been resolved.  The Proposed Plan does not adequately address this topic, and in some instances provides no information at all.

2025 this Court entered an Order approving the percentage allocation of the purchase price by facility. (D.I. 1286).

15.     The last Monthly Operating Report ("<u>MOR</u>") filed by the Debtors was for the month of November 2024, filed on February 17, 2025. (D.I. 1268). At this time Debtors are delinquent on their MOR filings, and reports are past due for December 2024, January 2025 and February 2025. The March 2025 report will be due in a few days. Without this information, it is impossible to understand the Debtors' current financial condition.

16.     It appears that monthly and interim fee applications have been filed by most professionals through December 2024. Without timely MORs, it is not known if payments are current through that date, or to what extent payments have been made or are currently due for periods thereafter. The Plan contains no estimate as to what is currently due and what may be due to professionals as of the Effective Date.

**B.     The Proposed Plan**

17.     In February 2025, the Debtors filed the Solicitation Procedures Motion and Proposed Plan. (D.I. Nos. 431 and 415). Debtors' requested relief includes, *inter alia,* interim approval of the Proposed Plan, establishment of administrative claims bar dates and approval of solicitation procedures.

18.     The projected recovery for unsecured claimants is 0%. (Proposed Plan, p. 39). Debtors rely on their liquidation analysis to assert they meet the "best interest of claimants" test. (*Id.* p. 44). However, Exhibit C to the Proposed Plan -- the Liquidation Analysis -- has not been provided.

19.     Debtors assert that administrative, priority and adequate protection claims will all be paid on the Effective Date. (*Id.* p. 46). No amounts are given for the aforementioned claim

categories, except that allowed priority tax claims are estimated to be $235,351.91. (*Id*. p. 47). There is no estimate given of unpaid professional fees. (*Id*. pp. 46 – 47).

20.     The allowed amounts of Class 1 claimants (pre-petition lender claims) are noted. However, as these claims are for the most part impaired, it is not clear how much they will be paid. Class 2 claims (held by secured claim holders) are unimpaired and estimated at $497,166.81. (*Id*. p. 52).

21.     In summary, Debtors do not provide an estimate that includes everything that must be paid on the plan's Effective Date. At the same time, Debtors do not supply information as to the amount of cash they currently hold or may collect between now and the Effective Date that may put them in a position to pay those claims. The Proposed Plan cannot go effective, however, if the Debtors do not have the necessary funds to meet their secured, administrative and priority claim obligations. The Proposed Plan simply lacks necessary information by which feasibility can be determined, especially when taking into account that there are no current MORs. In sum, the Debtors propose that the claimants vote on the Proposed Plan without being provided financial information necessary for them to make their decision.

22.     Another piece of missing information is the basis for substantively consolidating the Debtors' cases for all purposes, including for purposes of voting, distributions and confirmation. (*Id*. p. 59). In addition, other than stating the consolidation will not affect the rights of secured claim holders, the Debtors do not address the other effects of substantive consolidation, particularly with respect to the unsecured claimants. This information must be added to provide adequate information to voting creditors.[3]

---

[3] The U.S. Trustee has informally raised other issues with respect to the Proposed Plan that the Debtors have agreed to address. The U.S. Trustee reserves his right to raise any of these issues to the extent they are not resolved. In addition, the U.S. Trustee reserves the right to object to any Proposed Plan provisions that may be added or amended between the filing of this Objection and the hearing date.

23.     Finally, as discussed above, the Proposed Plan does not advise claimants of unresolved issues with Mr. Petersen, nor the impact of those issues.  The Proposed Plan does not exclude Mr. Petersen from the Debtors' indemnification obligations that will survive confirmation and diminish available insurance proceeds.   (Proposed Plan p. 67).   While the Debtors' "indemnification obligations shall not apply to or cover any Claims, suits, or actions against a Person that result in a Final Order determining that such Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty" ("Fraud Actions")   (*Id.),* claims against Mr. Petersen may include breach of contract and preference liability.

24.     In addition, the exculpation clause covers Mr. Petersen, who technically still serves as an officer and director of the Debtors during the pendency of these cases.  (*Id.* p. 71).   While the exculpation clause does not cover Fraud Actions, it is unknown at this time what type of claims may be brought against Mr. Petersen and Ms. Snyder, who acted pursuant to a power of attorney from him.  Even if the Court should conclude that these are confirmation issues, creditors voting on the Proposed Plan must be made aware of this information as otherwise they have not been provided with adequate information before casing their vote.

## **ARGUMENT**

25.     Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan.  11 U.S.C. § 1125; *see also In re Quigley Co*., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007).  The Bankruptcy Code defines "adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the

> debtor, any successor to the debtor, and a hypothetical investor
> typical of the holders of claims or interests in the case, that would
> enable such a hypothetical reasonable investor of the relevant class
> to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994); *Kunica v. St. Jean Fin., Inc.*, 233 B.R. 46, 54 (S.D.N.Y. 1999).

26.     The disclosure statement requirement of section 1125 of the Bankruptcy Code is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).

27.     The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan. *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

28.     To be approved, the Proposed Plan must include sufficient information to apprise creditors of the risks and financial consequences of the plan. *See In re McLean Indus.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"); *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) (the purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's

plan).

29.     Section 1125 of the Bankruptcy Code is geared towards more disclosure rather than less.  *See In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).  The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors.  *In re Adelphia Commc'ns Corp.*, 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (*citing Century Glove*, 860 F.2d at 100).

30.     "Adequate information" under section 1125 is "determined by the facts and circumstances of each case."  *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)).

31.     Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement if the information is accurate and its inclusion is not misleading.  The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan.  *In re Duratech Indus.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999).  The disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

32.     Here, the Proposed Plan does not contain adequate information because it does not provide any meaningful information to certain voting classes about their estimated recoveries, and it does not contain a liquidation analysis to help creditors understand whether they fare better under the Proposed Plan or in a chapter 7 liquidation.  This missing information is amongst the most important information creditors need to decide how to vote on a plan.

33.     In addition, the Proposed Plan, other than mentioning Mr. Petersen's action to dismiss two of the Debtors' cases, provides no information regarding issues and claims as still

exist between the Debtors, Committee and Mr. Petersen.  The Proposed Plan does not even make

clear that the retained actions that may be pursued by the Liquidating Trustee will include claims

against Mr. Petersen.  This information is of essential importance to a claim holder voting on the

Proposed Plan.

      34.     It would be a waste of estate resources for the Debtors to proceed with a solicitation

process for an unconfirmable plan.  Therefore, the U.S. Trustee submits that the Proposed Plan

should not be approved on an interim basis and the Solicitation Procedures Motion should not be

granted.

      WHEREFORE, the U.S. Trustee requests that this Court grant such relief consistent with

this Objection as this Court deems appropriate, fair and just.


Dated: April 14, 2024                  Respectfully submitted,
      Wilmington, Delaware

                                **ANDREW R. VARA**
                                **UNITED STATES TRUSTEE FOR**
                                **REGIONS 3 & 9**


                          By:  */s/ Linda Richenderfer*
                                  Linda Richenderfer  (DE #4138)
                                  Trial Attorney
                                  United States Department of Justice
                                  Office of the United States Trustee
                                  J. Caleb Boggs Federal Building
                                  844 King Street, Suite 2207, Lockbox35
                                  Wilmington, Delaware 19801
                                  Phone: (302) 573-6492
                                  Fax:    (302) 573-6497
                                  Email: linda.richendedfer@usdoj.gov