## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SC HEALTHCARE HOLDING, LLC, *et al.*, | Case No. 24-10443 (TMH) |
| Debtors. 1 | Jointly Administered |
| | **Ref Docket Nos. 1365 and 1366** |

**OBJECTION AND RESERVATION OF RIGHTS OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) APPROVING THE COMBINED PLAN AND
DISCLOSURE STATEMENT ON AN INTERIM BASIS FOR SOLICITATION
PURPOSES ONLY; (II) ESTABLISHING THE DEADLINE FOR
ADMINISTRATIVE EXPENSES CLAIMS; (III) ESTABLISHING
SOLICITATION AND VOTING PROCEDURES; (IV) APPROVING THE FORM
OF BALLOTS AND SOLICITATION MATERIALS; (V) ESTABLISHING THE
VOTING RECORD DATE; (VI) FIXING THE DATE, TIME, AND PLACE FOR
THE COMBINED HEARING AND THE DEADLINES FOR FILING
OBJECTIONS THERETO; AND (VII) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned

cases of SC Healthcare Holding, LLC and its affiliated debtors and debtors in possession

(the "Debtors") files this objection and reservation of rights (the "Objection") to the *Debtors'*

*Motion for Entry of an Order (I) Approving the Combined Plan and Disclosure Statement on an*

*Interim Basis for Solicitation Purposes Only; (II) Establishing the Deadline for Administrative*

*Expenses Claims; (III) Establishing Solicitation and Voting Procedures; (IV) Approving the Form*

*of Ballots and Solicitation Materials; (V) Establishing the Voting Record Date; (VI) Fixing the*

*Date, Time, and Place for the Combined Hearing and the Deadlines for Filing Objections Thereto;*

---

1     The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of debtors in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information will be made available on a website of the Debtors' proposed claims and noticing agent at www.kccllc.net/Petersen.

*and (VII) Granting Related Relief* [Docket No. 1366] (the "Motion").[2]  In support of this Objection,

the Committee states as follows:

## PRELIMINARY STATEMENT

1.      The Committee generally supports the Debtors' Combined Plan and Disclosure

Statement.  Pursuant to the Plan, a liquidating trust (the "Liquidating Trust") will be established

and funded to allow pursuit of certain claims and causes of action, including claims and causes of

action against Mark Petersen, certain non-Debtor affiliates, certain of Mr. Petersen's relatives and

other related persons and entities (collectively, the "Causes of Action").  Mark Petersen is the

100% direct and indirect owner of the Debtors and an officer and director of the Debtors.   During

these cases, the Committee conducted extensive discovery, reviewing more than 50,000

documents; taking depositions of Petersen, the CRO, the Debtors' general counsel/chief operating

officer, the Debtors' chief financial officer and the Debtors' controller; and served subpoenas on

twenty-five (25) persons, including many banks that engaged in transactions with Mark Petersen.

Based on this discovery, the Committee believes that Mark Petersen used the Debtors' assets to

build and subsidize his hospitality business and to provide funds to or on behalf of his family

members.    Therefore, the Liquidating Trust will have various lawsuits to pursue against Mark

Petersen and other related persons, including litigation to recover millions of dollars loaned to

Mark Petersen and his hospitality business by the Debtors.   In addition, based on a settlement

reached between the Debtors, Column Financial, Inc, one of the Debtors' lenders ("Column") and

the Committee, the Liquidating Trust will pursue Column's guaranty claim against Petersen

(estimated to be in the amount of $20 to $30 million) for the benefit of all creditors.   If these

litigation claims are successful, they are expected to provide a recovery to unsecured creditors on

a pro rata basis, after payment of any professional fees.  Given the outcome of the sale process in

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

these cases, the unsecured creditors only source of recovery is the proceeds of these Causes of Action.

2.       The Committee also spent significant time working to ensure that these cases are administratively solvent and that there will be some remaining funds for the Liquidating Trust. The Liquidating Trust will be funded from the following sources, after funding of all reserves under the Plan:  (a) the Debtors' remaining cash; (b) the remaining proceeds of a $2.5 million settlement of certain litigation commenced by the Committee against Column; and (c) the remaining proceeds of certain unencumbered assets (including a plane, various real estate and various vehicles).   Therefore, there will be some limited "seed" money for the Liquidating Trust.

