**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re** | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC** *et al.*, | Case No. 24-10443 (TMH) |
| **Debtors.**[1] | Jointly Administered |

**NOTICE OF FILING OF PLAN SUPPLEMENT FOR THE DEBTORS' COMBINED
DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION**

**PLEASE TAKE NOTICE** that, on March 25, 2025, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1365] (as amended, the "Combined Plan and Disclosure Statement")[2] with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Combined Plan and Disclosure Statement was subsequently revised on March 16, 2025 and April 21, 2025. *See* Docket Nos. 1398 & 1411.

**PLEASE TAKE FURTHER NOTICE** that, on April 21, 2025, the Court entered an order [Docket No. 1413] approving, among other things, the Combined Plan and Disclosure Statement on an interim basis for solicitation purposes only and setting a deadline of May 9, 2025 for the Debtors to file the Plan Supplement.

---

[1]    The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of Debtors in the Chapter 11 Cases, whose cases are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information is available on a website of the Debtors' Claims and Noticing Agent at www.kccllc.net/Petersen.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby submit the Plan Supplement, consisting of the following documents, each as may be amended, modified, or supplemented from time to time by the Debtors in accordance with the Combined Plan and Disclosure Statement:

| Exhibit | Plan Supplement Document |
|---------|--------------------------|
| A | Plan Administrator Agreement |
| B | Liquidating Trust Agreement |
| C | Schedule of Assumed Executory Contracts |
| D | Schedule of Retained Causes of Action |

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in the Plan Supplement remain subject to continuing negotiations among the Debtors, the Committee, the Plan Administrator, the proposed Liquidating Trustee, and other interested parties. Subject to the terms and conditions of the Combined Plan and Disclosure Statement, the Debtors reserve all rights to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained herein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Combined Plan and Disclosure Statement or by Court order.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Combined Hearing") to consider (i) final approval of the Combined Plan and Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and (ii) confirmation of the Combined Plan and Disclosure Statement will be held before the Honorable Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy

Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, on **May 30, 2025, at 10:00 a.m. (prevailing Eastern Time)**.   The Combined Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date at the Combined Hearing or any continued hearing or as indicated in any notice filed with the Court on the docket (and posted on the Case Information Website) in these Chapter 11 Cases.

*[Remainder of page intentionally left blank]*

Dated: May 9, 2025
       Wilmington, Delaware

Respectfully Submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ _Andrew L. Magaziner_
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Carol E. Thompson (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:         amagaziner@ycst.com
               sborovinskaya@ycst.com
               cthompson@ycst.com

and

**WINSTON & STRAWN LLP**
Daniel J. McGuire (admitted pro hac vice)
Gregory M. Gartland (admitted pro hac vice)
35 W. Wacker Drive
Chicago, IL 60601
Telephone:     (312) 558-5600
Facsimile:     (312) 558-5700
Email:         dmcguire@winston.com
Email:         ggartland@winston.com

and

Carrie V. Hardman (admitted pro hac vice)
200 Park Avenue
New York, New York 10166
Telephone:     (212) 294-6700
Facsimile:     (212) 294-4700
Email:         chardman@winston.com

*Counsel for the Debtors and Debtors in Possession*

## Exhibit A

**Plan Administrator Agreement**

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (as it may be amended, modified, supplemented, or restated from time to time, this "Agreement" or the "Plan Administrator Agreement") dated as of [_], 2025, is made and entered into by and among the Debtors executing the signature pages hereto, and David R. Campbell, solely in his capacity as Plan Administrator for purposes of this Agreement, and is executed in connection with and pursuant to the terms of the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* dated as of April 21, 2025 [Docket No. 1410] (as it may be amended, modified, supplemented, or restated from time to time, the "Plan").[1]

## RECITALS

WHEREAS, on March 20, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and their chapter 11 cases are being jointly administered as *In re SC Healthcare Holding, LLC, et al.,* Case No. 24-10443 (TMH);

WHEREAS, on April 9, 2024, the U.S. Trustee appointed the Committee;

WHEREAS, the Plan contemplates that a Plan Administrator will be appointed to perform its duties in accordance with the Plan and this Agreement;

WHEREAS, on [_], 2025, the Bankruptcy Court entered the Confirmation Order [Docket No. [_]] confirming the Plan, which became effective on [_], 2025 (the "Effective Date");

WHEREAS, on the Effective Date of the Plan, the Plan Administrator shall be appointed in accordance with the Plan; and

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan.

NOW, THEREFORE, in accordance with the Plan, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## RECITALS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2    Interpretation; Headings. All references in this Agreement to specific provisions of the Plan are without exclusion or limitation of other applicable provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan. References to the Plan, as used herein, include the Confirmation Order and any modification to the Plan set forth therein.

one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.3  Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.4  Conflict Among Plan Documents. In the event of any inconsistency between the terms of this Agreement and the terms of the Plan, the terms of the Plan shall govern and control.

## ARTICLE II
## ACCEPTANCE OF POSITION; OBLIGATION TO PAY CLAIMS; AND FIDUCIARY STATUS

2.1  Acceptance. David R. Campbell has been selected to serve as Plan Administrator pursuant to the provisions of the Plan and, solely in his capacity as Plan Administrator for purposes of this Agreement, hereby (a) accepts appointment as the Plan Administrator; and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, or other orders of the Bankruptcy Court, and applicable law.  To effectuate an orderly and efficient transition of the administration of the Estates from the Debtors to the Plan Administrator, the Plan Administrator may perform certain services in connection with its duties and obligations under this Agreement prior to the Effective Date, and the authorization and payment for such performance, including the Plan Administrator's professional fees and expenses, is ratified and authorized by the execution hereof to the extent not already authorized by the Plan or Confirmation Order.

2.2  Fiduciary. The Plan Administrator shall perform its obligations consistent with the Plan, this Agreement, applicable orders of the Bankruptcy Court, and applicable law.  On and after the Effective Date, and subject to the rights and powers of the Liquidating Trustee and the Liquidation Trust Agreement, the Plan Administrator shall be the sole officer and sole director or manager (as applicable) of each Debtor.  The Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a director and officer of a Delaware corporation, subject to the provisions in the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  Subject to the roles and powers of the Liquidating Trustee as set forth in the Liquidation Trust Agreement, from and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Debtors.  For the avoidance of doubt, the foregoing shall not limit the authority and power of the Plan Administrator to continue the employment of any former director, officer, or employee of the Debtors.

2.2.1  Resignation of prior Directors, Managers and Officers.  On the Effective Date, the authority, power, and incumbency of the persons acting as directors, managers, and officers of each Debtor shall be deemed to have terminated, and such directors, managers, and officers shall be deemed to have resigned, solely in their capacities as such, and all relevant documents are deemed amended by the Plan to effectuate the same.

# ARTICLE III
## GENERAL POWERS, RIGHTS AND OBLIGATIONS OF THE PLAN ADMINISTRATOR

3.1     <u>Rights, Powers, and Privileges of the Plan Administrator Generally</u>. Effective as of the Effective Date, but expressly subject to the terms of this Agreement and the Plan, the Plan Administrator is appointed for purposes of implementing the terms and conditions of the Plan with respect to (i) effectuating all actions and executing all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) reviewing and negotiating tax Claims and paying taxes owed by the Estates, (iii) reviewing, negotiating, reconciling and processing Distributions from the Administrative / Priority / Adequate Protection Claims Reserve and the Secured Claims Reserve to Holders of Allowed Administrative Claims, Priority Claims, Allowed Adequate Protection Claims, and Allowed Secured Claims, (iv) reconciling and collecting all accounts receivable outstanding, including any unclaimed funds of the Estates, as of the Plan Administrator's appointment, and distributing the proceeds in accordance with the Plan and the Column Settlement Order, subject to the terms of this Agreement, (v) calculating and administering the various reconciliations under the APAs, (vi) winding down the Debtors and paying the expenses related thereto from the Plan Administrator Reserve, and (vii) taking all other actions and exercising all such other powers as may be vested in the Plan by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan (collectively, the "<u>Plan Administrator Responsibilities</u>").   The Plan Administrator is hereby authorized and empowered to make the Distributions from the Administrative / Priority / Adequate Protection Claims Reserve and the Secured Claims Reserve to Holders of Allowed Administrative Claims, Priority Claims, Allowed Adequate Protection Claims, and Allowed Secured Claims under the Plan, subject to the terms and conditions set forth in this Agreement and the Plan.   The Debtors shall be managed, administered, and wound down by the Plan Administrator in accordance with the terms of the Plan and this Agreement and the Plan Administrator shall have full authority to administer the Plan, subject to the terms and conditions of this Agreement and the Plan.   The Plan Administrator shall be deemed a "representative" of the estate as contemplated by section 1123(b)(3)(B) of the Bankruptcy Code, and the Plan Administrator shall be deemed to be a judicial substitute and estate representative for each Debtor as the party-in-interest in the Chapter 11 Cases, under the Plan, or in any judicial proceeding or appeal.   In addition, the Plan Administrator shall have the rights and powers of a debtor in possession under section 1107 of the Bankruptcy Code and shall be vested with the rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code.

3.1.1     <u>Power to Contract; Attorney-in-Fact</u>. In furtherance of the purpose of each Debtor, and except as otherwise specifically restricted in the Plan or this Agreement, the Plan Administrator is hereby irrevocably appointed as the attorney-in-fact for each Debtor, with full power of substitution, and with full power and authority, in the place and stead of each Debtor, or in the Plan Administrator's own name, for the purposes of carrying out the Plan and this Agreement and taking any action or executing any documents that may be necessary or useful to accomplish such purposes.  Without limiting the generality of the foregoing, the Plan Administrator may cause each Debtor to enter into any covenants or agreements binding each Debtor, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Plan Administrator to be consistent with and advisable in furthering the purpose of the Plan or this Agreement.

