## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC.**, *et al.*[1] | Case No. 24-10443 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: May 30, 2025 at 10:00 a.m. (ET)**<br>**Obj. Deadline: May 23, 2025 at 4:00 p.m. (ET)** |

### HARTFORD FIRE INSURANCE COMPANY'S LIMITED OBJECTION TO THE DEBTORS' FINAL COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION [DOCKET NO. 1355] AS MODIFIED.

Hartford Fire Insurance Company (the "Surety"), by and through its undersigned counsel, hereby submits this limited objection (the "Limited Objection") to the Debtors' Final Combined Disclosure Statement and Chapter 11 Plan of Liquidation, as modified (the "Plan") (Docket No. 1355, 1398 & 1411) and respectfully states as follows:

### BACKGROUND

1. On March 20, 2024 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors in possession and their chapter 11 cases are being jointly administered.

2. According to the Debtors, they operate nursing homes, and provide various healthcare and rehabilitation services for elderly citizens in Illinois, Missouri and Iowa (See Declaration of David R. Campbell, Docket No. 44 at ¶ 11).

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to large number of debtors in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information has been made available on a website of the Debtors' claims and noticing agent at www.kccllc.net/Petersen.

3. Prior to the Petition Date, the Surety issued certain nursing home surety bonds/long-term care facility – resident fund surety bonds on behalf of certain Debtors and non-debtors, as principal, in favor of the applicable state (Missouri or Illinois), for the benefit of residents in facilities located in those states who entrusted monies to those certain Debtors and non-debtors (which Debtors and non-debtors were obliged by state law to hold in trust said monies of the residents), of which in aggregate, such active bonds have a penal sum of $4,699,500.00. (Collectively the "Nursing Home Bonds" and with certain utility bonds ("Utility Bonds") issued by the Surety, and all related documents, the "Bonds") (See Declaration of Gregory Daily filed July 1, 2024 [Docket No. 601-1] at ¶ 3).

4. In connection with the Surety's execution and/or issuance of the Bonds, certain of the Debtors and/or their non-debtor affiliates agreed to indemnify, exonerate and hold harmless the Surety. (*Id*. at ¶ 4).

5. Specifically, certain of the Debtors and/or their non-debtor affiliates as indemnitors, executed in favor of the Surety as indemnitee, a General Indemnity Agreement dated May 1, 2023 executed by certain of the Debtors and non-debtors, including Petersen Health Operations, LLC; Petersen Health Care-Farmer City, LLC; Petersen Health Care-Illini, LLC; Midwest Health Operations, LLC; Petersen Health Network, LLC (non-debtor); Petersen Health Care-Roseville, LLC; Swansea HCO, LLC; Watseka HCO, LLC; Bement HCO, LLC; Eastview HCO, LLC; Prairie City HCO, LLC; Tarkio HCO, LLC; Westside HCO, LLC; XCH, LLC; Collinsville HCO, LLC; Effingham HCO, LLC; Robings HCO, LLC; Tuscola HCO, LLC; Shangri La HCO, LLC; Havana HCO, LLC; Rosiclare HCO, LLC; Petersen Health Care Management, LLC; Twin HCO, LLC; SABL, LLC; Lebanon HCO, LLC; Royal HCO, LLC; Petersen Health Care, Inc; Vandalia HCO, LLC; Aledo HCO, LLC; McLeansboro HCO, LLC; Shelbyville HCO, LLC; Arcola HCO,

LLC; Piper City HCO, LLC [we note that Piper HCO, LLC is listed as a Debtor]; SJL Health Systems, Inc.; Petersen Management Company, LLC; Petersen Health Junction, LLC (non-debtor); Petersen Health & Wellness, LLC; Petersen Health Quality, LLC; Petersen Health Properties, LLC; Petersen Health Business, LLC; Petersen Health Group, LLC; Sullivan HCO, LLC, Aspen HCO, LLC; Decatur HCO, LLC; Pleasant View HCO, LLC; Petersen Health Care II, Inc.; Charleston HCO, LLC (non-debtor); Cumberland HCO, LLC (non-debtor); El Paso HCO, LLC; Flanagan HCO, LLC; Marigold HCO, LLC; Polo HCO, LLC; Casey HCO, LLC; Kewanee HCO, LLC; North Aurora HCO, LLC and non-debtor Mark B. Petersen, (together with any and all amendments or modifications thereto, if any, "Indemnity Agreement"). (*See* Exhibit "A," redacted Indemnity Agreement). (*Id*. at ¶ 5).

