**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SC HEALTHCARE HOLDING, LLC, *et al.*, | Case No. 24-10443 (TMH) |
| Debtors.[1] | Jointly Administered |
| | Ref Docket No. 1410 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' COMBINED DISCLOSURE STATEMENT
AND CHAPTER 11 PLAN OF LIQUIDATION**

The Official Committee of Unsecured Creditors (the "Committee") in the above-captioned cases of SC Healthcare Holding, LLC and its affiliated debtors and debtors in possession (the "Debtors") objects to the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1410] (as amended, the "Combined Plan and Disclosure Statement" or "Proposed Plan").[2] In support of this Objection, the Committee states as follows:

**PRELIMINARY STATEMENT**

1. The Committee generally supports confirmation of the Proposed Plan. However, the Committee's prior objection [Docket No. 1392] raised certain plan related issues that remain unresolved and need to be addressed to ensure that all Claims and Causes of Action to be assigned to the Liquidating Trust are preserved, and the Liquidating Trust has access to all information necessary to pursue those Claims and Causes of Action. In addition, the Liquidating Trustee's oversight of the Plan Administrator needs to be strengthened given that the Plan Administrator

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of debtors in these Chapter 11 Cases, for which the Debtors have requested joint administration, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information will be made available on a website of the Debtors' proposed claims and noticing agent at www.kccllc.net/Petersen.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Proposed Plan.

will be using monies to fund winddown expenses that would otherwise be available to fund the Liquidating Trust and distributions to the general unsecured creditors in these cases.

2. Pursuant to the Proposed Plan, the Liquidating Trust will be established to pursue certain Claims and Causes of Action, including Claims and Causes of Action against the Debtors' 100% direct and indirect owner Mark Petersen, certain of his relatives, certain non-Debtor affiliates, and other related persons and entities. Based on discovery conducted in connection with these cases, the Committee asserts that Mark Petersen used the Debtors' assets to build and subsidize his hospitality business, to fund his personal expenses and to provide funds or assets to (or on behalf of) his family members. The Liquidating Trust will be vested with various Claims and Causes of Action against Mark Petersen, his hospitality business and other related persons and entities, including litigation to recover millions of dollars loaned to Mark Petersen and his hospitality business by the Debtors and collection of a guaranty in the amount of at least $30 million.

3. From the Committee's perspective, the unsecured creditors will be best positioned to obtain a recovery from the Claims and Causes of Action through the Proposed Plan and establishment of the Liquidating Trust. The Committee, the Debtors and Mark Petersen initially agreed to participate in a mediation to settle the Claims and Causes of Action to be assigned to the Liquidating Trust, but that mediation was cancelled. Notwithstanding cancellation of the mediation, settlement negotiations have been ongoing, but unfortunately no resolution has been reached with the Committee or any of the other parties who also assert claims directly against Mark Petersen based upon his personal guaranty of certain secured and unsecured debt relating to the Debtors. With no settlement in place, the Liquidating Trust will pursue the Claims and Causes of Action in an effort to generate a recovery for the general unsecured creditors.

4. To best preserve the Claims and Causes of Action to be transferred to the Liquidating Trust and to be best positioned to pursue those Claims and Causes of Action, the Committee believes that the issues discussed below need to be addressed in the Proposed Plan. The Committee will continue working with the Debtors in an effort to resolve these issues prior to the May 30th hearing.

## BACKGROUND

5. On March 20, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses as debtors in possession. No trustee or examiner has been appointed in these cases.

6. On April 9, 2024, the United States Trustee appointed the Committee. *See Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 131].

7. On March 25, 2025, the Debtors filed the initial Combined Disclosure Statement and Plan, which has been subsequently amended several times.

8. On May 9, 2025, the Debtors filed the Plan Supplement, which included a draft of the Plan Administrator Agreement [Docket No. 1562]. The Committee has provided the Debtors with extensive comments to the Plan Administrator Agreement – none of which are incorporated into the version on file with the Court.

## OBJECTION

**A.    The Scope of the Exculpation Provision is Too Broad.**

9. Under Article XI.B of the Combined Disclosure Statement and Plan:

> None of . . . the managers, officers, or directors of any of the Debtors serving at any time during the pendency of the Chapter 11 Cases . . . shall have or incur any liability to any Holder of a Claim or an Interest, or any other party-in-interest for any act or omission in connection with, relating to or arising out of, the Chapter 11

3

> Cases, the DIP Facility, the PCO's evaluations, reports, pleadings, or other writings filed by or on behalf of the PCO in or in connection with the Chapter 11 Cases, the formulation, negotiation, or implementation of the Combined Plan and Disclosure Statement, the solicitation of acceptances of the Combined Plan and Disclosure Statement, the pursuit of Confirmation of the Combined Plan and Disclosure Statement, the Confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, or the administration of the Combined Plan and Disclosure Statement or the property to be distributed under the Combined Plan and Disclosure Statement, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction), and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement. For the avoidance of doubt, nothing contained in this paragraph shall exculpate prepetition or post-Effective Date acts or omissions.

