**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re** | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC** *et al.*, | Case No. 24-10443 (TMH) |
| **Debtors.**[1] | Jointly Administered |

**DEBTORS' (I) MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF
THE DEBTORS' COMBINED DISCLOSURE STATEMENT AND CHAPTER 11
PLAN OF LIQUIDATION AND (II) REPLY TO OBJECTIONS THERETO**

**WINSTON & STRAWN LLP**
Daniel J. McGuire (admitted *pro hac vice*)
Gregory M. Gartland (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, IL 60601
Telephone:     (312) 558-5600
Facsimile:     (312) 558-5700
Email:         dmcguire@winston.com
Email:         ggartland@winston.com

and

Carrie V. Hardman (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:     (212) 294-6700
Facsimile:     (212) 294-4700
Email:         chardman@winston.com

*Co-Counsel for the Debtors and Debtors in
Possession*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Carol E. Thompson (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:         amagaziner@ycst.com
               sborovinskaya@ycst.com
               cthompson@ycst.com

---

[1]   The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC, P.O. Box 620, Delavan, IL 61734. Due to the large number of Debtors in the Chapter 11 Cases, whose cases are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information is available on a website of the Debtors' Claims and Noticing Agent at www.kccllc.net/Petersen.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT.................................................................. 1

BACKGROUND ...................................................................................... 6

    I.     GENERAL BACKGROUND............................................................ 6

    II.    COMBINED PLAN AND DISCLOSURE STATEMENT. ............... 7

           JURISDICTION AND VENUE ..................................................11

           ADEQUATE NOTICE OF COMBINED HEARING ...........................11

ARGUMENT ..........................................................................................11

    I.     THE DISCLOSURE STATEMENT SHOULD BE APPROVED ON A FINAL BASIS............................................................................. 12

    II.    THE PLAN SHOULD BE CONFIRMED. ....................................... 16

         A.    The Plan Meets All Applicable Requirements of the Bankruptcy Code. .................................................................................. 16

              i.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1))........................................ 16

                  a.     The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code. ............................. 17

                  b.     The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code..................... 21

                  c.     The Plan Appropriately Contains Certain Discretionary Components Permitted by Section 1123(b) of the Bankruptcy Code....................................... 30

              ii.    The Plan Complies with Applicable Provisions of Section 1129(a)(2) of the Bankruptcy Code. ............................... 50

              iii.   The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3))........................... 55

              iv.   The Plan Provides for Court Approval of Payments for Services or Costs and Expenses (Section 1129(a)(4)). ................. 56

              v.     The Debtors Disclosed All Necessary Information Regarding Post-Effective Date Governance (Section 1129(a)(5)). ............... 57

              vi.   The Plan Does Not Require Governmental Regulatory Approval of Rate Changes (Section 1129(a)(6)). ........................ 58

              vii.  The Plan Is in the Best Interests of Creditors and Interest Holders (Section 1129(a)(7)). ......................................... 59

              viii. Section 1129(a)(8) of the Bankruptcy Code Does Not Preclude Confirmation. ................................................. 63

i

|  | ix. | The Plan Provides for Payment in Full of All Allowed Administrative and Priority Claims (Section 1129(a)(9)) ............ 64 |
|  | x. | At Least One Impaired Class of Claims That Was Entitled to Vote Has Accepted the Plan (Section 1129(a)(10)) ...................... 65 |
|  | xi. | The Plan Is Feasible (Section 1129(a)(11)) .................................. 65 |
|  | xii. | The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)). .......................................... 67 |
|  | xiii. | The Sections 1129(a)(13)–(16) of the Bankruptcy Code Are Not Applicable to the Plan. ........................................... 68 |
|  | xiv. | The Plan Meets the Requirements for Cramdown (Section 1129(b)). ...................................................................... 68 |
|  |  | a. | The Plan Does Not Discriminate Unfairly with Respect to the Impaired Rejecting Classes. ..................... 69 |
|  |  | b. | The Plan Is Fair and Equitable with Respect to the Rejecting Classes. ........................................... 72 |
|  | xv. | Only One Plan to Be Confirmed (Section 1129(c)). .................... 73 |
|  | xvi. | The Principal Purpose of the Plan Is Not Tax Avoidance (Section 1129(d)). ......................................... 73 |
|  | xvii. | Section 1129(e) Does Not Apply to the Plan. .............................. 74 |
| III. | Re-solicitation of the Plan Was Not Required. ...................................................... 74 |
| IV. | GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER. ................................................................. 77 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship.*,
190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434
(1999) .................................................................................................................................70

*In re A.H. Robins, Co. Inc.*,
880 F.2d 694 (4th Cir. 1989) .............................................................................................60

*In re Abeinsa Holding, Inc.*,
562 B.R. 265 (Bankr. D. Del. 2016) ............................................................................ *passim*

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007) ................................................................................60

*In re ADPT DFW Holdings, LLC*,
574 B.R. 87 (Bankr. N.D. Tex. 2017) .................................................................................66

*In re AeroCision Parent, LLC*,
No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) ..........................................................42

*In re Affiliated Foods, Inc.*,
249 B.R. 770 (Bankr. W.D. Mo. 2000) ...............................................................................60

*In re Alto Maipo*,
No. 21-11507 (KBO) (Bankr. D. Del. May 13, 2022) ..........................................................42

*In re Am. HomePatient, Inc.*,
298 B.R. 152 (Bankr. M.D. Tenn. 2003) .............................................................................63

*In re Am. Solar King Corp.*,
90 B.R. 808 (Bankr. W.D. Tex. 1988) .......................................................................75, 76, 77

*In re Amyris, Inc.*,
Case No. 23-11131 (TMH) (Bankr. D. Del. Feb. 7, 2024) ...................................................47

*In re Appgate, Inc.*,
No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) ..........................................................40

*In re Armstrong World Indus., Inc.*,
348 B.R. 111 (D. Del. 2006) .........................................................................................16, 70

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) .............................................................................71

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
   526 U.S. 434, 119 S. Ct. 1411 143 L. Ed. 2d 607 (1999)................................................59, 72

*Beal Bank, S.S.B. v. Way Apts., D.T. (In re Way Apts., D.T.)*,
   201 B.R. 444 (N.D. Tex. 1996).............................................................................................19

*In re Bowles*,
   48 B.R. 502 (Bankr. E.D. Va. 1985).....................................................................................71

*In re Boylan Int'l, Ltd.*,
   452 B.R. 43 (Bankr. S.D.N.Y 2011).......................................................................................77

*In re Bryson Props., XVIII*,
   961 F.2d 496 (4th Cir. 1992) .................................................................................................18

*In re Burns & Roe Enters., Inc.*,
   No. 08-4191 (GEB), 2009 WL 438694 (D.N.J. Feb. 23, 2009) ............................................75

*In re Buttonwood Partners, Ltd.*,
   111 B.R 57 (Bankr. S.D.N.Y. 1990).......................................................................................70

*In re Casa Systems, Inc.*,
   No. 24-10695 (KBO) (Bankr. D. Del. June 5, 2024)..............................................................42

*In re Century Glove, Inc.*,
   No. 90-400 (SLR), 1993 WL 239489 (D. Del. Feb. 10, 1993)...............................................76

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
   860 F.2d 94 (3d Cir. 1988)......................................................................................................13

*In re Charter Commc'ns*,
   419 B.R. 221 (Bankr. S.D.N.Y. 2009)....................................................................................62

*Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.)*,
   10 F.3d 944 (2d Cir. 1993)......................................................................................................18

*In re Chemtura Corp.*,
   439 B.R. 561 (Bankr. S.D.N.Y. 2010) ...................................................................................73

*In re Clovis Oncology, Inc.*,
   Case No. 22-11292 (JKS) (Bankr. D. Del. June 16, 2023)....................................................47

*In re Coastal Broad. Sys., Inc.*,
   570 F. App'x 188 (3d Cir. 2014) ............................................................................................18

*Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*,
   279 B.R. 145 (Bankr. D. Del. 2002) .......................................................................................13

*In re Coram Healthcare Corp.*,
315 B.R. 321 (Bankr. D. Del. 2004) ...................................................34, 36, 71

*In re Corp Grp. Banking, S.A.*,
No. 21-10969 (JKS) (Bankr. D. Del.) ..................................................................37

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
699 F.2d 599 (2d Cir. 1983).................................................................................34

*In re Credentia Corp.*,
Case No. 10-10926 (BLS), 2010 WL 3313383 (Bankr. D. Del. May 26, 2010) ....................67

*Crestar Bank v. Walker (In re Walker)*,
165 B.R. 994 (E.D. Va. 1994)..............................................................................56

*In re Crowthers McCall Pattern, Inc.*,
120 B.R. 279 (Bankr. S.D.N.Y. 1990) .................................................................60

*In re Dow Corning Corp.*,
237 B.R. 374 (E.D. Mich. 1999).........................................................................76

*In re Dow Corning Corp.*,
244 B.R. 634 (Bankr. E.D. Mich. 1999) ..............................................................19

*In re Drexel Burnham Lambert Grp.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992), *aff'd sub nom. Lambert Brussels
Asocs, L.P. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham
Lambert Grp., Inc.)*, 140 B.R. 347 (S.D.N.Y. 1992) ...................................51, 60, 70

*In re Emerge Energy Servs. LP*,
No. 19-11563 (KBO), 2019 WL 7634308 (Bankr. D. Del. Dec. 5, 2019) ...........................42

*In re Evans Temple Church of God in Christ & Cmty. Ctr., Inc.*,
55 B.R. 976 (Bankr. N.D. Ohio 1986) .................................................................63

*In re Exaeris, Inc.*,
380 B.R. 741 (Bankr. D. Del. 2008) ....................................................................34

*In re Exide Techs.*,
303 B.R. 48 (Bankr. D. Del. 2003) ......................................................................37

*In re EXP OldCo Winddown, Inc.*,
No. 24-110831 (KBO) (Bankr. D. Del. Dec. 17, 2024)........................................40

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ..............................................................71

*Gillman v. Cont'l Airlines (In re Cont'l Airlines)*,
    203 F.3d 203 (3d Cir. 2000)...................................................................................................46

*In re Glob. Safety Textiles Holdings LLC*,
    No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).............................75

*In re Greate Bay Hotel & Casino, Inc.*,
    251 B.R. 213 (Bankr. D.N.J. 2000) ......................................................................................18

*Grogan v. Garner*,
    498 U.S. 279 (1991)..............................................................................................................16

*Harrington v. Purdue Pharma L.P., et al.*,
    603 U.S. 204 (2024)..............................................................................................................44

*In re Health Diagnostic Lab'y, Inc.*,
    551 B.R. 218 (Bankr. E.D. Va. 2016) ..................................................................................71

*In re Heritage Org., L.L.C.*,
    375 B.R. 230 (Bankr. N.D. Tex. 2007).................................................................................19

*In re Idearc Inc.*,
    423 B.R. 138 (Bankr. N.D. Tex. 2009).................................................................................71

*In re Indianapolis Downs, LLC*,
    486 B.R. 286 (Bankr. D. Del. 2013) ............................................................................. *passim*

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987)......................................................................................17, 18, 70

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37
    Bus. Park Assocs.)*,
    987 F.2d 154 (3d Cir. 1993)...........................................................................................17, 18

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1987).......................................................................51, 70, 71

*In re Kaiser Aluminum Corp.*,
    No. 02-10429 (JKF), 2006 Bankr. LEXIS 3945 (Bankr. D. Del. Feb. 6, 2006).....................23

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988)...........................................................................................66, 69

*In re Kaplan*,
    104 F.3d 589 (3d Cir. 1997).................................................................................................66

*In re Lason, Inc.*,
    300 B.R. 227 (Bankr. D. Del. 2003) ....................................................................................60

*In re Legacy Ejy, Inc.*,
No. 22-10580 (JKS) (Bankr. D. Del.) ..............................................................37, 48

*In re Legacy FSRD, Inc.*,
No. 22-11051 (JKS) (Bankr. D. Del. Feb. 23, 2023) ................................................48

*In re Lernout & Hauspie Speech Prod., N.V.*,
301 B.R. 651 (Bankr. D. Del. 2003) *aff'd*, 308 B.R. 672 (D. Del. 2004) ..............70

*Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*,
115 F.3d 650 (9th Cir. 1997) ....................................................................................71

*In re Louise's, Inc.*,
211 B.R. 798 (D. Del. 1997) .....................................................................................34

*In re Lucky Bucks*,
No. 23-10758 (KBO) (Bankr. D. Del. July 28, 2023) ..............................................42

*Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*,
150 F.3d 503 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 2019 (1999) ..................13, 57

*In re Mallinckrodt PLC*,
639 B.R. 837 (Bankr. D. Del. 2022) .........................................................................47

*In re Mangia Pizza Invs., LP*,
480 B.R. 669 (Bankr. W.D. Tex. 2012) .....................................................................76

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994)................................................................36, 39

*Mercury Cap. Corp. v. Milford Conn. Assocs.*,
L.P., 354 B.R. 1 (D. Conn. 2006) .............................................................................70

*In re Mercy Hosp.*,
No. 23-00623 (TJC), 2024 WL 2890139 (Bankr. N.D. Iowa 2024).........................39

*In re Mesa Air Grp., Inc.*,
No. 10-10018 (MG), 2011 WL 320466 (Bankr. S.D.N.Y. Jan. 20, 2011) ...............75

*In re Mount Vernon Plaza Comm. Urban Redev. Corp. I*,
79 B.R. 305 (Bankr. S.D. Ohio 1987)........................................................................76

*Myers v. Martin (In re Martin)*,
91 F.3d 389 (3d Cir. 1996)...................................................................................34, 35

*N.L.R.B. v. Bildisco & Bildisco*,
682 F.2d 72 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984) .........................................31

*Nat'l Union Fire Ins. v. BSA (In re BSA)*,
    650 B.R. 87 (D. Del. 2023) ........................................................................................76

*In re New Midland Plaza Assocs.*,
    247 B.R. 877 (Bankr. S.D. Fla. 2000) ......................................................................19

*In re Nuverra Env't Sols., Inc.*,
    590 B.R. 75 (D. Del. 2018) ..........................................................................17, 19, 70

*In re Okoreeh-Bahm*,
    836 F.2d 1030 (6th Cir. 1988) ..................................................................................56

*In re Orlando Invs. LP*,
    103 B.R. 593 (Bankr. E.D. Pa. 1989) ......................................................................66

*In re Owens Corning*,
    419 F.3d 195 (3d Cir. 2005), *as amended* (Aug. 23, 2005), *as amended* (Sept.
    2, 2005), *as amended* (Oct. 12, 2005), *as amended* (Nov. 1, 2007) ................ *passim*

*Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*,
    280 B.R 573 (Bankr. D. Del. 2002) ........................................................................76

*In re Phoenix Petroleum Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) ................................................................13, 15

*In re Piece Goods Shops Co., L.P.*,
    188 B.R. 778 (Bankr. M.D.N.C. 1995) ....................................................................60

*In re PPI Enters. (U.S.), Inc.*,
    228 B.R. 339 (Bankr. D. Del. 1998) ........................................................................56

*In re Premier Int'l Holdings, Inc.*,
    No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ..............47

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000)........................................................................46, 47, 49

*In re Restoration Forest Prods. Grp., Inc.*,
    No. 24-10120 (KBO) (Bankr. D. Del. Mar. 27, 2024) ......................................42, 44

*In re Revco D.S., Inc.*,
    131 B.R. 615 (Bankr. N.D. Ohio 1990) ..................................................................67

*In re Rubio's Rests., Inc.*,
    Case No. 20-12688 (MFW) (Bankr. D. Del. Dec. 16, 2020)....................................44

*In re S & W Enter.*,
    37 B.R. 153 (Bankr. N.D. Ill. 1984) ........................................................................17

*In re S B Bldg. Assocs. Ltd. P'ship*,
  621 B.R. 330 (Bankr. D.N.J. 2020) ................................................................23, 25, 26

*In re Scioto Valley Mortg. Co.*,
  88 B.R. 168 (Bankr. S.D. Ohio 1988) ..............................................................14

*In re Seegrid Corp.*,
  No. 14-12391 (BLS) (Bankr. D. Del.) ...............................................................66

*Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*,
  872 F.2d 36 (3d Cir. 1989)................................................................................31

*In re Sherwood Square Assocs.*,
  107 B.R. 872 (Bankr. D. M.D. 1989) ................................................................57

*In re Sierra-Cal*,
  210 B.R. 168 (Bankr. E.D. Cal. 1997) ..............................................................60

*In re Sound Radio, Inc.*,
  93 B.R. 849 (Bankr. D.N.J. 1988) ....................................................................56

*In re Spansion, Inc.*,
  No. 09-10690 (KJC), 2010 WL 2905001 (Bankr. D. Del. 2010) ........................47

*In re Stimwave Techs. Inc.*,
  No. 22-10541 (KBO) (Bankr. D. Del. March 21, 2023)......................................42

*In re SunPower Corp.*,
  No. 24-11649 (CTG) (Bankr. D. Del. Oct. 18, 2024)..........................................40

*In re TK Holdings Inc.*,
  Case No. 17-11375 (BLS), 2018 WL 1306271 (Bankr. D. Del. Mar. 13, 2018)....42

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R.141 (Bankr. S.D.N.Y. 1984) ..................................................................51

*In re Trans World Airlines, Inc.*,
  261 B.R. 103 (Bankr. D. Del. 2001) ..................................................................32

*In re Tribune Co.*,
  464 B.R. 126 (Bankr. D. Del. 2011), *on reconsideration*, 464 B.R. 208
  (Bankr. D. Del. 2011) ...........................................................................16, 39, 66

*In re Tribune Co.*,
  476 B.R. 843 (Bankr. D. Del. 2012) ..................................................................18

*U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*,
  426 B.R. 114 (Bankr. D. Del. 2010) ..........................................................36, 37, 42

*United States v. Energy Res. Co.*,
495 U.S. 545 (1990) ..............................................................................66

*In re Virgin Orbit*,
No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) .......................42, 47

*In re Vyaire Med., Inc.*,
No. 24-11217 (BLS) (Bankr. D. Del. Nov. 11, 2024) ............................40

*In re W.R. Grace & Co.*,
446 B.R. 96 (Bankr. D. Del. 2011) ..................................................46, 47

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) .................................36, 37, 41, 47

*In re Washington Mut., Inc.*,
461 B.R. 200 (Bankr. D. Del. 2011) ................................................60, 66

*In re Wheel Pros, LLC*,
No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) .............................40

*In re Whittaker Mem'l Hosp. Ass'n, Inc.*,
149 B.R. 812 (Bankr. E.D. Va. 1993) ....................................................18

*Will v. Nw. Univ. (In re Nutraquest, Inc.)*,
434 F.3d 639 (3d Cir. 2006) ..................................................................34

*In re World Health Alts., Inc.*,
344 B.R. 291 (Bankr. D. Del. 2006) ......................................................34

*In re WorldCom, Inc.*,
No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........................70

*In re Zenith Elecs. Corp.*,
241 B.R. 92 (Bankr. D. Del. 1999) ............................................ *passim*

*In re Zymergen*,
No. 23-11661 (KBO) (Bankr. D. Del. Feb. 5, 2024) .............................42

## Statutes

11 U.S.C. ch. 7 ........................................................................ *passim*

11 U.S.C. § 157(b)(2)(L) ........................................................................47

11 U.S.C. § 330........................................................................................57

11 U.S.C. § 365(b) ..................................................................................33

11 U.S.C. § 365(b)(1) .................................................................................................50, 51

11 U.S.C. § 365(f) ..............................................................................................................77

11 U.S.C. § 503 ..................................................................................................................57

11 U.S.C. § 506(b) ...............................................................................................................3

11 U.S.C. § 507 ..................................................................................................................68

11 U.S.C. § 507(a) .............................................................................................................65

11 U.S.C. § 507(a)(2) ...................................................................................................21, 68

11 U.S.C. § 507(a)(3) .........................................................................................................21

11 U.S.C. § 507(a)(8) .........................................................................................................21

11 U.S.C. § 524(e) ..............................................................................................................46

11 U.S.C. §§ 1101-1144 ............................................................................................ *passim*

11 U.S.C. § 1107(a) ..............................................................................................................6

11 U.S.C. § 1108 ..................................................................................................................6

11 U.S.C. § 1122 ........................................................................................................ *passim*

11 U.S.C. § 1122(a) ............................................................................................................18

11 U.S.C. § 1123 .............................................................................................16, 17, 35, 51

11 U.S.C. § 1123(a) ............................................................................................................21

11 U.S.C. § 1123(a)(1) .......................................................................................................21

11 U.S.C. § 1123(a)(2) .......................................................................................................21

11 U.S.C. § 1123(a)(3) .......................................................................................................22

11 U.S.C. § 1123(a)(4) .......................................................................................................22

11 U.S.C. § 1123(a)(5) ..................................................................................................22, 29

11 U.S.C. § 1123(a)(5)(C) ..................................................................................................23

11 U.S.C. § 1123(a)(6) ..................................................................................................29, 35

11 U.S.C. § 1123(a)(7) .......................................................................................................29

11 U.S.C. § 1123(b) ............................................................................................................30

11 U.S.C. § 1123(b)(1) .......................................................................................................30

11 U.S.C. § 1123(b)(2) .......................................................................................................30

11 U.S.C. § 1123(b)(3) ..................................................................................................30, 33