3.       From the Committee's perspective, the unsecured creditors will be best positioned to obtain a recovery from the Causes of Action through the Plan and establishment of the Liquidating Trust.  The Plan ensures that all administrative and priority claims are paid.  The Plan provides that the non-insider unsecured creditors, who are owed approximately $200 million in the aggregate, will not be pursued for avoidance action recoveries potentially creating even greater losses for the unsecured creditors – this is especially important in cases where unsecured creditor recoveries are speculative.  From the Committee's perspective, these benefits outweigh other case outcomes.

4.       With the Plan framework in place, the Committee, the Debtors and Mark Petersen have agreed to participate in a mediation beginning on May 1, 2025 in an effort to attempt to settle the Causes of Action to be assigned to the Liquidating Trust.   The Committee agreed to participate in this mediation given that a negotiated settlement, if it can be reached, will create a more certain outcome for the unsecured creditors and reduce related litigation costs.  If a settlement is reached, the settlement proceeds will be distributed by the Liquidating Trust pursuant to the terms of the

Plan.  If there is no settlement, then the Liquidating Trust will pursue the Causes of Action in an effort to generate a recovery for the general unsecured creditors.

5.　　While the Committee is generally support of the Combined Plan and Disclosure Statement, the Committee believes that the issues discussed below need to be addressed in the Combined Plan and Disclosure Statement prior to solicitation of votes.  The Committee has been and will continue working with the Debtors in an effort to resolve these issues prior to the April 17 hearing.

**BACKGROUND**

6.　　On March 20, 2024 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses as debtors in possession.  No trustee or examiner has been appointed in these cases.

7.　　On April 9, 2024, the United States Trustee appointed the Committee, which consists of the following members: (i) Select Rehabilitation, LLC.; (ii) Martin Brothers Distributing Company, Inc.; (iii) Omnicare Inc.; (iv) McKesson Corporation; (v) Onestaff Medical, LLC; (vi) Lawrence Recruiting Specialists, Inc.; and (vii) Darlena Moore, as Independent Administrator of the Estate of Linda I. Johnson.  *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 131].

8.　　On March 25, 2025, the Debtors filed *Debtors' Combined Disclosure Statement* (the "<u>Disclosure Statement</u>") *and Chapter 11 Plan of Liquidation* (the "<u>Plan</u>") [D.I. 1365].

4

**OBJECTION**

**A.    The Disclosure Statement Provides Insufficient Disclosures.**

9.    It is well-settled that a debtor may only solicit votes to accept or reject a chapter 11

plan after the Court has approved the debtor's written disclosure statement for that plan as

containing "adequate information."  11 U.S.C. § 1125(b).  Section 1125(a) of the Bankruptcy Code

defines "adequate information" as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable
> in light of the nature and history of the debtor and the condition of the debtor's
> books and records, including a discussion of the potential material Federal tax
> consequences of the plan to . . . a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a hypothetical investor of the
> relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

10.    The Third Circuit Court of Appeals has stressed the importance of adequate

disclosure in connection with proposed chapter 11 plans, stating:

> The importance of full disclosure is underlaid by the reliance placed upon the
> disclosure statement by the creditors and the court.  Given this reliance, we cannot
> overemphasize the debtor's obligation to provide sufficient data to satisfy the Code
> standard of adequate information.

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir.

2003) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988))

(emphasis added); *accord Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355,

362 (3d Cir. 1996) ("[T]he importance of full and honest disclosure cannot be overstated.").  It is

the Debtors' burden to prove that the Disclosure Statement contains adequate information.  *In re*

*Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir 2012).

11.    Although courts assess adequacy on a case-by-case basis, every disclosure

statement must contain "simple and clear language delineating the consequences of the proposed

plan on [creditors'] claims and the possible . . . alternatives so that [creditors] can intelligently

accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). In essence, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferret*ti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991); *see also* 11 COLLIER ON BANKRUPTCY ¶ 1125.03[1] (courts should "consider the needs of the claims or interest of the class as a whole and not the needs of the most sophisticated or least sophisticated members of a particular class").