3

3.1.2   <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Plan Administrator from taking or refraining to take any action on behalf of each Debtor that, based upon the advice of counsel or other professionals, the Plan Administrator reasonably determines it is obligated to take or to refrain from taking in the performance of any duty under the Plan or this Agreement.

3.2   <u>Powers of Plan Administrator</u>. The Plan Administrator shall provide the post-Effective Date administration, wind down, and dissolution services related to the Plan Administrator Responsibilities that are necessary, required, desirable, or advisable to effectuate the terms and conditions of the Plan and the wind down of each Debtor.  Subject to the terms of the Plan, the Plan Administrator shall have all duties, powers, and rights set forth in this Agreement and in the Plan, including but not limited to, all powers and duties incidental to the following services related to each Debtor:

3.2.1   reconciling, collecting, and distributing accounts receivable as set forth in section 3.3 hereof;

3.2.2   opening and maintaining bank accounts on behalf of or in the name of the Debtors;

3.2.3   abandoning or donating to a charitable organization qualifying under section 501(c)(3) of the IRC any assets that the Plan Administrator determines to be too impractical to distribute or of inconsequential value;

3.2.4   employing, retaining, and consulting with professionals, disbursing agents, and other agents, independent contractors, and third parties pursuant to the Plan Administrator Agreement and paying the reasonable compensation thereof, including, for the avoidance of doubt and in the discretion of the Plan Administrator, any third-party disbursing agent;

3.2.5   retaining, terminating, appointing, or hiring employees, personnel, management, and directors of each Debtor to the extent necessary to carry out the purposes of the Plan Administrator Agreement and the Plan, including, without limitation, to address any disputes between the Debtors;

3.2.6   paying all lawful expenses, debts, charges, taxes, and other liabilities (including Plan Administrator Expenses), and making all other payments relating to the Debtors and their assets after the Effective Date;

3.2.7   establishing, administering, adjusting, and/or maintaining, as applicable, the Administrative / Priority / Adequate Protection Claims Reserve, Secured Claims Reserve, the Plan Administrator Reserve, and the Professional Fees Reserve, as set forth in the Plan and this Agreement;

3.2.8   reviewing, retaining, maintaining, destroying, or transferring (or otherwise providing access) historical clinical books and records to the Liquidating Trustee;

3.2.9   purchasing and carrying all insurance policies that the Plan Administrator deems reasonably necessary or advisable and paying all associated insurance premiums and costs;

3.2.10  if the Plan Administrator, in its discretion, deems it appropriate, to seek to establish any additional or supplemental bar date for Filing proofs of Claims or Interest in any Debtor;

3.2.11  negotiating, reconciling, and processing all Distributions from the Administrative / Priority / Adequate Protection Claims Reserve and the Secured Claims Reserve to Holders of Allowed Administrative Claims, Priority Claims, Allowed Adequate Protection Claims, and Allowed Secured Claims against each Debtor, as provided for in, or contemplated by, the Plan;

3.2.12  withholding from the amount distributable to any Person pursuant to section 3.2.10 hereof the maximum amount needed to pay any tax or other charge that the Plan Administrator has determined, based upon the advice of his agents or professionals, may be required to be withheld from such Distribution under any income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.13  making all tax withholdings, filing tax information returns, filing and prosecuting tax refunds claims, making tax elections by and on behalf of each Debtor, and filing tax returns for each Debtor pursuant to and in accordance with the Plan, and paying taxes, if any, payable for and on behalf of each Debtor, as applicable;

3.2.14  seeking a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.15  establishing reserves for taxes, assessments, and other expenses of administration of each Debtor as may be necessary and appropriate for the proper operation of matters incident to each Debtor;

3.2.16  undertaking all administrative functions remaining in the Chapter 11 Cases to the extent necessary to carry out each Debtor's or the Plan Administrator's duties under the Plan, as applicable, including reporting and making required payments of fees to the U.S. Trustee and filing post-confirmation reports when due; the wind down and dissolution of the Debtors, as applicable; and overseeing the closing of the Chapter 11 Cases;

3.2.17  coordinating with, and providing any necessary consents to, the Liquidating Trustee, as set forth in the Plan and the Liquidating Trust Agreement;

3.2.18  entering into any agreement or executing any document or instrument required by or consistent with the Plan or the Plan Administrator Agreement, and to perform all obligations thereunder;

3.2.19  exercising, implementing, enforcing, and discharging all of the terms, conditions, powers, duties, and other provisions of the Plan and the Plan Administrator Agreement; and

3.2.20  taking all other actions consistent with the provisions of the Plan and the Plan Administrator Agreement that the Plan Administrator deems reasonably necessary or desirable to administer each Debtor.

3.3     <u>Responsibility for Collection of Accounts Receivable; Bulk Sales</u>.  The Plan Administrator shall have sole power of collection of accounts receivable outstanding, including any unclaimed funds of the Estates, as of the Plan Administrator's appointment, and Distribution of the proceeds in accordance with the Plan and the Column Settlement Order. Notwithstanding

the foregoing, the Plan Administrator shall conduct a bulk sale of a meaningful amount of accounts receivable only upon seven (7) days' notice to the applicable secured creditor(s) and consultation with the applicable secured creditor(s); *provided*, that, in the event that any secured creditor files a motion with the Court seeking to block a proposed bulk sale, the Plan Administrator shall not proceed until the Court enters an order ruling on such motion.

3.4    <u>Accounts Receivable Collections Reporting</u>. At the end of each calendar month after the Effective Date, the Plan Administrator shall make Distributions of accounts receivable collected within fourteen (14) business days of the last day of such calendar month. In addition, the Plan Administrator shall provide the following to Holders of Class 1 Claims: (i) every four (4) weeks after the Effective Date, the Plan Administrator shall provide a report setting forth the total amount of accounts receivable collected, broken out by Facility, which shall be due ten (10) business days after the end of such fourth week; (ii) at the conclusion of each month after the Effective Date (excluding the month in which the Effective Date occurs), the Plan Administrator shall provide the previous month's invoices of any third-party collections agents engaged by the Debtors, including a report setting forth collections and fees broken out by Facility, which shall be due fifteen (15) business days after the end of such month; and (iii) after the Effective Date, the Plan Administrator shall make himself available for two (2) conference calls per month with the Holders of Class 1 Claims to address outstanding questions.

3.5    <u>Responsibility for Administration of Certain Allowed Claims</u>. From and after the Effective Date, the Plan Administrator shall be responsible for administering and paying Distributions from the Administrative / Priority / Adequate Protection Claims Reserve and the Secured Claims Reserve to Holders of Allowed Administrative Claims, Priority Claims, Allowed Adequate Protection Claims, and Allowed Secured Claims.

3.6    <u>Agents and Professionals</u>. The Plan Administrator may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Plan Administrator believes have qualifications necessary to assist in the administration of the Debtors, including professionals previously retained by each Debtor or the Committee.  For the avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Plan Administrator from engaging counsel or other professionals, subject to the Plan.

3.7    <u>Oversight Committee</u>. The Plan Administrator shall periodically provide reasonable information regarding all aspects of the Plan administration to the Oversight Committee.

3.8    <u>Maintenance and Disposition of Debtors' Records</u>. The Plan Administrator shall maintain customary records in the ordinary course of the administration of the Debtors and their assets, including receipts and disbursements and other activity of the Debtors following the Effective Date.  The Plan Administrator may, but has no obligation to, engage a claims agent (including, but not limited to, the Claims Agent) to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Plan.  The Plan Administrator shall be provided with originals or copies of or access to all documents and business records, including, without limitation, all historical clinical records (including, but not limited to, those stored on the PointClickCare software) of each Debtor that are in the possession of each

Debtor or its professionals, and shall maintain the records reasonably necessary for the administration and disposition of the Debtors' assets, or destroy or transfer (or otherwise provide access to) such records to the Liquidating Trustee in accordance with the Plan and all applicable law.

3.9     Reporting Requirements. The Plan Administrator shall maintain books and records relating to the administration of the Debtors and their assets and the Distributions by the Plan Administrator of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  The Plan Administrator shall also maintain books and records relating to the administration of the Debtors' assets, the income and expenses of the Debtors, and the payment of expenses of and liabilities of, Claims against or assumed by, the Debtors in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law.  Except as otherwise provided in this Agreement or in the Plan, nothing in this Agreement requires the Plan Administrator to file any accounting or seek approval of any court with respect to the administration of the Debtors, or as a condition for making any payment or Distribution out of the Debtors' assets.

3.10    Modifications to Plan Administrator Reserve. The amount of the Plan Administrator Reserve may be modified from time to time by the Plan Administrator, provided that any such modifications shall only be effective after providing parties in interest ten (10) business days to object and no objection having been received in such period.  Upon the Plan Administrator's timely receipt of an objection under this Section 3.8, the Plan Administrator may petition the Bankruptcy Court for entry of an order approving such requested modifications.

**ARTICLE IV**
**DISTRIBUTIONS**

4.1     Reserves; Pooling of Reserved Funds. The Plan Administrator need not maintain the Debtors' reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Debtors.

4.2     Plan Distributions in General. The Plan Administrator shall cause, on its own or by and through any third-party agent selected pursuant to the authority granted in the Plan, the Debtors to make Distributions from the Administrative / Priority / Adequate Protection Claims Reserve and the Secured Claims Reserve to Holders of Allowed Administrative Claims, Priority Claims, Allowed Adequate Protection Claims, and Allowed Secured Claims in the manner provided in the Plan.