6. The Indemnity Agreement, among other provisions, provides in pertinent part:

> 1(g) **"Loss"** means all payments made or obligations incurred by Hartford: (i) as a result of or arising out of any Default; and/or (ii) in the belief that it was or **might be liable as a result of having Underwritten any Bond; and/or (iii) in** investigating and responding to any Claim; and/or (iv) in enforcing this Agreement or any Other Surety Documents; and/or (v) in the belief that it would mitigate its exposure. Loss shall include, but not be limited to, Claim payments, attorney fees, consultant fees, court costs, mediation fees, arbitration fees, expert witness fees, travel expenses, unpaid premiums, advances and guarantees on behalf of an Indemnitor and interest on all amounts paid at the maximum statutory rate.
>
> 4. **Indemnification, Hold Harmless and Exoneration**. The Indemnitors shall indemnify, hold harmless and exonerate Hartford from and against any and all Default, Loss, Claims and exposure or liabilities relating to Underwriting. The Indemnitors shall immediately be liable to Hartford for all Loss from the date such Loss was incurred by Hartford….
>
> ***
>
> 6. **Additional Rights**. Hartford has the absolute right to: (a) Underwrite or decline to Underwrite any Bond; (b) consent to or refuse to modify any Bond; and (c) consistent with the Bond or applicable law continue, cancel, or non-renew any Bond.
>
> ***

3

      14. **Books and Records.**  Until Hartford's liability or potential liability for all Bonds, Underwriting and Claims has been terminated and Hartford is without Loss or Claim, Hartford shall have the right to review and copy in their entirety each Indemnitor's Books and Records or other information it deems necessary….

\*\*\*

      16. **Set-off.**  Hartford shall have the absolute right to set off any amount owed to any Principal or Indemnitor against any amount owed by any Principal or Indemnitor to Hartford.  Hartford shall have the absolute right to apply any amount owed to any third party owned or controlled by any Principal or Indemnitor against the amount owed by any Principal or Indemnitor to Hartford whether the transactions are related or not.

(*Id*. at ¶ 6)(emphasis added in 1(g)).

    7.      Therefore, the Indemnity Agreement creates, among other rights, contractual rights of indemnification and exoneration in favor of the Surety.

    8.      Certain applicable nursing home facilities were sold and transferred to purchaser(s). The transactions were subject to an Asset Purchase Agreement which provides at Section 2.06 that prior to closing, the seller will provide the buyer with a complete accounting of all resident trust funds and property held by the seller.  (Docket No. 564, *Notice of Stalking Horse Bidder and Proposed Bid Protections*, at APA, Section 2.06, p. 37 of 143).  Further, the sale transactions were subject to an *Operations Transfer Agreement*, a form of which was annexed as Exhibit "B" to the *Notice of Stalking Horse Bidder and Proposed Bid Protecti*ons (Docket No. 564).  Pursuant to such *Operations Transfer Agreement,* the seller agreed to provide to the purchaser an accounting of all Resident Trust Funds and Property, and transfer such to the purchaser at closing. (*Id.* at p. 121 of 143).  The transferring operator agreed to provide notice of such to all residents and their responsible parties, of such transfer.  (*Id.*).  The new operator in turn, agreed to accept such Resident Trust Funds and Property in trust for the residents, with the transferring operator

remaining responsible for any lapse of its fiduciary responsibilities for the period prior to closing. (*Id.*).

## ARGUMENT

9.      By way of this Limited Objection, the Surety does not object to the general concept of this Court approving the Plan. The Surety simply requests that three aspects of the Plan be addressed and be remediated as follows.

10.     In accordance with the documents reference in paragraph 7 above, the Confirmation Order should contain a provision that provides that if any obligee/beneficiary or resident submits a trust fund claim as a result of any failure on the part of Debtor to turn over trust funds, or that such Debtor failed to properly administer such fund prior to the sale of such facility, then the Plan Administrator should pay any such valid trust fund claim to (i) the resident, or, (ii) to Hartford, if Hartford pays such trust fund claim.

11.     Second, the Injunction section of the Plan (Section XI(C)(iv)) provides that, upon confirmation of the Plan, all claims asserting a right of setoff are barred unless asserted in a proof of claim. The confirmation order should provide that this provision does not apply to Hartford or its bond beneficiaries, which may be entitled to a right of setoff.

12.     The Surety's setoff rights should be preserved because the Surety has an equitable subrogation right that arises by common law to the extent that the Surety pays any claim under any of the bonds it has issued, including the Bonds. Courts have recognized that a surety, upon payment of bond claims, is subrogated to the rights of the principal on the bond and/or a beneficiary or obligee on the bond. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135-36 (1962) ("there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed"); *Henningsen v. United*