As currently drafted, the exculpation clause covers the Debtors' prepetition directors and officers, including Mr. Petersen and other prepetition officers, directors and other Debtor representatives who may be targets of litigation by the Liquidating Trust.

10. With respect to Mr. Petersen, although he technically serves as an officer and director of the Debtors, he relinquished certain officer roles pre-bankruptcy and additional independent directors were appointed during the bankruptcy cases. Mr. Petersen has had a limited role and has not functioned as an estate fiduciary during the pendency of these cases in the same manner as, for example, the Debtors' CRO or Committee representatives. In *In re PTL Holdings LLC*, this Court ruled that an exculpation provision "must be reeled in to include only those parties **who have acted as estate fiduciaries** and their professionals." No. 11-12676 (BLS), 2011 WL 5509031 at *12 (Bankr. D. Del. Nov. 10, 2011) (emphasis added). Given Mr. Petersen's limited role during the pendency of these cases, Mr. Petersen's title as an officer and director of the Debtors should not alone form the basis for him being entitled to exculpation under the Proposed Plan.

11. Additionally, Mr. Petersen and many of the Debtors' prepetition directors, officers and other representatives will be litigation targets of the Liquidating Trust. The Claims and Causes

4

of Action asserted by the Liquidating Trust will be the main and likely only source of recovery for general unsecured creditors, and the Proposed Plan should not exculpate these directors and officers to the detriment of general unsecured creditors.  Although the exculpation clause does not cover any Claims or Causes of Action for fraud, gross negligence, or willful misconduct or for pre-petition actions, it remains to be seen what sorts of actions will be asserted against Mr. Petersen and other prepetition directors, officers and representatives of the Debtors.  Accordingly, the exculpation clause must be amended to make clear that Mr. Petersen and the Debtors' other prepetition directors, officers and representatives are not entitled to exculpation under the Proposed Plan to ensure that there are no arguments by Mr. Petersen or others as to whether the exculpation protects them from any Claims and Causes of Action asserted by the Liquidating Trust.

12. The scope of Persons benefiting from the exculpation should be limited in the same manner as the Debtor Release – which is limited to the Released Parties.

**B.    Proposed Plan Provisions Concerning the Debtors' Attorney Client Privilege Must be Revised and Require Additional Clarity.**

13. Under Article VIII.E.2 of the Plan, the Liquidating Trustee only has the right to "assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to acts or events during time periods prior to the Petition Date *with the consent of the Plan Administrator*." (emphasis added).  The attorney-client privilege of the Debtors should transfer to and vest with the Liquidating Trustee, just as it would if a Chapter 7 trustee was appointed, allowing the Liquidating Trustee to have access to all information that may be needed to pursue Claims and Causes of Action and attempt to generate a recovery for the unsecured creditors.

14. As currently drafted, the Plan Administrator will have significant control over the Liquidating Trustee's access to information and will act as a shield protecting Mark Petersen and others to the extent any of the Debtors' privileged information is detrimental to them.  The Debtors and their estates are charged with maximizing the value of all assets, including Claims and Causes

5

of Action, for the benefit of all creditors. The Debtors are liquidating. There is no reason to protect privilege and if there is a need to protect privilege, the Liquidating Trustee will be best positioned to determine whether the privilege should be waived. Accordingly, the attorney-client privilege of the Debtors must transfer to and vest with the Liquidating Trust, and the Plan Administrator should have no consent rights.

15. Additionally, Article XI.C of the Plan provides in relevant part:

> Confirmation of the Combined Plan and Disclosure Statement shall further have the effect of permanently enjoining all Persons and Entities from obtaining (a) any documents or other materials from current counsel for the Debtors that are in the possession of such counsel as a result of or arising in any way out of its representation of the Debtors and are subject to attorney-client privilege (or other any other form of privilege asserted by counsel), (b) any documents or other materials from current counsel for the Committee that are in the possession of such counsel as a result of or arising in any way out of its representation of the Committee and are subject to attorney-client privilege (or other any other form of privilege asserted by counsel), or (c) books and records, except in accordance with Article VIII.C hereof.

16. This provision should be revised so that current counsel to the Debtors will have no obligation to produce any documents currently in their possession as a result of or arising in any way out of their representation of the Debtors unless (i) required by applicable law, (ii) required by Court order, or (iii)(a) the party requesting such documents serves their request on the Liquidating Trust; and (b) the Liquidating Trust consents in writing to such production and any waiver of the attorney-client privilege such production might cause. Upon the third anniversary of the termination of the Liquidating Trust Agreement, any and all documents in the possession of the Debtors' current counsel as a result of or arising in any way out of their representation of the Debtors, respectively, will be deemed destroyed and no party will be entitled to obtain such documents.