11 U.S.C. § 1123(b)(3)(A) .................................................................................................33

11 U.S.C. § 1123(b)(5) .......................................................................................................35

11 U.S.C. § 1123(b)(6) ..................................................................................................30, 35

11 U.S.C. § 1123(d) .......................................................................................................50, 51

11 U.S.C. § 1124 .................................................................................................................3

11 U.S.C. § 1125 ............................................................................................................ *passim*

11 U.S.C. § 1125(a) ............................................................................................................52

11 U.S.C. § 1125(a)(1) ..................................................................................................13, 16

11 U.S.C. § 1125(b) .......................................................................................................51, 52

11 U.S.C. § 1125(c) ............................................................................................................52

11 U.S.C. § 1125(e) ..........................................................................................47, 51, 52, 53

11 U.S.C. § 1126 ............................................................................................................ *passim*

11 U.S.C. § 1126(a) ............................................................................................................53

11 U.S.C. § 1126(c) .......................................................................................................53, 63

11 U.S.C. § 1126(d) ............................................................................................................53

11 U.S.C. § 1126(f) ...........................................................................................8, 53, 60, 63

11 U.S.C. § 1126(g) ....................................................................................................... *passim*

11 U.S.C. § 1127 ..........................................................................................................12, 77

11 U.S.C. § 1127(a) ............................................................................................................74

11 U.S.C. § 1127(c) .......................................................................................................74, 75

11 U.S.C. § 1129 ..........................................................................................................11, 16

11 U.S.C. § 1129(a) ........................................................................................................51

11 U.S.C. § 1129(a)(1)................................................................................................17, 51

11 U.S.C. § 1129(a)(2)................................................................................................51, 56

11 U.S.C. § 1129(a)(3)................................................................................................47, 56

11 U.S.C. § 1129(a)(4)....................................................................................................57

11 U.S.C. § 1129(a)(5)....................................................................................................59

11 U.S.C. § 1129(a)(5)(A)(i)–(ii) ...................................................................................58

11 U.S.C. § 1129(a)(6)....................................................................................................59

11 U.S.C. § 1129(a)(7)............................................................................................59, 61, 63

11 U.S.C. § 1129(a)(7)(A)................................................................................................60

11 U.S.C. § 1129(a)(7)(A)(ii) ..........................................................................................60

11 U.S.C. § 1129(a)(8)................................................................................................64, 69

11 U.S.C. § 1129(a)(9)....................................................................................................65

11 U.S.C. § 1129(a)(9)(A)-(C) ........................................................................................65

11 U.S.C. § 1129(a)(10)..................................................................................................65

11 U.S.C. § 1129(a)(11)..................................................................................................67

11 U.S.C. § 1129(a)(13)..................................................................................................68

11 U.S.C. § 1129(a)(13)–(16) ..........................................................................................68

11 U.S.C. § 1129(a)(14)..................................................................................................68

11 U.S.C. § 1129(a)(15)..................................................................................................68

11 U.S.C. § 1129(a)(16)................................................................................................68, 69

11 U.S.C. § 1129(b)................................................................................................65, 69, 73

11 U.S.C. § 1129(b)(1) ................................................................................................69, 70

11 U.S.C. § 1129(b)(2)(B)(i) ............................................................................................72

11 U.S.C. § 1129(b)(2)(C)(i) ............................................................................................72

11 U.S.C. § 1129(c) ...................................................................................73

11 U.S.C. § 1129(e) ...................................................................................74

28 U.S.C. § 1930 ..................................................................................67, 68

**Other Authorities**

Fed. R. Bankr. P. 3002(c) ..........................................................................62

Fed. R. Bankr. P. 3017 .........................................................................51, 54

Fed. R. Bankr. P. 3017(d) ..........................................................................54

Fed. R. Bankr. P. 3018 ...............................................................................51

Fed. R. Bankr. P. 3018(a) ..........................................................................55

Fed. R. Bankr. P. 3018(c) ..........................................................................55

Fed. R. Bankr. P. 3018(d) ..........................................................................55

Fed. R. Bankr. P. 3019 ....................................................................12, 75, 77

Fed. R. Bankr. P. 3020 ...............................................................................77

Fed. R. Bankr. P. 3020(e) .....................................................................77, 78

Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend....................77

Fed. R. Bankr. P. 6004 ...............................................................................77

Fed. R. Bankr. P. 6004(h) ..........................................................................77

Fed. R. Bankr. P. 6006 ...............................................................................77

Fed. R. Bankr. P. 6006(d) ..........................................................................77

Fed. R. Bankr. P. 9019 ...............................................................................36

H.R. Rep. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ...................................13, 17

L.R. 3017-1 ...........................................................................................51, 54

L.R. 3017-2 ..............................................................................................7

S. Rep. No. 95-989 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787..........................................17, 51

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") submit this (a) memorandum of law in support of confirmation of the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1365] (as may be amended, modified and/or supplemented from time to time, the "Plan, the "**Disclosure Statement**" or the "Combined Plan and Disclosure Statement" as applicable);[1] and (b) reply to objections thereto (the "Confirmation Brief"). In support hereof, the Debtors rely upon (a) the declaration of David R. Campbell (the "Confirmation Declaration"); (b) a proposed form of order approving the Disclosure Statement on a final basis and confirming the Plan (as the same may be amended, modified and/or supplemented from time to time, the "Confirmation Order"); (c) the balloting tabulation and declaration of Andres A. Estrada prepared by Kurtzman Carson Consultants, LLC dba Verita Global LLC ("Verita" or the "Voting Agent"), the Debtors' solicitation and balloting agent (the "Voting Tabulation Affidavit"), each filed concurrently herewith; and (d) the applicable certificate of service filed by Verita in connection with Plan solicitation [Docket No. 1582] (as the same may be amended, modified and/or supplemented from time to time, the "Solicitation Affidavit"). In support of final approval of the Disclosure Statement and confirmation of the Plan, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT

1.      As described in greater detail in in the First Day Declaration [Docket No. 44].and the Combined Plan and Disclosure Statement, the Debtors are comprised of approximately 141 privately held Entities which, along with their non-Debtor affiliates, provided independent living, assisted living, supportive living, skilled nursing, memory care, Alzheimer's care, and

---

[1]     Capitalized terms used but not defined herein have the meanings given to them in the Combined Plan and Disclosure Statement or the Interim Approval and Procedures Orders (as defined herein), as applicable.

1

rehabilitation care and in some of the most rural areas of Illinois, Missouri, and Iowa. As a result of the downward market pressures and trends in the elder care space, the effects of inflation upon prices for food, drugs, and medical supplies, difficulty recruiting experienced staff, lingering effects of COVID-19, and two cyber-attacks, the Debtors faced liquidity issues and subsequently fell into default with their various credit facilities. After attempts to achieve an out-of-court restructuring of their obligations failed, the Debtors ultimately decided to commence these Chapter 11 Cases, with the goals of (1) pursuing reorganization or the orderly sale of their assets in a manner designed to maximize value of the Debtors' Estates and (2) confirming a plan providing for the orderly resolution of the Debtors' Estates. Having achieved Sales of substantially all of their assets and having engaged in negotiations with key stakeholders in these Chapter 11 Cases, as embodied, *inter alia*, in the Column Settlement, the GMF Settlement, and the Combined Plan and Disclosure Statement, the Debtors now seek the approval of the Disclosure Statement on a final basis and their confirmation of their Plan so that they may seek full resolution of their Estates.

2.      The overall purpose of the Debtors' Plan is to provide for the liquidation of the Debtors in a manner designed to maximize recovery to stakeholders. The Plan contemplates the appointment of (1) a Plan Administrator to administer and distribute certain assets of the Debtors (including the Debtors' accounts receivable) and to carry out the wind-down of the Debtors, and (2) a Liquidating Trustee to liquidate or otherwise monetize and administer the Debtors' remaining assets (including Retained Causes of Action) for the benefit of Holders of Allowed Claims. The Combined Plan and Disclosure Statement effectuates a liquidation of the Debtors' remaining assets for the benefit of Holders of Allowed Claims and is the product of good-faith, arm's-length negotiation among the Debtors, the Committee, the Secured Parties, and other parties in interest.

3.     Specifically, the Plan provides that, except to the extent a Holder of an unpaid Claim or Interest has agreed to a less favorable treatment of such Claim or Interest[2]:

- each Prepetition Secured Lender (unless such Prepetition Secured Lender has agreed to other treatment) shall receive (i) the share of the Sale Proceeds attributable to its collateral; (ii) all proceeds from collections of its accounts receivable collateral from December 5, 2024 and beyond, *provided that* all such proceeds shall be net of (a) the varying collection fees charged by any third-party collections agents engaged by the Debtors and (b) the Retained Collections, with each Prepetition Secured Lender's ratable portion of any unspent amount of the Retained Collections to be returned to such Prepetition Secured Lender; and (iii) treatment as a Class 4 General Unsecured Claim for any deficiency;

- each Holder of an Allowed Other Secured Claim, at the option of the Debtors, shall: (i) be paid in full in Cash from the Secured Claims Reserve; (ii) receive the proceeds of their collateral securing their Allowed Other Secured Claim, plus post-petition interest to the extent required under section 506(b) of the Bankruptcy Code; or (iii) receive other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, in each case on the later of the Effective Date and the date such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is reasonably practicable. In the event the Debtors pay a Claim under clause (i) or (ii) of this Section, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization, or approval of any Person;

- each Holder of an Allowed Priority Claim, at the option of the Debtors, shall: (i) be paid in full in Cash from the Administrative/Priority/Adequate Protection Claims Reserve; or (ii) receive other treatment rendering such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code, in each case on the later of the Effective Date and the date such Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as is reasonably practicable;

- each Holder of an Allowed General Unsecured Claim shall receive such Holder's Pro Rata share of Distributions from the Liquidating Trust;

- all Intercompany Claims between the Debtors shall be eliminated and Holders of Intercompany Claims will not receive any Distributions pursuant to the Combined Plan and Disclosure Statement; and

---

[2]  The summary of the Plan contained herein is qualified in its entirety by the terms of the Plan and in the event of any inconsistency, the Plan shall control in all respects. Where the Confirmation Order (including the stipulations appended thereto) differ from the terms of the Plan, the proposed terms contemplated in the Confirmation Order constitute proposed modifications of the Plan.

- Holders of Equity Interests will retain no ownership interests or Distribution under the Combined Plan and Disclosure Statement and, on the Effective Date, shall be deemed cancelled, null, and void.

4.      The Plan provides Creditors with the best return that can be achieved in these Chapter 11 Cases. Although the Plan effects liquidation of the Debtors' remaining assets and a chapter 7 liquidation would achieve the same general goal, the Plan provides a significantly greater potential recovery to Holders of Allowed General Unsecured Claims than would a chapter 7 liquidation. Moreover, a chapter 7 liquidation would add additional expenses and delays associated with Distributions to Creditors, as discussed in the Liquidation Analysis and herein.

5.      In addition to the foregoing, the release, exculpation, and injunction provisions contained in the Combined Plan and Disclosure Statement are necessary and appropriate to the success of the Plan and should be approved.

6.      The Debtors received the following objections to Plan confirmation and/or final approval of the Disclosure Statement (the "Objections"):

- Missouri Department of Revenue [Docket No. 1565];
- Berkadia Commercial Mortgage LLC ("Berkadia") [Docket No. 1607] (the "Berkadia Objection");
- Wells Fargo Bank, N.A. ("Wells Fargo") [Docket No. 1608] (the "Wells Fargo Objection");
- The Committee [Docket No. 1635] (the "Committee Objection");
- Mark B. Petersen ("Mark Petersen") [Docket No. 1636]; and
- The new operators of the Debtors' Facilities (the "New Operators") [Docket No. 1652].

The aforementioned Objections have been substantially resolved consensually. The remaining Objections and the Debtors' responses are set forth in **Exhibit A** attached hereto. The Debtors respectfully submit that these Objections should be overruled to the extent that they are not resolved before the Combined Hearing.

7.      The Debtors also received certain informal comments to Confirmation of the Plan (collectively, the "Informal Comments"), including from Smartlinx Solutions, LLC ("Smartlinx")

and Bank of Rantoul. The Debtors have worked to resolve substantially all Informal Comments.

To the extent not so resolved at the time of the filing hereof, the Debtors intend to continue working

with parties to resolve any outstanding Informal Comments prior to the Combined Hearing.

       8.      The resolution of the aforementioned Objections and Informal Comments, and

other negotiations between the Debtors and parties in interest, are addressed by language in the

Confirmation Order, by stipulations (which are attached to the Confirmation Order as exhibits), or

in the revised Plan Supplement to filed concurrently herewith, including:[3]

- Mark Petersen will contribute $6.7 million, with $5.5 million to go into the Liquidating Trust and the remaining $1.2 to go to the Debtors' Estates for administrative expenses;[4]
- Berkadia and Wells Fargo have each agreed to payment reductions of $25,000;[5]
- GMF Petersen Note LLC ("GMF") has agreed to be paid their allocation amount for the Betty's Garden Facility, and Mark Petersen has agreed to pay GMF $50,000 directly in exchange for a release of the guaranty claim against him;[6]
- Professionals have agreed to fee discounts in exchange for all parties' agreement to waive their objections to final fee applications;[7]
- The Debtors' contract with Smartlinx is being rejected;[8]
- The Plan Administrator Agreement has been revised in consultation with the Committee;[9] and
- The Debtors have entered into agreements with employees Gregory Wilson, Doug Courier and Marikay Snyder regarding compensation and/or in consideration of the overall settlements reached in these Chapter 11 Cases.[10]

---

[3]    The Debtors have fully resolved the Objections of Missouri Department of Revenue, Berkadia, Wells Fargo, the Committee, Mark Petersen, and the New Operators. Subject to the Court's approval if the stipulations with Berkadia (Class 1g) and Wells Fargo (Class 1j), their voters rejecting the Plan shall be deemed votes accepting the Plan.

[4]    *See* Confirmation Order, Ex. E.

[5]    *See* Confirmation Order, Ex. B & Ex. C.

[6]    *See* Confirmation Order, para. 70.

[7]    *See* Schedule 1 to the Confirmation Order.

[8]    *See* revised Plan Supplement; Confirmation Order, Ex. D.

[9]    *See* revised Plan Supplement.

[10]    *See* Confirmation Order.

9.      Together, this Memorandum, the Combined Plan and Disclosure Statement, the Plan Supplement, the Confirmation Declaration, the Voting Tabulation Affidavit, and the Solicitation Affidavit, along with the files and records in these Chapter 11 Cases, (1) reflect that the Combined Plan and Disclosure Statement complies with the applicable provisions of, and satisfies the requirements of, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable law, and thus, that the Plan should be confirmed, and (2) provide the legal and evidentiary bases necessary for the Court to confirm the Plan and approve the Disclosure Statement on a final basis.

## **BACKGROUND**

### I.      **GENERAL BACKGROUND.**

10.      On March 20, 2024 (the "Petition Date"), the Debtors each commenced with the Court a voluntary case under the Bankruptcy Code. The Debtors, apart from some inactive entities, are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.      On April 9, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the official committee of unsecured creditors (the "Committee"). On April 16, 2024, the U.S. Trustee appointed a patient care ombudsman [Docket No. 160] in these Chapter 11 Cases. No trustee or examiner has been appointed in these Chapter 11 Cases.

12.      The factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the filing of these Chapter 11 Cases, is set forth in more detail in the *Declaration of David R. Campbell in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 44].

## II.    COMBINED PLAN AND DISCLOSURE STATEMENT.

13.    After extensive negotiations between the Debtors and other parties in interest, the Combined Plan and Disclosure Statement was filed on March 25, 2025. Contemporaneously therewith, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Combined Plan and Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing the Deadline for Administrative Expenses Claims; (III) Establishing Solicitation and Voting Procedures; (IV) Approving the Form of Ballots and Solicitation Materials; (V) Establishing the Voting Record Date; (VI) Fixing the Date, Time, and Place for the Combined Hearing and the Deadlines for Filing Objections Thereto; and (VII) Granting Related Relief* [Docket No. 1366] (the "Interim Approval and Procedures Motion"). The Interim Approval and Procedures Motion sought approval of the Combined Plan and Disclosure Statement pursuant to Local Rule 3017-2.

14.    On April 21, the Court entered an order [Docket No. 1413] (the "Interim Approval and Procedures Order") (a) approving the Disclosure Statement on an interim basis, (b) scheduling a combined hearing to approve the Disclosure Statement on a final basis and to confirm the Plan, and (c) establishing procedures for solicitation of the Plan and tabulation of votes to accept or reject the Plan. The deadline for receipt of votes was set as 4:00 p.m. (prevailing Eastern Time) on May 16, 2025 (the "Voting Deadline").

15.    As more fully described in the Interim Approval and Procedures Order, the Voting Tabulation Affidavit, and the Solicitation Affidavit, the Debtors commenced solicitation of the Plan on April 25, 2025 by sending solicitation packages (the "Solicitation Packages") to Holders of Claims in Class 1 (Prepetition Lender Claims) and Class 4 (General Unsecured Claims) (the "Voting Classes"). Specifically, as set forth in the Solicitation Affidavit, Verita, on behalf of the Debtors, transmitted: (a) the Combined Hearing Notice; (b) a copy of the Combined Plan and

Disclosure Statement; (c) a copy of the Interim Approval and Procedures Order (without the exhibits); and (d) an appropriate Ballot. The Voting Agent transmitted the Solicitation Packages to Holders of Claims in the Voting Classes by first-class mail, and such Holders were directed in the Solicitation and Voting Procedures, the Disclosure Statement, and the Ballot to follow the instructions contained in the Ballot (and additionally described in the Disclosure Statement) to complete and submit their respective Ballot(s) to vote to accept or reject the Plan.[11]

16.     Each Holder of a Claim in the Voting Classes was expressly and conspicuously informed in the Disclosure Statement and the Ballot that if a Ballot was not actually received by the Voting Agent on or before the Voting Deadline, such Ballot would not be counted. Importantly, each Ballot contained the complete text of the release provisions contained in Article XI of the Plan, and detailed instructions on how Holders of Claims in the Voting Classes could elect to opt in to the releases by checking a clearly marked check box on the face of the Ballot and returning the Ballot in accordance with the Solicitation and Voting Procedures.[12]

17.     Under the Plan, Class 2 (Other Secured Claims) and Class 3 (Priority Claims) are Unimpaired (the "Unimpaired Classes"), conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy Code and deemed to have accepted the Plan, and thus were not entitled to vote to accept or reject the Plan.[13] Moreover, Class 5 (Intercompany Claims) and Class 6 (Equity Interests) (collectively, the "Deemed Rejecting Classes," and together with the Unimpaired Classes, the "Non-Voting Classes") will not receive any distribution under the Plan, are deemed to have rejected the Plan, and were not entitled to vote to accept or reject the Plan.[14] Members of the

---

[11]   *See* Solicitation Affidavit.

[12]   The forms of Ballots used in solicitation were each attached as Exhibit 2 to the Interim Approval and Procedures Order.

[13]   *See* 11 U.S.C. § 1126(f).

[14]   *See* 11 U.S.C. § 1126(g).

Non-Voting Classes were not provided a Solicitation Package. Instead, as required by the Interim Approval and Procedures Order, the Debtors transmitted to each member of the Non-Voting Classes the following documents (the "Non-Voting Package"): (a) the Combined Hearing Notice; (b) the Non-Voting Notice indicating that such person was not entitled to vote on the Plan; and (c) a form of opt-in to the Third-Party Releases contemplated in the Plan (the "Opt-In Election Form"). Each Non-Voting Package included, among other things: (a) instructions as to how to view or obtain copies of the Combined Plan and Disclosure Statement, the Interim Approval and Procedures Order, and all other materials in the Solicitation Package (excluding Ballots) from the Voting Agent; (b) a disclosure regarding the releases and the settlement, release, exculpation, and injunction language set forth in Article XI of the Plan; (c) notice of the Objection Deadline; (d) notice of the Combined Hearing; and (e) information related thereto.

18.    On May 9, 2025, the Debtors filed their plan supplement [Docket No. 1562] (including all exhibits thereto and as amended, modified and/or supplemented from time to time, the "Plan Supplement"), which provides information regarding a variety of topics relating to the Plan and the transactions contemplated thereby, including: (1) the Plan Administrator Agreement [Exhibit A to the Plan Supplement]; (2) the Liquidating Trust Agreement [Exhibit B to the Plan Supplement]; (3) the Schedule of Assumed Executory Contracts [Exhibit C to the Plan Supplement]; and (4) the Schedule of Retained Causes of Action [Exhibit D to the Plan Supplement].

19.    Based on the foregoing, all parties in interest have sufficient notice of the requisite documentation prior to the Combined Hearing. Further, the Debtors expect to be in position to satisfy all conditions precedent to the Effective Date following the Court's entry of the Confirmation Order.

20.      Contemporaneously herewith, the Debtors filed the Voting Tabulation Affidavit on behalf of the Voting Agent. As set forth in the Voting Tabulation Affidavit, the Voting Agent tabulated the Ballots received by the Voting Deadline from Holders of Claims in the Voting Classes. As set forth in the Voting Tabulation Affidavit, Classes 1a, 1b, and 4 voted in favor of accepting the Plan.[15] As reflected in the Voting Tabulation Affidavit, Classes 1g and 1j rejected the Plan.[16] Accordingly, at least one Impaired Class voted in favor of accepting the Plan, and the voting requirements of section 1126 of the Bankruptcy Code are satisfied.