12. In determining whether a disclosure statement satisfies section 1125 of the Bankruptcy Code, courts consider whether it provides creditors with the necessary information regarding a range of topics, including for example, the following:

- the events which led to the filing of a bankruptcy petition;
- the relationship of the debtor with its affiliates;
- a description of the available assets and their value;
- the anticipated future of the company;
- the source of information stated in the disclosure statement;
- the present condition of the debtor while in chapter 11;
- claims asserted against the debtor;
- the estimated return to creditors under a chapter 7 liquidation;
- the chapter 11 plan or a summary thereof;
- financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;
- information relevant to the risks posed to creditors under the plan;
- the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers; litigation likely to arise in a non-bankruptcy context; and
- tax attributes of the debtor.

*See Krystal Cadillac-Oldsmobile GMC Truck, Inc.*, 337 F.3d at 321-22 (stating that debtors must disclose all "property of the estate" including all "legal and equitable" property interests and "any litigation likely to arise in a non-bankruptcy context").

13.    The Combined Plan and Disclosure lacks certain key information that would inform creditors, when voting on the Plan, including the following:

- ***Financial Information.***  The Debtors need to include certain financial information in the Combined Plan and Disclosure Statement, including (a) a projected sources and uses of cash on the Plan's effective date, including projected cash to be available to the Liquidating Trust on the effective date; (b) the liquidation analysis; and (c) the proposed net sale proceeds to be paid to each of the secured creditors under the Plan (setting the amount of the secured creditors' secured and unsecured deficiency claims).

- ***Oversight of the Plan Administrator and Consent Rights/Cash Controls.***  The Liquidating Trustee must be given certain oversight rights as to the Plan Administrator, including (a) requiring reporting to be provided by the Plan Administrator to the Liquidating Trust regarding collection of accounts receivable; and (b) reporting to be provided by the Plan Administrator to the Liquidating Trustee regarding the various reserves established under the Plan and administered by the Plan Administrator, including the Administrative/Priority/Adequate Protection Claims Reserve, the Plan Administrator Reserve, the Professional Fee Reserve, the Secured Claims Reserve and Retained Collections.[3]  The Liquidating Trust should have consent rights to any allowance, settlement and/or payment of administrative claims, priority claims, adequate protection claims and other claims paid by the Plan Administrator.   The Committee does not want to increase the costs

---

[3] It is unclear under the Plan why the Plan Administrator is paid the "Retained Collections" amount.  It is the Committee's understanding that third parties are collecting accounts receivable and being paid a commission for doing so.   In addition, there is a Plan Administrator Reserve that is established under the Plan to cover the costs of the Plan Administrator.

of administering the Plan; however, any funds not used by the Plan Administrator will be turned over to the Liquidating Trust and therefore, the Liquidating Trustee should have input and monitoring rights into the Plan Administrator's use of the reserve funds established under the Plan.

- ***Scope of the Releases, Exculpation and Released Parties Needs to Be Limited.*** The Combined Plan and Disclosure Statement need to include clarifications regarding the following:

  - ***Exculpated Persons.*** The exculpated persons cannot include any of the Debtors' prepetition officers and directors (other than the CRO). The Committee has been investigating claims against such prepetition officers and directors and any related Causes of Action are to be assigned to the Liquidating Trust.

  - ***Clarification Regarding Released and Exculpated Persons.*** The Combined Plan and Disclosure Statement should contain language making clear that none of the releases and exculpations are for the benefit of Mark Petersen, any non-Debtor affiliates, any of Mark Petersen's relatives, any of the Debtors' prepetition officers and directors (other than the CRO), or any of the Debtors postpetition officers and directors (to the extent they held those positions prior to the Petition Date). The releases and exculpation should be limited to the CRO, the Debtors' independent directors appointed after the Petition Date, the Debtors' court retained professionals, the Committee, the Committee members, the Committee professionals, the Patient Care Ombudsman ("PCO") and the PCO's professionals.

- ○ ***Mutual Releases by Released Parties.*** The purposes of this provisions is unclear and if the scope of Released Parties is narrowed, this provision should be unnecessary.

- ***Indemnification Obligations.*** The Combined Plan and Disclosure Statement contains a provision indicating that indemnification obligations in favor of undisclosed "Persons" survives confirmation and consummation of the Plan. First, many of these "Persons" covered by these indemnification obligations are likely litigation targets. Second, it is unclear whether this creates an additional cost of the Debtors or the Liquidating Trust. There is language suggesting that these obligations can only be satisfied from available insurance; however, the Committee has been informed by the Debtors that there is no such available insurance. This is a liquidating plan and any indemnification obligations should not survive consummation of the Plan.