4.3     No Responsibility to Attempt to Locate Creditors. The Plan Administrator may, in his sole discretion, attempt to determine a Holder's current address or otherwise locate a Holder, but nothing in this Agreement or the Plan shall require the Plan Administrator to do so.

4.4     Inapplicability of Escheat, Abandoned, or Unclaimed Property Laws.  Unclaimed property held by the Debtors shall not be subject to the escheat, abandoned or unclaimed property laws of the United States, any state, any local or any foreign governmental unit.

# ARTICLE V
# THIRD-PARTY RIGHTS AND LIMITATION OF LIABILITY

5.1    <u>Parties Dealing with the Plan Administrator</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Debtors or the Plan Administrator shall be entitled to rely on the authority of the Plan Administrator or any of the Plan Administrator's agents to act in connection with the Debtors or their assets. There is no obligation of any Person dealing with the Plan Administrator to inquire into the validity or expediency or propriety of any transaction by the Plan Administrator or any agent of the Plan Administrator.

5.2    <u>Limitation of Liability</u>. In exercising the rights granted in this Agreement, the Plan Administrator shall exercise the Plan Administrator's reasonable judgment with respect to the affairs of the Debtors and the interests of creditors.  However, notwithstanding anything in this Agreement to the contrary, the Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action, and neither (a) the Plan Administrator; (b) the Liquidating Trustee; (c) the Oversight Committee; nor (c) their respective members, employees, employers, designees, attorneys, or professionals, or other advisors, or any of their duly designated agents or representatives (each, a "<u>Post-ED Indemnified Party</u>" and collectively, the "<u>Post-ED Indemnified Parties</u>") shall be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs of the Debtors or for the act or omission of any other Post-ED Indemnified Party, nor shall the Post-ED Indemnified Parties be liable for any act or omission taken or omitted to be taken pursuant to the discretion, powers and authority conferred, or in good faith believed to be conferred, by the Plan Administrator Agreement or the Plan other than for specific acts or omissions resulting from such Post-ED Indemnified Party's criminal conduct, willful misconduct, gross negligence, or actual fraud; <u>provided</u>, <u>however</u>, that in no event will the Post-ED Indemnified Parties be liable for punitive, exemplary, consequential, or special damages under any circumstances.

5.3    <u>No Liability for Acts of Predecessors</u>. No successor Plan Administrator shall be in any way responsible for the acts or omissions of any Plan Administrator in office prior to the date on which such successor becomes the Plan Administrator unless a successor Plan Administrator expressly assumes such responsibility.

5.4    <u>No Liability for Good Faith Error of Judgment</u>. The Plan Administrator shall not be liable for any error of judgment made in good faith, unless it shall be determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Plan Administrator was grossly negligent in ascertaining the pertinent facts.

5.5    <u>Reliance on Documents and Advice of Counsel or Other Persons</u>.  The Plan Administrator shall be entitled to rely upon written information previously generated by the Debtors or the Estates, or may, in connection with the performance of their respective functions, and in their respective sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with its respective attorneys, accountants, financial advisors or agents, and the Plan Administrator's determination

not to do so shall not result in the imposition of liability on the Plan Administrator, or its designees, unless such determination is based on criminal conduct, willful misconduct, gross negligence, or actual fraud.

5.6     No Liability for Acts Approved by Bankruptcy Court.  The Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Debtors and their assets, as applicable.  The Plan Administrator shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

5.7     No Personal Obligation for Debtors' Liabilities.  Persons dealing or having any relationship with the Post-ED Indemnified Parties shall have recourse only to the Debtors' assets and shall look only to Debtors' assets to satisfy any liability or other obligations incurred by the Debtors or the Post-ED Indemnified Parties to such Person in carrying out the terms of the Plan and Plan Administrator Agreement, and the Post-ED Indemnified Parties shall not have any personal obligation to satisfy any such liability.

5.8     Indemnification.  The Debtors (on an attribution and/or allocation basis) shall indemnify and hold harmless the Post-ED Indemnified Parties (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) that such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Debtors or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such Persons for actions or omissions as a result of criminal conduct, willful misconduct, gross negligence, or actual fraud.  The foregoing indemnity in respect of any Post-ED Indemnified Party shall survive the termination of such Post-ED Indemnified Party from the capacity for which they are indemnified. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Section 5.8.

5.8.1     Expense of Debtors; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Debtor under this Section 5.8 shall be treated as Plan Administrator Expenses.  The amounts necessary for such indemnification and reimbursement shall be paid by the Plan Administrator solely out of the Plan Administrator Reserve, unless the Bankruptcy Court orders otherwise.

5.8.2     Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Plan Administrator (on an attribution and/or allocation basis) shall promptly pay expenses reasonably incurred by any Post-ED Indemnified Parties in defending, participating in, or settling any action, proceeding, or investigation in which such Post-ED Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with this Agreement or the duties, acts or omissions of the Plan Administrator or otherwise in connection with the affairs of the Debtors, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  As a condition to such payment, the applicable Post-ED Indemnified Parties must undertake, and the Debtors shall accept his, her or its undertaking, to repay any and all such amounts so advanced if it shall ultimately be

determined that such Post-ED Indemnified Party is not entitled to be indemnified therefor under this Agreement.

5.9     No Implied Obligations. The Plan Administrator shall not be liable whatsoever except for the performance of such duties and obligations as are specifically set forth in this Agreement, and no implied covenants or obligations shall be read into the Plan Administrator Agreement against the Plan Administrator.

5.10    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Plan Administrator Agreement, the provisions of this Article V shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Plan Administrator or any Post-ED Indemnified Party, or the termination of this Plan Administrator Agreement and shall inure to the benefit of the Post-ED Indemnified Parties' heirs and assigns.

5.11    Reliance by the Post-ED Indemnified Parties. Any Post-ED Indemnified Party may absolutely rely upon, and shall be fully protected in acting or refraining from acting if they rely upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Post-ED Indemnified Party has no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy themselves that the same was given in good faith and without responsibility for errors in delivery, transmission, or receipt. In the absence of gross negligence, willful misconduct, or fraud in respect of the Post-ED Indemnified Parties' duties as found by a final order of the Bankruptcy Court, the Post-ED Indemnified Parties may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting (or, if applicable, not acting) thereon.

## ARTICLE VI
## REMOVAL, REPLACEMENT AND COMPENSATION OF THE PLAN ADMINISTRATOR

6.1     Initial Plan Administrator. The initial Plan Administrator shall be David R. Campbell.  The Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.

6.2     Term of Service. The Plan Administrator shall serve until: (a) the completion of the administration of the Debtors' assets and the Debtors, including the winding down of each of the Debtors, in accordance with this Agreement and the Plan; (b) the dissolution or cancellation of the Debtors in accordance with the terms of this Agreement and the Plan; or (c) the Plan Administrator's resignation, death, dissolution, incapacity, liquidation, or removal.  In the event that the Plan Administrator's appointment terminates by reason of resignation, death, dissolution, incapacity, liquidation, or removal, the Plan Administrator shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced, subject to the terms of this Agreement. The provisions of Articles V through VI of this Agreement shall survive the resignation or removal of any Plan Administrator.

6.3     Removal of Plan Administrator for Cause. The Plan Administrator may be removed for cause as determined by order of the Bankruptcy Court.  In the event the Plan Administrator becomes unable to discharge his or her duties hereunder due to accident, physical deterioration, mental incompetence, or for other good cause, the Plan Administrator may be removed upon the filing of a motion (the "Removal Motion") with the Bankruptcy Court upon not less than thirty (30) days prior written notice to the Plan Administrator, who, upon receipt of such written notice, shall have an opportunity to be heard. Such removal of the Plan Administrator shall be effective upon entry of a final, non-appealable order of the Bankruptcy Court granting such Removal Motion. For purposes of this Agreement, "other good cause" means: arrest or conviction (or plea of guilty or nolo contendere) of the Plan Administrator for any felony, or any other crime involving dishonesty or moral turpitude; theft, fraud, self-dealing, intentional misrepresentation, or willful misconduct; or gross negligence or material failure in the performance of any material duties under the Plan, which is (i) repeated or continued after written notice of, and a reasonable opportunity to cure, such gross negligence or material failure, and (ii) injurious to the Debtors and the Estates.

6.4     Resignation of Plan Administrator. The Plan Administrator may resign at any time upon no less than sixty (60) days' prior written notice to the Bankruptcy Court.  The resignation shall be effective on the earlier of (i) the date specified in the notice of resignation or (ii) the date that a successor Plan Administrator is appointed pursuant to this Agreement. In the event of a resignation, the resigning Plan Administrator shall render a full and complete accounting of monies and assets received, disbursed, and held during the term of office of such Plan Administrator, and shall reasonably assist and cooperate in effecting the assumption of the duties by any successor Plan Administrator.

6.5     Appointment of Successor Plan Administrator. In the event that the Plan Administrator resigns or is no longer available for any reason, the Plan Administrator shall designate another Person or Entity to serve as successor Plan Administrator within thirty (30) days of such event, as such time may be extended for cause.  Upon the resignation, death, or removal of the Plan Administrator, and in the event that the Plan Administrator does not designate another Person or Entity to serve as successor Plan Administrator within thirty (30) days, any party in interest may request an order of the Bankruptcy Court to appoint a successor Plan Administrator unless the Bankruptcy Court does so on its own motion.  Any successor Plan Administrator so appointed (a) shall consent to and accept his, her, or its appointment as successor Plan Administrator, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of his, her, or its appointment as successor Plan Administrator and (b) shall not have any liability or responsibility for the acts or omissions of any predecessor(s).

6.6     Powers and Duties of Successor Plan Administrator. A successor Plan Administrator shall have all the rights, privileges, powers, and duties of his, her, or its predecessor under this Agreement and the Plan, and be bound by their terms.