*States Fid. & Guar. Co.*, 208 U.S. 404, 410 (1908) (holding surety has superior equity under the doctrine of subrogation in sums due under the contract after the surety made payments to beneficiaries/claimants under the bond where the bond principal failed to do so); *Prairie State Nat'l Bank v. United States*, 164 U.S. 227, 232-33 (1896) (holding surety had subrogation rights to contract funds after satisfying bonded obligations); *Ky. Cent. Ins. Co. v. Brown (In re Larbar Corp.)*, 177 F.3d 439, 443 (6th Cir. 1999) (noting "[t]he law is clear" that a surety's right to subrogation arises "when a [bond principal] defaults on its obligations and a surety completes the work called for by the contract and pays all of the related bills"); *Nat'l Shawmut Bank of Boston v. New Amsterdam Cas. Co.*, 411 F.2d 843, 848-49 (1st Cir. 1969) (noting that upon bond principal's default, the surety is subrogated to the obligee's right to pay beneficiaries under the bond (in this case, laborers and materialmen), and to apply earned but unpaid progress payments at the time of default to the cost of completion of bonded obligations); *Mendelsohn v. The Dormitory Authority of N.Y. (In re QC Piping Installations, Inc.)*, 225 B.R. 553, 562 (Bankr. E.D.N.Y. 1998) ("it is now irrefutable that a surety, after satisfying its obligations under either a payment or performance bond, is subrogated to the rights of the party he paid"); *John's Insulation, Inc. v. Hartford Accident & Indem. Co. (In re John's Insulation, Inc.)*, 221 B.R. 683, 688 (Bankr. E.D.N.Y. 1998) (noting that a surety, after completing a contract upon the default of the principal, is "subrogated to the rights of the principal, and has rights to the funds that are due and are to become due under a contract, including any undisbursed proceeds previously earned and any retainages held until contract completion").  In other words, the surety may step into the shoes of these entities and enforce the claims they may have against each other, or other third parties.

13. To the extent that there is an Order confirming the Plan, the Order should provide that Debtors shall preserve any books and records to the extent that the books and records related to claims that have been brought or that may be brought against the Bonds.

14. Accordingly, Hartford proposes the following language for the Confirmation Order:

> Agreement with Surety. Notwithstanding any other provision of this Confirmation Order or the Combined Plan and Disclosure Statement, if any obligee/beneficiary or resident of any facility formerly owned or operated by any Debtor, submits a valid claim arising out of funds entrusted by such resident to the former operator of such facility, which claim originated prior to or contemporaneous with any transfer of such trust funds to a successor operator, or for failure to transfer such trust funds to a successor operator of such facility, then the Plan Administrator shall (i) pay such resident the valid amount of such resident's claim, or (ii), to the extent Hartford Fire Insurance Company ("Hartford") satisfies such resident's claim, the Plan Administrator shall reimburse Hartford for such payment.
>
> Section XI(C)(iv) of the Combined Plan and Disclosure Statement shall not apply to Hartford or its bond beneficiaries.
>
> Notwithstanding any other provision of this Confirmation Order or the Combined Plan and Disclosure Statement, upon request, Hartford shall have access to the specific portions of any and all books and records held by the Debtors and/or the Plan Administrator relating to any bond(s) issued by Hartford in which any Debtor is the principal on the bond(s)("Bond(s)"), and Hartford shall receive no less than thirty (30) days' written notice by the entity holding such books and records prior to destruction or abandonment of any such books and records. Without limitation to any other rights of Hartford, if a claim or claims are asserted against the Bond(s) and/or related instruments, then Hartford shall be granted access to, and may make copies of, the specific portions of any books and records related to such Bond(s) upon Hartford's request.

## **RESERVATION OF RIGHTS**

15. The Surety reserves the right to object and put forth any argument in relation to any motion filed by the Debtors for the Bankruptcy Court's authorization of assumption and assignment of executory contracts and unexpired leases, and to raise any arguments by any other party in their objection(s) to the Motion.

16. The Surety expressly reserves, and does not waive, any and all of its rights, claims, defenses, limitations, and/or exclusions in connection with its and any of the Debtors' or its affiliates' rights and obligations under the Indemnity Agreement, the Bonds, applicable law, or otherwise, including but not limited to its right of setoff and/or recoupment. Surety further reserves all rights to assert any and all such rights, claims, defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of its contractual rights and Debtors' contractual obligations adjudicated by the United States District Court).

17. Surety further reserves all of its rights to raise any issues contained in this Limited Objection and any other related issues in any procedurally appropriate contested matter and/or adversary proceeding, including, without limitation, (i) objections to confirmation of any plan; (ii) a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief; (iii) or an objection to any subsequent motion seeking approval of an asset sale to any prospective asset purchaser with respect to any contractual rights that may be adversely affected by a sale motion or the confirmation of any plan, including the Plan.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Surety respectfully requests that the foregoing limited objections be addressed in any Order confirming the Final Combined Disclosure Statement and Plan.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: May 23, 2025

*Gary D. Bressler*
Gary D. Bressler, Esq. (No. 5544)
300 Delaware Avenue, Suite 1014
Wilmington, DE 19801

Telephone: 302-300-4515
Facsimile: 302-645-4031
gbressler@mdmc-law.com

-and-

Michael R. Morano, Esq.
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
Telephone: 973-993-8100
Facsimile: 973-425-0161
mmorano@mdmc-law.com

*Counsel to Hartford Fire Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, a true and correct copy of this Limited Objection has been served on all parties entitled to service via this Court's electronic filing system ("ECF").

/s/ Gary D. Bressler
Gary D. Bressler