C. **The Plan Administrator Agreement Requires Additional Oversight Provisions**.

17. The Plan Administrator Agreement filed with the Court as part of the Plan Supplement is unacceptable. There is no oversight on the actions and spending of the Plan Administrator. The Liquidating Trustee must be given certain oversight rights as to the Plan Administrator, including (a) requiring reporting to be provided by the Plan Administrator to the Liquidating Trust regarding collection of accounts receivable; and (b) reporting to be provided by the Plan Administrator to the Liquidating Trustee regarding the various reserves established under the Plan and administered by the Plan Administrator, including the Administrative/Priority/Adequate Protection Claims Reserve, the Plan Administrator Reserve, the Professional Fee Reserve, the Secured Claims Reserve and Retained Collections. The Liquidating Trust should also have consent rights to any allowance, settlement and/or payment of administrative claims, priority claims, adequate protection claims and other claims paid by the Plan Administrator.

18. The Committee does not want to increase the costs of administering the Proposed Plan; however, any funds not used by the Plan Administrator will be turned over to the Liquidating Trust and therefore, the Liquidating Trustee should have input and monitoring rights into the Plan Administrator's use of the reserve funds established under the Plan.

D. **The Mutual Release is Unnecessary**.

19. Article XI.A.2 of the Combined Disclosure Statement and Plan provides:

> As of the Effective Date, to the maximum extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties shall be deemed to forever release, waive, and discharge the Debtors and the Committee and each of its members, solely in their capacity as such, for all Debtor Released Claims (other than the rights of the Holders of Claims and Interests to enforce the Combined Plan and Disclosure Statement and the contracts, instruments, releases, and other agreements or documents delivered thereunder); provided, however, that members of the Committee are providing and receiving the release described in this Article XI.A.2 only in their capacities as members of the Committee and not in their individual capacities as Creditors;

provided further, however, that this Article XI.A.2 shall not release the Debtors, the Committee, or its members, solely in their capacity as such, for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction).

20. The purpose of this provisions is unclear and appears unnecessary.

**E.    Additional Plan Issues.**

21. In addition to the above issues, the Committee requests that any order approving the Combined Plan and Disclosure Statement contain language clarifying the following issues:

- **Release of Non-Insider Preference Actions:**  Pursuant to Article XI.A.4 of the Combined Plan and Disclosure Statement, on the Effective Date, "all Non-Insider Preference Actions shall be released and waived by the Debtors, the Estates, the Plan Administrator and the Liquidating Trustee."   For clarification purposes, the Committee requests that any order approving the Combined Plan and Disclosure Statement clarify that Article XI.A.4 releases and waives all Non-Insider Preference Actions regardless of whether any Person, who may be sued for any such Non-Insider Preference Action, opted into the Third-Party Release.

- **X-Caliber Receiverships:**  The Proposed Plan is unclear as to whether any matters relating to the legal entities involved in the X-Caliber receivership, including, without limitation, the claims of the general unsecured creditors, any causes of action that such creditors may pursue, the implications of the injunctions and releases under the Combined Plan and Disclosure Statement or other related matters, are included in, impacted by and/or treated under the Combined Plan and Disclosure Statement.  This issue needs to be clarified in any order approving the Combined Plan and Disclosure Statement so that creditors of these entities understand their options and rights post-confirmation.

## **RESERVATION OF RIGHTS**

22.     The Committee has been and will continue to work with the Debtors and other parties in interest to resolve the Objection prior to the hearing. The Committee reserves all rights with respect to the Combined Plan and Disclosure Statement and expressly reserves and preserves all rights to raise any additional objections to the relief requested by the Debtors before any final hearing.

## **CONCLUSION**

WHEREFORE, the Committee requests that this Court sustain this Objection, as may be supplemented in advance of the hearing.

*[Remainder of page intentionally left blank.]*

Dated: May 28, 2025
Wilmington, Delaware

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

*/s/ Dennis A. Meloro*
Anthony W. Clark (DE Bar No. 2051)
Dennis A. Meloro (DE Bar No. 4435)
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 9801
Tel: (302) 661-7000
anthony.clark@gtlaw.com
melorod@gtlaw.com

-and-

Nancy A. Peterman (*admitted pro hac vice*)
Danny Duerdoth (*admitted pro hac vice*)
360 North Green Street, Suite 1300
Chicago, IL 60607
Tel: (312) 456-8400
petermann@gtlaw.com
duerdothd@gtlaw.com

-and-

Shari L. Heyen (*admitted pro hac vice*)
Greenberg Traurig LLP
1000 Louisiana Street Suite 6700
Houston, TX 77002
Telephone: (713) 374-3535
Email: shari.heyen@gtlaw.com

*Counsel to the Official*
*Committee of Unsecured Creditors*