21.      A summary per Class of the aggregate voting results combining each Debtor's results is included in the table below[17]:

| Class | Percentage of Voting Number Accepting | Percentage of Voting Amount Accepting | Percentage of Voting Number Rejecting | Percentage of Voting Amount Rejecting |
|---|---|---|---|---|
| Class 1a (Column Claim) | 100% | 100% | 0% | 0% |
| Class 1b (GMF Claim) | 100% | 100% | 0% | 0% |
| Class 1g (Berkadia Claim) | 0% | 0% | 100% | 100% |
| Class 1a (Wells Fargo Claim) | 0% | 0% | 100% | 100% |
| Class 4 (General Unsecured Claims) | 90.48% | 97.38% | 9.52% | 2.62% |

22.      The Voting Agent was also designated to tabulate which Holders of Claims and Interests elected to grant the Third-Party Release, either by submitting an Opt-In Election Form or

---

[15]    *See* Voting Tabulation Affidavit, Ex. A.

[16]    *See* Voting Tabulation Affidavit, Ex. A. As noted above, Berkadia and Wells Fargo have agreed to change their votes rejecting the Plan to votes accepting the Plan as part of the stipulations resolving their Objections.

[17]    *See* Voting Tabulation Affidavit.

by checking the appropriate opt-in box on their Ballot. In total, 61 Holders of Claims and Interests validly elected to opt-in to the Third-Party Release.[18]

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

## ADEQUATE NOTICE OF COMBINED HEARING

24.     In accordance with Bankruptcy Rules 2002, 6006, 9007, and 9014, the Interim Approval and Procedures Order, the Combined Hearing Notice and the solicitation procedures set forth therein, adequate notice of (a) the time for filing objections to confirmation of the Plan and final approval of the Disclosure Statement; (b) the transactions, settlements and compromises contemplated thereby; and (c) the Combined Hearing was provided to all holders of Claims and Interests and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Combined Hearing is necessary or required.

## ARGUMENT

25.     The argument portion of this Memorandum is divided into three parts. In Part I, the Debtors set forth why the Disclosure Statement contains adequate information, satisfies all applicable notice requirements under the Bankruptcy Code, and complies with the Interim Approval and Procedures Order. In Part II, the Debtors address the requirements of sections 1125,

---

[18]    *See* Voting Tabulation Affidavit, Ex C.

1126, and 1129 of the Bankruptcy Code. In Part III, the Debtors set forth why all post-solicitation

revisions to the Plan satisfy section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and

therefore the Debtors do not need to resolicit the Plan. Finally, in Part IV, the Debtors set forth

why it is appropriate under the circumstances to waive and eliminate any stay of the Confirmation

Order under the Bankruptcy Rules. The Debtors' resolutions to certain Objections and Informal

Comments are set forth in the Confirmation Order and/or in the stipulations attached thereto as

exhibits.

26.    The Debtors refer the Court to the Combined Plan and Disclosure Statement, the

Interim Approval and Procedures Order, the Plan Supplement, the Confirmation Declaration, and

the record of these Chapter 11 Cases for an overview of the Debtors' business and any other

relevant facts that may bear on Confirmation of the Plan. The Confirmation Declaration and any

testimony and other declarations that may be proffered or submitted in connection with the

Confirmation Hearing are fully incorporated herein.

## I.    THE DISCLOSURE STATEMENT SHOULD BE APPROVED ON A FINAL BASIS.

27.    Section 1125(b) of the Bankruptcy Code requires that, before soliciting votes on a

plan, the plan proponent must provide a disclosure statement that contains adequate information

regarding the proposed plan. Section 1125(a) defines "adequate information" as:

> information of the kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the debtor
> and the condition of the debtor's books and records, including a
> discussion of the potential material Federal tax consequences of the
> plan to the debtor, any successor to the debtor, and a hypothetical
> investor typical of the holders of claims or interests in the case, that
> would enable such a hypothetical investor of the relevant class to
> make an informed judgment about the plan, but adequate
> information need not include such information about any other
> possible or proposed plan and in determining whether a disclosure
> statement provides adequate information, the court shall consider
> the complexity of the case, the benefit of additional information to

creditors and other parties in interest, and the cost of providing additional information.[19]

28.     The amount and type of information required to satisfy section 1125(a) must be determined case by case. The legislative history of section 1125 indicates that the threshold of what constitutes "adequate information" is flexible and based on the circumstances of each case.[20] Courts also have broad discretion to determine what constitutes adequate information necessary to satisfy the requirements of section 1125(a).[21] This grant of discretion was intended to facilitate a debtor's effective emergence from chapter 11 in the broad range of businesses in which chapter 11 debtors engage.[22] A disclosure statement must provide creditors entitled to vote on the plan with information that is "reasonably practicable" to permit an "informed judgment."[23] The general purpose of the disclosure statement is to set forth sufficient facts to permit a creditor to make an informed evaluation of the merits of the plan.[24]

29.     Bankruptcy courts are afforded broad discretion in determining whether a disclosure statement contains adequate information.[25] Accordingly, the determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing

---

[19]   11 U.S.C. § 1125(a)(1).

[20]   H.R. Rep. No. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364.

[21]   *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("The general language of the statute and its surrounding legislative history make clear that the determination of what is adequate information is subjective and made on a case-by-case basis. This determination is largely within the discretion of the bankruptcy court.") (internal quotations omitted).

[22]   *See* H.R. Rep. No. 95-595, at 408–409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364–65.

[23]   *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 158 n.26 (Bankr. D. Del. 2002).

[24]   *See Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988); *Phoenix Petroleum*, 278 B.R. at 392.

[25]   *See Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Corp.)*, 150 F.3d 503, 518 (5th Cir. 1998) ("[I]n determining what constitutes 'adequate information' with respect to a particular disclosure statement, '[b]oth the kind and form of information are left essentially to the judicial discretion of the court . . . the information required will necessarily be governed by the circumstances of the case.'") (quoting S. Rep. No. 95-989, at 121 (1978)); *cert. denied*, 119 S. Ct. 2019 (1999).

on the unique facts and circumstances of the relevant case. In that regard, courts generally examine whether a disclosure statement contains, if applicable, the following types of information:

a.  the circumstances that gave rise to the filing of the bankruptcy petition;

b.  a description of the available assets and their value;

c.  the anticipated future of the debtor;

d.  the sources of information provided in the disclosure statement;

e.  the condition and performance of the debtor while in chapter 11;

f.  information regarding claims against the estate;

g.  a liquidation analysis setting forth the estimated return that creditors would receive if the debtor's bankruptcy case were a case under chapter 7 of the Bankruptcy Code;

h.  the accounting and valuation methods used to produce the financial information in the disclosure statement;

i.  information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors or officers of the debtor;

j.  a summary of the chapter 11 plan;

k.  an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

l.  financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

m.  information relevant to the risks being taken by the creditors and interest holders;

n.  the tax consequences of the plan; and

o.  the relationship of the debtor with its affiliates.[26]

---

[26]  *See, e.g.*, *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988).

This list is not meant to be exclusive, nor must a debtor include in its disclosure statement all the information on the list. Rather, the court must decide what information is appropriate in each case.[27]

30.     Here, the Combined Plan and Disclosure Statement contains adequate information, as required by section 1125, so that creditors were able to make an informed decision in voting to accept or reject the Plan. The Combined Plan and Disclosure Statement is comprehensive and contains the type of information described above. Specifically, the Combined Plan and Disclosure Statement includes: (a) significant events preceding and during the Debtors' Chapter 11 Cases; (b) the Debtors' prepetition operations and capital structure; (c) a liquidation analysis; (d) the designation and treatment of Claims and Interests under the Plan; (e) a detailed description of the method to fund the Plan and make Distributions to creditors under the Plan; (f) a description of the nature and extent of likely claims against the Debtors' estates, including administrative claims; (g) provisions governing releases, injunctions, exculpations, and Retained Causes of Action; (h) the risk factors affecting the Plan; (i) the federal tax consequences related to the Combined Plan and Disclosure Statement; (j) a summary of the Combined Plan and Disclosure Statement's structure; (k) the conditions precedent for confirmation and effectiveness of the Combined Plan and Disclosure Statement; (l) the voting and confirmation procedures; and (m) a summary of the Bankruptcy Code and other requirements for confirmation.

31.     Moreover, after the Debtors filed the Interim Approval and Procedures Motion, the Debtors worked with the Committee and other parties in interest to revise the Interim Approval and Procedures Order and the Combined Plan and Disclosure Statement. After the hearing on the

---

[27] *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (making use of list to *Scioto Valley Mortgage Co.* but cautioning that "no one list of categories will apply in every case.").

Interim Approval and Procedures Motion, on April 21, 2025, the Court approved the Disclosure Statement on an interim basis as containing adequate information to authorize the Debtors to commence solicitation under 11 U.S.C. § 1125(a)(1). To the extent that parties have requested additional information since the entry of the Interim Approval and Procedures Order, the Debtors believe that the additional information provided (including the Plan Supplement and the Debtors' monthly operating reports) have complied with such requests. Accordingly, the Debtors submit that the proposed Disclosure Statement, as supplemented, contains more than sufficient detail to permit holders of Claims entitled to vote on the Plan to make an informed judgment on whether to accept or reject the Plan and should therefore be approved on a final basis.

## II.    THE PLAN SHOULD BE CONFIRMED.

### A.    The Plan Meets All Applicable Requirements of the Bankruptcy Code.

32.    To confirm the Plan, the Court must find by a preponderance of the evidence that the provisions of section 1129 of the Bankruptcy Code have been satisfied.[28] The Debtors submit, based on the record of these Chapter 11 Cases, the Confirmation Declaration, the Voting Tabulation Affidavit, and the Debtors' arguments set forth herein, that the applicable burden is clearly satisfied and the Plan complies with all relevant sections of the Bankruptcy Code (in particular, sections 1122, 1123, 1125, 1126, and 1129), the Bankruptcy Rules, and applicable non-bankruptcy law.

#### i.    The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).

33.    Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code. The principal objective of section 1129(a)(1) is to

---

[28]    *See In re Armstrong World Indus., Inc*., 348 B.R. 111, 120 (D. Del. 2006); *In re Tribune Co*., 464 B.R. 126, 151–52 (Bankr. D. Del. 2011) ("*Tribune I*"), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011). Preponderance of the evidence has been described as just enough evidence to make it more likely than not that the fact the claimant seeks to prove is true. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) ("The preponderance-of-the-evidence standard results in roughly equal allocation of the risk of error between litigants.") (citations omitted).

assure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan.[29] Consequently, the determination of whether the Plan complies with section 1129(a)(1) requires an analysis of sections 1122 (governing the classification of claims and interests) and 1123 (dictating the contents of a plan) of the Bankruptcy Code. As explained below, the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1), including sections 1122 and 1123 of the Bankruptcy Code.

> a.  The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

34.    Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[30] For a classification structure to satisfy section 1122 of the Bankruptcy Code, substantially similar claims or interests need not be grouped in the same class.[31] Instead, claims or interests placed in a particular class must be substantially similar to each other.[32] Courts in this jurisdiction and others have recognized that plan proponents have significant flexibility in placing similar claims into different classes, provided there is a rational basis for doing so.[33]

---

[29]    The legislative history of section 1129(a)(1) explains that this provision is intended to draw in the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively. S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re S & W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was more directly aimed at were Sections 1122 and 1123.").

[30]    11 U.S.C. § 1122(a).

[31]    *See, e.g.*, *In re Nuverra Env't Sols., Inc*., 590 B.R. 75, 96 (D. Del. 2018).

[32]    *Id.*

[33]    Courts have identified grounds justifying separate classification, including where members of a class possess different legal rights or there are good business reasons for separate classification. *See, e.g.*, *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper); *In re Jersey City Med. Ctr*., 817 F.2d 1055, 1060–611 (3d Cir. 1987) (recognizing that separate classes of claims must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also*

17

35.     The Third Circuit "permits the grouping of similar claims in different classes[]" as long as those classifications are reasonable.[34] The classifications, however, cannot be "arbitrarily designed" to secure the approval of an impaired class when "the overwhelming sentiment of the impaired creditors [is] that the proposed reorganization of the debtor would not serve any legitimate purpose."[35] Separate classes of similar claims are reasonable when each class represents "a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed."[36]

36.     As section 1122(a) of the Bankruptcy Code only provides that claims and interests must be "substantially" similar to be placed in the same class, courts have recognized that both the debtor and the bankruptcy court have "significant flexibility" in classifying claims and interests under section 1122(a), provided that there is a reasonable basis for the classification scheme,[37] and provided all claims or interests within a particular class are substantially similar.[38] Furthermore, if it is evident based on the voting results that the debtor would have an impaired accepting class

---

*Chateaugay Corp. v. LTV Steel Co.* (*In re Chateaugay Corp.*), 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate classification appropriate because the classification scheme had a rational basis on account of the bankruptcy court-approved settlement).

[34]  *In re Coastal Broad. Sys., Inc.*, 570 F. App'x 188, 193 (3d Cir. 2014) ("Although not explicit in § 1122, a corollary to that rule is that the 'grouping of similar claims in different classes' is permitted so long as the classification is 'reasonable.'") (internal citation omitted); *see also In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987); *In re Tribune Co.*, 476 B.R. 843, 854–55 (Bankr. D. Del. 2012).

[35]  *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158 (3d Cir. 1993).

[36]  *Id.* at 159.

[37]  *In re Whittaker Mem'l Hosp. Ass'n, Inc.*, 149 B.R. 812, 816 (Bankr. E.D. Va. 1993) (stating that, "[w]here the purpose is not devious, it is not fatal to bifurcate even unsecured creditors into classes," and citing cases where separate classification was found permissible so long as such classification was "reasonable," "not arbitrary," and where a "reasonable business or economic justification exist[ed]") (internal citations omitted); *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 224 (Bankr. D.N.J. 2000).

[38]  *In re Bryson Props., XVIII*, 961 F.2d 496, 502 (4th Cir. 1992) ("[Section 1122] does not, however, require that all substantially similar claims be placed within the same class, and it grants some flexibility in classification of unsecured claims.").

regardless of the chosen classification scheme, then any challenge to the classification scheme is moot because the plan would have been accepted even if the classes were constituted differently.[39]

37.    Here, the Plan appropriately classifies Claims and Interests as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1a – Column Claim | Impaired | Entitled to Vote |
| Class 1b – GMF Claim | Impaired | Entitled to Vote |
| Class 1c – X-Caliber Claim | Impaired | Entitled to Vote |
| Class 1d – Rantoul Claim | Impaired | Entitled to Vote |
| Class 1e – CSB Claim | Impaired | Entitled to Vote |
| Class 1f – Solutions Bank Claim | Impaired | Entitled to Vote |
| Class 1g – Berkadia Claim | Impaired | Entitled to Vote |
| Class 1h – Grandbridge Claim | Impaired | Entitled to Vote |
| Class 1i – Lument Claims | Impaired | Entitled to Vote |

---

[39]    *See, e.g.*, *In re Heritage Org., L.L.C.*, 375 B.R. 230, 302 (Bankr. N.D. Tex. 2007) (rejecting challenge to classification scheme where voting results would be the same regardless of whether classes were combined or separate); *In re New Midland Plaza Assocs.*, 247 B.R. 877, 892 (Bankr. S.D. Fla. 2000) ("The Court holds that because the City, like the general trade creditors, voted in favor of the Plan, the issue of gerrymandering is moot, i.e., if the classes were combined, the Debtor would still have an impaired accepting class, and only one such class is necessary under § 1129(a)(10)."); *In re Dow Corning Corp.*, 244 B.R. 634, 645 n.5 (Bankr. E.D. Mich. 1999) (noting that a conclusion of gerrymandering would be counterintuitive where 24 of 33 classes had voted to accept a plan, most by overwhelming margins); *Beal Bank, S.S.B. v. Way Apts., D.T. (In re Way Apts., D.T.)*, 201 B.R. 444, 451, 451 n.6 (N.D. Tex. 1996) (finding that separation of claims of large trade creditors and small trade creditors into two separate classes did not constitute gerrymandering because the "votes of the combined class would have resulted in acceptance"); *see also In re Abeinsa Holding, Inc.*, 562 B.R. 265, 274–75 (Bankr. D. Del. 2016) (rejecting challenge to separate classification in part on the basis that, even without the challenged classification, the voting results would not change); *In re Nuverra Env't Sols., Inc.* 590 B.R. 75, 98–99 (D. Del. 2018) (district court dismissing claimants' appeal, determining the overwhelming acceptance within the claimant's class rendered argument moot).

| Class | Status | Voting Rights |
|---|---|---|
| Class 1j – Wells Fargo Claim | Impaired | Entitled to Vote |
| Class 2 – Other Secured Claims | Unimpaired | Deemed to Accept |
| Class 3 – Priority Claims | Unimpaired | Deemed to Accept |
| Class 4 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 – Intercompany Claims | Impaired | Deemed to Reject |
| Class 6 – Equity Interests | Impaired | Deemed to Reject |

38.     The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code.[40] The Plan's classification structure generally tracks the Debtors' prepetition corporate and capital structure, including the relative priority between secured and unsecured claims, and divides Claims and Interests into Classes based on the instruments giving rise to such Claims and Interests. Other aspects of the classification scheme are based upon valid business, legal, and factual distinctions that justify the separate classification of the Claims and Interests into the Classes created under the Plan. For example, the Debtors' classification scheme distinguishes Holders of Prepetition Lender Claims (Class 1) (which in turns consists of ten subclasses corresponding to each Prepetition Lender Claim) from Holders of General Unsecured Claims (Class 4), because General Unsecured Claims are not secured and entirely unrelated to the secured Prepetition Lender Claims, which are in turn distinguishable from the

---

[40]     *See* Plan, Art. V.

20

other Prepetition Lender Claims. Similarly, Priority Claims (Class 3) are classified separately due to their required treatment under the Bankruptcy Code.

39.     Consequently, the Claims and Interests in each Class above are substantially similar to the other Claims or Interests in such Class as all Claims or Interests within each Class have the same or similar rights against the Debtors. Similarly, the Claims and Interests in each Class differ from the Claims and Interests in each other Class based on legal or factual distinctions or other relevant criteria Accordingly, no unfair discrimination exists between or among holders of Claims and Interests. Therefore, the Court should approve the classification scheme as set forth in the Plan as fully consistent and compliant with section 1122(a) of the Bankruptcy Code.

        b.     <u>The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code</u>.

40.     Bankruptcy Code section 1123(a) contains seven requirements that a plan relating to a non-individual debtor must satisfy. 11 U.S.C. § 1123(a). Here, each such requirement has been met.

41.     <u>Section 1123(a)(1) (Designation of Classes of Claims and Interests)</u>: As set forth above, the Combined Plan and Disclosure Statement designates Classes of Claims and Interests, not including Claims of the kinds specified in sections 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code, as required by section 1123(a)(1) of the Bankruptcy Code.[41]

42.     <u>Section 1123(a)(2) (Specification of Unimpaired Classes)</u>: The Combined Plan and Disclosure Statement specifies the Classes of Claims and Interests that are unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code.[42]

---

[41]   *See* Plan, Art. V.

[42]   *See* Plan, Art. V.

43.     <u>Section 1123(a)(3) (Specification of Impaired Classes)</u>: The Combined Plan and Disclosure Statement specifies the Classes of Claims and Interests that are impaired under the Plan and the treatment of such Claims and Interests, as required by section 1123(a)(3) of the Bankruptcy Code.[43]

44.     <u>Section 1123(a)(4) (Equal Treatment Within Classes)</u>: The Combined Plan and Disclosure Statement provides for the same treatment for each Claim or Interest within a particular Class, unless otherwise agreed by the Holder of a particular Claim, as required under section 1123(a)(4) of the Bankruptcy Code.[44]

45.     <u>Section 1123(a)(5) (Adequate Means of Implementation)</u>: Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[45] The Plan satisfies this requirement because Article VIII of the Plan, as well as other provisions, sets forth the means by which the Plan will be implemented.[46] Among other things, Article VIII of the Plan describes (a) to the extent applicable, the sources of funding for Plan Distributions;[47] (b) to the extent applicable, the vesting of assets in the Post-Effective Date Debtors, Plan Administrator, or Liquidating Trustee, as applicable, and the authorization for the Debtors, the Plan Administrator, and/or the Liquidating Trustee, as applicable, to take corporate actions necessary to effectuate the Plan;[48] and the preservation and retention of certain Causes of Action.[49] The Plan and/or Plan

---

[43]   *See* Plan, Art. V.

[44]   *See* Plan, Art. V.

[45]   11 U.S.C. § 1123(a)(5).

[46]   *See* Plan, Art. VIII.

[47]   *See* Plan, Art. VIII.E.

[48]   *See* Plan, Art. VIII.B.2.

[49]   *See* Plan, Art. XI.F.

Supplement also set forth the respective duties and compensation of the Plan Administrator and Liquidating Trustee.