- ***Receivership Entities.*** The Combined Plan and Disclosure Statement should be modified to clarify (a) whether any of the Debtors included in the Plan are also part of the pending federal court receivership and (b) that any and all rights of creditors with respect to such entities, which are in federal court receivership, are expressly preserved and may be pursued in the federal court receivership.

- ***Non-Insider Avoidance Actions.*** The Debtors waive any actions under Section 547 of the Bankruptcy Code against non-insiders. This provision needs to be expanded to make clear that the Debtor waives all Chapter 5 actions or similar actions under state law against such non-insiders.

- ***The Debtors' Books and Records.***   The Combined Plan and Disclosure Statement contain provisions concerning the Debtors' records that are ambiguous and require clarification:

  - Article VIII.C (page 60) provides that clinical records are transferred to the Plan Administrator and other books and records are transferred to the Liquidating Trust (or the Liquidating Trust is provided access).   The Committee understood that all clinical records were transferred to the purchasers of the Debtors' assets.  If the Debtor still has possession of such clinical records, they will need to be stored consistent with applicable laws and regulations.  In addition, the Liquidating Trust has not agreed to take ownership of any of the Debtors' books and records.

  - Article XI.C (Injunction at Page 71) contains provisions enjoining access to various documents.  It is unclear if this provision is attempting to address privileged documents only or some other issue and why this provision is needed.

- **Termination of the Committee.**  The Committee is terminated on the Effective Date.  The Plan should be modified to provide: "Nothing prevents any professionals retained by the Committee from being compensated for actual and necessary fees and expenses incurred for work relating to the preparation, filing, prosecution or objecting to Professional Fee Claims that would have been compensable prior to the Effective Date."

- ***Termination and Protection of the PCO.***  The Plan should include provisions terminating the PCO as of the Plan's effective date.  In addition, there should be

limitations on any Persons seeking discovery from the PCO.    Typical plan provisions are as follows:

- o   Suzanne A. Koenig is hereby terminated and discharged as the Debtors' PCO as of the Effective Date and shall have no further duties or responsibilities as PCO, including no further duties to file additional reports..

- o   Prior to issuing or serving upon the PCO or her professionals any formal or informal discovery request, including, but not limited to, any subpoena, request for production of documents, requests for admissions, interrogatories, subpoenas duces tecum, requests for testimony, or any other discovery of any kind whatsoever in any way related to the Debtors, these chapter 11 cases, the PCO's evaluation, or her Reports (collectively, the "Discovery"), any creditor or party-in interest in these chapter 11 cases must first file an appropriate pleading with this Court to request permission to initiate the Discovery.

- o   The PCO and her professionals are authorized to retain, dispose of, or destroy any documents provided by the Debtors and various third parties to the PCO, if any, in the course of her evaluation, in accordance with their respective document retention policies or applicable law, if any.

14.    The Committee has provided the Debtors with comments to the proposed order approving the Motion and has not yet seen a revised draft of that order.  The Committee also has additional comments to the Combined Plan and Disclosure that they believe are more technical in nature and will provide those comments to the Debtors in an effort to resolve them prior to the

hearing.   To the extent any of these issues are not resolved prior to the hearing, the Committee reserves the right to raise such objections/issues with the Court.

## **RESERVATION OF RIGHTS**

15.     The Committee has been and will continue to work with the Debtors and other parties in interest to resolve the Objection prior to the hearing.

16.     The Committee reserves all rights with respect to the Motion and the Combined Plan and Disclosure Statement and expressly reserves and preserves all rights to raise any additional objections to the relief requested by the Debtors before any final hearing.

## **CONCLUSION**

WHEREFORE, the Committee requests that this Court sustain this Objection, as may be supplemented in advance of or at the hearing.

Dated: April 15, 2025
       Wilmington, Delaware

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

_Dennis A. Meloro_
Anthony W. Clark (DE Bar No. 2051)
Dennis A. Meloro (DE Bar No. 4435)
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 9801
Tel:  (302) 661-7000
anthony.clark@gtlaw.com
melorod@gtlaw.com

-and-

Nancy A. Peterman (_admitted pro hac vice_)
Danny Duerdoth (_admitted pro hac vice_)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
petermann@gtlaw.com
duerdothd@gtlaw.com

_Counsel to the Official_
_Committee of Unsecured Creditors_