6.7     Compensation of Plan Administrator and Costs of Administration.  The Plan Administrator shall receive fair and reasonable compensation for her services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Plan Administrator Reserve. All costs, expenses, and obligations incurred by the Plan Administrator (or professionals who may be employed or consulted by the Plan Administrator in administering the Debtors, in carrying out its other responsibilities under this Agreement, or in any manner

connected, incidental, or related thereto) shall be paid from the Plan Administrator Reserve. At the closing of the Chapter 11 Cases, the Plan Administrator shall transfer and assign to the Liquidating Trust all right, title, and interest in and to any amounts remaining in the Plan Administrator Reserve. The terms of the compensation of the initial Plan Administrator are set forth on **Exhibit B** hereto.

## ARTICLE VII
## CLOSING OF THE CHAPTER 11 CASES

7.1     Termination. When each of the following have occurred or will have occurred by the hearing on a motion to close the Chapter 11 Cases, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules: (a) all Claims against the Debtors and their Estates entitled to payment under the Plan (i) have been satisfied in accordance with the Plan or (ii) have been disallowed by Final Order; (b) all material portions of the Debtors' assets have been liquidated (other than those assets abandoned by the Debtors pursuant to the Plan), and converted into Cash to the extent required by the Plan, and such distributable assets and Cash have been distributed in accordance with the Plan; and (c) all post-Effective Date costs and expenses have been paid in full in Cash (or provision has been made to ensure payment in full) to the extent permitted by this Agreement. Notwithstanding the foregoing, the Plan Administrator may seek authority from the Bankruptcy Court to close the Chapter 11 Cases of one or more of the Debtors individually, prior to the requirements above being met with respect to all of the Chapter 11 Cases. Subject to further order of the Bankruptcy Court, this Agreement shall terminate when the Bankruptcy Court enters one or more final decree contemplated by section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the Debtors' Chapter 11 Cases for each Debtor.

7.2     Winding Up, Discharge, and Release of the Plan Administrator. For the purposes of winding up the affairs of each Debtor, as applicable, the Plan Administrator shall continue to act as Plan Administrator and perform its duties under this Agreement until such duties have been fully discharged or its role as Plan Administrator is otherwise terminated under this Agreement and the Plan or the Plan Administrator has been removed or has resigned as provided under this Agreement. Upon a motion or notice by the Plan Administrator, the Bankruptcy Court may enter an order relieving the Plan Administrator, its members, agents, and employees of any further duties or actions, and discharging and releasing the Plan Administrator.

## ARTICLE VIII
## MISCELLANEOUS

8.1     Cumulative Rights and Remedies. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

8.2     Notices. All notices to be given to creditors may be given by electronic mail, first class mail, or may be delivered personally, to the addresses of such creditors appearing on the books kept by the Plan Administrator. Any notice or other communication that may be or is required to be given, served, or sent to the Plan Administrator shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Plan Administrator:

    Getzler Henrich & Associates LLC
    295 Madison Avenue, 20th Floor
    New York, NY 10017
    Attention: David R. Campbell
    Email: dcampbell@getzlerhenrich.com

    and

    Getzler Henrich & Associates LLC
    150 S. Wacker Drive
    24th Floor
    Chicago, IL 60606
    Attention: David R. Campbell
    Email: dcampbell@getzlerhenrich.com

With a copy to counsel:

    Winston & Strawn LLP
    35 W. Wacker Dr.
    Chicago, IL 60601
    Attention: Daniel J. McGuire; Gregory M. Gartland
    Email: dmcguire@winston.com; ggartland@winston.com

    and

    Winston & Strawn LLP
    200 Park Avenue
    New York, NY 10166
    Attention: Carrie V. Hardman
    Email: chardman@winston.com

8.3    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware.

8.4    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

8.5    <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

8.6    <u>Execution</u>. All funds in the Debtors shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a creditor, and no creditor or any other Person can execute upon, garnish or attach the Debtors' assets or the Plan Administrator in

any manner or compel payment from the Debtors except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan and this Agreement.

8.7     Amendment. This Agreement may be amended by written agreement of the Plan Administrator or by order of the Bankruptcy Court; provided, however, that such amendment may not be inconsistent with the Plan.

8.8     No Waiver. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

8.9     No Relationship Created. Nothing contained in this Agreement shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

8.10    Severability. If any term, provision, covenant, or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

8.11    Further Assurances. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

8.12    Counterparts. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

8.13    Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction regarding the Debtors, the Plan Administrator, the Liquidating Trustee, the Oversight Committee, and the Debtors' assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Debtors. The Bankruptcy Court shall have continuing exclusive jurisdiction and be the exclusive venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Debtors.  The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.  Notwithstanding any other provision in this Section 8.13, the Plan Administrator may pursue any Cause of Action, if at all, pursuant to this Agreement, in any court of competent jurisdiction, which need not be the Bankruptcy Court.

* * * * *

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

**THE DEBTORS:**

SC Healthcare Holding, LLC, on behalf of itself and its affiliated Debtors:


By: _____
Name:  David R. Campbell
Title:  Chief Restructuring Officer



**THE PLAN ADMINISTRATOR:**


By: _____
Name:  David R. Campbell

**<u>EXHIBIT A</u>**

**Plan Administrator Compensation**

| Plan Administrator | Compensation |
|---|---|
| David R. Campbell | [ ]² |

---

2    The rate set forth herein is subject to periodic adjustment by the Plan Administrator in the ordinary course and practice.

**Exhibit B**

**Liquidating Trust Agreement**

**DRAFT/SUBJECT TO CHANGE**

## LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST

This Liquidating Trust Agreement and Declaration of Trust (the "Agreement"), dated as of [DATE], 2025, is made by and among SC Healthcare Holding, LLC and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors") and [TRUSTEE NAME] (together with any successors, the "Trustee", and together with the Debtors, the "Parties").

## RECITALS

A       On March 20, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re SC Healthcare Holding, LLC, et al.*, Case No. 24-10443 (TMH).

B       On April 9, 2024, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee of Unsecured Creditors (the "Committee") [Docket No. 131].

C       On February 29, 2024, the Bankruptcy Court entered the *[CONFIRMATION ORDER NAME]* [Docket No. ____] (the "Confirmation Order"), which confirms the [*Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation]* [Docket No. ____] (as confirmed, including all amendments and supplements thereto, the "Plan").

D       The Plan and Confirmation Order provide for the establishment of a liquidating trust (the "Trust"), effective as of the Effective Date of the Plan.

E       The Trust is established pursuant to the Plan for the benefit of Holders of Allowed Class 4 General Unsecured Claims (collectively, the "Beneficiaries").

F       The Trust is established for the purpose of holding, liquidating, and distributing the Liquidating Trust Assets (as defined herein), including investigating, pursuing (as appropriate), and collecting any proceeds of Retained Causes of Action, with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

G       Pursuant to the Plan, the Debtors, the Trust, the Trustee, and the Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Liquidating Trust Assets to the Trust as a transfer of the Liquidating Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Trust in exchange for the right to receive Distributions from the Trust, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

H       The Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

I       The Trust is further intended to be exempt from the requirements of, pursuant to section 1145 of the Bankruptcy Code (i) the Securities Exchange Act of 1933, as amended, and

DRAFT/SUBJECT TO CHANGE

any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act.

NOW, THEREFORE, in consideration of the promises, and the mutual covenants and agreements of the Parties herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the Distribution of the Liquidating Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to the Plan, the Confirmation Order, and section 2.3 of this Agreement, all right, title, and interest in, under, and to the Liquidating Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Liquidating Trust Assets, including any assets contributed and transferred to the Trust after the Effective Date, and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein and in the Plan and Confirmation Order.

## ARTICLE I
## RECITALS, PLAN DEFINITIONS, OTHER DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    Recitals. The Recitals are incorporated into and made terms of this Agreement.

1.2    Terms Defined in Plan. Any capitalized term used and not defined herein shall have the meaning assigned to such term in the Plan and the Confirmation Order, as applicable.

1.3    Interpretation. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4    Construction of Agreement. Except as specifically stated otherwise, this Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5    Conflict Among Plan Documents. In the event of any inconsistency between the Plan and the Confirmation Order, on the one hand, and this Agreement, on the other hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence. Notwithstanding the foregoing, in the event of any inconsistency solely between this Agreement and Article VIII.E of the Plan, this Agreement controls.

# ARTICLE II
## ESTABLISHMENT OF TRUST

2.1    <u>Effectiveness of Agreement; Name of Trust</u>. Pursuant to the Plan and the Confirmation Order, this Agreement shall become effective on the Effective Date. The Trust shall be officially known as the "SC Healthcare Liquidating Trust."

2.2    <u>Purpose of Trust</u>. The Debtors and the Trustee hereby create the Trust for the primary purpose of (i) collecting, holding, administering, liquidating, and distributing the Liquidating Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of the Plan, the Confirmation Order, and this Agreement; (ii) investigating, pursuing (as appropriate), and collecting any proceeds of Retained Causes of Action; and (iii) reconciling, seeking to subordinate, compromising, or settling any or all Claims in accordance with the Plan; and with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3    <u>Transfer of Liquidating Trust Assets</u>.