46.    <u>Substantive Consolidation</u>. Pursuant to section 1123(a)(5)(C) of the Bankruptcy Code, which permits a plan to provide for the "merger or consolidation of the debtor with one or more persons,"[50] the Plan contemplates the substantive consolidation of the Debtors' Estates and Chapter 11 Cases for all purposes,[51] including voting, Distribution, and Confirmation.[52] The Third Circuit has held that substantive consolidation is permitted by the consent of the parties to be affected by substantive consolidation.[53] In these Chapter 11 Cases, Wells Fargo and Mark Petersen have withdrawn their objections pursuant to settlements or stipulations reached in order to achieve confirmation of the Debtors' Plan; thus, all creditors "have all supported substantive consolidation directly or indirectly by voting in favor of the Plan, settling with the Debtors and/or not objecting to the Plan."[54] Accordingly, now that there is no outstanding objection to substantive consolidation

---

[50]    11 U.S.C. § 1123(a)(5)(C).

[51]    For the avoidance of doubt, the Debtors note that "El Paso Receivership Debtors" (El Paso HCC, LLC, Flanagan HCC, LLC, Kewanee AL, LLC, Knoxville AL, LLC, Legacy Estates AL, LLC, Marigold HCC LLC, Monmouth AL LLC, Polo LLC, El Paso HCO, LLC, Flanagan HCO, LLC, CYE Kewanee HCO, LLC, CYE Knoxville HCO, LLC, Legacy HCO, LLC, Marigold HCO, LLC, CYE Monmouth HCO LLC, and Polo HCO, LLC) are not included in the proposed substantive consolidation.

[52]    *See* Plan, Art. VIII.B.1.

[53]    *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005), *as amended* (Aug. 23, 2005), *as amended* (Sept. 2, 2005), *as amended* (Oct. 12, 2005), *as amended* (Nov. 1, 2007)) (holding that a court must only make the necessary evidentiary findings to approve substantive consolidation "absent consent[.]").

[54]    *In re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 370-71 (Bankr. D.N.J. 2020) (approving substantive consolidation where single party in interest objected to substantive consolidation and where numerous creditors required substantive consolidation as a condition of the settlements that secured their support for the debtors' plan). *See also In re Abeinsa Holding, Inc.*, 562 B.R. 265, 281-82 (Bankr. D. Del. 2016) (approving partial substantive consolidation where all classes except class dominated by objecting creditor voted in favor of plan and where there was "nothing in the record demonstrating that the partial substantive consolidation particularly harms any creditor or other stakeholder."); *In re Kaiser Aluminum Corp.*, No. 02-10429 (JKF), 2006 Bankr. LEXIS 3945, at *73 (Bankr. D. Del. Feb. 6, 2006) (approving substantive consolidation where there were no pending objections to consolidation, creditors overwhelming supported the plan, and court determined that "all of the Substantively Consolidated Debtors are interrelated companies operating under [parent entities], which entities are the Substantively Consolidated Debtors' ultimate parent companies for tax and business purposes, and the deemed substantive consolidation will promote efficiency and decrease costs in the implementation of the Plan.").

and the other economic objections to confirmation have been resolved, the Debtors submit that substantive consolidation should be approved as consensual.

47.      However, even if the Court determines that substantive consolidation would not be consensual under the circumstances of these Chapter 11 Cases, the other requirements for substantive consolidation have been satisfied. The Third Circuit has held that substantive consolidation is appropriate when either of the following conditions applies: (i) prepetition, the debtors disregarded separateness so significantly that their creditors relied on the breakdown of entity borders and treated them as one legal entity, or (ii) postpetition, the Debtors' assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors.[55] In addition, the Third Circuit articulated the following principle that a court should consider when determining whether substantive consolidation is appropriate:

(1) Absent compelling circumstances, courts should respect corporate separateness.
(2) Substantive consolidation is a tool to remedy harms caused by debtors (and entities they control) who disregard separateness.
(3) Mere benefit alone to case administration is not a harm calling substantive consolidation into play.
(4) The "rough justice" occasioned by substantive consolidation should be avoided if more precise remedies are available.
(5) Substantive consolidation may be used to remedy identifiable harms; it may not be used to disadvantage tactically a group of creditors or to alter creditor rights.[56]

The Debtors submit that the circumstances in these Chapter 11 Cases are consistent with the aforementioned principles governing substantive consolidation and the conditions articulated by the Third Circuit.

48.      <u>Corporate Separateness Was Disregarded Prepetition</u>. Both prepetition and postpetition, many of the Debtors' creditors, especially their trade creditors and other general

---

[55]   *In re Abeinsa Holding, Inc.*, 562 B.R. 265, 279 (Bankr. D. Del. 2016) (citing *In re Owens Corning*, 419 F.3d at 211-12).

[56]   *Id.* (citing *Owens Corning*, 419 F.3d at 211-12).

unsecured creditors, were creditors of numerous of the 141 Debtor Entities and have treated the Debtors as a single enterprise. Moreover, as noted in the Debtors' Cash Management Motion [Docket No. 41], the Petersen enterprise operated as a complex, intertwined organization, including with respect to its cash management systems. Indeed, the Debtors required the services of their accountants, RubinBrown LLC, to them to assist in completing complex books of the enterprise, which were intertwined.[57] The Debtors overwhelmingly engaged with their trade creditors, vendors, and other creditors on a consolidated basis at part of a larger enterprise.[58] To the extent that such creditors did not engage with the entire Petersen enterprise, they did not treat the subset of facilities and Debtors with which they dealt as distinct entities. Similarly, as noted in the *Declaration of David R. Campbell in Support of Debtors' Motion for Entry of an Order (I) Approving Debtors' Key Employee Incentive Plan and (II) Approving Debtors' Key Employee Retention Plan* [Docket No. 782] (the "KEIP/KERP Declaration"), employees, including the key employees who were the subject of the Debtors' Key Employee Incentive Plan and Key Employee Retention Plan, were staffed as needed across the Debtors' facilities, rather than being treated strictly as an employees of specific corporate entities.[59] This treatment by creditors is consistent with cases in which the court has approved substantive consolidation on the basis that corporate separateness was disregarded. As the court noted in *In re S B Bldg. Assocs. Ltd. P'ship*:

> [T]he Debtors themselves, vendors and other creditors -- with the exception of the law firm from whom [the objecting creditor] brought its claims - dealt with all three entities interchangeably or as one. For example, creditors routinely sent an invoice to one entity even though they were performing work for all three. Further, payments came from Realty Management Associates no matter which entity was invoiced. [The Debtors' manager] testified that he himself made no distinction between the Debtor entities in managing their day-to-day and general affairs and that the Debtors' Properties were treated as a single project. In fact, as pointed out

---

[57]  Confirmation Declaration, ¶ 13.

[58]  Confirmation Declaration, ¶ 13.

[59]  KEIP/KERP Declaration, ¶¶ 13, 14, 31; Confirmation Declaration, ¶ 13.

by [the objecting creditor's] expert (and as was acknowledged by the Debtors), the creditor list in each case is virtually identical and the amount owed to each vendor was listed as being owed by each Debtor entity, resulting in an asserted overcounting of the amount and number of creditors of each entity.[60]

So too here, where creditors generally dealt with all or part of the Petersen enterprise as a single unit, the first *Owens Corning* rationale is satisfied.[61]

49.     The Third Circuit's holding in *Owens Corning* is consistent with the foregoing. In *Owens Corning*, the debtors into unsecured loans that were guaranteed in part by debtor subsidiaries. The Third Circuit found, in large part based on the lenders' having bargained for these guarantees, that there was no prepetition disregard of corporate separateness. Moreover, the proposed "substantive consolidation" was not a true substantive consolidation, but only a "deemed" consolidation, in which the entities and their assets would remain separate, but the guarantees would be eliminated so that a claim against any debtor and any guarantee thereof would be deemed to be one obligation of the debtors with respect to the consolidated estate. *In re Owens Corning*, 419 F.3d at 202. The Third Circuit rejected this scheme based on its determination that the purpose of the proposed substantive consolidation request was "not to rectify the seldom-seen situations that call for this last-resort remedy but rather as a ploy to deprive one group of creditors of their rights while providing a windfall to other creditors." *Id.* at 199-200. No such windfall has been alleged here, where, as noted above, the economic parties in interest, including Class 4

---

[60]    621 B.R. at 370.

[61]    *See also In re Abeinsa Holding, Inc.*, 562 B.R. 265, 281 (Bankr. D. Del. 2016) (approving partial substantive consolidation after "careful analysis of ownership, operational entanglements, and creditor expectations based on their pre-petition dealings with the Debtor groups" and determining that "[a]ttempting to determine each separate entity's fair share of material liability against debtor groups would be a 'difficult, fact-intensive process that would be subject to challenge, and likely cost more than the distributions that could be made to creditors under a Separate Entity Plan.'").

General Unsecured Claims, have either voted to accept the Plan or have entered into settlements or stipulations indicating support for the Plan.[62]

50.    Finally, to the extent that the Debtors maintained separateness with respect to certain secured claims and their collateral (including the claims of HUD lenders), substantive consolidation of the Debtors would not affect the Prepetition Secured Lenders' entitlement to the value of their Allowed Secured Claims, and, to the contrary, and consistent with the Third Circuit's holding in *Owens Corning*, would permit a greater recovery for the Deficiency Claims or the individual Prepetition Secured Lenders that have not consented to less favorable treatment.[63] To the extent that a Prepetition Secured Lender with a Deficiency Claim would be worse off under substantive consolidation, no objection by a Prepetition Secured Lender on that basis is pending (and the only such objection has been consensually resolved). As the Third Circuit stated in *Owens Corning*, "[i]f an *objecting creditor* relied on the separateness of the entities, consolidation cannot be justified *vis-a-vis the claims of that creditor*."[64] Here, where there is no such objection, the exception to disregard of corporate separateness with respect to certain secured claims should not be an impediment to substantive consolidation.

51.    <u>Substantive Consolidation Is Justified Based on Postpetition Commingling</u>. The second basis for substantive consolidation is also satisfied in these Chapter 11 Cases. Other than funds that have been specifically allocated for the satisfaction of the Prepetition Secured Lender Claims and related Adequate Protection Claims, the Debtors' postpetition funds, especially after the consummation of the Sales of substantially all of the Debtors' assets, are so commingled that

---

[62]    *See* Confirmation Declaration, ¶¶ 16, 44, 65 .

[63]    *See* Confirmation Declaration, ¶¶ 13, 15, 16 .

[64]    *In re Owens Corning*, 419 F.3d at 210 (emphasis added).

separating them is prohibitive and hurts all creditors.[65] The Debtors' contracts, including the trade agreements with critical vendors, are between the Debtors and trade creditors/vendors, and administrative expenses (other than the aforementioned Adequate Protection Claims and Professional Fees) are treated as administrative expenses of all the Debtors' Estates, rather than being allocated on a strictly per-Debtor basis.[66] The expense involved in disaggregating such expenses on a per-Debtor basis would diminish the Debtors' Estates to the detriment of all creditors.[67] In addition, to the extent that the Retained Causes of Action included causes of action against former of current managers, officers, directors, and other fiduciaries of the Debtors constitute a substantial asset of the Debtors, the assets of the Debtors are hopelessly commingled to the extent that it would be impractical to disentangle the extent to which such defendants' liability should be apportioned on a Debtor-by-Debtor basis.[68]

52.    For the foregoing reasons, the substantive consolidation of the Debtors and their Estates should be approved as consensual and as consistent with the Third Circuit's holding in *Owens Corning*. Substantive consolidation would have the benefit of maximizing recoveries for creditors and would not be merely to simply the administrators of the Debtors' Estates. Substantive consolidation would not disadvantage a group of creditors; to the contrary, substantive consolidation benefits all creditors by reducing the costs associated with reconciling and administering vast numbers of claims across each of the Debtor Entities. Moreover, Secured Creditors' rights arising from their collateral (including Prepetition Lenders' rights to the proceeds of accounts receivable) will be unaffected by substantive consolidation, because the rights to such

---

[65]    *See* Confirmation Declaration, ¶ 14-15.

[66]    *See* Confirmation Declaration, ¶ 14.

[67]    *See* Confirmation  Declaration, ¶ 14.

[68]    *See* Confirmation  Declaration, ¶ 14.

proceeds are based on their interest in the collateral, not the individual obligations of the Debtors. Accordingly, the Debtors believe that substantive consolidation is warranted and provides the maximum recovery for all creditors. Thus, the Plan sets forth adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.

53.     <u>Section 1123(a)(6) (Issuance of Non-Voting Securities)</u>: Section 1123(a)(6) of the Bankruptcy Code requires that the charter of the debtor, or the surviving corporation if the debtor is transferring all of its property or merging or consolidating with another entity, contain a provision prohibiting the issuance of nonvoting equity securities.[69] Section 1123(a)(6) is not applicable under the Plan because no new equity securities are being issued. The Debtors' corporate entities will be wound down (and ultimately dissolved) and will not be issuing securities. Thus, the requirement that the Debtors' new organizational documents prohibit the issuance of nonvoting equity securities does not apply in these Chapter 11 Cases.

54.     <u>Section 1123(a)(7) (Selection of Directors, Officers, or Trustees)</u>. Section 1123(a)(7) of the Bankruptcy Code requires that the Plan's provisions with respect to the manner of selection of any director, officer or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."[70] Pursuant to Article VI.B of the Plan, "[u]pon the later of the Effective Date and the appointment of the Plan Administrator, the Debtors will have no other officers, directors or managers." The identity, manner of selection, and compensation of the Plan Administrator are set forth in the Plan and the Plan Supplement (including the Plan Administrator Agreement). Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

---

[69]   11 U.S.C. § 1123(a)(6).

[70]   11 U.S.C. § 1123(a)(7).

c.    The Plan Appropriately Contains Certain Discretionary Components Permitted by Section 1123(b) of the Bankruptcy Code.

55.    Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan. Section 1123(b) of the Bankruptcy Code provides that a plan, among other things, may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates or the retention and enforcement by a debtor, trustee, or other representative of claims or interests; (d) modify or leave unaffected the rights of holders of secured or unsecured claims; or (e) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.[71] As set forth herein, the Plan includes certain of these discretionary provisions. The Debtors have determined, as fiduciaries of their Estates and in the exercise of their reasonable business judgment, that each of the discretionary provisions of the Plan is appropriate given the circumstances of these Chapter 11 Cases.

56.    Section 1123(b)(1) (Impairment of Classes): In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan classifies and describes the treatment for Claims and Interests under the Plan and identifies which Claims and Interests are impaired or unimpaired.

57.    Section 1123(b)(2) (Executory Contracts and Unexpired Leases): As described in Article IX of the Plan, all of the Debtors' Unexpired Leases were rejected by operation of law or by stipulation before the filing of the Combined Plan and Disclosure Statement. With respect to the Debtors' Executory Contracts, in accordance with section 1123(b)(2) of the Bankruptcy Code, Article IX of the Plan provides that except as otherwise provided in the Combined Plan and Disclosure Statement or in any contract, instrument, release, or other agreement or document

---

[71]    *See* 11 U.S.C. §§ 1123(b)(1)–(3), (6).

entered into in connection with the Combined Plan and Disclosure Statement, each of the Executory Contracts to which any Debtor is a party shall be deemed automatically rejected by the Debtors as of the Effective Date, unless such contract or lease (a) previously has been assumed or rejected by the Debtors; (b) expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume or reject pending before the Court as of the Confirmation Date; (d) is identified in the Plan Supplement as an Executory Contract to be assumed; or (e) is an insurance policy providing coverage to any of the Debtors; *provided*, *however*, *that* nothing contained in the Combined Plan and Disclosure Statement shall constitute an admission by any Debtor that any such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor or its successors and assigns has any liability thereunder; and, *provided further*, *that* the Debtors reserve their right, at any time before the Confirmation Date, to assume any Executory Contract that was not already rejected prior to the Confirmation Date.

58.    Under section 1123(b)(2) of the Bankruptcy Code, "a plan may, subject to section 365, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected."[72] Section 365(a) of the Bankruptcy Code provides that a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease. Bankruptcy courts generally approve a debtor's decision to assume, assume and assign, or reject executory contracts or unexpired leases where such decision is made in the exercise of such debtor's sound business judgment and benefits its estate.[73] The business judgment standard

---

[72]    11 U.S.C. § 1123(b)(2).

[73]    *See, e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *N.L.R.B. v. Bildisco & Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 513 (1984).

requires that the court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice.[74]

59.    The Debtors believe that such relief is appropriate as the Debtors are in the process of winding down their estates and will have no need for the vast majority of their remaining contracts after the Effective Date, which will continue to be an unnecessary expense of the Estates if not rejected.[75] The Plan provides that parties with Claims arising from the rejection of executory contracts or unexpired leases pursuant to the Plan will have thirty (30) days after the later of: (a) the General Bar Date; (b) 30 days after the entry of an order (including the Confirmation Order) by the Court authorizing such rejection; or (c) such other date, if any, as the Court may fix in the order (including the Confirmation Order) authorizing such rejection. The Debtors believe that confirmation of the Plan is a sufficient forum to address the rejection of the Debtors' executory contracts and unexpired leases, and that the notice of the Effective Date will provide sufficient notice to all counterparties of the deadline to file claims against the Debtors for rejection damages.

60.    The Debtors also submit that they have satisfied the applicable requirements with respect to the handful of executory contracts that they will assume on the Effective Date (the "Assumed Contracts"). Here, all counterparties to the Assumed Contracts were provided with a notice listing their agreement in the Schedule of Assumed Contracts in the Plan Supplement. No such contract counterparties objected to the proposed assumption and cure amounts. The Debtors are authorized to assume such agreements provided that, to the extent necessary, the Debtors have: (a) cured, or provided adequate assurance that they will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code; (b) compensated or provided adequate

---

[74]    *See In re Trans World Airlines, Inc*., 261 B.R. 103, 121 (Bankr. D. Del. 2001).

[75]    See Confirmation Declaration, ¶ 19.

assurance that they will promptly compensate the counterparties for any actual pecuniary loss resulting from such default; and (c) provided adequate assurance of future performance under the agreements.[76] With respect to cure costs, the proposed cure amounts set forth for each Assumed Contract are based on the Debtors' review of their books and records.[77] Regarding adequate assurance of future performance, the Debtors and/or the Debtors' Estates have sufficient liquidity from, among other sources, the Plan Administrator Reserve provided under the Plan, to address the obligations under the agreements in the ordinary course of business.[78]

61.    Accordingly, the assumption and rejection of the Executory Contracts under the Plan and Confirmation Order, as applicable, should be approved as a sound exercise of the Debtors' business judgment.

62.    <u>Section 1123(b)(3) (Settlement or Adjustment of Claims)</u>: Section 1123(b)(3) of the Bankruptcy Code provides that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[79] In accordance with section 1123(b)(3) of the Bankruptcy Code, Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in each Class. In addition, (a) Article XI provides for a release of certain of the Debtors' Claims and Causes of Action, (b) Article V of the Plan incorporates the settlement of a variety of issues, Claims, Interests, and controversies, and (c) Article XI.F provides that, except as otherwise provided in the Plan, all of the Debtors' Retained Causes of Action will vest in the Liquidating Trust and that the Liquidating Trustee will retain, and may compromise or settle, all such Retained Causes of Action.

---

[76]    *See* 11 U.S.C. § 365(b).

[77]    *See* Confirmation Declaration, ¶ 19, 39.

[78]    *See* Confirmation Declaration, ¶ 39.

[79]    11 U.S.C. § 1123(b)(3)(A).

63.     In order to "minimize litigation and expedite the administration of the bankruptcy estate, 'compromises are favored in bankruptcy.'"[80] Whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, "which must determine if the compromise is fair, reasonable, and in the interest of the estate."[81] In exercising that discretion, the Third Circuit has stated that courts should consider "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."[82] The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'"[83]

64.     The four *Martin* factors weigh heavily in favor of approval of the settlements embodied in the Plan. The settlements resolve complex, fact-intensive matters that may otherwise have required costly and protracted litigation to determine, with an uncertain outcome. It is undeniable that litigating chapter 11 disputes with the applicable settlement parties would have been complex and time-consuming and could unnecessarily extend these Chapter 11 Cases while

---

[80]    *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. rev. 1993)); *see also In re World Health Alts., Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements are "generally favored in bankruptcy.").

[81]    *In re Louise's, Inc*., 211 B.R. 798, 801 (D. Del. 1997).

[82]    *In re Martin*, 91 F.3d at 393; *see also, e.g.*, *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

[83]    *In re World Health*, 344 B.R. at 296 (citations omitted) (internal quotation marks omitted); *see also, e.g.*, *In re Coram Healthcare Corp*., 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise."). *See In re Coram Healthcare Corp*., 315 B.R. at 334–35. Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "is above the lowest point in the range of reasonableness." *Id*. at 330 (citation omitted); *see also In re Exaeris, Inc.*, 380 B.R. 741, 746–47 (Bankr. D. Del. 2008); *see Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point in the range of reasonableness") (alteration in original) (citation omitted); *In re World Health*, 344 B.R. at 296 (stating that settlement must be "within the reasonable range of litigation possibilities" (citation omitted)).

administrative costs continue to be incurred, thereby eroding the value of the Estates to the detriment of all stakeholders. Therefore, the Plan's settlement provisions are reasonable, and the Debtors have satisfied the requirements of section 1123 of the Bankruptcy Code and the *Martin* factors.

65.     <u>Section 1123(b)(5) (Modification of Rights of Holders of Claims)</u>: Article V of the Plan modifies the rights of Holders of Claims as set forth therein.