2.3.1    <u>Conveyance of Liquidating Trust Assets</u>. In accordance with Article VIII.E.3 of the Plan, the Debtors (and, as to the Column Guaranty Claim, Column) hereby irrevocably grant, release, assign, transfer, convey, and deliver, on behalf of the Beneficiaries, the Liquidating Trust Assets to the Trust in the manner provided in section 2.3.2 of this Agreement in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement, the Plan, and the Confirmation Order. The Trust is further authorized to accept and receive transfers or contributions of any Liquidating Trust Assets or the proceeds thereof from the Plan Administrator after the Effective Date. The transfer of the Liquidating Trust Assets to the Trust, including the transfer of any such assets after the Effective Date, shall be exempt from any stamp, transfer, recording, sales, use or similar tax. The Plan Administrator, on behalf of the Debtors, shall, from time to time, as and when reasonably requested by the Trustee, execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate), and the Plan Administrator shall take or cause to be taken such further action, as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Liquidating Trust Assets. The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.3.2    <u>Title to Liquidating Trust Assets</u>. On the Effective Date, all of the Debtors' right, title, and interest in and to the Liquidating Trust Assets are automatically vested in the Trust, free and clear of all liens, claims, encumbrances, and other interests, and such transfer is on behalf of the Beneficiaries to establish the Trust. The Trust is authorized to obtain possession or control of, liquidate, and collect all of the Liquidating Trust Assets; pursue all of the Retained Causes of Action; and pursue, assert, and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Retained Causes of Action. By

3

executing this Agreement, the Trustee on behalf of the Trust hereby accepts all such property as Liquidating Trust Assets, to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4     Capacity of Trust. Notwithstanding any state or federal law to the contrary or anything herein, the Trust shall itself have the capacity, in its own right and name, in furtherance of its stated purpose, to act or refrain from acting, including the capacity to sue and be sued and to enter into contracts. The Trust may alone be the named movant, respondent, party plaintiff, or defendant, or the like in all adversary proceedings, contested matters, and other state, or federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

2.5     Mutual Cooperation. The Debtors, through the Plan Administrator, and their professionals shall use commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the transition from the Debtors to the Trust of administration of the Liquidating Trust Assets. Such cooperation shall include, but not be limited to, reasonably attempting to identify and facilitate reasonable access to any evidence and information the Trustee reasonably requests (including but not limited to reasonable access to the Debtors' books and records, as applicable) in connection with the Trust's investigation, prosecution, or other pursuit of the Retained Causes of Action. The Debtors shall preserve or, consistent with the prior sentence and subject to the terms of the Confirmation Order, turn over to the Trust copies of all physical or electronically stored documents and communications in their possession or control that relate to the Liquidating Trust Claims.

The Trustee and his professionals shall use commercially reasonable efforts to cooperate with the Debtors and their professionals and the Plan Administrator, as applicable, in connection with implementing certain provisions of the Plan including, but not limited to, the issuance of Distributions pursuant to the Plan, reporting requirements, the exchange of information in the prosecution of claim objections to the extent necessary, and any other reasonably requested information or assistance.

2.6     No Retention of Excess Cash. Neither the Trust nor the Trustee shall retain cash or cash equivalents other than reserves established pursuant to sections 3.2.21, 4.2, or 4.7 of this Agreement, and shall distribute all amounts not required to be retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7     Acceptance by Trustee. The Trustee accepts its appointment as trustee of the Trust.

DRAFT/SUBJECT TO CHANGE

# ARTICLE III
## ADMINISTRATION OF TRUST

3.1     <u>Rights, Powers, and Privileges of Trustee Generally</u>. Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Liquidating Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust shall control and exercise authority over the Liquidating Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Trust consistent with the Trustee's fiduciary duties in accordance with this Agreement, the Plan, and the Confirmation Order. In administering the Liquidating Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Liquidating Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1     <u>Power to Contract</u>. In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge, and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2     <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

3.2     <u>Powers of Trustee</u>. Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust without need for further approval by the Bankruptcy Court except as specifically set forth herein, unless otherwise specifically limited or restricted by the Plan or this Agreement:

3.2.1     hold legal title to the Liquidating Trust Assets and to all rights of the Debtors and the Beneficiaries in or arising from the Liquidating Trust Assets;

3.2.2     receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Liquidating Trust Assets, including causing the Trust to invest any moneys held as Liquidating Trust Assets in accordance with the terms of section 3.7 hereof;

3.2.3     open and maintain bank accounts on behalf of or in the name of the Trust;

3.2.4     establish and maintain the Liquidating Trust Expense Fund (as defined herein);

3.2.5    borrow money or raise capital on such terms as determined by the Trustee in order to fund the Liquidating Trust Expense Fund;

3.2.6    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order, or this Agreement, and to perform all obligations thereunder;

3.2.7    collect and liquidate all Liquidating Trust Assets, including the sale of any Liquidating Trust Assets;

3.2.8    protect and enforce the rights to the Liquidating Trust Assets (including any Retained Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.9    investigate any Liquidating Trust Assets, including potential Retained Causes of Action, and cause the Trust to seek the examination of any Person pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure or other applicable rules;

3.2.10   cause the Trust to employ professionals and other agents and third parties pursuant to this Agreement;

3.2.11   cause the Trust to pay all its lawful expenses, debts, charges, taxes, and other liabilities, including all fees and expenses of professionals retained by the Trustee or the Trust, and make all other payments relating to the Liquidating Trust Assets;

3.2.12   cause the Trust, to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Retained Causes of Action;

3.2.13   consistent with Article XII of the Plan, cause the Trust, as appropriate, to review, investigate, settle, resolve, reconcile, or object to all Claims;

3.2.14   establish, adjust, and maintain reserves for Disputed Claims;

3.2.15   cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, in good faith and based upon the advice of its agents or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.16   in reliance upon the Debtors' schedules and the Claims Register, maintain a register evidencing the beneficial interests in the Trust held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the Claims Register;

3.2.17   cause the Trust to (a) make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article

VIII hereof, (b) pay taxes, if any, payable for and on behalf of the Trust, and (c) file any reports, either state or federal, that may be required to disclose the ultimate Beneficiaries of the Trust; *provided*, *however*, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility in any capacity whatsoever for the preparation, filing, signing, or accuracy of the Debtors' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto, which shall be the sole responsibility of the Plan Administrator;

3.2.18  cause the Trust to abandon or donate to a charitable organization any Liquidating Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries in accordance with the terms of the Plan;

3.2.19  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's income, gain, loss, deduction, or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

3.2.20  cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

3.2.21  cause the Trust to establish such reserves for taxes, assessments, and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

3.2.22  consistent with section 3.11 hereof, cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable, including appropriate insurance coverage for the benefit of the Trust and the Trustee, and to pay all associated premiums and costs;

3.2.23  undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust; and

3.2.24  take all other actions consistent with the provisions of the Plan and this Agreement that the Trustee deems reasonably necessary or desirable to administer the Trust.

3.3    <u>General Authority of Trustee</u>. Unless specifically stated otherwise herein, the Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction (a) authorized under this Agreement or (b) specifically contemplated in the Plan or Confirmation Order.  For the avoidance of doubt, the Trustee shall not be required to file any employment or fee applications to engage or pay any professionals, and the Trustee shall not be required to file any application under Rule 9019 of the Federal Rules of Bankruptcy Procedures or section 363 of the Bankruptcy Code to resolve, settle, transfer, or dispose of any Liquidating Trust Assets.

3.4    <u>Exclusive Authority to Pursue Retained Causes of Action</u>. The Trust shall have the exclusive right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the

DRAFT/SUBJECT TO CHANGE

Retained Causes of Action. The Trust shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Retained Causes of Action. The Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may be asserted by any defendant with respect to any Retained Cause of Action. The Trust shall also be vested with and entitled to assert all the Debtors' and the Estates' rights with respect to any such counterclaims under section 558 of the Bankruptcy Code.

3.5    Abandonment. If, in the Trustee's reasonable judgment, any non-cash Liquidating Trust Assets cannot be sold or liquidated in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization, in accordance with the terms of the Plan.

3.6    Agents and Professionals. The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the Trustee believes have qualifications necessary to assist in the administration of the Trust, including professionals previously or currently retained by the Debtors, the Committee, or the Plan Administrator.

3.7    Safekeeping and Investment of Liquidating Trust Assets. All moneys and other assets received by the Trust shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but (except as provided in the Plan or this Agreement) need not be segregated in separate accounts from other Liquidating Trust Assets, unless and to the extent required by law or the Plan. Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan. Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose, and only to the extent that the Trustee is directed to invest moneys other than in short-term money market funds, shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; *provided, however*, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise. For the avoidance of doubt, the provisions of any state law obligating or creating a duty on a trustee to invest trust assets shall not apply to this Agreement. Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8    Maintenance and Disposition of Trust and Debtor Records. The Trustee shall maintain accurate records of the administration of Liquidating Trust Assets, including receipts and disbursements and other activity of the Trust. To the extent of any Claims reflected thereon, the Claims Register may serve as the Trustee's register of holders of Claims. The fees and costs

associated with maintaining and updating the Claims Register shall be the sole responsibility of the Trust. The books and records maintained by the Trustee, and any records of the Debtors transferred to the Trust, may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9     Preservation of Privilege. As provided in the Plan and Confirmation Order, any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Trust shall vest in the Trust. The Trustee's receipt of any information subject to any privilege or similar protection shall not waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.

3.10     Reports to be Filed by the Trustee. The Trustee shall file with the Bankruptcy Court quarterly operating reports on behalf of the Trust, as required by the Office of the United States Trustee, until entry of a final decree closing the last of the Chapter 11 Cases.

3.11     No Bond Required; Procurement of Insurance. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond. The Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, the Trust, and its members, agents, representatives, employees, or independent contractors, including, without limitation, coverage with respect to the liabilities, duties, and obligations of the Trustee and its respective members, agents, representatives, employees, or independent contractors under this Agreement. The cost of any such insurance coverage shall be an expense of the Trust and paid out of Liquidating Trust Assets.