66.     <u>Section 1123(b)(6) (Other Appropriate Provisions)</u>: Section 1123(b)(6) of the Bankruptcy Code also authorizes the inclusion of "any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1123(a)(6). The Plan includes several such discretionary provisions, including (a) various terms discharging, releasing, and enjoining the pursuit of Claims and (b) a consensual Third-Party Release of certain potential Claims. The release and exculpation provisions set forth in the Plan are the result of extensive good-faith and arm's-length negotiations by and among the Debtors and certain parties subject to the release, exculpation, and injunction provisions. As demonstrated below, such provisions are consistent with applicable case law and precedent in this district, comply with the Bankruptcy Code in all respects, and should be approved in all respects as integral components of the Plan.

(i)     <u>The Release Provisions Are Appropriate and Should Be Approved</u>.

67.     <u>Debtor Releases</u>. Article XI.A of the Plan provides that the Debtors (or any entity, including a successor entity or representative, seeking to exercise the rights of the Debtors) shall release certain Claims and Causes of Action (the "<u>Debtor Released Claims</u>") against Released Parties[84] (the "<u>Debtor Release</u>"). The scope of the Debtor Release is tailored to exclude any Claims

---

[84]     Pursuant to Article III of the Combined Plan and Disclosure Statement, the term "<u>Released Parties</u>" means "individually and collectively, in each case solely in their capacity as such, each and all of: (a) the Debtors' CRO and Estate Professionals solely in their capacity as such; (b) the Committee, members of the Committee in their capacity as members of the Committee, and the Committee's Professionals in their capacity as such; (c) the PCO

or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

68.    As noted above, section 1123(b) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[85] A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[86]

69.    In addition to analyzing debtor releases under the business judgment standard, some courts within the Third Circuit assess the propriety of a "debtor release" in light of five "*Zenith* factors" in the context of a chapter 11 plan:

(1) whether the non-debtor has made a substantial contribution to the debtor's reorganization;
(2) whether the release is critical to the debtor's reorganization, to the extent that, without the injunction, there is little likelihood of success;
(3) agreement by a substantial majority of creditors to support the release, specifically if the impaired class or classes "overwhelmingly" votes to accept the plan;
(4) identity of interest between the debtor and the third party; and
(5) whether a plan provides for payment of all or substantially all of the classes of claims in the class or classes affected by the release.[87]

---

and the PCO's Professionals in their capacity as such; and (d) the two Independent Board Members appointed after the Petition Date."

[85]  *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004) (holding that standards for approval of settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019).

[86]  *See U.S. Bank Nat'l Ass'n v. Wilmington Tr. Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal citation omitted).

[87]  *See In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing the *Zenith* factors); *Wash. Mut.*, 442 B.R. at 346 (same); *Spansion, Inc.*, 426 B.R. at 143 n.47 (same).

No one factor is dispositive, nor is a plan proponent required to establish each factor for the release to be approved.[88]

70.     The Debtor Release reflects an appropriate and reasonable exercise of the Debtors' business judgment regarding the risk and expense of pursuing claims and causes of action, on the one hand, and the benefits of retaining those same claims and causes of action on the other. [89] Specifically, when negotiating the Debtor Release, the Debtors, with the assistance of their advisors, determined that pursuing claims and causes of action against the Released Parties would not be in the best interests of the Debtors, their Estates, or their stakeholders because such claims and causes of action were unlikely to be sufficiently material to warrant the litigation costs associated with their prosecution. In addition, except as otherwise provided in the Plan, the Debtors excluded Retained Causes of Actions, including Avoidance Action, from the Debtor Release.

71.     In addition, the Debtors submit, consistent with the applicable *Zenith* factors, that the Debtor Releases are fair, reasonable, and in the best interests of the estate. ***First***, each of the categories of the Released Parties has contributed significantly to the Debtors' chapter 11 efforts, including negotiating and formulating the Plan and related settlements, and facilitating the progress made during these Chapter 11 Cases.[90] Without the contributions of the Released Parties, it is

---

[88]    *See, e.g., In re Wash. Mut.*, 442 B.R. at 346 ("These factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the [c]ourt's determination of fairness." (citation omitted)); *In re Exide Techs.*, 303 B.R. 48, (Bankr. D. Del. 2003) (finding that Zenith factors are not exclusive or conjunctive requirements).

[89]    *See* June 15, 2022 Hr'g Tr. 95:7-10, *In re Corp Grp. Banking, S.A.*, No. 21-10969 (JKS) (Bankr. D. Del.) [Docket No. 829] ("The Court finds that the debtor releases are a sound exercise of the debtors' business judgment, are fair and reasonable, fall within the range of customarily approved releases, and are approved."); Dec. 14, 2022 Hr'g Tr. 14:14–24, *In re Legacy Ejy, Inc.*, No. 22-10580 (JKS) (Bankr. D. Del.) [Docket No. 695] (holding the inclusion of the debtor releases proposed in the plan is a valid exercise of the debtors' judgment and are approved); *see also Spansion*, 426 B.R. at 142 (approving as a valid exercise of business judgment the debtor's releases of, among others, the debtor's current directors, officers and employees, the debtor's current and former professionals, secured creditors and their advisors, the debtor and their affiliates, and their officers, directors, employees, and advisors and senior noteholders and their advisors).

[90]    *See* Confirmation Declaration, ¶¶ 24-25. *Zenith*, 241 B.R. at 111 (noting that time spent negotiating a plan satisfied the "substantial contribution" factor).

exceedingly doubtful that the Debtors could have achieved the outstanding creditor result that is contemplated through confirmation of the Combined Plan and Disclosure Statement. Certain Released Parties (including the Debtors' played a beneficial role: (a) prepetition, by preparing the Debtors to transition into chapter 11 (including by preparing the Debtors' bankruptcy schedules, negotiating with stakeholders, overseeing the Debtors' communications strategy, and meeting with customers) and (b) postpetition, by negotiating, facilitating, and coordinating the marketing process that culminated in the Sales (including responding to significant diligence requests, meeting with potential purchasers, and preparing for, assisting with, and advising on various issues related to the Sales) and assisting with management of liquidity issues, and coordination between the Debtors' advisors. And, specifically with respect to the Debtor's directors, officers, and managers, certain Released Parties are entitled to indemnification from the Debtors under state law, organizational documents, and agreements.[91] For these reasons, the Debtor Release is justified, in the best interests of creditors, integral to the Plan, and satisfies the key factors considered by courts in determining whether a debtor release is proper.

72.     ***Second***, the Debtor Release is critical to the success of the Plan. Without the Debtors Releases contemplated in the Plan, stakeholders may continue to litigate over the Debtors' Estates, which would extend related wind-down issues and expenses. The Debtor Release provides finality, facilitates the consummation of the Plan, and allows for an orderly wind-down of the Debtors' Estates. The Debtor Release is also critical to the Plan because it represents valid and appropriate settlements of claims that the Debtors may have against the Released Parties and was critical to obtaining support for the Plan. The Debtor Releases are the result of significant good faith and arm's-length negotiations between the Debtors and the Released Parties and have been

---

[91] *See* Confirmation Declaration, ¶¶ 22-28.

tailored to ensure that the Debtors have received sufficient consideration therefor. Importantly, in consideration for the Debtor Release, the Debtors and their Estates will receive mutual releases from potential Claims and Causes of Action of each of the Releasing Parties.[92]  As noted above, the Debtors do not believe that they have material Causes of Action against any of the Released Parties that would justify the risk, expense, and delay of pursuing any such Causes of Action as compared to the results and benefits achieved under the Plan.

73.     **Third**, an identity of interest exists between the Debtors and the Released Parties. Whether there is an identity of interest depends on whether the debtor and non-debtor are sufficiently interlinked such that a lawsuit against the non-debtor would effectively be a lawsuit against the debtor or would deplete the assets of the Estate.[93] Lawsuits against the Released Parties may implicate the Debtors, and each Released Party shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated thereunder.[94]

74.     **Fourth**, a substantial number of the Debtors' General Unsecured Creditors (over 90% of votes cast and 97% of claims) voted to accept the Plan, including the Debtor Release.

75.     In addition to the foregoing considerations, the Debtor Release is limited in scope. As is customary, the releases do not extend to claims arising out of or relating to any act or omission

---

[92]   *See* Plan, Art. XI.A.2.

[93]   *In re Master Mortgage Inv. Fund, Inc*., 168 B.R. 930 (Bankr. W.D. Mo. 1994).

[94]   *In re Mercy Hosp*., No. 23-00623 (TJC), 2024 WL 2890139, at *4 (Bankr. N.D. Iowa 2024) ("Particularly persuasive [to finding that there exists an identity of interest] is the fact that these releases were integral to the consensual nature of the Plan and necessary to avoid the prospect of immense and complex litigation absent the releases."); *see also In re Tribune*, 464 B.R. 126, 187 (Bankr. D. Del. 2011) (finding that the debtors and released parties "share the common goal" of confirming a plan dependent on settlement of complex multi-party litigation resulted in an "identity of interest"); *Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed, and the company reorganize").

of a Released Party that constitute willful misconduct, actual fraud or gross negligence. Finally, the scope of the Debtor Release is consistent with those regularly approved in this district.[95]

76.     For these reasons, the Debtors submit that the Debtor Releases are fair, reasonable, in the best interest of the Debtors' estates, and a valid exercise of the Debtors' business judgment, and should be approved.

77.     <u>Third-Party Releases</u>. Article XI.A.3 of the Plan provides for a consensual release of any and all Claims and Causes of Action (collectively, the "<u>Third-Party Released Claims</u>").by certain non-Debtor Releasing Parties (the "<u>Third-Party Releasing Parties</u>")[96] against certain non-Debtor Released Parties (the "<u>Third-Party Released Parties</u>"),[97] including all liabilities, claims, actions, proceedings, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, or rights to payment whatsoever in connection with or related to the Debtors, the Debtors' operations, patient or resident care, Litigation Claims, the Debtors' in-or out-of-court financing, restructuring, reorganization, or liquidation efforts, any contract, agreement, understanding, or course of dealing, the Chapter 11 Cases, the Plan Settlement, the Credit Agreement, or the Combined Plan and Disclosure Statement and the formulation, preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing

---

[95]  *See In re EXP OldCo Winddown, Inc.*, No. 24-110831 (KBO) (Bankr. D. Del. Dec. 17, 2024) (confirming a chapter 11 plan including a similar scope of debtor releases); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. Nov. 11, 2024) (same); *In re SunPower Corp.*, No. 24-11649 (CTG) (Bankr. D. Del. Oct. 18, 2024) (same); *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) (same); *In re Appgate, Inc.*, No. 24-10956 (CTG) (Bankr. D. Del. June 18, 2024) (same).

[96]  Pursuant to Article III of the Combined Plan and Disclosure Statement, the term **"Third-Party Releasing Parties"** means "the Holders of Claims who vote to accept, reject, or who abstain from voting on the Plan and Holders of Claims or Interests in the non-Voting Classes, in each case, who elect to "opt in" by marking the appropriate box on such Third-Party Releasing Party's respective Ballot or the Opt-In Election Form and such Third-Party Releasing Party's respective successors, assigns, transferees, directors, officers, managers, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case, in their capacity as such)."

[97]  Pursuant to Article III of the Combined Plan and Disclosure Statement, (a) the term "<u>Third-Party Released Parties</u>" means "individually and collectively, in each case solely in their capacity as such, the Committee, members of the Committee in their capacity as such, and the two Independent Board Members appointed after the Petition Date,"

or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing, whether or not accrued, arising or having occurred, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, mixed, or otherwise, that may be based in whole or part on any act, omission, transaction, agreement, understanding, course of dealing, event or other occurrence or omission taking place on or prior to the Effective Date; *provided however*, that this Article XI.A.3 shall not release the Third-Party Released Parties for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction). Courts in this jurisdiction routinely approve such release provisions if, as here, they are consensual and appropriately tailored.[98]

78.    The Third-Party Release is appropriate under the circumstances and should be approved because it is consistent with Third Circuit law, integral to the Plan, and is granted on a consensual basis. The Debtors utilized an opt-in mechanism for the Third-Party Release and thereby required an affirmative act of consent for a Third-Party Releasing Party to be bound by the Third-Party Release. Specifically, the Third-Party Release binds the following parties: (a) the Holders of all Claims and Interests who vote to accept the Plan and opt-in on the ballot to grant the releases; and (b) members of Non-Voting Classes who do not object to the releases by filing an objection to

---

[98]    *See, e.g.*, *In re Wash. Mut., Inc.*, 442 B.R. at 352 (observing that consensual third-party releases are permissible); *In re Zenith Elecs.*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of the plan).

the Plan and opt-in on Opt-In Election Form to grant the releases. Such releases are fully consensual under applicable law.[99]

79.    Consensual releases are permissible on the basis of general principles of contract law.[100] The law is clear that a release is consensual where parties have received sufficient notice and have had an opportunity to object to and/or opt in to the releases. In *Emerge*, this Court recognized that a release by a non-debtor third party is consensual where the releasing party indicates its consent by an affirmative act.[101] Since *Emerge*, this Court and others have approved numerous third-party releases as consensual where the releasing third parties were required to indicate their consent by returning a form indicating the party's desire to participate in the third-party release.[102]

80.    Moreover, all parties in interest were provided extensive notice of these Chapter 11 Cases, the Plan, and the deadline to object to confirmation of the Plan. Moreover, the Combined Hearing Notice, the Ballots, the Notices of Non-Voting Status, and the Opt-In Election Form provided recipients with timely, sufficient, appropriate, and adequate notice of the Third-Party Release. The Debtors required all Holders of Claims or Interests to affirmatively opt in to the Third-

---

[99]    *See In re Indianapolis Downs, LLC*, 486 B.R. at 304; *see also In re Spansion*, 426 B.R. at 144; *In re TK Holdings Inc.*, Case No. 17-11375 (BLS), 2018 WL 1306271, at *16 (Bankr. D. Del. Mar. 13, 2018); *In re Abeinsa Holding, Inc.*, 562 B.R. 265 (Bankr. D. Del. 2016).

[100]    *See In re Indianapolis Downs, LLC*, 486 B.R. at 305.

[101]    *Compare In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 WL 7634308, at *18 (Bankr. D. Del. Dec. 5, 2019) (declining to approve third-party release where holders of claims and interests were presumed to consent to participation in the third-party release if they did not return an opt-out form, regardless of whether such holder returned a ballot); *with, e.g.*, *In re AeroCision Parent, LLC*, No. 23-11032 (KBO) (Bankr. D. Del. Mar. 4, 2024) (approving a consensual third-party release that included, among others, all holders of claims who return a ballot voting to accept the plan, with no option to opt out); *In re Virgin Orbit*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) (same); *In re Lucky Bucks*, No. 23-10758 (KBO) (Bankr. D. Del. July 28, 2023) (same, also including all holders of claims who return a ballot voting to reject plan who do not opt out).

[102]    *See, e.g.*, *In re Casa Systems, Inc*., No. 24-10695 (KBO) (Bankr. D. Del. June 5, 2024); *In re Restoration Forest Prods. Grp., Inc.*, No. 24-10120 (KBO) (Bankr. D. Del. Mar. 27, 2024); *In re Zymergen*, No. 23-11661 (KBO) (Bankr. D. Del. Feb. 5, 2024); *In re AeroCsision*, No. 23-11032 (KBO) (Bankr. D. Del. March 4, 2024); *In re Virgin Orbit*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023); *In re Stimwave Techs. Inc*., No. 22-10541 (KBO) (Bankr. D. Del. March 21, 2023); *In re Alto Maipo*, No. 21-11507 (KBO) (Bankr. D. Del. May 13, 2022).

Party Release by either checking a box on the Ballot and returning the Ballot, or by completing and returning the applicable Opt-In Election Form, and provided each Holder of a Claim or Interest with ample notice and instructions on how to do so.[103]

81.    As shown in the Solicitation Affidavit, the Debtors complied with the Court-approved Solicitation and Voting Procedures and served the Combined Hearing Notice, the Ballots, the Notices of Non-Voting Status, and the Opt-In Election Form (as applicable) on all parties in interest.[104] In response to the clear instructions and proper notice afforded to all parties, the Debtors, through the Voting Agent, received 61 Opt-In Election Forms.[105] This demonstrates that service of the various notices was effective, proper, sufficient, and otherwise appropriate and that all parties in interest had ample opportunity to evaluate the Third-Party Release and choose to affirmatively opt in if they wished to do so. The Debtors also submit that the Third-Party Release is sufficiently specific to put the Releasing Parties on notice of the claims being released. As set forth above, the Third-Party Release describes in great detail the nature and type of Claims being released. Thus, the Debtors submit that a Releasing Party's decision to opt-in to the Third-Party Release reflects an intentional, conscious, and fully consensual choice to grant such release. Such release structures have been approved by Courts in this jurisdiction.[106]

---

[103]    *See* Confirmation Declaration, ¶¶ 29-30.

[104]    *See* Solicitation Affidavit; Voting Tabulation Affidavit.

[105]    *See* Voting Tabulation Affidavit, Ex. C.

[106]    *See In re Restoration Forest Products Group, LLC*, Case No. 24-10120 (KBO) (Bankr. D. Del. Mar. 27, 2024) [Docket No. 233] (order confirming chapter 11 plan of reorganization in which general unsecured creditors were deemed to reject the plan, but, in exchange for timely opting into third-party releases, would be eligible to receive consideration); *In re Rubio's Rests., Inc.*, Case No. 20-12688 (MFW) (Bankr. D. Del. Dec. 16, 2020) [Docket No. 307] (same); *Lucky Brand Dungarees, LLC*, Case No. 20-11768 (CSS) (Bankr. D. Del. Nov. 17, 2020) [Docket No. 572] (order confirmation chapter 11 plan of liquidation in which general unsecured creditors were deemed to reject the plan, but, in exchange for timely opting into third-party releases, would be eligible to receive consideration).

82.     The Supreme Court's recent decision in *Harrington v. Purdue Pharma L.P., et al.*[107] does not affect the permissibility of the Debtors' proposed Third-Party Release. In *Purdue*, the Supreme Court held that, at least outside of the asbestos context, the Bankruptcy Code does not authorize Bankruptcy Courts to approve nonconsensual third-party releases.[108] The Supreme Court made clear, however, that the scope of its decision was narrow by pointing out that "nothing in this opinion should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan."[109] Critically, the Supreme Court took no position on what qualifies as a "consensual" release.[110] Accordingly, Purdue did not alter the analysis of what constitutes a "consensual" release in the Third Circuit or in the District of Delaware.

83.     In addition to being consensual, the Third-Party Release is substantively warranted. Third-Party Release is an integral part of the Plan. The Third-Party Release brought key stakeholders to the table for negotiations around the DIP Facilities, the Sales, and the Plan, each of which contributed to the Debtors' success in chapter 11. As noted in the Confirmation Declaration, the Third-Party Release was critical to incentivizing key parties to support the Plan.[111] The Third-Party Release was a core negotiation point, appropriately offers certain protections to parties that constructively participated in the Chapter 11 Cases, and was critical in reaching consensus to support the Plan. It is important to note that the Third-Party Release is given for consideration: the Third-Party Released Parties played an extensive and integral role in the Debtors' Chapter 11 Cases

---

[107]   603 U.S. 204 (2024).

[108]   *Id.* at 227.

[109]   *Id.* at 226.

[110]   *Id.*

[111]   *See* Confirmation Declaration, ¶¶ 31-33.

and all parties in interest benefit from the Plan and the significant contributions of the Third-Party Released Parties in furtherance thereof.[112]

84.    For these reasons, the Debtors submit that the Third-Party Release is fully consensual, appropriate, and should be approved.

> (ii)    <u>The Exculpation Provision Is Appropriate and Should Be Approved</u>.

85.    In addition to the Releases discussed above, the customary exculpation provision (the "<u>Exculpation Provision</u>") found in the Combined Plan and Disclosure Statement should be approved. Specifically, Article XI.B of the Plan contains an exculpation benefitting the following parties (the "<u>Exculpated Parties</u>"): (a) the Debtors, (b) the managers, officers, or directors of any of the Debtors serving at any time during the pendency of the Chapter 11 Cases, (c) the Professionals retained by the Debtors in the Chapter 11 Cases, (d) the Committee and its Professionals retained in the Chapter 11 Cases, and, solely in their respective capacities as members or representatives of the Committee, each member of the Committee, or (e) the PCO and its Professionals retained in the Chapter 11 Cases.[113] The Exculpation Provision extends to claims arising out of or relating to the Chapter 11 Cases, the DIP Facility, the PCO's evaluations, reports, pleadings, or other writings filed by or on behalf of the PCO in or in connection with the Chapter 11 Cases, the formulation, negotiation, or implementation of the Combined Plan and Disclosure Statement, the solicitation of acceptances of the Combined Plan and Disclosure Statement, the pursuit of Confirmation of the Combined Plan and Disclosure Statement, the Confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, or the administration of the Combined Plan and Disclosure Statement or the property

---

[112]    See Voting Tabulation Affidavit, Ex. C.

[113]    *See* Plan, Art. XI.B.

to be distributed under the Combined Plan and Disclosure Statement, unless such acts or omissions are determined by Final Order of a court of competent jurisdiction to be the result of fraud, gross negligence, or willful misconduct. The Exculpation Provision does not provide for the exculpation of prepetition or post-Effective Date acts or omissions.