## ARTICLE IV
## DISTRIBUTIONS

4.1     Distribution. Following the transfer of Liquidating Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Liquidating Trust Assets through the Trustee subject to the reserves required under the Plan or this Agreement. For avoidance of doubt, the Trustee may make periodic Distributions in accordance with the terms of the Plan at any time (except that the Trust may retain an amount of net income or net proceeds necessary to maintain the value of its assets or to meet claims and contingent liabilities).

4.2     Reserve of Liquidating Trust Assets. The Trustee shall maintain a reserve (the "Liquidating Trust Expense Fund") in an amount as is reasonably necessary to pay the costs and expenses incurred or expected to be incurred by the Trust and Trustee in connection with administering the Liquidating Trust Assets and performing the duties set forth in this Agreement, including, without limitation, paying the fees and expenses of the Trustee and professionals retained by the Trust or Trustee (the "Liquidating Trust Expenses").

DRAFT/SUBJECT TO CHANGE

The Trust may borrow money or raise capital on such terms as determined by the Trustee in order to fund the Liquidating Trust Expense Fund. Except for purposes of funding the Liquidating Trust Expense Fund, the Trust shall not incur any debt.

4.3     Distributions on Account of Disputed Claims. Except as otherwise provided in the Plan, by Final Order, or as agreed by the relevant parties, Distributions on account of a Disputed Claim that becomes Allowed after the Effective Date shall be made by the Trustee as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim becomes a Final Order.

4.4     No Distributions Pending Allowance. Notwithstanding anything herein to the contrary, no Distribution will be made with respect to any Disputed Claim unless and until such Claim becomes an Allowed Claim; *provided*, *however*, that to the extent a Claim contains both Disputed and Allowed amounts, Distributions on account of the non-Disputed portion of such Claim may be made.

4.5     Legal Proceedings. If any Retained Cause of Action is asserted and if such claim or any other legal proceeding is initiated or prosecuted against any Creditor pursuant to the Plan, Confirmation Order, or this Agreement, or asserted as an objection to any Claim, then notwithstanding anything to the contrary contained in the Plan or Confirmation Order, until such proceeding or contested matter is finally resolved and all payments to the Estates or the Trust, as applicable, required by such resolution have been made, such Creditor shall only receive Distributions under the Plan or Confirmation Order to the extent that the Distributions to which such Creditor is otherwise entitled exceed the maximum liability of such Creditor to the Estates or the Trust, as applicable, asserted in such proceedings.

4.6     Objection Deadline. On and after the Effective Date, the Trustee shall be entitled to file objections to all Claims. As provided in Article XIII.F.5 of the Plan, any objections to Claims shall be filed on or before the later of (i) 180 days after the Effective Date, or (ii) such other period of limitation as may be specifically fixed by order of the Bankruptcy Court for objecting to Claims.

4.7     Disputed Claims Reserve. On and after the Effective Date, the Trust shall establish a reserve for Disputed General Unsecured Claims.

4.8     Settling Disputed Claims. Following the Effective Date, the Trustee is authorized to (i) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all General Unsecured Claims; (ii) settle, compromise, or resolve any such Disputed General Unsecured Claims; and (iii) administer and direct adjustment of the Claims Register to reflect any such settlements.

4.9     Distributions Net of Costs. Distributions shall be made net the actual and reasonable costs of making the Distributions.

4.10    Setoff. The Trustee, pursuant to the Plan, the Bankruptcy Code (including Bankruptcy Code section 553), and applicable bankruptcy or nonbankruptcy law, may, but shall not be required to, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is to be made on account of

such Allowed Claim), any claims of any nature whatsoever that the Debtors or Trust may have against the Holder of such Allowed Claim, *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Trustee of any such claim the Debtors or Trust may have against the Holder of such Claim.

4.11    Taxes. Pursuant to Bankruptcy Code section 346(f), the Trustee will be entitled to deduct and withhold any federal, state, or local taxes from any Cash payments made with respect to Allowed Claims.

4.12    Withholding from Distributions. The Trustee, in its discretion, may cause the Trust to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such Beneficiary. The Trustee shall determine such maximum amount to be withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld. Notwithstanding anything herein to the contrary, each Holder of an Allowed Claim that has received a Distribution of Cash under the Plan will have sole and exclusive responsibility for the satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding and other tax obligation, on account of such Distribution. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest, if any.

4.13    Right to Rely on Professionals. In determining the amount of any Distribution or reserves, the Trustee may reasonably rely and shall be fully protected in relying on the advice and opinion of the Trust's professionals.

4.14    Method and Timing of Distributions. Distributions to Beneficiaries will be made in accordance with the terms of the Plan and this Agreement. The Trustee and Debtors shall cooperate in a commercially reasonable manner, as necessary, in providing the Trustee with the necessary written instructions and funds to make Distributions to the Beneficiaries.

4.15    Tax Identification Numbers. The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any Distribution upon receipt of such identification number or tax form. If, within three months of written request from the Plan, a Beneficiary does not provide the Trustee with the forgoing information, then the Distribution to such Beneficiary shall be administered as an unclaimed Distribution in accordance with section 4.16 of this Agreement and, as provided in Article VIII.F.4 of the Plan, no further Distributions shall be made to such Beneficiary.

4.16    Unclaimed and Undeliverable Distributions. If any Distribution to a Beneficiary is returned as undeliverable or is otherwise unclaimed, such Distribution shall be subject to Article VIII.F.4 of the Plan.

4.16.1  <u>No Responsibility to Attempt to Locate Beneficiaries</u>. The Trustee may, in its sole discretions, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.16.2  <u>Disallowance of Claims; Cancellation of Corresponding Liquidating Trust Interests</u>. All Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes pursuant to the Plan shall be deemed disallowed and expunged without further action by the Trust, Trustee, or Debtors and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of the Beneficiary holding such disallowed Claims shall be deemed canceled. The Holder of any such Disallowed Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such Claim. The Holder of any such Disallowed Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such Disallowed Claim against the Trust, Trustee, or Debtors unless the Bankruptcy Court orders otherwise.

4.16.3  <u>Inapplicability of Unclaimed Property or Escheat Laws</u>. Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.17  <u>Voided Checks; Request for Reissuance</u>. Distribution checks issued to Beneficiaries shall be null and void if not negotiated within three months after the date of issuance thereof. Distributions in respect of voided checks shall be treated as unclaimed Distributions under Article VIII.F.4 of the Plan and administered under section 4.16 of this Agreement. Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Liquidating Trust Assets under Article VIII.F.4 of the Plan. The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust, Trustee, the Debtors, and Plan Administrator harmless against, any loss that may arise if the Trustee does not reissue a check promptly after receiving a request for its reissuance.

4.18  <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interests in the Trust or right to receive Distributions from the Trust or if there is any disagreement between the assignees, transferees, heirs, representatives, or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.18.1 The Trustee may elect to cause the Trust to not make any payment or Distribution with respect to the beneficial interests in the Trust subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.18.2  The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the applicable the beneficial interests in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee. The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for all other purposes whatsoever, including for federal and state income tax purposes.

4.18.3  In acting or refraining to act under and in accordance with this section 4.18 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VII of this Agreement.

4.19     De Minimis Distributions. No payment of Cash in an amount of less than $50.00 shall be required to be made on account of any Allowed Claim. Such undistributed amount may instead be used in accordance with the Plan and this Agreement.

## ARTICLE V
## BENEFICIARIES

5.1     Interest Beneficial Only. The ownership of a Liquidating Trust Interest shall not entitle any Beneficiary or the Debtors to any title in or title to the Liquidating Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2     Allocation of Liquidating Trust Interests. The allocation of the beneficial interests in the Trust shall be accomplished as set forth in the Plan and the Confirmation Order.

5.3     Evidence of Liquidating Trust Interest. Ownership of a beneficial interest in the Trust shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4     No Right to Accounting. Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the Trustee shall not be obligated to provide any accounting to any Person. Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Liquidating Trust Assets.

5.5     No Standing. Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Liquidating Trust Assets.

5.6    <u>Requirement of Undertaking</u>. In any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the Trustee may request the Bankruptcy Court to require the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; *provided*, *however*, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7    <u>Limitation on Transferability</u>. It is understood and agreed that the beneficial interests in the Trust shall be non-transferable and non-assignable during the term of this Agreement except as permitted by Article VIII.E.6 of the Plan. Any such transfer or sale shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law. The notice shall be executed by the transferee (or appropriate representative) and the transferor (or appropriate representative). The notice must clearly describe the interest being transferred and must include the transferee's tax identification number, current mailing address, telephone number, and email address. The Trustee may rely upon such notice and proof of assignment without the requirement of any further investigation. Unless the Trustee receives actual written notice of an assignment from the duly authorized transferee (or appropriate representative) not less than 30 days prior to a distribution, the Trustee shall have no duty or obligation to make or direct any distributions or payments to such transferee.

5.8    <u>Exemption from Registration</u>. The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law. However, such rights have not been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities. No party to this Agreement shall make a contrary or different contention.

5.9    <u>Delivery of Distributions</u>. Subject to the terms of this Agreement, the Trustee shall make Distributions to Beneficiaries in the manner provided in the Plan.

<div align="center">

**ARTICLE VI**
**[Reserved]**

**ARTICLE VII**
**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

</div>

7.1    <u>Parties Dealing With the Trustee</u>. In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Liquidating Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

7.2    <u>Limitation of Trustee's Liability</u>. In exercising the rights granted in this Agreement, the Plan, and Confirmation Order, the Trustee shall exercise the Trustee's best judgment, to the

end that the affairs of the Trust shall be properly managed and the interests of all the Beneficiaries safeguarded. However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust. Except in the case of actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the Trustee's duties or material breach of the Agreement that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust, in no event shall the Trustee be liable for indirect, punitive, special, incidental, or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action. Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability provisions set forth in the Plan and Confirmation Order.