86.     In determining the appropriateness of limiting liability under a plan, such as through exculpation, the Third Circuit assesses such provisions in light of the particular circumstances at issue.[114] Specifically, Courts in the Third Circuit may approve exculpation provisions for acts or omissions in connection with the pursuit of confirmation of a plan when such protection is necessary to a debtor's restructuring efforts and given in exchange for fair consideration.[115]

87.     A bankruptcy court has the power to approve an exculpation provision in a chapter 11 plan, as a chapter 11 plan cannot be confirmed unless the bankruptcy court finds that the plan has been proposed in good faith.[116] Thus, an exculpation provision represents a legal determination that flows from several different findings that a bankruptcy court must reach in confirming a plan, as well as the statutory exculpation in section 1125(e) of the Bankruptcy Code.[117] Once the court makes a good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan.[118] Unlike third-party releases, exculpation provisions do

---

[114]   *See In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000) (rejecting any "per se rule barring any provision in a reorganization plan limiting the liability of third parties", including exculpation, by virtue of section 524(e) of the Bankruptcy Code); *see also In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (concluding that exculpation provisions are appropriate for estate fiduciaries, committees and their members and debtor directors and officers).

[115]   *See Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211-14 (3d Cir. 2000). *See also In re PWS Holding Corp.*, 228 F.3d at 246-47 (holding that an exculpation provision "does not affect the liability of third parties, but rather sets forth the appropriate standard of liability."); *In re W.R. Grace & Co.*, 446 B.R. 96, 132–33 (Bankr. D. Del. 2011) (approving an exculpation clause exculpating non-debtor parties who were party to a settlement agreement).

[116]   *See* 11 U.S.C. § 1129(a)(3).

[117]   *See* 11 U.S.C. § 157(b)(2)(L).

[118]   *See In re PWS Holding Corp.*, 228 F.3d 224, 246-247 (3d Cir. 2000) (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity . . . for actions within the scope of their duties").

not affect the liability of third parties *per se*, but rather set a standard of care of actual fraud, gross negligence, or willful misconduct in future litigation by a non-releasing party against an exculpated party for acts arising out of the debtor's reorganization.[119]

88.     Exculpation provisions, therefore, properly prevent future collateral attacks against estate fiduciaries and others that actively participate in a debtor's restructuring. Accordingly, estate fiduciaries, lenders, and other parties participating in the plan process are frequently the subject of exculpation provisions, provided that such exculpation provisions are limited to claims not involving actual fraud, willful misconduct, or gross negligence.[120] Without protection for these parties, key constituents would not participate in the plan process.

89.     The Exculpation Provision is appropriate under both applicable law and the facts of these Chapter 11 Cases. The Exculpation Provision is appropriate as it represents an integral component of the Plan and is the product of good faith, arm's-length negotiations among various parties (including the key constituents of the Chapter 11 Cases). The Exculpation Provision is extremely narrow: it is consistent with the Bankruptcy Code and exculpation provisions granted

---

[119] *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010), at *10 (approving a similar exculpation provision as that provided for under the Plan); *In re Spansion, Inc.*, No. 09-10690 (KJC), 2010 WL 2905001, at *16 (Bankr. D. Del. 2010) (same).

[120] *See, e.g., In re W.R. Grace & Co.*, 446 B.R. 96, 132–33 (Bankr. D. Del. 2011); *In re Wash Mut. Inc.*, 442 B.R. at 350–51 (noting that the Third Circuit has held that…estate professionals may be exculpated under a plan for their actions in the bankruptcy case except for willful misconduct or gross negligence); *In re Indianapolis Downs, LLC*, 486 B.R. at 306; *In re Mallinckrodt PLC*, 639 B.R. 837 (Bankr. D. Del. 2022) ("This Court has interpreted PWS as implying that a party's exculpation is based upon its role or status as a fiduciary.") (internal quotation omitted). *See also In re Amyris, Inc.*, Case No. 23-11131 (TMH) (Bankr. D. Del. Feb. 7, 2024) [Docket No. 1251] (confirming a bankruptcy plan in which the debtors, the unsecured creditors' committee and their professionals are exculpated parties); *In re Virgin Orbit Holdings, Inc.*, No. 23-10405 (KBO) (Bankr. D. Del. July 31, 2023) [Docket No. 604] (approving exculpation of related parties "to the extent they are estate fiduciaries"). *In re Clovis Oncology, Inc.*, Case No. 22-11292 (JKS) (Bankr. D. Del. June 16, 2023) [Docket No. 904] (confirming a bankruptcy plan in which the debtors, the unsecured creditors' committee and their professionals are exculpated parties); *In re Legacy FSRD, Inc.*, No. 22- 11051 (JKS) (Bankr. D. Del. Feb. 23, 2023) [Docket No. 322] (same); *In re Legacy Ejy, Inc.* No. 22-10580 (JKS) (Bankr. D. Del. Dec. 14, 2022) [Docket No. 689] (same).

by courts in this Circuit, extends only to the Debtors, the Committee, and the other Exculpated Parties that participated in the Debtors' Chapter 11 Cases and in the negotiation and implementation of the Plan, and has no effect on liability that results from fraud, gross negligence, or willful misconduct.

90.    Moreover, as set forth in the Confirmation Declaration, the Exculpated Parties: (a) have made substantial and valuable contributions to the Debtors' Sales and Plan process; (b) have invested significant time and effort to make the Chapter 11 Cases a success and preserve the value of the Debtors' Estates in a challenging economic and regulatory environment; (c) met frequently and directed the negotiations of the transactions contemplated in the Combined Plan and Disclosure Statement; and, (d) with respect to the Debtors' directors, officers, and managers who are Exculpated Parties, are entitled to indemnification from the Debtor under state law, organizational documents, and agreements.[121] In addition, the promise of exculpation played a significant role in facilitating negotiations on the Plan and the Exculpation Provision was critical to obtaining the support of various constituencies for the Plan. The Exculpation Provision was important to the development of a feasible, confirmable Plan, and many of the Exculpated Parties are participating in the Chapter 11 Case in reliance upon the protections afforded by the Exculpation Provision.[122]

91.    The Debtors therefore submit that the Exculpation Provision is necessary and appropriate to ensure that the fiduciaries of the Debtors' Estates who made substantial contributions to the negotiation of the Combined Plan and Disclosure Statement and the administration of the Chapter 11 Cases are not exposed to litigation relating to actions taken prior

---

[121] *See* Confirmation Declaration, ¶¶ 34-35.

[122] *See* Confirmation Declaration, ¶¶ 34-36.

to the Effective Date for business decisions affecting the Debtors. Importantly, all of the Debtors' key stakeholders support the Exculpation Provision. There are no pending objections to the Exculpation Provision despite providing ample notice of its terms to all parties in interest, including by listing the entire Exculpation Provision in the Ballots, the Notice of Non-Voting Status, and the Opt-In Election Form.

92.     For these reasons, the Debtors respectfully submit that the Exculpation Provision is appropriate and request that the Court approve the Exculpation Provision and find that the Exculpated Parties have acted in good faith and in compliance with the law.[123]

(iii)     The Injunction Provision Is Appropriate.

93.     Article XI.C of the Combined Plan and Disclosure Statement contains an injunction provision (the "Injunction Provision") related to the parties who have held, hold, or may hold Claims or Interests (as defined in the Plan) against the Debtors.[124] The Injunction Provision enjoins (a) all such Holders of Claims or Interests from commencing or maintaining certain actions against the Debtors or the Liquidating Trust, and (b) any party bound by the consensual releases contemplated in Article XI.A of the Plan from commencing or maintaining a Claim or Cause of Action of any kind against any Released Party or any Third-Party Released Party that is a Debtor Released Claim or Third-Party Released Claim.

94.     The injunction provisions are necessary to effectuate the Combined Plan and Disclosure Statement. Without such injunction provisions, the Debtors and the Liquidating Trustee would be unable to fulfill their responsibilities under the Combined Plan and Disclosure Statement. The Injunction Provision is narrowly tailored to achieve its purpose and consensual as to any party

---

[123]     *See In re PWS Holding Corp.*, 228 F.3d at 246–47 (approving plan exculpation provision exception for willful misconduct and gross negligence); *In re Indianapolis Downs, LLC*, 486 B.R. at 306 (same).

[124]     *See* Plan, Art. XI.C.

that did not specifically object to it. As such, the Debtors respectfully submit that the Injunction

Provision is appropriate and should be approved.

    d.    <u>The Plan's Cure Process Is Appropriate under Section 1123(d).</u>

95.    Section 1123(d) of the Bankruptcy Code provides that amounts necessary to cure

defaults under a plan shall be "determined in accordance with the underlying agreement and

applicable nonbankruptcy law."[125] Article IX provides for the assumption of certain Executory

Contract to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.[126]

Specifically, the Debtors, the Plan Administrator, or the Liquidating Trustee, as applicable, shall

cure defaults relating to Assumed Contracts (the "<u>Cure Claims</u>"), if any, as indicated in the

Schedule of Assumed Executory Contracts. Any disputed Cure Claim that is not resolved

consensually will be resolved by this Court pursuant to the Court's retention of jurisdiction over

such disputes as set forth in Article XII of the Plan. As such, the Plan provides that the Debtors

will cure or provide adequate assurance that the Debtors will promptly cure, defaults with respect

to assumed Executory Contracts in compliance with section 365(b)(1) of the Bankruptcy Code.

Accordingly, the Plan complies with section 1123(d) of the Bankruptcy Code.

96.    Based upon the foregoing, the Plan complies fully with sections 1122 and 1123 and

therefore satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

    ii.    ***The Plan Complies with Applicable Provisions of Section 1129(a)(2) of the Bankruptcy Code.***

97.    The Debtors have complied with the applicable provisions of the Bankruptcy Code

in accordance with section 1129(a)(2) of the Bankruptcy Code. As indicated by its legislative

history, a principal purpose of section 1129(a)(2) is to ensure that plan proponents have complied

---

[125]  11 U.S.C. § 1123(d).

[126]  *See* 11 U.S.C. § 365(b)(1).

Case 24-10443-TMH   Doc 1664   Filed 06/06/25   Page 66 of 99

with the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.[127] As set forth below, the Debtors have complied with the applicable provisions of the Bankruptcy Code regarding disclosure and plan solicitation, including sections 1125 and 1126, as well as Bankruptcy Rules 3017 and 3018, Local Rule 3017-1, and the Interim Approval and Procedures Order.

98.     Section 1125 (Post-Petition Disclosure Statement and Solicitation): Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(e) of the Bankruptcy Code further provides that "[a] person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.[128] Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision regarding whether to accept or reject the plan.

99.     The Debtors have satisfied section 1125 of the Bankruptcy Code. The Court conditionally approved the Disclosure Statement as containing adequate information and following the Court's entry of the Interim Approval and Procedures Order, the Voting Agent sent the Solicitation Packages, including instructions for accessing electronic or hard-copy versions of

---

[127]   *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1987). *See also In re Toy & Sports Warehouse, Inc.*, 37 B.R.141, 149 (Bankr. S.D.N.Y. 1984); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992).

[128]   11 U.S.C. § 1125(e).

the Plan and Disclosure Statement, to all Holders of Claims entitled to vote on the Plan and tabulated votes on the Plan consistent with the Court-approved procedures, as evidenced by the Voting Tabulation Affidavit[129] and the Solicitation Affidavit. The Debtors, through the Voting Agent, complied with the content and delivery requirements of the Interim Approval and Procedures Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code. Further, the Debtors did not solicit acceptances of the Plan from any holder of a Claim before entry of the Interim Approval and Procedures Order and thus complied with section 1125(b) of the Bankruptcy Code. The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.

100.   Finally, as set forth herein and in the Confirmation Declaration, and as demonstrated by the Debtors' compliance with the Interim Approval and Procedures Motion, the Debtors at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code. Therefore, the Debtors respectfully request that this Court grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

101.   <u>Section 1126 (Acceptance of the Plan)</u>: Section 1126 of the Bankruptcy Code sets forth the procedures for soliciting votes on a plan and determining acceptance thereof. Pursuant to section 1126, only holders of allowed claims or equity interests in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan.[130] As set forth above, the Debtors solicited

---

[129]   *See* Voting Tabulation Affidavit.

[130]   *See* 11 U.S.C. §§ 1126(a), (f), and (g).

acceptances of the Plan only from the Holders of Claims in the Voting Classes, which are the only Classes that are Impaired and entitled to vote on the Plan. The Debtors did not solicit votes to accept or reject the Plan from the Holders of Claims and Interests in the Non- Voting Classes, all of which are either (a) Unimpaired and, therefore, deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or (b) Impaired and presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

102.    Sections 1126(c) and (d) of the Bankruptcy Code specify that holders of an impaired class of claims or interests must vote in favor of a plan by at least two-thirds in amount and more than one-half in number of the allowed claims, or interests, of such class to accept the plan.[131] The Voting Agent reviewed all Ballots received in accordance with the Solicitation and Voting Procedures approved pursuant to the Interim Approval and Procedures Motion.[132] As set forth above, of those who timely voted, Holders of Claims in Class 4 in excess of these statutory thresholds voted to accept the Plan.

103.    <u>Bankruptcy Rule 3017(d) (Notice Requirements)</u>: Bankruptcy Rule 3017(d) requires that, unless a court orders otherwise, a debtor must transmit to all creditors, equity security holders, and the U.S. Trustee: the plan, or a court-approved summary of the plan; the disclosure statement approved by the court; notice of the time within which acceptances and rejections of such plan may be filed; and such other information as the court may direct including any opinion of the court approving the disclosure statement or a court approved summary of the opinion. Bankruptcy Rule 3017 also requires that the debtor give notice of the time fixed for filing objections to the proposed disclosure statement and for the hearing on confirmation to all creditors

---

[131]   *See* 11 U.S.C. §§ 1126(c), (d).

[132]   *See* Interim Approval and Procedures Order, ¶ 5.

and equity security holders and that a debtor mail a ballot to each creditor and equity security holder entitled to vote on the plan.

104.    On April 21, 2025, the Court entered the Interim Approval and Procedures Order, which, among other things: (a) approved the Solicitation Package; (b) approved the form and manner of the Combined Hearing Notice, the Notice of Non-Voting Status, the Opt-In Election Form, and the Publication Notice; and (c) approved certain dates and deadlines with respect to the Combined Plan and Disclosure Statement.

105.    The Debtors respectfully submit that they have satisfied the notice requirements set forth in the Interim Approval and Procedures Order, Bankruptcy Rule 3017, and Local Rule 3017-1. *First*, on or about April 25, 2025, the Debtors distributed the Solicitation Packages to Holders of Claims entitled to vote on the Plan as of the Voting Record Date.[133] *Second*, the Debtors caused the Publication Notice to be published in *The Chicago Tribune* on April 26, 2025.[134] *Third*, the Combined Hearing Notice included instructions on how to obtain the Plan and the Disclosure Statement without a fee through the Debtors' restructuring website or for a fee at this Court's PACER website.[135]

106.    <u>Bankruptcy Rule 3018(d) (Form of Ballot)</u>: Bankruptcy Rule 3018(c) governs the form of ballot for accepting or rejecting a plan, providing in relevant part that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Pursuant to Bankruptcy Rule 3018(a), the Court established April 21, 2025, as the Voting

---

[133]    *See* Solicitation Affidavit.

[134]    *See* Docket No. 1559.

[135]    *See* Combined Hearing Notice.

Record Date for determining which Holders of Claims were entitled to vote to accept or reject the Plan.

107.    The form of Ballot used complies with the Bankruptcy Rules and was approved by the Court pursuant to the Interim Approval and Procedures Order.[136] The form of Ballots provides sufficient detail on acceptance or rejection of the Plan as required under Bankruptcy Rule 3018(c). No party has objected to the sufficiency of the Ballot. Based on the foregoing, the Debtors submit that the Ballot complied with the Interim Approval and Procedures Order and satisfied the requirements of Bankruptcy Rule 3018(c).

108.    As discussed herein and in the Voting Tabulation Declaration, the Combined Plan and Disclosure Statement meets the requirements of Bankruptcy Code sections 1125 and 1126. In addition, the Debtors have complied with applicable Bankruptcy Code provisions, the Bankruptcy Rules, the Local Rules, the Interim Approval and Procedures Order, and other applicable laws in the transmission of the Combined Plan and Disclosure Statement, the Ballots, and related documents and notices. Accordingly, the Debtors have complied with the provisions of Bankruptcy Code sections 1125 and 1126 and fulfilled the requirements of Bankruptcy Code section 1129(a)(2).

> ### iii.    The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law (Section 1129(a)(3)).

109.    Section 1129(a)(3) of the Bankruptcy Code requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law."[137] Congress designed the section to "prevent abuse of the bankruptcy laws and protect jurisdictional integrity."[138] In the Third

---

[136]    *See* Interim Approval and Procedures Order, ¶ 6.

[137]    11 U.S.C. § 1129(a)(3).

[138]    *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994, 1001 (E.D. Va. 1994) (internal citations omitted).

Circuit, "good faith" requires that a "plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and the purposes of the Bankruptcy Code.'"[139] The determination of good faith should be left to the court's common sense and judgment.[140]

110.    As required by Bankruptcy Code section 1129(a)(3), the Combined Plan and Disclosure Statement has been "proposed in good faith and not by any means forbidden by law." Here, the Plan is designed to maximize stakeholder recoveries and complies with the objectives and the mechanisms of the Bankruptcy Code.[141] Moreover, the Plan is the product of arm's-length negotiations among the Debtors and their key constituencies, including the Committee, Mark Petersen, certain Prepetition Lenders, and other parties in interest.[142] The voting support demonstrates the fairness of the Combined Plan and Disclosure Statement.[143] The goal of the Combined Plan and Disclosure Statement is to maximize distributions to creditors, a legitimate and honest purpose. Finally, as set forth herein, the Plan complies with bankruptcy and applicable non-bankruptcy law. For these reasons, the Debtors submit that the Combined Plan and Disclosure Statement satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

### iv.    The Plan Provides for Court Approval of Payments for Services or Costs and Expenses (Section 1129(a)(4)).

111.    Section 1129(a)(4) of the Bankruptcy Code requires that "any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the

---

[139]    *Zenith*, 241 B.R. at 107 (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)); *see also In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("[C]ourts have held a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.'") (internal citation omitted).

[140]    *In re Okoreeh-Bahm*, 836 F.2d 1030, 1033 (6th Cir. 1988).

[141]    *See* Confirmation Declaration, ¶¶ 47-48.

[142]    *See* Confirmation Declaration, ¶¶ 47-48.

[143]    *See* Voting Tabulation Affidavit.

case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."[144] As one court in the Fourth Circuit explained, legal fees and expenses must be approved by the court.[145] As to routine legal fees and expenses that have been approved as reasonable in the first instance, "the court will ordinarily have little reason to inquire further with respect to the amount charged."[146]

112.    Article IV.M of the Plan provides that all Professional Fees must be approved by the Court as reasonable pursuant to final fee applications, and Article XII of the Plan provides that the Bankruptcy Court retains jurisdiction to "to hear and determine all requests for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code." Further, the Debtors' ordinary course professionals will be paid in the ordinary course as holders of Administrative Expense Claims consistent with the *Order (I) Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 234]. Therefore, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

> ***v.     The Debtors Disclosed All Necessary Information Regarding Post-Effective Date Governance (Section 1129(a)(5)).***

113.    Section 1129(a)(5)(A) of the Bankruptcy Code requires that the plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . . or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public

---

[144]   11 U.S.C. § 1129(a)(4).

[145]   *In re Sherwood Square Assocs.*, 107 B.R. 872, 878 (Bankr. D. M.D. 1989).

[146]   *Mabey v. Southwest Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 517 (5th Cir. 1998).

policy."[147] Section 1129(a)(5)(B) of the Bankruptcy Code further requires a plan proponent to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."[148]

114.    The Debtors have satisfied the foregoing requirements. Article VI.B of the Plan provides for the winding down of the Debtors' corporate entities. Article VI.B of the Plan further provides that "[u]pon the later of the Effective Date and the appointment of the Plan Administrator, the Debtors will have no other officers, directors or managers." In addition, as part of the Plan and/or Plan Supplement (including the Plan Administrator Agreement), the Debtors have disclosed the identity, responsibilities, and compensation of the Plan Administrator, who was appointed by the Debtors.[149] The Plan Administrator Agreement provides that the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of Holders of Claims and Interests who are entitled receive distributions pursuant to Plan.[150] Such appointment will allow the Debtors to wind down under applicable law in an orderly fashion and make distributions to creditors and are consistent with the interests of creditors and interest holders and with public policy.[151] Therefore, the requirements under Section 1129(a)(5) of the Bankruptcy Code are satisfied.

> **vi.    *The Plan Does Not Require Governmental Regulatory Approval of Rate Changes (Section 1129(a)(6)).***

115.    Section 1129(a)(6) of the Bankruptcy Code provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned

---

[147]    11 U.S.C. § 1129(a)(5)(A)(i)–(ii).

[148]    11 U.S.C. § 1129(a)(5)(B).

[149]    *See* Plan Supplement.

[150]    *See* Plan Supplement.

[151]    *See* Confirmation Declaration, ¶¶ 12, 50, 51.

on such approval." 11 U.S.C. § 1129(a)(6). The Combined Plan and Disclosure Statement does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. The Debtors submit that this provision of the Bankruptcy Code is not applicable to the Combined Plan and Disclosure Statement.