7.3    No Liability for Acts of Other Persons. None of the Persons identified in the immediately preceding section 7.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

7.4    No Liability for Acts of Predecessors. No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in such position prior to the date on which such successor becomes the Trustee unless the successor Trustee expressly assumes such responsibility.

7.5    No Liability for Good Faith Error of Judgment. The Trustee shall not be liable for any error of judgment made in good faith unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

7.6    Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may reasonably rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties. The Trustee also may engage and consult with its legal counsel and other agents and advisors and shall not be liable for any action taken, omitted, or suffered by the Trustee in reasonable reliance upon the advice of such counsel, agents, or advisors.

7.7    No Liability For Acts Approved by Bankruptcy Court. The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Liquidating Trust Assets required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all

DRAFT/SUBJECT TO CHANGE

such actions or omissions shall conclusively be deemed not to constitute actual fraud, gross negligence, or willful misconduct.

7.8    No Personal Obligation for Trust Liabilities. Except as otherwise provided herein, persons dealing with the Trustee shall have recourse only to the Liquidating Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

7.9    Indemnification. The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals, and other representatives, each in their representative capacity as such (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement, or in rendering services by the Indemnified Party to the Trust or the Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the actual fraud, gross negligence, reckless or willful misconduct, or willful disregard of the duties or material breach of the Agreement of the Indemnified Party asserting this provision.

7.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 7.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Liquidating Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

7.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay. The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 7.9 on submission of invoices for such amounts by the Indemnified Party. The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification. All invoices for indemnification shall be subject to the approval of the Trustee. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 7.9.

7.10    No Implied Obligations. The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

7.11    Confirmation of Survival of Provisions. Without limitation in any way of any provision of this Agreement, the provisions of this Article VII shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

<h1 style="text-align:center">ARTICLE VIII<br>TAX MATTERS</h1>

8.1    Tax Treatment of Trust. Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Plan Administrator, the Beneficiaries, the Trustee, and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Liquidating Trust Assets to the Trust shall be treated as a transfer of the Liquidating Trust Assets to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Liquidating Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust. The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes. Notwithstanding the foregoing, in the event of a final determination that the Trust does not qualify as a grantor trust, the Beneficiaries and the Trustee intend that it be treated as a partnership for U.S. federal income tax purposes and will take all actions reasonably necessary to cause the Trust to be treated as such a partnership.

8.2    Annual Reporting and Filing Requirements. Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

8.3    Tax Treatment of Reserves for Disputed General Unsecured Claims. The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed General Unsecured Claims, including (i) filing a tax election to treat any and all reserves for Disputed General Unsecured Claims as a Disputed Ownership Fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report any reserve for Disputed General Unsecured Claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal or state income tax due.

8.4    Valuation of Liquidating Trust Assets. After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Liquidating Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation. The Trust shall bear the costs and expenses incurred in connection with determining such value,

including the fees and expenses of any Persons retained by the Trustee in connection therewith. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Plan Administrator, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes; *provided*, *however*, that such valuation shall not be binding on the Trustee or any other party for any other purposes, including without limitation in regard to the liquidation of the Liquidating Trust Assets, whether by disposition, liquidation, litigation, settlement, or otherwise. Any such valuation shall be inadmissible in any proceeding concerning the Liquidating Trust Claims.

## ARTICLE IX
## SELECTION, REMOVAL, REPLACEMENT
## AND COMPENSATION OF TRUSTEE

9.1     Initial Trustee. [NAME] shall be the initial Trustee and is appointed effective as of the Effective Date.

9.2     Term of Service. The Trustee shall serve until (a) the completion of the administration of the Liquidating Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's death, dissolution, liquidation, resignation, incapacity, or removal. If the Trustee's appointment terminates by reason of death, dissolution, liquidation, resignation, incapacity, or removal, except as provided in Section 9.3 of this Agreement, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article IX of this Agreement shall survive the resignation or removal of any Trustee.

9.3     Removal of Trustee. Any Person serving as Trustee may be removed at any time for cause.  Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this Article 9. For purposes of this Article, the term "cause" shall mean (a) the Trustee's actual fraud, gross negligence, reckless or willful misconduct, willful disregard of his or her duties under the Plan, the Confirmation Order, or this Agreement, or material breach of the Agreement, or (b) the Trustee's misappropriation or embezzlement of any Liquidating Trust Assets or the proceeds thereof.

9.4     Resignation of Trustee. The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is 30 days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee.

9.5     Appointment of Successor Trustee. In the event of resignation, the Trustee shall appoint a successor trustee, whose appointment shall be approved upon such successor trustee's acceptance of the appointment and ten (10) days after the filing of a notice of appointment of such successor trustee with the Bankruptcy Court.  If there is any objection to the appointment of the successor trustee, the Bankruptcy Court shall hold a hearing to resolve any such objection.  In the event of death or removal, as provided herein, of the Trustee, any professional for the Trustee may

file a motion with the Bankruptcy Court seeking the appointment of a successor trustee and may include a recommendation for such successor trustee.

9.6    Powers and Duties of Successor Trustee. A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

9.7    Trust Continuance. The death, dissolution, liquidation, resignation, incapacity, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

9.8    Compensation of Trustee and Costs of Administration. The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Liquidating Trust Assets. All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Liquidating Trust Assets prior to any Distribution to the Beneficiaries. The terms of the compensation of the Trustee are set forth on Exhibit A hereto.

## ARTICLE X
## DURATION OF TRUST

10.1    Duration. Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

10.2    Termination on Payment of Trust Expenses and Distribution of Liquidating Trust Assets. Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Liquidating Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law; *provided*, *however*, that in no event shall the Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or within the six-month period prior to the end of an extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed five years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

10.3    No Termination by Beneficiaries. The Trust may not be terminated at any time by the Beneficiaries.

10.4    Continuance of Trust for Winding Up; Discharge; and Release of Trustee. After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the

Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed. Except as otherwise specifically provided herein, upon the Distribution of the Liquidating Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE XI
## MISCELLANEOUS

11.1    <u>Cumulative Rights and Remedies</u>. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

11.2    <u>Notices</u>. All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Trustee. Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

<div style="margin-left:2em">

*Trust or Trustee*:    SC Healthcare Liquidating Trust
c/o [NAME]
[ADDRESS]
Email:    [_____]

*with a copy to its counsel*:

[_____]

</div>

or to such other address as may from time to time be provided in written notice by the respective Parties.

11.3    <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

11.4    <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

11.5    <u>Particular Words</u>. Reference in this Agreement to any Section or Article is, unless otherwise specified, to the Section or Article under this Agreement. The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

11.6    <u>Execution</u>. All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish, or attach the Liquidating Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court. Payments will be solely governed by the Plan, the Confirmation Order, and this Agreement.

11.7    <u>Amendment</u>. Any provision of this Agreement may be amended, supplemented, or waived (i) by the Trustee and the Debtors, or (ii) following dissolution of the Debtors, by the Trustee, in each case without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court; *provided*, *however*, that no change may be made to this Agreement without the approval of the Bankruptcy Court, following notice to the Beneficiaries, that would (i) adversely affect (a) the Distributions to any of the Beneficiaries or (b) the U.S. Federal income tax status of the Trust as a "liquidating trust;" (ii) require any Beneficiary to furnish or advance funds to the Trustee or entail any personal liability or the surrender of any individual right on the part of any Beneficiary except with the written consent of such Beneficiary; (iii) expand, add to, or modify the original stated purpose of the Trust (as described in the Plan and Section 2.4 of this Agreement); or (iv) otherwise be in contravention of the Plan or the Confirmation Order.

11.8    <u>No Waiver</u>. No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.9    <u>No Relationship Created</u>. Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership, or joint venture of any kind.

11.10    <u>Severability</u>. If any term, provision, covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

11.11    <u>Further Assurances</u>. The Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

11.12    <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.13   <u>Entire Agreement</u>. This Agreement (including the recitals), the Plan, and the Confirmation Order constitute the entire agreement of the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein or therein. This Agreement, the Plan, and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. In the event of any inconsistency between this Agreement, the Plan, and the Confirmation Order, the Confirmation Order and Plan (in that order) shall govern; *provided*, *however*, that the Trustee may amend, modify, or correct the terms hereof to supersede the Plan and/or the Confirmation Order, with the approval of the Bankruptcy Court. Except as otherwise specifically provided herein, nothing in this Agreement is intended or shall be construed to confer upon or to give any person other than the parties hereto and their respective heirs, administrators, executors, successors, and assigns any rights or remedies under or by reason of this Agreement.

11.14   <u>Jurisdiction</u>. The Bankruptcy Court shall have jurisdiction regarding the Debtors, Trust, Trustee, and Liquidating Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust. The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust. The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

[*Remainder of this page intentionally left blank.*]

**IN WITNESS WHEREOF**, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

[ADD DEBTOR SIGNATURE BLOCKS]

**DRAFT/SUBJECT TO CHANGE**

**[NAME],** *Trustee*

By: _____

Name: _____

Title: _____

2

DRAFT/SUBJECT TO CHANGE

## Exhibit A
### Terms of Compensation of Trustee

In consideration for the services of the Trustee under this Agreement, the Trustee shall receive the following compensation from the Liquidating Trust Assets:  [_____]

.