### vii.    The Plan Is in the Best Interests of Creditors and Interest Holders (Section 1129(a)(7)).

116.    Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time.[152] The "best interests" test is satisfied where the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation are less than or equal to the estimated recoveries for a holder of an impaired claim or interest under a debtor's plan of reorganization that rejects the plan.[153]

117.    Under the best-interest analysis, "the court must measure what is to be received by rejecting creditors . . . under the plan against what would be received by them in the event of liquidation under chapter 7."[154] Accordingly, the Court is required to "take into consideration the applicable rules of distribution of the estate under chapter 7, as well as the probable costs incident

---

[152]    11 U.S.C. § 1129(a)(7).

[153]    *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442, 119 S. Ct. 1411, 1416 143 L. Ed. 2d 607 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re A.H. Robins, Co. Inc.*, 880 F.2d 694, 698 (4th Cir. 1989) (stating section 1129(a)(7)(A)(ii) requires that an impaired class of claims must "receive . . . under the Plan . . . property of a value . . . that is not less than the amount that . . . [it would] receive . . . if the debtor were liquidated under chapter 7") (citing 11 U.S.C. § 1129(a)(7)(A)(ii)); *In re Piece Goods Shops Co., L.P.*, 188 B.R. 778, 791 (Bankr. M.D.N.C. 1995) ("The best interests test requires that each holder of a claim or interest in an impaired class accept the plan or, alternatively, receive or retain under the plan property having a present value at least equal to what the holder would receive or retain if the debtor were liquidated under chapter 7 on the effective date of the plan.").

[154]    *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007).

to such liquidation."[155] A plan may satisfy this requirement if the Court finds that each such nonconsenting member of an impaired class of claims would receive at least as much under the plan as it would under a chapter 7 liquidation.[156] In evaluating the liquidation analysis, the Court must remain cognizant of the fact that "[t]he hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to chapter 7."[157] Under section 1129(a)(7), the liquidation analysis applies only to non-accepting holders of impaired claims or equity interests.[158]

118. The "best interests" test is not implicated with respect to the following Classes: (a) the Unimpaired Classes, which were conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, a (b) [accepting classes], which voted in favor of the Plan. The Holders of such Claims are receiving the maximum recovery to which they are entitled under the Combined Plan and Disclosure Statement, and as a result, could not receive greater recovery under chapter 7. In contrast, the "best interests" test must be applied with respect to the following Classes: (a) the Deemed Rejecting Classes, which will not receive any distribution under the Plan and thus are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and (b) Class 1g and 1j, which voted to reject the Plan.[159]

---

[155]   *See id.*

[156]   *See, e.g.*, *In re Washington Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) (Section 1129(a)(7)(A) requires a determination whether "a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.") (quoting *In re Sierra-Cal*, 210 B.R. 168, 171–72 (Bankr. E.D. Cal. 1997)); *see also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

[157]   *See In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000) (internal citations omitted).

[158]   *See Drexel Burnham Lambert Grp.*, 138 B.R. at 761.

[159]   As noted above, the votes of Berkadia and Wells Fargo rejecting the Plan will be deemed votes to accept the Plan upon approval of the stipulations resolving their respective Objections to the Plan.

119.     To demonstrate compliance with section 1129(a)(7) of the Bankruptcy Code, the

Debtors, with the assistance of their advisors, have analyzed the probable result of a hypothetical

chapter 7 liquidation of each of the Debtors' assets (as amended, modified and/or supplemented

from time to time, the "Liquidation Analysis") [Docket No. 1399].[160] The Liquidation Analysis

demonstrates that the Plan will provide all Holders of Claims and Interests with a recovery that is

not less than what they would otherwise receive under a hypothetical chapter 7 liquidation. Subject

to the assumptions and qualifications contained therein, the Liquidation Analysis establishes that

all Holders of Claims and Interests in Impaired Classes will receive or retain property under the

Plan valued, as of the Effective Date, in an amount greater than or equal to the value of what they

would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

120.     The Debtors submit that, if each of the Chapter 11 Cases were converted to a case

under chapter 7 of the Bankruptcy Code, the value of distributions to each impaired class of Claims

or Interests or each rejecting Creditor would be less than the value of distributions under the

Combined Plan and Disclosure Statement. As detailed in the Liquidation Analysis, the assets

available for distribution under chapter 7 would be substantially less than under the Combined

Plan and Disclosure Statement. Several factors contribute to smaller distributions: (a) the Debtors

would incur costs, such as professional fees, in winding up Chapter 7 cases; (b) the Chapter 7

process would take substantially longer; and (c) a chapter 7 trustee and professionals would incur

costs in becoming familiar with the Debtors' assets and operations (in these Chapter 11 Case,

primarily the Retained Causes of Action), and likely would realize less value than the Liquidating

Trustee. Additionally, a chapter 7 liquidation could further delay payments being made to

Creditors in that, in addition to the reasons described above, Bankruptcy Rule 3002(c) provides

---

[160] The Debtors intend to file a revised Liquidation Analysis concurrently with this Confirmation Brief.

that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing Claims against the Estate. Not only could a chapter 7 liquidation delay distribution to Creditors, but it is possible that additional Claims that were not asserted in the Chapter 11 Case, or were late filed, could be filed against the Estates, further reducing Creditor recoveries.[161]

121.    The Debtors' Liquidation Analysis is sound, reasonable, and incorporates justified assumptions and estimates regarding the liquidation of the Debtors' assets and claims, such as the (a) additional costs and expenses that would be incurred by the Debtors as a result of a chapter 7 liquidation and (b) substantial increase in claims that may arise in a chapter 7 liquidation.[162] The estimates regarding the Debtors' assets and liabilities incorporated into the Liquidation Analysis are based upon the knowledge and familiarity of the Debtors' professionals and advisors with the Debtors' business, their relevant experience in chapter 11 proceedings, and their industry and financial experience.[163] Additionally, the Debtors' Liquidation Analysis is entitled to deference.[164]

122.    For similar reasons, the Plan's contemplated substantive consolidation, which also serves to reduce the administrative costs associated with administering the Plan and thereby ensure that impaired classes and rejecting creditors receive at least as much as they would receive in a case under chapter 7 is in the best interest of creditors.[165]

---

[161]    *See* Liquidation Analysis.

[162]    *See* Confirmation Declaration, ¶¶ 56, 59.

[163]    *See* Confirmation Declaration, ¶¶ 60.

[164]    *See In re Charter Commc'ns*, 419 B.R. 221, 261–62 (Bankr. S.D.N.Y. 2009) (discrediting creditors' objection to liquidation analysis because it consisted of a "largely speculative exercise of listing possible incremental recoveries and offered no reliable opinions as to the likelihood that any of these identified sources of possible extra value would ever materialize").

[165]    *See In re Am. HomePatient, Inc.*, 298 B.R. 152, 166 (Bankr. M.D. Tenn. 2003) (noting that "[w]hen substantive consolidation is ordered, there is, in effect, a determination that the circumstances of the cases warrant consolidation and that the best interests of the unsecured creditors are served by joining the assets and liabilities of two or more debtors.") (citing *In re Evans Temple Church of God in Christ & Cmty. Ctr., Inc*., 55 B.R. 976, 982 (Bankr. N.D. Ohio 1986).

123.     For the foregoing reasons, the Debtors submit that the Plan provides an equal or better potential recovery for Holders of Claims and Interests as compared to a liquidation under chapter 7 of the Bankruptcy Code. Therefore, the Plan satisfies the "best interests" of creditors test under section 1129(a)(7) of the Bankruptcy Code.

> **viii.     Section 1129(a)(8) of the Bankruptcy Code Does Not Preclude Confirmation.**

124.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either (a) has accepted the plan or (b) is not impaired by the plan. A class of claims accepts a plan if the holders of at least two-thirds in dollar amount and more than one-half in the number of claims in the class vote to accept the plan, counting only those claims whose holders actually vote to accept or reject the plan.[166] Moreover, a class that is not impaired under a plan, and each holder of a claim or interest in such class, is conclusively presumed to have accepted the plan.[167] Conversely, a class is deemed to have rejected a plan if such plan provides that the claims or interests in a class do not receive or retain any property under the plan on account of such claims or interests.[168]

125.     Here, Class 2 (Other Secured Claims) and Class 3 (Priority Claims) are Unimpaired under the Plan and therefore are deemed to have accepted the Plan. In addition, as set forth in the Voting Tabulation Affidavit, in accordance with the tabulation procedures in the Interim Approval and Procedures Order, Classes 1a, 1b, and 4 voted to accept the Plan within the meaning of section 1126 of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to all of the foregoing Classes.

---

[166]   *See* 11 U.S.C. § 1126(c).

[167]   *See* 11 U.S.C. § 1126(f).

[168]   *See* 11 U.S.C. § 1126(g).

126.     However, Class 5 (Intercompany Claims) and Class 6 (Equity Interests) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code because they will not receive any distributions or retain any property under the Plan. In addition, Classes 1g and 1j voted to reject the Plan because holders of at least two-thirds in amount and more than one-half in number of the allowed claims that voted with respect to the Plan did not vote to accept the Plan.[169] Nevertheless, the Debtors meet the requirements of section 1129(b) of the Bankruptcy Code to "cram down" such rejecting classes, as discussed more fully below.[170]

127.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan. Under the Plan, certain Classes of Claims and Interests were Unimpaired and conclusively presumed to accept the Plan and certain Classes of Claims and Interests are deemed to have rejected the Plan and, thus, were not entitled to vote.[171] While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Classes that voted to reject the Plan and Impaired Classes that were deemed to reject the Plan, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.

### ix.     *The Plan Provides for Payment in Full of All Allowed Administrative and Priority Claims (Section 1129(a)(9)).*

128.     Section 1129(a)(9) of the Bankruptcy Code requires that Claims entitled to priority under section 507(a) of the Bankruptcy Code be paid in full in Cash unless the holders thereof agree to a different treatment with respect to such Claims.[172] The Plan provides that Allowed

---

[169] As noted above, the votes of Berkadia and Wells Fargo rejecting the Plan will be deemed votes to accept the Plan upon approval of the stipulations resolving their respective Objections to the Plan.

[170]    *See* Confirmation Declaration, ¶¶ 62, 72-83.

[171]    *See* Plan, Art. VII.B.4.

[172]    11 U.S.C. § 1129(a)(9).

Administrative Claims and Allowed Priority Tax Claims will be paid in full in Cash on or as soon as reasonably practicable after the Effective Date or, if not then due or Allowed, on or as soon as reasonably practicable after the date such Claim is due or becomes Allowed, or otherwise in the ordinary course of business or as agreed with the relevant Holder of such Claims, all consistent with sections 1129(a)(9)(A)-(C) of the Bankruptcy Code.

> **x.** **At Least One Impaired Class of Claims That Was Entitled to Vote Has Accepted the Plan (Section 1129(a)(10)).**

129.    Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims under a plan, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider."[173] As evidenced by the Voting Tabulation Affidavit, Class 4 (General Unsecured Claims) is Impaired and voted to accept the Plan, not counting the votes of any insider.[174] Furthermore, because the Plan contemplates the substantive consolidation of the Debtors and their Estates, the determination of acceptance on a "per plan" rather than a "per debtor" basis is appropriate.[175] Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

> **xi.** **The Plan Is Feasible (Section 1129(a)(11)).**

130.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[176] Finding "feasibility" of a chapter 11 plan

---

[173]    11 U.S.C. § 1129(a)(10).

[174]    *See* Voting Tabulation Affidavit.

[175]    *See, e.g., In re ADPT DFW Holdings, LLC*, 574 B.R. 87, 107 (Bankr. N.D. Tex. 2017) ("This court, having approved the substantive consolidation proposed by the Debtors, concludes that it was appropriate for the Debtors to have tabulated ballots on a consolidated basis."); *Tribune I*, 464 B.R. at 183 (acceptance on a "per debtor" basis is only necessary "absent substantive consolidation or consent…").

[176]    11 U.S.C. § 1129(a)(11).

does not require a guarantee of success by the debtor.[177] Rather, a debtor must demonstrate only a reasonable assurance of success.[178] There is a relatively low threshold of proof necessary to satisfy the feasibility requirement.[179] Bankruptcy courts in this District have approved plans that were subject to uncertain and contingent future events.[180]

131.    As set forth in the Confirmation Declaration, while the Plan provides for the liquidation of the Debtors, the Debtors estimate that they will have sufficient available cash to ensure that holders of Allowed Claims under the Plan receive the distributions required under the Plan and the Debtors otherwise satisfy their financial obligations under the Plan.[181] And specifically, the Debtors believe that such funding will be available based on settlements contemplated by the Plan and/or negotiated in advance of the Combined Hearing as part of the Debtors' efforts to obtain a global settlement and avoid conversion of these Chapter 11 Cases to case under chapter 7.[182] In addition, based on settlements entered as part of the Plan the Debtors estimate that the Plan Administrator and Liquidating Trustee will have sufficient funding to fulfill their post-Effective Date responsibilities, including the wind down of the Debtors' Estates and making distributions under the Plan.

---

[177] *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990); *In re Kaplan*, 104 F.3d 589, 597 (3d Cir. 1997).

[178] *Tribune I*, 464 B.R. at 185 (citing *In re Wash. Mut., Inc.*, 461 B.R. 200, 252 (Bankr. D. Del. 2011) (quoting *In re Orlando Invs. LP*, 103 B.R. 593, 600 (Bankr. E.D. Pa. 1989))); *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).

[179] *Tribune I*, 464 B.R. at185 (quoting *In re Briscoe Enters, Ltd.*, 994 F.2d 1160, 1166 (5th Cir. 1993)).

[180] *See, e.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. at 298–99 (finding plan feasible despite being conditioned on regulatory approval to operate a casino); *In re Wash. Mut. Inc.*, 461 B.R. at 252 (finding plan feasible despite lack of regulatory approval for securities exemption); Jan. 15, 2015 Hr'g Tr. 88–89, *In re Seegrid Corp.*, No. 14-12391 (BLS) (Bankr. D. Del.) (finding, due to the confidence of the debtor's witnesses, that a startup company's Plan was feasible despite no evidence on balance sheet of ability to repay unsecured debt).

[181] *See* Confirmation Declaration, ¶¶ 65-69.

[182] *See* Confirmation Declaration, ¶¶ 65-69.

132.    Post-confirmation, the completion of the Debtors' liquidation and wind-down is proposed in the Plan and no further financial reorganization of the Debtors is contemplated.[183] The conditions precedent to the Effective Date are reasonably likely to be satisfied.[184] The Debtors anticipate having sufficient funds and resources available as of the Effective Date to consummate the Combined Plan and Disclosure Statement.[185] Under these circumstances, because the Plan contemplates the liquidation and wind-down of the Debtors, feasibility has been met.[186] Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

> ### xii.    The Plan Provides for Payment of All Fees Under 28 U.S.C. § 1930 (Section 1129(a)(12)).

133.    Section 1129(a)(12) of the Bankruptcy Code requires that certain fees listed in 28 U.S.C. § 1930, determined by the court at the hearing on confirmation of a plan, be paid or that provisions be made for their payment.[187] Bankruptcy Code section 507 provides that such fees are afforded priority as administrative expenses.[188] Article IV.K  of the Plan provides that the Debtors shall pay all fees arising under 28 U.S.C. § 1930 (and, to the extent applicable, interest thereon) as a condition to Confirmation.[189] Thus, the Plan satisfies the requirements of section 1129(a)(12).

---

[183]  *See* Confirmation Declaration, ¶ 66.

[184]  *See* Confirmation Declaration, ¶¶ 65-69.

[185]  *See* Confirmation Declaration, ¶¶ 65-69.

[186]  *See In re Credentia Corp.*, Case No. 10-10926 (BLS), 2010 WL 3313383, at *9 (Bankr. D. Del. May 26, 2010) ("The Plan provides for a workable scheme of liquidation and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code."); *see also In re Revco D.S., Inc.*, 131 B.R. 615, 622 (Bankr. N.D. Ohio 1990) (holding that "Section 1129(a)(11) is satisfied as the plan provides that the property of [the] Debtors shall be liquidated").

[187]  11 U.S.C. § 1129(a)(12).

[188]  11 U.S.C. § 507(a)(2).

[189]  *See* Confirmation Declaration, ¶ 49.

### xiii.    The Sections 1129(a)(13)–(16) of the Bankruptcy Code Are Not Applicable to the Plan.

134.    Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation, after the effective date, of all retiree benefits.[190] The Debtors are not subject to any such benefit obligations; therefore, this provision is not applicable.

135.    Bankruptcy Code section 1129(a)(14) relates to the payment of domestic support obligations. The Debtors are not subject to any domestic support obligations; therefore, this provision is not applicable.[191]

136.    Bankruptcy Code section 1129(a)(15) only applies to cases where the debtor is an individual.[192] The Debtors are not individuals; therefore, this provision does not apply to the Combined Plan and Disclosure Statement.

137.    Bankruptcy Code section 1129(a)(16) applies to transfers of property by a corporation or trust that is not money, business, or commercial corporation or trust.[193] The Debtors are businesses or commercial corporations. Therefore, Bankruptcy Code section 1129(a)(16) does not apply.

### xiv.    The Plan Meets the Requirements for Cramdown (Section 1129(b)).

138.    Section 1129(b) of the Bankruptcy Code provides that when a plan meets the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8), the plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[194] To confirm a plan that has not been accepted by all impaired classes (thereby failing

---

[190]   11 U.S.C. §§ 1129(a)(13); 1114.

[191]   11 U.S.C. § 1129(a)(14).

[192]   11 U.S.C. § 1129(a)(15).

[193]   11 U.S.C. § 1129(a)(16).

[194]   *See* 11 U.S.C. § 1129(b).

to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[195] By its express terms, section 1129(b) of the Bankruptcy Code is only applicable to a class of creditors or equity holders that rejects a plan.[196]

139.    "Cram down" is only relevant to Classes 1g (Berkadia Claim) and 1j (Wells Fargo Claim), which voted to reject the Plan, and Classes 5 (Intercompany Claims) and 6 (Equity Interests), which have been deemed under certain circumstances to reject the Plan.[197] The Plan may be confirmed as to each of these Classes pursuant to the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

a.    The Plan Does Not Discriminate Unfairly with Respect to the Impaired Rejecting Classes.

140.    Section 1129(b) of the Bankruptcy Code does not prohibit differences in treatment between the classes. On the contrary, the very premise of any chapter 11 plan with multiple impaired classes is to differentiate among classes. Section 1129(b) of the Bankruptcy Code thus permits a debtor's chapter 11 plan to provide for unequal treatment of separately classified creditors with similar legal rights, so long as the discriminatory treatment of the impaired dissenting class is not "unfair."[198] The unfair discrimination standard of section 1129(b)(1) of the Bankruptcy Code ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other

---

[195]  *See* 11 U.S.C. § 1129(b)(1); *Zenith*, 241 B.R. at 105; *Johns-Manville Corp.*, 843 F.2d at 650.

[196]  *See* 11 U.S.C. § 1129(b) ("[T]he court . . . shall confirm the plan notwithstanding the requirements of [section 1129(a)(8)] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.").

[197]  As noted above, the votes of Berkadia and Wells Fargo rejecting the Plan will be deemed votes to accept the Plan upon approval of the stipulations resolving their respective Objections to the Plan.

[198]  *See Mercury Cap. Corp. v. Milford Conn. Assocs.*, L.P., 354 B.R. 1, 10 (D. Conn. 2006); *see also* Confirmation Declaration, ¶¶ 73-78.

similarly situated classes.[199] Accordingly, as between two classes of claims or two classes of interests, there is no unfair discrimination if (a) the classes are comprised of dissimilar claims or interests,[200] or (b) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment.[201]

141.    To determine whether "unfair discrimination" exists, courts look to the facts and circumstances of the particular case.[202] A plan unfairly discriminates when it treats similarly situated classes materially differently without a compelling justification.[203] The requirement that there be no unfair discrimination ensures that similarly situated creditors and interest holders do

---

[199]    *See In re Armstrong World Indus., Inc*., 348 B.R. 111, 121 (D. Del. 2006) (noting that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination.") (citing *In re Lernout & Hauspie Speech Prod., N.V.*, 301 B.R. 651, 660 (Bankr. D. Del. 2003) *aff'd*, 308 B.R. 672 (D. Del. 2004)); *In re WorldCom, Inc*., No. 02-13533 (AJG), 2003 WL 23861928, at *59 (Bankr. S.D.N.Y. Oct. 31, 2003) (citing *In re Buttonwood Partners, Ltd*., 111 B.R 57, 63 (Bankr. S.D.N.Y. 1990)); *In re Johns-Manville Corp*., 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, *In re Johns-Manville Corp*., 78 B.R. 407 (S.D.N.Y. 1986), *aff'd sub nom. Kane v. Johns-Manville Corp*., 843 F.2d 636 (2d Cir. 1988).

[200]    *See, e.g.*, *In re Johns-Manville Corp*., 68 B.R. at 636.