**Exhibit C**

**Schedule of Assumed Executory Contracts**

| Counterparty Name | Title / Description of Agreement | Counterparty Address | Proposed Cure |
|---|---|---|---|
| PointClickCare Technologies, Inc. | Master Subscription Agreement | 5570 Explorer Drive Mississauga, ON, Canada L4W 0C4 | $0.00[3] |
| Waystar Health | Subscriber Agreement | 9901 Linn Station Road Suite 550 Louisville, KY 40223 | $17,605.03 |
| SNF Receivable Solutions, LLC | A/R collections services | PO Box 216 Thonotosassa, FL 33592 | $0.00[4] |
| RSUI | D&O Insurance | 9445 East Paces Ferry Rd Atlanta, GA 30326 | $0.00 |
| Distinguished Programs Insurance | Excess D&O Insurance | 1180 Ave of the Americas, 16th Floor New York, NY 10036 | $0.00 |
| Travelers Insurance | Crime Insurance | PO Box 2950 Hartford, CT 06104-2950 | $0.00 |
| Lloyd's America, Inc. | General Liability/Professional Liability Insurance | 280 Park Avenue, East Tower, 25th Floor New York, NY 10017 | $0.00 |
| Pekin Insurance | Property & General Liability Replacement Insurance | 2505 Court Street Pekin, IL 61558 | $0.00 |
| Blue Cross & Blue Shield of Illinois | Employee health insurance | PO Box 650615 Dallas, TX 85265-0615 | $0.00 |
| Guardian | Employee dental/vision/life insurance | PO Box 677458 Dallas, TX 75267 | $0.00 |
| Sage Intacct, Inc. | Accounting software | 300 Park Ave. Floor Suite 1400 San Jose, CA 95110 | $0.00 |
| SmartLinx Solutions, LLC | Terms of Service | 18 Columbia Turnpike Florham Park, NJ 07932 | $0.00 |
| ADP, LLC | Global Master Services Agreement | One ADP Boulevard MS 425 Roseland, NJ 07068 | $38,633.19[5] |

---

[3]    While the Debtors' books and records reflect certain prepetition amounts owed to this contract counterparty, the Debtors believe certain credits owed to the Debtors render this cure amount $0.00.

[4]    The Debtors currently owe SNF Receivable Solutions, LLC $189,391.07 in the ordinary course of business (*i.e.*, such amounts are not considered cure amounts).

[5]    In addition to the cure amount, the Debtors currently owe ADP, LLC $3,311.11 in the ordinary course of business (*i.e.*, such amounts are not considered cure amounts).

| Verizon Wireless | Phone Service/Call Forwarding | PO Box 489 Newark, NJ 07101-0489 | $0.00[6] |
| Stratus Networks | Phone Service/Call Forwarding | PO Box 20260 Springfield, IL 62708-0260 | $7,322.15[7] |
| Citrix Systems Inc. | Dataroom services | 851 West Cypress Creek Road Fort Lauderdale, FL 33309 | $1,137.50[8] |
| Grobstein Teeple LLP | Tax Accounting | 6300 Canoga Avenue Suite 1500W Woodland Hills, CA 91367 | $0.00 |
| Illinois Record Keepers | Document Storage | 2312 SW Adams St, Peoria, IL 61602 | $1,175.80 |
| CubeSmart | Document Storage | 9219 N Industrial Rd, Peoria, IL 61615 | $0.00 |

---

[6]  The Debtors currently owe Verizon Wireless $565.77 in the ordinary course of business (*i.e.*, such amounts are not considered cure amounts).

[7]  In addition to the cure amount, the Debtors currently owe Stratus Networks $2,102.22 in the ordinary course of business (*i.e.*, such amounts are not considered cure amounts).

[8]  In addition to the cure amount, the Debtors currently owe Citrix Systems Inc. $15,411.54 in the ordinary course of business (*i.e.*, such amounts are not considered cure amounts).

## **Exhibit D**

### **Schedule of Retained Causes of Action**

## Schedule of Retained Causes of Action

This Schedule of Retained Causes of Action with respect to the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (as may be further amended, modified, and/or supplemented from time to time, the "Plan")[1] provides a non-exclusive list of Causes of Action which may be asserted by the Debtors and/or Liquidating Trust.

> **No Entity may rely on the absence of a specific reference in the Combined Plan and Disclosure Statement, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors will not pursue any and all available Causes of Action against them. The Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity (other than Column and the Sector Lenders, which were released pursuant to the Column Settlement Order), except as otherwise expressly provided in the Combined Plan and Disclosure Statement.**

*See* Plan Article VIII, Section F.6.

Without limiting the generality of Article XI.F. of the Plan and its express reservation of all Causes of Action, the schedule of Retained Causes of Action attached hereto as **Exhibit 1** includes certain specific types of Causes of Action which are among those expressly preserved by the Debtors to be vested in the Liquidating Trust, including, without limitation the Estate Causes of Action. **For the avoidance of doubt, the specific types of Causes of Action set forth in the schedule of Retained Causes of Action are non-exclusive and are not intended to be a comprehensive list of all Causes of Action retained in connection with the Plan. Notwithstanding anything to the contrary in the Plan, the Debtors and the Liquidating Trust expressly reserve the right to alter, modify, amend, remove, augment, or supplement the schedule of Retained Causes of Action at any time with additional Causes of Action, provided that they are not released pursuant to the Plan or the Confirmation Order. Failure to include any Cause of Action herein at any time shall not be a bar nor have any impact on the Liquidating Trust's rights, through the Liquidating Trustee, to bring any Cause of Action not otherwise released pursuant to the Plan or the Confirmation Order.**

For the avoidance of doubt, Retained Causes of Action **do not** include any Claim or Cause of Action released pursuant to Article XI.A.1-4 of the Plan.

The schedule of Retained Causes of Action is subject to ongoing review, revision, and modification and may be amended, modified or revised as permitted by the Plan and any order of the Bankruptcy Court.  If the Plan is not confirmed or otherwise does not go effective, no limitation will be placed on the Debtors' Claims and Causes of Action.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1410].

1

**No Person or Entity may rely on the absence of a specific reference in the Plan or Plan Supplement (including this Schedule of Retained Causes of Action) to any Retained Causes of Action against it as any indication that the Liquidating Trust will not, or may not, pursue any and all available Retained Causes of Action against it.  All rights to prosecute any and all Retained Causes of Action against any Person or Entity on behalf of the Liquidating Trustee following the Effective Date are hereby expressly reserved.**

Pursuant to the Plan, the Liquidating Trustee is authorized to enforce, sue on, settle, compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits, and proceedings that the Debtors or their estates may hold against any Person, without further approval of the Bankruptcy Court or any other body.

Unless any Retained Cause of Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtors and on and after the Effective Date, the Liquidating Trustee, expressly reserves all Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Causes of Action upon, after, or as consequence of, confirmation or consummation of the Plan.

Notwithstanding any of the foregoing, the Liquidating Trustee reserves all rights to raise any defenses, including, but not limited to, those related to setoff or other offsets in connection with filed Proofs of Claim under applicable law, including, but not limited to, section 502(d) of the Bankruptcy Code.

## **Exhibit 1**

Except with respect to the released or exculpated claims pursuant to the Plan or the Confirmation Order, Retained Causes of Action include but are not limited to:

1.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, against Mark Petersen and related Persons.

2.     Based on the settlement reached between the Debtors, the Committee and Column Financial, Inc., the Liquidating Trust will pursue the Column Guaranty Claim against Mark Petersen.

3.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, sounding in negligence, mismanagement, willful misconduct, breach of fiduciary duty, conflicts of interest, waste, fraud, fraudulent transfer, unjust enrichment, breach of contract, constructive trust or any other Cause of Action against any current or former director, officer, manager or employee or any current or former independent contractor, advisor, vendor, customer, service provider, or agent of any of the Debtors, or any other third party, including, but not limited to, Mark Petersen.

4.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, against any attorneys, financial advisors, investment bankers, auditors, or other professional persons, including, without limitation, claims involving negligence, malpractice, fraud, misrepresentation, and aiding and abetting breaches of fiduciary duty in connection with services rendered to the Debtors pre-petition.

5.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, under sections 544, 548, 549, and 550 of the Bankruptcy Code, and any state, federal, or common law analogs, including any related claims and Causes of Action under section 502 of the Bankruptcy Code, and all other Avoidance Actions.

6.     All Causes of Action and objections of the Debtors or the Debtors' Estates, at law or in equity, under sections 506, 510, 524, 542-551 and 553 of the Bankruptcy Code, and any state, federal, or common law analogs, including any related claims and Causes of Action under section 541 of the Bankruptcy Code.

7.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, concerning actual and/or constructive fraudulent transfer(s).

8.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, concerning audits conducted of the Debtors.

9.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, against any Person or Entity related to or in connection with the Debtors' tax obligations, tax credits (including without limitation, all employee retention credits), tax refunds, tax deposits, tax attributes (including without limitation, all net operating loss carryforwards and carrybacks), tax offsets, and prepaid tax amounts.

10.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, related to any type of security deposit, prepayment, retainer, or collateral, regardless of whether the posting of such deposit, adequate assurance payment, or any other type of deposit, prepayment, or collateral is specifically identified herein.

11.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, concerning setoff, regardless of whether such setoff rights are specifically identified herein.

12.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, against or involving Entities that have filed, or may file, a Proof of Claim or request for payment of administrative expenses in these Chapter 11 Cases.

13.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, against or involving any Person or Entity that owed any legal duty, no matter how arising, to any Debtor.

14.     All Causes of Action of the Debtors or the Debtors' Estates, at law or in equity, listed or referred to in the Plan, Plan Supplement, Schedules and Statements.

15.     All Causes of Action of the Debtors or the Debtors' Estates, including, without limitation, relating to pre-confirmation or prepetition conduct, such as claims for the violation of the automatic stay under section 362 of the Bankruptcy Code, tortious interference, claims for fraud, breaches of fiduciary duties, or negligence.

The Liquidating Trust expressly reserves the right to perform a thorough post-Confirmation investigation of Causes of Action and pursue any such additional Causes of Action that may be identified regardless of whether such Cause of Action was specifically identified or known as of the Effective Date.