[201]    *See, e.g.*, *In re Drexel Burnham Lambert Grp*.,138 B.R. at 715 (separate classification and treatment was rational where members of each class "possesse[d] different legal rights"), *aff'd sub nom. Lambert Brussels Assocs., L.P. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 140 B.R. 347 (S.D.N.Y. 1992); *In re Jersey City Med. Ctr*., 817 F.2d 1055, 1061 (3d Cir. 1987) (approving classification of general unsecured creditors into different classes with different legal bases: doctors' indemnification claims, medical malpractice claims, employee benefit claims and trade claims); *see also In re Abeinsa Holding, Inc*., 562 B.R. 265, 274–75 (Bankr. D. Del. 2016) (rejecting challenge to separate classification in part on the basis that, even without the challenged classification, the voting results would not change); *In re Nuverra Envtl. Sols., Inc*. 590 B.R. 75, 98–99 (D. Del. 2018) (district court dismissing claimants' appeal, determining the overwhelming acceptance within the claimant's class rendered argument moot).

[202]    *See In re 203 N. LaSalle St. Ltd. P'ship*., 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *see also In re Bowles*, 48 B.R. 502, 507 (Bankr. E.D. Va. 1985) ("[W]hether or not a particular plan does so [unfairly] discriminate is to be determined on a case-by-case basis."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

[203]    *In re Coram Healthcare Corp*., 315 B.R. 321, 349 (Bankr. D. Del. 2004) (collecting cases).

not receive materially different treatment under a proposed plan without a compelling justification.[204]

142.    The Plan does not discriminate unfairly with respect to any Class. There is no unfair discrimination among the Classes that voted to accept the Plan, on the one hand, and the Classes of Claims that voted to reject the Plan or are Deemed Rejecting Classes. Each subclass of Class 1 (Prepetition Lender Claims) consists of the Claims held by a Prepetition Lenders, and each subclass relates to a distinct Claim that subject to its Prepetition Loan Facilities and secured by its own collateral. By contrast, Class 4 (General Unsecured Claims) consists of a broad array of Creditors, which generally have different rights and obligations governing their Claims but whose Claims share a common general unsecured priority. Class 5 (Intercompany Claims) is legally distinct from both of these Classes, as the Intercompany Claims consist of Claims held by and among the Debtors against other Debtors. Finally, Class 6 (Equity Interests) consists of all Interests in the Debtors. Class 6 is legally distinct in nature from all other Classes. All Equity Interests in the Debtors are classified together and afforded the same treatment under the Plan. Similarly, all Intercompany Claims are classified together and afforded the same treatment under the Plan. These Classes represent legally distinct Claims and Interests.

143.    Accordingly, there is no unfair discrimination among the Classes and there is a reasonable basis for the disparate treatment among those Classes. With respect to the rejecting

---

[204] *See In re Health Diagnostic Lab'y, Inc.*, 551 B.R. 218, 230 (Bankr. E.D. Va. 2016) (explaining that "[a] plan unfairly discriminates if similar claims are treated differently without a reasonable basis for the disparate treatment, or a class of claims receive consideration of a value that is greater than the amount of its allowed claims."); s*ee also In re Idearc Inc.*, 423 B.R. 138, 171 (Bankr. N.D. Tex. 2009) ("[T]he unfair discrimination standard prevents creditors and equity interest holders with similar legal rights from receiving materially different treatment under a proposed plan without compelling justifications for doing so."); *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship)*, 115 F.3d 650, 654 (9th Cir. 1997); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

Classes, there is no unfair discrimination because there are no other Classes containing creditors with Claims or Interests similar to those in such Classes and each Class contains Claims and Interests that are similarly situated. Accordingly, the Plan does not discriminate unfairly against such Classes. Thus, the Plan does not "discriminate unfairly" with respect to any impaired Classes of Claims or Interests.

<strong>b.   <span style="text-decoration:underline;">The Plan Is Fair and Equitable with Respect to the Rejecting Classes.</span></strong>

144.    For a plan to be "fair and equitable" with respect to an impaired class of unsecured claims or interests that rejects a plan (or is deemed to reject a plan), the plan must follow the "absolute priority rule" and satisfy the requirements of section 1129(b)(2) of the Bankruptcy Code.[205] Generally, this requires that the impaired rejecting class of claims or interests either be paid in full or that any class junior to the impaired rejecting class not receive any distribution under a plan on account of its junior claim or interest.[206] In addition, for a plan to be "fair and equitable," no class of claims or interests senior to the impaired dissenting class is permitted to receive more than the full value of its senior claims or interests under the plan.[207]

145.    Distributions under the Plan are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the rule of absolute priority. No Class of Claims or Interests junior to such Classes will receive or retain any property under the Plan. In addition, no

---

[205]   *See* 11 U.S.C. §§ 1129(b)(2)(B)(ii), (b)(2)(C)(ii); *see also Bank of Am. Nat'l Tr. & Sav. Ass'n*, 526 U.S. at 441–42. The "fair and equitable" requirement may also be met: (a) with respect to a dissenting impaired class of unsecured claims if the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, see 11 U.S.C. § 1129(b)(2)(B)(i); and (b) with respect to a dissenting impaired class of interests, if the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, and fixed redemption price to which such holder is entitled, or the value of such interest. *See* 11 U.S.C. § 1129(b)(2)(C)(i). However, such subsections need not be invoked in this instance because the Plan meets other applicable requirements of the "fair and equitable" standard as set forth herein.

[206]   *See* 11 U.S.C. § 1129(b)(2)(C)(i).

[207]   *See In re Chemtura Corp.*, 439 B.R. 561, 592 (Bankr. S.D.N.Y. 2010).

Class of Claims or Interests will receive or retain property under the Plan that has a value greater than 100%, nor has any party asserted as such. Accordingly, the Plan satisfies the requirements of sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) and, therefore, is fair and equitable with respect to rejecting classes and Classes 5 and 6.[208]

146.    Because the Plan does not discriminate unfairly and is fair and equitable, the Plan satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code and may be confirmed.

### xv.    Only One Plan to Be Confirmed (Section 1129(c)).

147.    Section 1129(c) of the Bankruptcy Code provides that the bankruptcy court may confirm only one plan.[209] Because the Plan is the only plan before the Court, section 1129(c) of the Bankruptcy Code is satisfied.

### xvi.    The Principal Purpose of the Plan Is Not Tax Avoidance (Section 1129(d)).

148.    Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities Act of 1933. The Plan has been proposed in good faith and not for the avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933. Moreover, no federal, state or local government unit, or any other party has raised any objection to the Plan on these or any other grounds, and all Priority Tax Claims will be paid in full pursuant to the Plan. The Debtors therefore submit that the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

---

[208]    *See* Confirmation Declaration, ¶¶ 79-83.

[209]    *See* 11 U.S.C. § 1129(c).

### xvii.   *Section 1129(e) Does Not Apply to the Plan.*

149.   The provisions of section 1129(e) of the Bankruptcy Code apply only to a "small business case." These Chapter 11 Cases are not "small business cases" and, accordingly, section 1129(e) of the Bankruptcy Code has no application to the Plan.

## III.   RE-SOLICITATION OF THE PLAN WAS NOT REQUIRED.

150.   Section 1127(a) of the Bankruptcy Code provides that the proponent of a plan may modify such plan at any time prior to confirmation, *provided that* such plan, as modified, meets the requirement of sections 1122 and 1123 of the Bankruptcy Code.[210] Section 1127(c) of the Bankruptcy Code further provides that the proponent of plan modification shall comply with the disclosure requirements of section 1125 of the Bankruptcy Code with respect to the plan, as modified.[211]

151.   The filing of additional disclosure and re-solicitation is only necessary if the plan is materially modified in a manner that has an adverse impact on creditors. The legislative history of section 1127(c) of the Bankruptcy Code states that "if the modification were sufficiently minor, the court might determine that additional disclosure was not required under the circumstances."[212] Similarly, Bankruptcy Rule 3019 provides that if the court finds that a proposed modification does not adversely change the treatment of a creditor who has not accepted the modification in writing, the modification shall be deemed accepted by all creditors who have previously accepted the plan.[213] Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed

---

[210]   *See* 11 U.S.C. § 1127(a).

[211]   *See* 11 U.S.C. § 1127(c).

[212]   H.R. Rep. No. 95-595 at 411.

[213]   *See* Fed. R. Bankr. P. 3019.

modification is not material or does not adversely affect the way creditors and stakeholders are treated.[214]

152.    A leading case interpreting section 1127(c) and Rule 3019 is *In re American Solar King Corp.*[215] As established therein, a court "[must] look[] to whether the modification 'materially' impacts a claimant's treatment to determine whether the change is sufficiently adverse to require resolicitation."[216] "The severity of the modification need not be such as would motivate a claimant to change their [sic] vote—only that they would be apt to reconsider acceptance."[217] Anything less, according to the *American Solar King* court, would be so insignificant as to represent a *de facto* satisfaction of all section 1125 disclosure requirements. The court reasoned that:

> [b]allots solicited with the original disclosure statement previously approved by the court will still be valid for the modified plan, because that disclosure statement is presumed already to contain 'adequate information' to cover minor modifications . . . . Additional disclosure would serve no purpose and would therefore not be required. The goal after all is consensual plans. Requiring such a formalistic step [as additional disclosure] in the face of a merely technical negative impact heightens the risk of plan failure without satisfying any countervailing public policy. [Rule 3019] permits modifications that might technically have a negative impact on claimants where the modifications are not substantial. Thus, if a modification does not "materially" impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.[218]

---

[214]    *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or re-solicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D.N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

[215]    *See In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).

[216]    *In re Mesa Air Grp., Inc.*, No. 10-10018 (MG), 2011 WL 320466, at *6 (Bankr. S.D.N.Y. Jan. 20, 2011) (citing *Am. Solar King Corp.*, 90 B.R. at 826).

[217]    *See Am. Solar King Corp.*, 90 B.R. at 824.

[218]    *Id.* at 824–26.

153.    Courts have explicitly held that additional disclosure is unnecessary where a modification did not materially and adversely affect the plan treatment of any creditor, or where the modification has only affected the interests of one creditor.[219] Plan modifications that maintain or improve the recovery for affected creditors are not "adverse" or "material" modifications and therefore do not require re-solicitation.[220]

154.    In these Chapter 11 Cases, the Debtors' proposed modifications are included the proposed Confirmation Order (including the stipulations attached as exhibits thereto), which is filed concurrently herewith. Specifically, the Confirmation Order and stipulations address the Objections and/or Informal Comments received by the Debtors.

155.    In this case, the modifications embodied in the Confirmation Order do not require re-solicitation of votes from previously accepting creditors because (a) they do not result in a material adverse change in the treatment of creditors that would not cause a claimant to change its vote to accept or reject the plan,[221] and/or (b) they are otherwise immaterial.[222] To the contrary, the proposed modifications have the effect of consensually resolving Objections and Informal Comments to the Plan, increasing the guaranteed liquidity available for the administration of the

---

[219]    *Nat'l Union Fire Ins. v. BSA (In re BSA)*, 650 B.R. 87, 168 (D. Del. 2023) (citing *Am. Solar King Corp.*, 90 B.R. at 824); *Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R 573, 596 (Bankr. D. Del. 2002); *In re Century Glove, Inc.*, No. 90-400 (SLR), 1993 WL 239489, at *12 (D. Del. Feb. 10, 1993).

[220]    *See In re Mangia Pizza Invs., LP*, 480 B.R. 669, 689 (Bankr. W.D. Tex. 2012) (stating that there were no material modifications to the modified plan because the "amounts payable under the [] plan are all better than or equal to the plan as solicited"); *In re Dow Corning Corp.*, 237 B.R. 374, 378 (E.D. Mich. 1999) (acknowledging that no re-solicitation was required when sufficient claim holders in the unsecured creditors class agreed to the plan modifications pursuant to a settlement such that the class tipped from a rejecting class to an accepting class); *In re Am. Solar King Corp.*, 90 B.R. at 824 (holding that a 1% dilution in value as a result of a plan modification did not warrant re-solicitation); *In re Mount Vernon Plaza Comm. Urban Redev. Corp. I*, 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987) (permitting modification without re-solicitation because the modification does not "negatively affect[] the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest"); *In re Century Glove, Inc.*, 1993 WL 239489, at *6 n.9.

[221]    *See In re Boylan Int'l, Ltd.*, 452 B.R. 43, 51 (Bankr. S.D.N.Y 2011) ("A modification which is not 'material' is by definition one which will not affect an investor's voting decision. Additional disclosure would serve no purpose and would therefore not be required.") (quoting *Am. Solar King Corp.*, 90 B.R. at 824 n.28).

[222]    *See* Confirmation Declaration, ¶¶ 93-96.

Plan and distributions to creditors, and the waiver of certain claims against the Debtors, thereby increasing the pro rata distribution for remaining claims. Accordingly, the modifications to the Combined Plan and Disclosure Statement comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Therefore, the Debtors submit that no additional solicitation or disclosure is required on account of the modifications, and that such modifications should be deemed accepted by all Creditors that previously accepted the Plan.

## IV.   GOOD CAUSE EXISTS TO WAIVE THE STAY OF THE CONFIRMATION ORDER.

156.   Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."[223] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code. Each rule also permits modification of the imposed stay upon court order. The purpose of Bankruptcy Rule 3020(e) is to allow parties in interest time to appeal a confirmation order before such an appeal is moot.[224]

157.   The Debtors submit that good cause exists for waiving and eliminating any stay of the proposed Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the proposed Confirmation Order will be effective immediately upon its entry. Most of the impaired creditors/classes that voted on the Plan have voted in favor of the Plan and would not be prejudiced by a waiver of the stay. Moreover, allowing a waiver of any stay will allow the Combined Plan and Disclosure Statement to become effective expeditiously, which is a substantial benefit to the Debtors' Estates. As reflected by the Debtors' recently filed motion to dismiss these Chapter 11

---

[223]   Fed. R. Bankr. P. 3020(e).

[224]   *See* Fed. R. Bankr. P. 3020(e), Adv. Comm. Notes, 1999 Amend.

Cases if the Plan is not confirmed [Docket Nos. 1629 & 1630], time is of the essence. Thus, all creditors and parties-in-interest will benefit from the immediate transfer of the estates to the Post-Effective Date Debtors, which will expedite distributions to creditors. Therefore, the Debtors submit that good cause exists to waive the requirements of Bankruptcy Rule 3020(e).

158.    As set forth above, given the Debtors' extensive efforts to provide the parties in each of the Voting Classes, as well as their other stakeholders, a full measure of adequate notice, staying the Confirmation Order will not serve any due-process-related ends. Accordingly, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the proposed Confirmation Order may be effective immediately upon its entry.

[*Remainder of Page Intentionally Left Blank*]

For all the foregoing reasons, the Debtors respectfully request that the Court enter the Confirmation Order approving the Disclosure Statement on a final basis, confirming the Plan and overruling all objections thereto, to the extent not previously resolved.

Dated:    June 6, 2025
Wilmington, Delaware

Respectfully submitted,

**YOUNG    CONAWAY    STARGATT    &
TAYLOR, LLP**

/s/  Shella Borovinskaya
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Carol E. Thompson (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        amagaziner@ycst.com
            sborovinskaya@ycst.com
            cthompson@ycst.com

and

**WINSTON & STRAWN LLP**
Daniel J. McGuire (admitted *pro hac vice*)
Gregory M. Gartland (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, IL 60601
Telephone:    (312) 558-5600
Facsimile:    (312) 558-5700
Email:        dmcguire@winston.com
Email:        ggartland@winston.com

and

Carrie V. Hardman (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:    (212) 294-6700
Facsimile:    (212) 294-4700
Email:        chardman@winston.com

*Counsel for the Debtors and Debtors in
Possession*

# EXHIBIT A

## Confirmation Objection Chart

**UNRESOLVED FORMAL CONFIRMATION OBJECTIONS**[1]

| Party | Docket No. | Objection | Debtors' Response to Objection |
|---|---|---|---|
| UST | 1609 | 1. UST reserves argument on whether there is enough evidence to support the elements required for substantive consolidation. [UST Objection, ¶¶ 12-15] | 1. Wells Fargo and Mark Petersen, the sole economic parties in interest that objected to substantive consolidation, have withdrawn their Objections pursuant to the stipulations with the Debtors. [Exhibits C and E to the Confirmation Order]. The Debtors submit that with this objection having been resolved, the substantive consolidation is consensual and permitted according to Third Circuit law. To the extent the Court requires further legal support, see Confirmation Brief. |
|  |  | 2. Feasibility: The Debtors are behind on filing their monthly operating reports ("MORs") (which is also grounds for conversion or dismissal) and without current financial information, creditors are unable to properly assess feasibility. The UST believes that the Debtors have little unrestricted cash to fund required payment on Effective Date. [UST Objection, ¶¶ 16-19] | 2. The Debtors have filed all outstanding MORs through April 2025. The Debtors' updated Liquidation Analysis, to be filed in advance of the Combined Hearing, and the MORs provide sufficient information to assess feasibility and the Debtors' ability to pay Administrative Claims. |
|  |  | 3. Fees: The Plan does not properly provide for post-confirmation payment of quarterly fees. In addition, Article XVII.C of the Plan violates 28 U.S.C. § 1930(a)(6) because it fails to include | 3. The Debtors have included language in the Confirmation Order that addresses the UST's concerns. |

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement, the Interim Approval and Procedures Order, or the *Debtors' (I) Memorandum of Law in Support of Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation and (II) Reply to Objections Thereto* (the "Confirmation Brief").

| Party | Docket No. | Objection | Debtors' Response to Objection |
|---|---|---|---|
| | | language specifying that the Liquidating Trustee and Plan Administrator shall file separate UST Form 11-PCR reports and pay quarterly fees after the Effective Date. Finally, the distribution or payment of proceeds from non-cash assets (by the Liquidating Trustee or Plan Administrator) should be included in the calculation of disbursements for the purpose of paying the UST fees. [UST Objection, ¶¶ 20-32] | |
| Robert Gregory Wilson | 1612 | 1. Wilson, a former executive of the Debtors, objects to the inclusion of a certain AXA Equitable life insurance policy (the "AXA Life Insurance Policy") in the assets that will be transferred to the Liquidating Trust upon Confirmation. Although the AXA Life Insurance Policy is held in the name of the Debtors, Wilson argues that he is the intended beneficiary of the policy, that this was part of his compensation package when he was employed as an executive with the Debtors, that he has the "legal or equitable right to compel the transfer" of the policy to himself, and that Confirmation of the Plan should be conditioned on such transfer. [Wilson Objection, ¶¶ 2, 4, 5-6] | 1. The Debtors have reviewed their records and believe the life insurance policy was part of Wilson's compensation package. [Confirmation Declaration, ¶ 91]. However, the Debtors were unable to transfer the policy to Wilson during the chapter 11 proceedings. Accordingly, the Debtors propose to include language in the Confirmation Order preserving all parties' rights on this issue, so that the parties can move forward with Confirmation but ensure that the issue will be addressed by the post-Confirmation entities. |

| Party | Docket No. | Objection | Debtors' Response to Objection |
|---|---|---|---|
| Hartford Fire Insurance Company | 1603 | 1. The Confirmation Order should contain a provision stating that, if any obligee or resident submits a trust fund claim as a result of any failure on the part of the Debtors to turn over trust funds, or because the Debtors properly failed to administer such fund prior to the sale of such facility, then the Plan Administrator should pay any such valid trust fund claim to the resident or to Hartford if Hartford pays the claim. [Hartford Objection, ¶10.] | 1. The Debtors do not believe that the inclusion of such a provision in the Confirmation Order is necessary. The Debtors have already transferred all the resident trust funds to the new operators. [Confirmation Declaration, ¶ 90.] The Debtors' dual bar date process for Administrative Claims, set May 21, 2025, as the Administrative Expense Bar Date for Administrative Expense Claims arising on or before the date on which the Interim Approval and Procedures Order. The Plan was served on residents of the Debtors' facilities, the residents therefore received notice, and no such Administrative Expense Claims have been filed by residents. Accordingly, Hartford's concern on this issue is entirely speculative, and it is not necessary to add the requested language to the Confirmation Order. |
| | | 2. The Confirmation Order "should provide that the Debtors shall preserve any books and records to the extent that the books and records related to claims that have been brought or that may be brought against the Bonds." Hartford Obj. ¶13. Hartford further requests the addition of language to the Confirmation Order providing that Hartford should have access to "any and all books and records" relating to the Bonds, that Hartford should receive thirty (30) days' notice of any planned destruction or abandonment | 2. The Debtors do not believe that including such language is appropriate because such language is too broad, vague, and speculative. Further, the Plan's injunction in Article XI.C, which enjoins parties from accessing the Debtors' books and records following the Effective Date, is a standard provision, and Hartford's speculative concern does not rise to a level necessary to alter it. |

| Party | Docket No. | Objection | Debtors' Response to Objection |
|-------|------------|-----------|-------------------------------|
| | | of such books and records, and that, if a claim is asserted against any Bond, Hartford should have access to, and should have the right to copy, any books and records related to such claim. [Hartford Objection, ¶¶ 13-14.]<br><br>3.  Hartford and its bond beneficiaries should be exempted from the Plan injunction's prohibition on assertions of setoff rights in Art. XI.C(iv), and the Confirmation Order should include language preserving Hartford's potential setoff rights. [Hartford Objection, ¶14.] | 3.  The Debtors have agreed to include Hartford's proposed language on this issue in the Confirmation Order, and believe this issue is therefore resolved. The Debtors reserve all rights on the issue of whether Hartford actually has setoff rights. |