**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| **In re** | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC** *et al.*, | Case No. 24-10443 (TMH) |
| **Debtors.**[1] | Jointly Administered |
|  | **Re: Dkt. No. 1410** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTORS' COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION, AND GRANTING RELATED RELIEF**

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") having:

a.  commenced, on March 20, 2024 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.  continued to remain in possession of their property and continue to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on March 25, 2025, the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1365];

d.  filed, on April 21, 2025, a further revised version of the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1410] a copy of which is attached hereto as **Exhibit A** (including all exhibits and supplements thereto and as may be amended, supplemented, or modified,

---

[1]   The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC P.O. Box 620, Deavan, IL 61734. Due to the large number of Debtors in these Chapter 11 Cases, whose cases are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information is available on a website of the Debtors' Claims and Noticing Agent at www.kccllc.net/Petersen.

the "Plan," the "Disclosure Statement," or the "Combined Plan and Disclosure Statement");[2]

e.      obtained, on April 21, 2025, entry of the *Order (I) Approving the Combined Plan and Disclosure Statement on an Interim Basis for Solicitation Purposes Only; (II) Establishing the Deadline for Administrative Expenses Claims; (III) Establishing Solicitation and Voting Procedures; (IV) Approving the form of Ballots and Solicitation Materials; (V) Establishing the Voting Record Date; (VI) Fixing the Date, Time, and Place for the Combined Hearing and the Deadlines for Filing Objections Thereto; and (VII) Granting Related Relief* [Docket No. 1413] (the "Interim Approval and Procedures Order"), (i) approving the Disclosure Statement on an interim basis, (ii) scheduling a combined hearing to approve the Disclosure Statement on a final basis and to confirm the Plan (the "Combined Hearing"), and (iii) establishing procedures for solicitation of the Plan and tabulation of votes to accept or reject the Plan;

f.      caused the approved solicitation package (the "Solicitation Package"), the approved non-voting package (the "Non-Voting Package"), and notice of the Combined Hearing (the "Combined Hearing Notice") to be distributed beginning on or about April 21, 2025, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Interim Approval and Procedures Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 1582] (the "Solicitation Affidavit");

g.      filed on May 9, 2025, the *Notice of Filing of Plan Supplement for the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1562] (including all exhibits and supplements thereto and as may be amended, supplemented, or modified, the "Plan Supplement");

h.      filed, on June 6, 2025, the *Declaration of Andres A. Estrada with Respect to Solicitation and the Tabulation of Votes on the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation*, filed contemporaneously herewith (the "Voting Report");

i.      filed, on June 6, 2025, the *Notice of Filing of Amended Plan Supplement for the Debtors' Combined Disclosure Statement and Chapter 11 Plan or Liquidation*, filed contemporaneously herewith;

j.      filed, on June 6, 2025, *Debtors' (I) Memorandum of Law in Support of Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation and (II) Reply to Objections Thereto*, filed contemporaneously herewith;

---

[2]      Except as otherwise stated herein, capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Combined Plan and Disclosure Statement, attached hereto as **Exhibit A**.

k.     filed, on June 6, 2025, the *Declaration of David R. Campbell as Chief Restructuring Officer of the Debtors in Support of Confirmation of the Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation*, filed contemporaneously herewith; and

this Bankruptcy Court having:

a.     entered the Interim Approval and Procedures Order on April 21, 2025;

b.     set May 23, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for filing and serving objections to final approval of the Disclosure Statement and confirmation of the Plan (the "Combined Plan and Disclosure Statement Objection Deadline");

c.     set May 16, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline for voting on the Plan (the "Voting Deadline");

d.     set May 30, 2025, at 10:00 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Combined Hearing;

e.     adjourned the Combined hearing until June 10, 2025, at 10:00 a.m. (prevailing Easter Time);

f.     considered the Plan, the Plan Supplement, the Solicitation Affidavit, the Voting Report, and all pleadings, exhibits, declarations, affidavits, statements, responses, and comments regarding the Combined Plan and Disclosure Statement, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

g.     held the Combined Hearing on June 10, 2025;

h.     heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and confirmation of the Plan;

i.     considered all oral representations, live testimony, proffered testimony, exhibits, documents, filings and other evidence presented at the Combined Hearing; and

j.     made rulings on the record at the Combined Hearing, which are incorporated in this Confirmation Order (as defined below).

NOW, THEREFORE, this Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement and confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and this

Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and confirmation of the Plan and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, this Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders (collectively, this "Order" or "Confirmation Order"):

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY FOUND, DETERMINED, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.      Findings and Conclusions**

1.      The findings and conclusions set forth herein and in the record of the Combined Hearing constitute this Bankruptcy Court's findings of fact and conclusions of law under rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  Each finding of fact set forth or incorporated in this Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated in this Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.      Jurisdiction and Venue**

2.      Venue in this Bankruptcy Court was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  Approval of the Disclosure Statement and confirmation of the Plan are core proceedings under 28 U.S.C. § 157(b)(2).  This Bankruptcy Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  This Bankruptcy Court has jurisdiction to determine whether the Disclosure Statement and Plan comply with the

applicable provisions of this Bankruptcy Code and should be approved and confirmed, respectively, and to enter a final order with respect thereto.

**C.      Commencement and Joint Administration of these Chapter 11 Cases**

3.      On the Petition Date, the Debtors commenced these Chapter 11 Cases, and this Bankruptcy Court entered an order authorizing the joint administration of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b) [Docket No. 79].  The Debtors have managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**D.      Committee Appointment**

4.      On April 9, 2024, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [Docket No. 131].

**E.      Judicial Notice**

5.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of this Bankruptcy Court, including, but not limited to, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced, and/or presented at the various hearings held before this Bankruptcy Court during the pendency of these Chapter 11 Cases.

**F.      Objections**

6.      All parties have had a fair opportunity to litigate all issues raised, or that might have been raised, in objections to final approval of the Disclosure Statement and confirmation of the Plan and such objections, if any, have been fully and fairly litigated or resolved.  Any resolution of objections to confirmation or final approval of the Disclosure Statement explained on the record

at the Combined Hearing is hereby incorporated by reference. All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or confirmation of the Plan are overruled on the merits.

**G.      Conditions Precedent to Confirmation**

7.      The conditions precedent to confirmation set forth in Article X.A of the Plan have been satisfied or waived in accordance with the terms thereof.

**H.      Plan Supplement**

8.      On May 9, 2025, the Debtors filed the Plan Supplement with this Bankruptcy Court. The Plan Supplement (including as subsequently modified, supplemented, or otherwise amended in accordance with the Plan as of the date hereof), complies with the terms of the Plan. The Debtors provided good and proper notice of the filing of the Plan Supplement in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Interim Approval and Procedures Order. All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto. The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. No other or further notice is or will be required with respect to the Plan Supplement. Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement following the date of this Order in accordance with the terms of the Plan, this Order, the Bankruptcy Code, and the Bankruptcy Rules.

## I. Modifications to the Plan

9.     Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan made after the entry of the Interim Approval and Procedures Order, including those described or set forth in this Order, constitute technical or clarifying changes or modifications that do not otherwise materially or adversely affect or change the treatment of any other Claim or Equity Interest under the Plan. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and Solicitation Package served pursuant to the Interim Approval and Procedures Order, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The filing with this Bankruptcy Court of the Plan as modified by the Plan modifications, and the disclosure of the Plan modifications on the record at the Combined Hearing, constitute due and sufficient notice thereof. Accordingly, the Plan is properly before this Bankruptcy Court and all votes cast with respect to the Plan prior to such modifications shall be binding and shall apply with respect to the Plan. The Plan, as modified hereby and attached hereto, and as may be further modified consistent with the terms of this Order, shall constitute the Plan submitted for confirmation by this Bankruptcy Court.

## J. Adequacy of the Disclosure Statement

10.     The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. The Disclosure Statement contains "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code)

with respect to the Debtors, the Plan, and the transactions contemplated therein. The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Interim Approval and Procedures Order and the other materials in the Solicitation Packages was authorized by and complied with the Interim Approval and Procedures Order and was appropriate under the circumstances.

**K.** **Interim Approval Procedures Order and Notice**

11. On April 21, 2025, this Bankruptcy Court entered the Interim Approval and Procedures Order. As evidenced by the Solicitation Affidavit and the record in these Chapter 11 Cases, the Debtors provided due, adequate, and sufficient notice of the Combined Plan and Disclosure Statement, the Interim Approval and Procedures Order, the Solicitation Package, the Non-Voting Package, the Combined Hearing Notice, the Plan Supplement, the settlement, release, exculpation, and injunction provisions contained in the Plan, the Combined Hearing, the Voting Deadline, the Combined Plan and Disclosure Statement Objection Deadline, and any other applicable bar dates described in the Interim Approval and Procedures Order, in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3016, 3017, 3019, and 3020(b), the Local Rules, and the Interim Approval and Procedures Order. No other or further notice is or shall be required.

**L.** **Solicitation**

12. The Debtors solicited votes for acceptance and rejection of the Plan in good faith, and such solicitation complied with the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017, 3018, and 3019, the Local Rules, the Interim Approval Order, the Solicitation and Tabulation Procedures, and all other applicable rules, laws, and regulations. Transmission and service of the Solicitation Package was

timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No other or further notice is or shall be required.

**M.      Service of Opt-In Election Form**

13.      The Non-Voting Package and Combined Hearing Notice included a form for opting into the Third-Party Release (as defined below) (the "Opt-In Election Form") and instructions for opting into Third-Party Release through the submission of the Opt-In Election Form to the Claims and Noticing Agent. The process described in the Interim Approval and Procedures Order and the Solicitation Affidavit that the Debtors and the Claims and Noticing Agent followed to identify the relevant parties on which to serve the Ballot and Combined Hearing Notice and to distribute the Opt-In Election Forms was reasonably calculated to ensure that each of the holders of Claims and Equity Interests was informed of its ability to opt into the Third-Party Release and the consequences for failing to timely do so. Transmission and service of the Opt-In Election Forms was timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No other or further notice is or shall be required.

**N.      Voting Report**

14.      The Voting Report was admitted into evidence during the Combined Hearing without objection. The procedures used to tabulate Ballots were fair and conducted in accordance with the Interim Approval and Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

15.      As set forth in the Plan, holders of Claims in Class 1 and Class 4 (the "Voting Classes") were eligible to vote to accept or reject the Plan in accordance with the Interim Approval and Procedures Order. As evidenced by the Voting Report, the Voting Classes at each Debtor entity voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.

**O.    Bankruptcy Rule 3016**

16.    The Plan and all modifications thereto are dated and identify the entities submitting them, satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Combined Plan and Disclosure Statement with this Bankruptcy Court, satisfying Bankruptcy Rule 3016(b).  The injunction, release, and exculpation provisions in the Combined Plan and Disclosure Statement describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, satisfying Bankruptcy Rule 3016(c).

**P.    Burden of Proof**

17.    The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for confirmation.  Further, to the extent applicable, the Debtors have proven the elements of sections 1129(a) and 1129(b) by clear and convincing evidence.  Each witness who testified (by declaration, proffer, or otherwise) on behalf of the Debtors in connection with the Combined Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**Q.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

18.    Based on the following findings of fact and conclusions of law, the Plan, all pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Combined Hearing, all requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code have been satisfied.

**1.    Section 1129(a)(1): Compliance with Applicable Provisions of the Bankruptcy Code**

19. The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, as required by section 1129(a)(1) of the Bankruptcy Code.

a.     **Sections 1122 and 1123(a)(1): Proper Classification**

20. The Plan designates all Claims and Equity Interests, other than the Claims of the type described in sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code, into six (6) Classes. The Claims or Equity Interests in each designated Class have the same or substantially similar rights as the other Claims or Equity Interests in such Class. Valid business, legal, and factual reasons exist for separately classifying the various Classes of Claims and Equity Interests under the Plan. The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests. The Plan, therefore, satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

b.     **Section 1123(a)(2): Specification of Unimpaired Classes**

21. The Plan specifies that Claims in Class 2 and Class 3 are Unimpaired (the "Presumed Accepting Classes") within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

c.     **Section 1123(a)(3): Specification of Treatment of Impaired Classes**

22. The Plan specifies that Claims or Equity Interests in Classes 1, 4, 5, and 6 are Impaired within the meaning of section 1124, and specifies the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

d.     **Section 1123(a)(4): No Disparate Treatment**

23. The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to less

favorable treatment on account of such Claim or Equity Interest. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

e. **Section 1123(a)(5): Adequate Means for Plan Implementation**

24. The Plan, the various documents included in the Plan Supplement, and the terms of this Order provide adequate and proper means for the implementation of the Plan, including, among other things: (a) the general settlement of Claims and Equity Interests; (b) the sources of consideration for distributions under the Plan; (c) the establishment of the Plan Administrator and Liquidating Trust; (d) the appointment of the Plan Administrator and the Liquidating Trustee; (e) the vesting of the Liquidating Trust Assets in the Liquidating Trust; and (f) the wind down of the Debtors' affairs. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

f. **Section 1123(a)(7): Directors, Officers, and Trustees**

25. The identities of the Plan Administrator and the Liquidating Trustee are disclosed in the Plan Supplement. In accordance with the Plan and the Plan Supplement, the Liquidating Trustee has been selected and appointed by the Committee. The selection of the Liquidating Trustee is consistent with the interests of holders of Claims and Equity Interests and public policy. Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

g. **Sections 1123(a)(6) and 1123(a)(8): Inapplicable Provisions**

26. The Plan does not provide for the issuance of new equity interests and, therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable. Additionally, none of the Debtors are individuals and, therefore, section 1123(a)(8) of the Bankruptcy Code is inapplicable.

h. **Section 1123(b): Discretionary Contents of the Plan**

27.     The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code.  Thus, the Plan satisfies section 1123(b) of the Bankruptcy Code.

### 1.     Impairment/Unimpairment of Any Class of Claims or Equity Interests

28.     In accordance with section 1123(b)(1) of the Bankruptcy Code, each Class of Claims and Equity Interests is either Impaired or Unimpaired under the Plan.

### 2.     Assumption and Rejection of Executory Contracts and Unexpired Leases

29.     In accordance with section 1123(b)(2) of the Bankruptcy Code, the Plan provides that, on the Effective Date, except as otherwise provided therein, each Executory Contract and Unexpired Lease of the Debtors shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.  The Debtors' determinations regarding the assumption (or assumption and assignment) or rejection of Executory Contracts and Unexpired Leases are based on, and within, the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests, and other parties in interest in these Chapter 11 Cases.  Entry of this Order by this Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments, and/or rejections, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 3.     Preservation of Causes of Action

30.     In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, the Plan provides that except as otherwise provided in the Combined Plan and Disclosure Statement or this Order, including any Cause of Action that is expressly waived, relinquished, exculpated, released, settled, or compromised under the Combined Plan and Disclosure Statement or this Order (a) any Retained Causes of Action that the Debtors hold or may hold against any Entity shall vest upon

the Effective Date in the Liquidating Trust (other than Retained Causes of Action related to accounts receivable to be collected by the Debtors through the Plan Administrator, which shall vest upon the Effective Date in the Debtors). The Plan and the Plan Supplement provide adequate disclosure with respect to the Causes of Action to be retained by the Liquidating Trust and all parties in interest received adequate notice thereof. The Plan and Plan Supplement are specific and unequivocal with respect to Causes of Action to be preserved and retained by the Liquidating Trust. Notwithstanding anything to the contrary, the term "Retain Causes of Action" includes all Causes of Action, including but not limited to (i) Avoidance Actions and all proceeds therefrom and (ii) Tort Claims and proceeds therefrom, including the Causes of Action listed on the Schedule of Retained Causes of Action included in the Plan supplement, other than those released by Article XI.A.1 of the Plan or pursuant to the Column Settlement Order. For the avoidance of doubt, Retained Causes of Action do not include any Causes of Action against Column or the Sector Lenders, which were released pursuant to the Column Settlement Order or the Non-Insider Preference Actions.

### 4. Releases by the Debtors

31.     Article XI.A.1 of the Plan (the "Debtor Release") describes certain releases granted by the Debtors and their Estates. Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests. The Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the Causes of Action released by the Debtor Release; (c) given and made after due notice and opportunity for hearing; (d) appropriately tailored under the facts and circumstances of these Chapter 11 Cases; and (e) a bar to any of the Debtors and their Estates asserting any Cause of

Action released by the Debtor Release against the Released Parties or their property. Accordingly, the Debtor Release is approved.

### 5. Mutual Releases by the Released Parties

32. Article XI.A.1 of the Plan (the "Released Party Release") describes certain releases granted by the Released Parties. Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests. The Released Party Release is: (a) in exchange for the good and valuable consideration provided by the Debtors and the Committee; (b) a good-faith settlement and compromise of the Causes of Action released by the Released Party Release; (c) given and made after due notice and opportunity for hearing; (d) appropriately tailored under the facts and circumstances of these Chapter 11 Cases; and (e) a bar to any of the Released Parties asserting any Cause of Action released by the Released Party Release against the Debtors or the Committee or their property. Accordingly, the Released Party Release is approved.

### 6. Releases by Third-Party Releasing Parties

33. Article XI.A.3 of the Plan (the "Third-Party Release") describes certain releases granted by the Third-Party Releasing Parties to the Third-Party Released Parties. The Third-Party Releasing Parties were provided proper and sufficient notice of the Plan, the Third-Party Release, and the Combined Plan and Disclosure Statement Objection Deadline through the service of the Solicitation Package, the Non-Voting Package, and the Combined Hearing Notice. No further notice is necessary. The Plan, the Solicitation Package, the Non-Voting Package, and the Combined Hearing Notice each included the Third-Party Release provision in conspicuous, boldface type, and the Solicitation Package, the Non-Voting Package, and the Combined Hearing Notice informed holders of Claims and Equity Interests in the Debtors that they would be deemed to have consented to the Third-Party Release if they timely returned the Opt-In Election Form

included in the Ballot and the Non-Voting Package by the Voting Deadline. The Plan provides appropriate and specific disclosure with respect to the Causes of Action that are subject to the Third-Party Release, and no other disclosure is necessary. The Third-Party Release is specific in language, integral to the Plan, and given for substantial consideration.

34. The Third-Party Release is (a) consensual with respect to the Third-Party Releasing Parties, (b) an essential provision of the Plan, (c) given in exchange for the good and valuable consideration provided by the Third-Party Released Parties, (d) a good-faith settlement and compromise of the Causes of Action released by the Third-Party Release, (e) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and important to the overall objectives of the Plan to finally resolve certain Cause of Actions among or against certain parties in interest in these Chapter 11 Cases, (f) fair, equitable, and reasonable, (g) given and made after due notice and opportunity for hearing, (h) a bar to any of the Third-Party Releasing Parties asserting any Cause of Action released by the Third-Party Release against any of the Third-Party Released Parties or their property, and (i) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code. Accordingly, the Third-Party Release is approved.

### 7. Exculpation

35. Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), 1123(b)(6), and 1125(e) of the Bankruptcy Code, this Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article XI.B of the Plan (the "Exculpation"). The Exculpation is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's- length negotiations with key constituents, is essential to the Plan, and is appropriately limited in scope. The exculpated parties relied upon the Exculpation as a material inducement to engage in

prepetition and postpetition negotiations with the Debtors that culminated in the Plan and the settlements and compromises therein that maximize value for the Debtors' Estates and their stakeholders. The record in these Chapter 11 Cases fully supports the Exculpation, which is appropriately tailored to protect the exculpated parties from unnecessary litigation and contains appropriate carve outs for actions determined by a Final Order to have constituted intentional fraud, willful misconduct, and gross negligence. Accordingly, the Exculpation is approved. The exculpated parties, subject to the exculpation provision have, and upon entry of this Order will be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing solicitation or such distributions made pursuant to the Plan.

### 8. Injunction

36. Section 105(a) and sections 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article XI.C of the Plan (the "Injunction"). The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Released Party Release, the Third-Party Release, and the Exculpation provisions. The Injunction is appropriately tailored to achieve those purposes and is, therefore, approved.

### 9. Additional Plan Provisions

37. The other discretionary provisions in the Plan, including the Plan Supplement, are appropriate and consistent with applicable provisions of the Bankruptcy Code.

### 2. Section 1129(a)(2): Compliance of the Debtors and Others with the Applicable Provisions of the Bankruptcy Code

38.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1128, and 1129, and with Bankruptcy Rules 2002, 3017, 3018, and 3019.  The Debtors and their agents transmitted the Solicitation Package and related documents and solicited and tabulated votes with respect to the Plan fairly, in good faith, and in compliance with the Interim Approval and Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including, but not limited to, sections 1125 and 1126(b) of the Bankruptcy Code.

### 3.     Section 1129(a)(3): Proposal of Plan in Good Faith

39.     The Plan is the product of the open, honest, and good faith process through which the Debtors have conducted their Chapter 11 Cases and reflects extensive, good faith, arm's length negotiations among the Debtors, the Committee, and the Debtors' key economic stakeholders.  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims.  In addition to achieving a result consistent with the objectives of the Bankruptcy Code, the Plan allows the Debtors' economic stakeholders to realize the highest possible recoveries under the circumstances. Consistent with the overriding purpose of the Bankruptcy Code, these Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates.  Accordingly, the Plan is fair, reasonable, and consistent with sections 1122, 1123, and 1129 of the Bankruptcy Code.  Based on the foregoing, as well as the facts and record of these Chapter 11 Cases, including, but not limited to, the Combined Hearing, the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

### 4.     Section 1129(a)(4): Court Approval of Certain Payments as Reasonable

40.     All payments made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been authorized by, approved by, or are subject to the approval of, this Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

**5.     Section 1129(a)(5): Service of Certain Individuals**

41.     The Debtors have disclosed the identity and affiliations with the Debtors, if any, of the Plan Administrator and the Liquidating Trustee in the Plan Supplement.  The appointment of the Plan Administrator and the Liquidating Trustee is consistent with the interests of holders of Claims and Equity Interests and with public policy.  Accordingly, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

**6.     Section 1129(a)(6): Rate Changes**

42.     The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction, and, accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

**7.     Section 1129(a)(7): Best Interests of Holders of Claims and Equity Interests**

43.     Each holder of a Claim or Equity Interest either (a) has voted to accept the Plan, (b) is Unimpaired and deemed to have accepted the Plan, or (c) shall receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code.  In addition, the liquidation analysis included in the Combined Plan and Disclosure Statement (the "Liquidation Analysis"), as well as the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to the Combined Hearing, (a) are reasonable, persuasive, credible, and accurate as of the dates

such analysis or evidence was proffered, adduced, and/or presented, (b) utilize reasonable and appropriate methodologies and assumptions, (c) have not been controverted by other evidence, and (d) establish that, with respect to each Impaired Class of Claims or Equity Interests, each holder of an Allowed Claim or Equity Interest in such Class, unless otherwise agreed to by such holder, shall receive under the Plan on account of such Allowed Claim or Equity Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

44.     Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

**8.     Section 1129(a)(8): Acceptance by Certain Classes**

45.     The Presumed Accepting Classes are Unimpaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The Voting Classes are Impaired under the Plan and have voted to accept the Plan.  Accordingly, section 1129(a)(8) of the Bankruptcy Code has been satisfied with respect to the Presumed Accepting Classes and the Voting Classes.

46.     Claims in Classes 5 and 6 are Impaired under the Plan and deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "Deemed Rejecting Classes"). Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and, thus, satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

**9.     Section 1129(a)(9): Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code**

47. The treatment of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, and other Priority Claims under the Plan satisfies the requirements of and complies in all respects with section 1129(a)(9) of the Bankruptcy Code.

**10.      Section 1129(a)(10): Acceptance by Impaired Class**

48. As evidenced by the Voting Report, without including any acceptance of the Plan by any insider (as defined in the Bankruptcy Code), holders of Claims in the Voting Classes voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. As such, there is at least one Impaired Class of Claims that has accepted the Plan and, therefore, section 1129(a)(10) of the Bankruptcy Code has been satisfied.

**11.      Section 1129(a)(11): Feasibility of the Plan**

49. The evidence supporting the Plan proffered or adduced by the Debtors at or before the Combined Hearing: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) has not been controverted by other persuasive evidence; (c) establishes that the Plan is feasible and confirmation of the Plan is not likely to be followed by liquidation (other than as contemplated by the Plan) or the need for further financial reorganization; and (d) establishes that the Plan Administrator and the Liquidating Trust will have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**12.      Section 1129(a)(12): Payment of Statutory Fees**

50. The Plan provides for the payment of all fees payable under section 1930 of title 28 of the United States Code in accordance with section 1129(a)(12) of the Bankruptcy Code.

**13.      Sections 1129(a)(13), (14), (15), and (16): Inapplicable Provisions**

51. Section 1129(a)(13) is inapplicable because the Debtors do not maintain any retirement benefits as defined in section 1114 of the Bankruptcy Code. Section 1129(a)(14) is

inapplicable because the Debtors are not required to pay domestic support obligations pursuant to a judicial or administrative order or statute. Section 1129(a)(15) is inapplicable because the Debtors are not individuals under the Bankruptcy Code. Section 1129(a)(16) of the Bankruptcy Code is inapplicable because the Debtors are not nonprofit entities or trusts.

**14.** **Section 1129(b): No Unfair Discrimination; Fair and Equitable**

52. Notwithstanding the rejection of the Plan by the Deemed Rejecting Classes, based upon the record before this Bankruptcy Court and the treatment provided on account of such Claims and Equity Interests, (a) the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Equity Interests and (b) the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except for section 1129(a)(8) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to the Deemed Rejecting Classes.

**15.** **Section 1129(c): Only One Plan**

53. The Plan is the only plan being confirmed in these Chapter 11 Cases and, accordingly, satisfies section 1129(c) of the Bankruptcy Code.

**16.** **Section 1129(d): Principal Purpose of the Plan Is Not Avoidance of Taxes or Section 5 of the Securities Act**

54. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

**17.** **Section 1129(e): Not Small Business Cases**

55. These Chapter 11 Cases are not small business cases and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**R.      Good Faith**

56.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  The Debtors and the exculpated parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules in connection with all of their respective activities relating to support and consummation of the Plan, including the solicitation of acceptances of the Plan, their participation in these Chapter 11 Cases and the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.  The exculpated parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptance of rejections of the Plan or such distributions made pursuant to the Plan.

**S.      Implementation**

57.      All documents and agreements necessary to implement the transactions contemplated by the Plan, including those contained or summarized in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, the Estates, and holders of Claims and Equity Interests, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  Such documents

and agreements are essential elements of the Plan, and entry into and consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, their Estates, and holders of Claims and Equity Interests. The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The Debtors, the Plan Administrator, and the Liquidating Trust, as applicable, are authorized to take any action reasonably necessary or appropriate to implement, effectuate and consummate the Plan, the documents and agreements necessary to implement the Plan, this Order and the transactions contemplated thereby or hereby, and including performance under the Plan Administrator Agreement, and the Liquidating Trust Agreement, as applicable.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

### A. Findings of Fact and Conclusions of Law

58. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014. To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

### B. Approval of the Disclosure Statement

59. The Disclosure Statement is approved on a final basis pursuant to section 1125 of the Bankruptcy Code as containing adequate information, and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

**C.      Confirmation of the Plan**

60.     The Plan, including (a) all modifications to the Plan filed with this Bankruptcy Court prior to or during the Combined Hearing and (b) all documents incorporated into the Plan through the Plan Supplement, is approved in its entirety, as modified herein, and confirmed pursuant to section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, are hereby approved and authorized.  The Debtors are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including without limitation entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan. The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

61.     All terms of the Plan and the Plan Supplement are incorporated herein by reference and are an integral part of this Order.  The failure to specifically include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document in this Order does not diminish or impair the effectiveness or enforceability of such article, section, or provision.

**D.      El Paso Receivership Debtors**

62.     Notwithstanding anything in this order or the Plan to the contrary, the Plan does not constitute a chapter 11 plan for the El Paso Receivership Debtors, whose bankruptcy cases remain suspended under section 305 of the Bankruptcy Code, and the El Paso Receivership Debtors are hereby excluded from the definition of "Debtors" under the Plan.  Notwithstanding anything in the

X-Caliber Order to the contrary, the El Paso Receivership Debtors' bankruptcy cases will remain suspended, all matters related to the El Paso Receivership Debtors will be addressed solely in the *El Paso et al.* Court, and no "remaining estates" of the El Paso Receivership Debtors will be remitted to the Debtors in these cases, regardless of the outcome of any sale process by the Receiver. Moreover, no releases granted under the Plan or approved by this Order may be deemed to have been given by the El Paso Receivership Debtors, the Receiver, or creditors of the El Paso Receivership Debtors.

**E.    Plan Amendments**

63.    The Combined Plan and Disclosure Statement is hereby amended as follows:

a.    The defined term "Professional" is hereby amended and restated in its entirety as follows:

> "**Professional**" means any professional Person retained in the Chapter 11 Cases pursuant to section 327, 328, 333, 363, or 1103 of the Bankruptcy Code pursuant to an order of this Bankruptcy Court who is to be compensated for services rendered pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

b.    The last paragraph of Section IV.A.2.(a). is hereby amended and restated in its entirety as follows:

> As of the Petition Date, approximately $67,375,776.07 was outstanding under the Sector Facility.

c.    Section VI.A. is hereby amended and restated in its entirety as follows:

> On the Effective Date, David R. Campbell shall be appointed as Plan Administrator and thereafter shall serve in accordance with this Combined Plan and Disclosure Statement. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by this Bankruptcy Court. As part of the Plan Supplement, the Debtors shall file with this Bankruptcy Court a notice identifying the Plan Administrator and the material terms of the Plan Administrator's compensation. The Plan Administrator shall periodically provide reasonable information regarding all aspects of the Plan administration to an uncompensated oversight committee (the "Oversight Committee") which shall consist of the Liquidating Trustee and

Michael Lancia, or such other individual as Column may designate by written notice to the Plan Administrator and the Liquidating Trustee.

d.　　Section VI.C. is hereby amended and restated in its entirety as follows:

The Plan Administrator shall have sole power of collection and distribution of accounts receivable. At the end of each calendar month after the Effective Date, the Plan Administrator shall make distributions of accounts receivable collected within fourteen (14) business days of the last day of such calendar month. In addition, the Plan Administrator shall provide the following to Holders of Class 1 Claims and the Liquidating Trustee: (i) every four (4) weeks after the Effective Date, the Plan Administrator shall provide a report setting forth the total amount of accounts receivable collected, broken out by Facility, which shall be due fourteen (14) calendar days after the end of such fourth week; (ii) substantially concurrently with the monthly distributions provided for herein, the Plan Administrator shall provide an accounts receivable roll-forward, which shall include the beginning accounts receivable balance as of the first day of the given calendar month, the amount of accounts receivable collected over the course of the given calendar month, the ending accounts receivable balance as of the last day of the given calendar month, in each case broken out by Facility, and a reconciliation between collections and distributions to Column made pursuant to the Column Settlement Order, which reconciliation shall include deductions for the Estate Share and any associated collection costs allowed under the Column Settlement Order; (iii) at the conclusion of each month after the Effective Date (excluding the month in which the Effective Date occurs), the Plan Administrator shall provide the previous month's invoices of any third-party collections agents engaged by the Debtors, including a report setting forth collections and fees broken out by Facility, which shall be due fifteen (15) calendar days after the end of such month; and (iv) after the Effective Date, the Plan Administrator shall make himself available for two (2) conference calls per month with the Holders of Class 1 Claims and the Liquidating Trustee to address outstanding questions.

e.　　Section VIII.E.2. is hereby amended and restated in its entirety as follows:

The Liquidating Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust. Without limiting the foregoing, the Liquidating Trustee shall have the right to, among other things, (a) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Combined Plan and Disclosure Statement and the Liquidating Trust Agreement; (b) liquidate the Liquidating Trust Assets; (c) investigate, prosecute, settle, abandon or compromise any Retained Causes of Action; (d) make all Distributions in accordance with the Combined Plan and Disclosure Statement and the Liquidating Trust Agreement;

(e) establish and administer any necessary reserves for Disputed Claims that may be required; (f) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (g) assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to acts or events during time periods prior to the Petition Date with the consent of the Plan Administrator (provided that prior to any such consent, the Plan Administrator has consulted with Mark Petersen); and (h) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtors or the Committee in accordance with the Liquidating Trust Agreement and the Plan, provided, however, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

    f.    Section X.B. is hereby amended to add a new subsections 6 and 7 which state:

    6.    Execution and recordation of definitive documentation necessary to implement the terms and conditions of the settlement with Mark Petersen and related Persons, as set forth in **Exhibit E** of this Order, including, without limitation, any mortgages, financing statements, security agreements, pledges or other documentation necessary to secure payment of the $6.7 million to be paid by Mr. Petersen pursuant to the terms of the settlement set forth in **Exhibit E**, all such documents to be in a form acceptable to the Debtors, the Committee, and Mr. Petersen, in their sole discretion.

    7.    The executed definitive documentation of the settlement with Mark Petersen and related Persons shall be filed with the Bankruptcy Court along with certification of counsel that such documentation does not materially modify the terms of the settlement as set forth in **Exhibit E** of this Order.

    g.    Section X.C. is hereby amended and restated in its entirety as follows:

The Debtors may, with the prior written consent of the Committee, waive in whole or in part each of the conditions to Confirmation set forth in Article X.A and each of the conditions to the Effective Date set forth in Article X.B (other than the condition set forth in X.B.7., which shall not be waived by the Debtors), without any other notice to parties-in-interest or the Bankruptcy Court. The failure of any party to exercise any of its foregoing rights shall not be deemed a waiver of any of its other rights, and each such right shall be deemed an ongoing right that may be asserted thereby at any time.

h.      Section XI.F.1. is hereby amended and restated in its entirety as follows:

Except as otherwise provided in the Combined Plan and Disclosure Statement or Confirmation Order, including any Cause of Action that is expressly waived, relinquished, exculpated, released, settled, or compromised under the Combined Plan and Disclosure Statement or, Confirmation Order, or Column Settlement Order (i) in accordance with section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action that the Debtors hold or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust (other than Retained Causes of Action related to accounts receivable to be collected by the Debtors through the Plan Administrator, which shall vest upon the Effective Date in the Debtors); (ii) after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Retained Causes of Action the Estates hold or may hold against any Entity constituting Liquidating Trust Assets (other than Retained Causes of Action related to accounts receivable to be collected by the Debtors through the Plan Administrator), in accordance with the terms of the Plan and the Liquidating Trust Agreement, as applicable, and without further order of this Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases; and (iii) Retained Causes of Action (other than Retained Causes of Action related to accounts receivable to be collected by the Debtors through the Plan Administrator, which shall vest upon the Effective Date in the Debtors) and recoveries therefrom shall remain the sole property of the Liquidating Trust, and holders of Claims shall have no direct right or interest in to any such Retained Causes of Action or recoveries.

i.      The first paragraph of Section XI.F.2. is hereby amended and restated in its entirety as follows:

Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Combined Plan and Disclosure Statement and/or any Final Order (including the Confirmation Order and the Column Settlement Order), the Debtors and the Liquidating Trustee expressly reserve such Retained Cause of Action for later adjudication by the Debtors or the Liquidating Trustee, as applicable (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Combined Plan and Disclosure Statement, or Confirmation Order, except where such Causes of Action have been

released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which a Debtor is a defendant or interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## F.    Substantive Consolidation

64.    The Plan provides for the substantive consolidation of the Debtors' Estates and Chapter 11 Cases for all purposes, including voting, Distribution, and Confirmation. The Debtors have demonstrated that reconciling and administering vast numbers of claims across each of the Debtor Entities would significantly erode the total potential recovery for all creditors, likely result in lower recoveries than those available to creditors when the Debtors' Estates are substantively consolidate, and could materially diminish the limited pool of funds available to Class 4 General Unsecured Claims. Based upon the evidence adduced and argument made at the Combined Hearing and the record of these Chapter 11 Cases, the Debtors, as of the Effective Date, shall be substantively consolidated and (a) all Intercompany Claims between the Debtors shall be eliminated; (b) all assets and liabilities of the Debtors shall be merged or treated as if they were merged with the assets and liabilities of Petersen; (c) any obligation of a Debtor and any guarantee thereof by another Debtor shall be deemed to be one obligation of Petersen, and any such guarantee shall be eliminated; (d) each Claim filed or to be filed against any Debtor shall be deemed filed only against Petersen and shall be deemed a single Claim against and a single obligation of Petersen; and (e) any joint or several liability of the Debtors shall be deemed one obligation of Petersen. On the Effective Date, and in accordance with the terms of the Combined Plan and Disclosure Statement and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by one Debtor as to the obligations of another Debtor shall be released and of no further force and effect.

65. The substantive consolidation effected pursuant to this Confirmation Order (a) shall not affect the rights of any Holder of a Secured Claim; and (b) shall not, and shall not be deemed to, prejudice the Causes of Action and the Avoidance Actions (subject to the releases set forth in the Combined Plan and Disclosure Statement), which shall survive entry of a substantive consolidation order, as if there had been no substantive consolidation.

## G. Objections Overruled

66. All objections or responses, if any, to final approval of the Disclosure Statement or confirmation of the Plan that have not been withdrawn, waived, settled, resolved prior to the Combined Hearing or otherwise resolved on the record of the Combined Hearing or in this Order are hereby overruled and denied on the merits, with prejudice. All objections to the entry of this Order or to the relief granted herein that were not timely filed and served prior to the Combined Plan and Disclosure Statement Objection Deadline are deemed waived and forever barred.

## H. New Operators

67. The Plan and this Confirmation Order shall not alter, amend, conflict with, or derogate from, the provisions of the Portfolio Sale Order or the Transaction Documents (as defined in the Portfolio Sale Order, which include, without limitation, that certain operations transfer agreement by and among certain Debtor entities and Petersen Acquisitions, LLC dated July 26, 2024, and those certain interim management agreements filed with the Court on November 1, 2024 [Doc. No. 971]) which shall remain binding on all parties (and to the extent of any conflict or inconsistency, the terms of the Portfolio Sale Order and the Transaction Documents shall control).

68. The Debtors, the Plan Administrator, the Liquidating Trustee, the Liquidating Trust, and any other successors or transferees of any of the foregoing, (a) shall hold in trust and have no right, title, or interest in any or all accounts receivable or proceeds thereof arising from the management or operations of the New Operator (as such parties are designated in the

Transaction Documents) (the "New Operator Accounts Receivable") and (b) shall remit the New Operator Accounts Receivable to the applicable New Operators within fifteen (15) business days of receipt; (c) the Plan Administrator shall continue to reconcile the New Operator Accounts Receivable on behalf of the Debtors; (d) the Plan Administrator shall reconcile and remit any New Operator Accounts Receivable received by the Debtors prior to the entry of this Confirmation Order to the applicable New Operator no later than (15) business days after entry of this Confirmation Order; and (e) each New Operator's respective rights, claims, defenses, offsets, recoupments, causes of action, and remedies against any party arising from or relating to the Portfolio Sale Order, the Transaction Documents, this Confirmation Order and/or the New Operator Accounts Receivable are reserved and neither released, waived, enjoined, nor affected by this Plan or Confirmation Order (notwithstanding any other provision in the Plan or Confirmation Order to the contrary).

**I.      Berkadia Stipulation**

69.      The *Stipulation Regarding Allowance and Payment of Remaining Secured Claims of Berkadia Commercial Mortgage LLC* attached hereto as **Exhibit B** (the "Berkadia Stipulation") is hereby approved.  Upon entry of this Confirmation Order:  (i) the Plan shall be deemed modified so that Berkadia's claim in Class 1g receives the treatment provided under the Berkadia Stipulation, and (ii) Berkadia shall be deemed to have withdrawn its vote to reject the Plan and shall be deemed to have voted to accept the Plan as modified by the Berkadia Stipulation.

**J.      Wells Fargo Stipulation**

70.      The *Stipulation Regarding Allowance and Payment of Remaining Secured Claims of Wells Fargo Bank, N.A.* attached hereto as **Exhibit C** (the "Wells Fargo Stipulation") is hereby approved.  Upon entry of this Confirmation Order:  (i) the Plan shall be deemed modified so that Wells Fargo's claim in Class 1g receives the treatment provided under the Wells Fargo Stipulation,

and (ii) Wells Fargo shall be deemed to have withdrawn its vote to reject the Plan and shall be deemed to have voted to accept the Plan as modified by the Wells Fargo Stipulation.

## K.     GMF Claim

71.     In addition to the terms of the GMF Settlement as set forth in the Combined Plan and Disclosure Statement, GMF shall be paid their Purchase Price Allocation with respect to the Betty's Garden Facility in the amount of $297,865.00.  Mark Petersen shall pay GMF $50,000.00 directly as soon as practicable after the entry of this Confirmation Order and upon GMF's receipt of such payment, the GMF guaranty claim against Mark Petersen is released.

## L.     Smartlinx Stipulation

The *Stipulation Regarding Rejection of Smartlinx Contract and Resolution of Related Issues* (the "Smartlinx Stipulation") attached hereto as **Exhibit D**, (a) rejecting the Debtors' contract with Smartlinx Solutions, LLC ("Smartlinx"), and (b) resolving any and all claims between the Debtors and Smartlinx, on the terms set forth in the Smartlinx Stipulation, is hereby approved.

## M.     Resolution of Robert Gregory Wilson's Limited Objection

72.     In full and final resolution of *Robert Gregory Wilson's Limited Objection to Confirmation of Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 1612], and Mr. Wilson's claims therein, (a) as part of his compensation as a former executive employed by the Debtors, Mr. Wilson was the insured beneficiary of an AXA Equitable life insurance policy (the "Policy") that was in the name of one or more of the Debtors, and (b) the Debtors shall, as soon as practicable after entry of this Confirmation Order but in any event prior to the Effective Date, transfer the Policy to Mr. Wilson, after which the Debtors shall have no further right, title or interest in the Policy and the Policy shall belong to Mr. Wilson.  The Policy shall not vest in the Liquidating Trust on the Effective Date.

**N. Hartford Fire Insurance Company**

73.     Section XI.C.(iv) of the Combined Plan and Disclosure Statement and paragraph 99 subsection (iv) of this Order shall not apply to Hartford Fire Insurance Company or its bond beneficiaries with respect to setoff rights.

**O. Bank of Rantoul**

74.     Nothing in this Order shall affect or modify the terms of the settlement with, and payments to, Rantoul, or any orders of this Bankruptcy Court (or any documents related thereto) entered during these Chapter 11 Cases, and all rights and remedies in connection with such orders shall be preserved in their entirety.

**P. Westgate Lot 7**

75.     As part of his compensation as a former executive employed by the Debtors, Doug Currier shall receive Westgate Lot 7, Parcel Number 25-05-284-018 located at 915 Westgate Dr. Kewanee, IL 61443 ("Westgate Lot 7") and the Debtors shall, as soon as practicable after the Effective Date, transfer Westgate Lot 7 to Mr. Currier, after which the Debtors shall have no further right, title or interest in Westgate Lot 7 and Westgate Lot 7 shall belong to Mr. Currier. Westgate Lot 7 shall not vest in the Liquidating Trust on the Effective Date.

**Q. Vehicle Transfer**

76.     In consideration of the overall settlement with key parties in interest in these Chapter 11 Cases, Marikay Snyder shall receive the 2014 Range Rover with license plate number PHCLAW and VIN number SALWR2RF0EA383430 (the "Vehicle") and the Debtors shall, as soon as practicable after the Effective Date, transfer the Vehicle to Ms. Snyder, after which the Debtors shall have no further right, title or interest in the Vehicle and the Vehicle shall belong to Ms. Snyder. The Vehicle shall not vest in the Liquidating Trust on the Effective Date.

**R.  Missouri Department of Revenue**

77.  To the extent the Missouri Department of Revenue holds Claims entitled to priority under section 507(a)(8) of the Bankruptcy Code which are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall (a) accrue interest commencing on the Effective Date pursuant to 32.065, RSMo, and (b) be paid no later than five (5) years after the Petition Date.

**S.  Mark Petersen Contributions**

78.  Mark Petersen shall contribute $6,700,000.00 to the Debtors' Estates, the first $1,200,000.00 of which initially shall be available to the Plan Administrator to pay Administrative Expense Claims and $5,500,000.00 of which shall transfer to the Liquidating Trust as Liquidating Trust Assets on the Effective Date.  The terms of the settlement with Mark Petersen attached hereto as **<u>Exhibit E</u>** are approved.

**T.  Plan Transactions**

79.  All of the transactions contemplated by the Plan and the Plan Supplement are hereby approved.  The entry of this Order (including the exhibits attached hereto) shall constitute authorization for the Debtors, the Plan Administrator, and the Liquidating Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation.  On the Effective Date, the officers of the Debtors, the Plan Administrator, or the Liquidating Trust, as applicable, are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtor, the, Plan Administrator, and the Liquidating Trust, as applicable.

**U.** **Dissolution of the Debtors**

80. Upon the (i) the Effective Date, or (ii) the appointment of the Plan Administrator, whichever is earlier, the Board shall be terminated and the members of the Board shall be deemed to have resigned. On the Effective Date, except as otherwise provided in the Plan or this Order, each Debtor shall be deemed dissolved without further order of this Bankruptcy Court or action by the Debtors, the Plan Administrator, or the Liquidating Trustee.

**V.** **Preservation of Causes of Action**

81. Except as otherwise provided in the Plan or this Order, on the Effective Date, the Retained Causes of Action, including any and all rights to commence, pursue, litigate or settle, as appropriate, such Retained Causes of Action, whether existing as of the Petition Date or arising thereafter, shall automatically be deemed to have been vested in the Liquidating Trust.

82. Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Combined Plan and Disclosure Statement and/or any Final Order (including this Order), such Cause of Action is expressly preserved for later adjudication by the Liquidating Trust. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Retained Cause of Action upon or after the entry of this Order or the Effective Date of the Plan based on the Plan or this Order, except where such Causes of Action have been expressly released in the Plan or this Order. The Liquidating Trust shall be entitled to the benefit of the tolling provisions provided under section 108 of the Bankruptcy Code and shall succeed to the Debtors' rights with respect to the time periods in which a Retained Cause of Action may be brought under the Bankruptcy Code.

83. The Liquidating Trust shall have the exclusive right to investigate, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any Retained Causes

of Action that have not been released pursuant to the terms of the Plan without notice to or approval from this Bankruptcy Court or the Debtors. To the extent necessary, Column shall execute such documents, as reasonably requested by the Liquidating Trustee, to implement the Column Settlement.

## W. Plan Administrator

84. The appointment of David R. Campbell to serve as the Plan Administrator is approved in all respects and the Plan Administrator is authorized to (a) carry out all rights and duties set forth in the Plan and Plan Administrator Agreement, (b) appear and be heard on all matters related to these Chapter 11 Cases (as a representative of the Plan Administrator and/or the Debtors, as applicable), (c) as set forth in Article VI.B of the Plan and this Order, reconcile and collect all accounts receivable outstanding and distribute such proceeds in accordance with the Plan, and (d) wind down the Debtors and pay the expenses related thereto. The compensation of the Plan Administrator as set forth in the Plan Supplement is approved in all respects and the Plan Administrator shall perform its duties in its capacity as such as set forth in the Plan and the Plan Administrator Agreement.

## X. Liquidating Trustee

85. The appointment of Dan Dooley to serve as the Liquidating Trustee is approved in all respects and the Liquidating Trustee is authorized to (a) carry out all rights and duties set forth in the Plan and Liquidating Trust Agreement, (b) appear and be heard on all matters related to these Chapter 11 Cases (as a representative of the Liquidating Trust and/or the Debtors, as applicable), (c) as set forth in Article VIII.E of the Plan and this Order, investigate, prosecute and resolve, in the name of the Debtors and/or the name of the Liquidating Trustee, any Retained Causes of Action (including, for the avoidance of doubt, any criminal causes of action), and (d) present to creditors and other courts of competent jurisdiction this Order as evidence of such

authority. The compensation of the Liquidating Trustee as set forth in the Plan Supplement is approved in all respects and the Liquidating Trustee shall perform its duties in its capacity as such as set forth in the Plan and the Liquidating Trust Agreement.

## Y.    Liquidating Trust

86.    On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement and consistent with the Plan.

87.    On the Effective Date, other than as set forth in the Plan or this Order, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidating Trust all of the Debtors' and Estates' rights, title, and interest in and to all of the Liquidating Trust Assets, and, in accordance with section 1141 of the Bankruptcy Code, the Liquidating Trust Assets, shall automatically vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, or interests, subject to the terms of the Plan and the Liquidating Trust Agreement. The act of transferring the Liquidating Trust Assets to the Liquidating Trust shall not be construed to destroy or limit any such assets or rights or be construed as a waiver of any right, and such rights may be asserted by the Liquidating Trust as if the asset or right was still held by the Debtors. The Liquidating Trust shall be governed by the Liquidating Trust Agreement.

## Z.    Matters as to the United States

88.    As to the United States, its agencies or any instrumentalities thereof (collectively, the "United States"), notwithstanding anything contained in the Combined Plan and Disclosure Statement, Plan Supplement, or Confirmation Order to the contrary, other than the HUD liabilities, which shall constitute Claims that shall be reviewed and reconciled in accordance with the Combined Plan and Disclosure Statement and the settlement previously reached with HUD, nothing shall:

(a)     limit or be intended to or be construed to bar the United States from pursuing any police or regulatory action or any criminal action;

(b)     discharge, release, exculpate, impair or otherwise preclude: (i) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (ii) any Claim of the United States arising on or after the Effective Date; (iii) any liability of the Debtors under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee or operator of property that such Entity owns, operates or leases after the Effective Date, *provided however*, that, for the avoidance of doubt, nothing in this paragraph shall modify the effect of the Administrative Expense Bar Date or other applicable bar date to the extent otherwise applicable; or (iv) any liability owed to the United States, including but not limited to any liabilities arising under the federal environmental, criminal, civil or common law, by any non-Debtor; *provided*, *however*, that the foregoing shall not diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code;

(c)     enjoin or otherwise bar the United States from asserting or enforcing, outside this Bankruptcy Court, any obligation or liability described in the preceding clause (b); *provided*, *however*, that the non-bankruptcy rights and defenses of all Entities with respect to (i)-(iv) in clause (b) are likewise fully preserved;

(d)     affect any right of setoff or recoupment of the United States against any of the Debtors; *provided*, *however*, that the rights and defenses (other than any rights or defenses based on language in the Plan or the Confirmation Order that may extinguish or limit setoff or recoupment rights) of the Debtors with respect thereto are fully preserved;

(e)     confer exclusive jurisdiction upon this Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

(f)     authorize the assumption, assignment, sale or other transfer of any federal (i) grants, (ii) grant funds, (iii) contracts, (iv) agreements, (v) awards, (vi) task orders, (vii) property, (viii) intellectual property, (ix) patents, (x) leases, (xi) certifications, (xii) applications, (xiii) registrations, (xiv) billing numbers, (xv) national provider identifiers, (xvi) provider transaction access numbers, (xvii) licenses, (xviii) permits, (xix) covenants, (xx) inventory, (xxi) guarantees, (xxii) indemnifications, (xxiii) data, (xxiv) records, or (xxv) any other interests with or granted by the United States (collectively, "Federal Interests") without compliance with all terms of the Federal Interests and with all applicable non-bankruptcy law;

(g)     be interpreted to require the United States to novate, approve or otherwise consent to the assumption, assignment, sale or other transfer of any Federal Interests;

(h)     constitute or be deemed an approval or consent by the United States;

(i)     waive, alter, or otherwise limit the United States' property rights; or

(j)     be construed as a compromise or settlement of any liability, Claim, Cause of Action or interest of the United States.

89.     Further, in the event of an inconsistency or conflict between any provision of the Combined Plan and Disclosure Statement or Plan Supplement and any provision of this Confirmation Order, then, as to the United States, the provisions of this Confirmation Order and federal law shall control.

## AA.    No Successor in Interest

90.     Except as otherwise expressly provided in the Plan or this Order, the Plan Administrator and the Liquidating Trust (a) are not agreeing to, and shall not be deemed to assume the obligation to, perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Entity relating to or arising out of the operations or the assets of the Debtors on or prior to the Effective Date, (b) are not, and shall not be, a successor to

the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date, and (c) shall not have any successor, transferee, or similar liability of any kind or character.

## BB. Exemption from Transfer Tax and Recording Fees

91. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer of property pursuant to or in connection with the Plan, including the transfer of the Liquidating Trust Assets to the Liquidating Trust, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory Filing or recording fee, or other similar tax or governmental assessment. This Order hereby directs the appropriate federal, state, or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the instruments or documents filed or recorded pursuant to the Plan without payment of any such tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## CC. Cancellation of Notes, Instruments, Certificates, and Other Documents

92. Except as otherwise provided in the Plan or this Order, the Debtors' obligations under any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed released, settled, and compromised on the Effective Date.

**DD.    Treatment of Executory Contracts and Unexpired Leases**

93.     Except as otherwise provided in the Plan or this Order, on the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors shall be deemed rejected pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code.

**EE.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

94.     The releases, exculpations, injunction and related provisions set forth in Article XI are incorporated herein in their entirety, are hereby approved and authorized in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Bankruptcy Court or any other party.  For the avoidance of doubt, the exculpation shall not release any action that are Retained Causes of Action.

**1.    Releases by the Debtors**

95.     **As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, and any Person or Entity seeking to exercise the rights or assert Claims or Causes of Action of or through the Debtors' Estates, including, without limitation, any successor to the Debtors, any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code shall be deemed to forever release, waive, and discharge each of the Released Parties for all liabilities, actions, proceedings, Causes of Action, Avoidance Actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, rights to payment, or Claims whatsoever, including any derivative Claims, asserted or assertible on behalf of or through the Debtors, or by way of subrogation, that the Debtors would have been or may be entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, or that any Holder of any Claim against or Interest in a Debtor could have asserted or may assert on behalf of any**

Debtor, in connection with or related to the Debtors, the Debtors' operations, patient or resident care, the Debtors' in-or out-of-court financing, restructuring, reorganization, or liquidation efforts, the Credit Agreement, the Chapter 11 Cases, or the Combined Plan and Disclosure Statement (other than the rights of the Debtors to enforce the Combined Plan and Disclosure Statement and the contracts, instruments, releases, and other agreements or documents delivered thereunder), and the formulation, preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing, whether or not accrued, arising or having occurred, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, mixed, or otherwise, that may be based in whole or part on any act, omission, transaction, agreement, understanding, course of dealing, event or other occurrence or omission taking place on or prior to the Effective Date (collectively, the "Debtor Released Claims"); provided, however, that nothing in this Article XI.A.1 shall be a release, waiver, or discharge of any Litigation Claim transferred to the Liquidating Trust; provided, further, however, that nothing in this Article XI.A.1 shall be a waiver of any defense, offset, or objection to any Claim filed against the Debtors and their Estates by any Person or Entity; provided further, however, that this Article XI.A.1 shall not release the Released Parties for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction).

2.      **Mutual Release by the Release Parties**

96.     As of the Effective Date, to the maximum extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties shall be deemed to forever release, waive, and discharge the Debtors and the Committee and each of its members, solely in their capacity as such, for all Debtor Released Claims (other than the rights of the Holders of Claims and Interests to enforce the Combined Plan and Disclosure Statement and the contracts, instruments, releases, and other agreements or documents delivered thereunder); provided, however, that members of the Committee are providing and receiving the release described in this Article XI.A.2 only in their capacities as members of the Committee and not in their individual capacities as Creditors; provided further, however, that this Article XI.A.2 shall not release the Debtors, the Committee, or its members, solely in their capacity as such, for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction).

3.     Releases by Third-Party Releasing Parties

97.     As of the Effective Date, to the maximum extent permitted by applicable law, for good and valuable consideration, the adequacy of which is hereby confirmed, the Third-Party Releasing Parties shall be deemed to forever release, waive, and discharge each of the Third-Party Released Parties from all liabilities, claims, actions, proceedings, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, or rights to payment whatsoever in connection with or related to the Debtors, the Debtors' operations, patient or resident care, Litigation Claims, the Debtors' in-or out-of-court financing, restructuring, reorganization, or liquidation efforts, any contract, agreement, understanding, or course of dealing, the Chapter 11 Cases, the Plan Settlement, the Credit Agreement, or the Combined Plan and Disclosure Statement and the formulation,

preparation, dissemination, solicitation, negotiation, consummation, and implementation of any of the foregoing or any contract, instrument, release, or other agreement, understanding, accord, course of dealing, or document created or entered into in connection with or evidencing any of the foregoing, whether or not accrued, arising or having occurred, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, mixed, or otherwise, that may be based in whole or part on any act, omission, transaction, agreement, understanding, course of dealing, event or other occurrence or omission taking place on or prior to the Effective Date; provided however, that this Article XI.A.3 shall not release the Third-Party Released Parties for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction).

### 4. Exculpation and Limitation of Liability

98.     None of (a) the Debtors, (b) the managers, officers, or directors of any of the Debtors serving at any time during the pendency of the Chapter 11 Cases, (c) the Professionals retained by the Debtors in the Chapter 11 Cases, (d) the Committee and its Professionals retained in the Chapter 11 Cases, and, solely in their respective capacities as members or representatives of the Committee, each member of the Committee, or (e) the PCO and its Professionals retained in these cases shall have or incur any liability to any Holder of a Claim or an Interest, or any other party in-interest for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, the DIP Facility, the PCO's evaluations, reports, pleadings, or other writings filed by or on behalf of the PCO in or in connection with the Chapter 11 Cases, the formulation, negotiation, or implementation of the Combined Plan and Disclosure Statement, the solicitation of acceptances of the

**Combined Plan and Disclosure Statement, the pursuit of Confirmation of the Combined Plan and Disclosure Statement, the Confirmation of the Combined Plan and Disclosure Statement, the consummation of the Combined Plan and Disclosure Statement, or the administration of the Combined Plan and Disclosure Statement or the property to be distributed under the Combined Plan and Disclosure Statement, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct (in each case as determined by a Final Order entered by a court of competent jurisdiction), and such parties in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Combined Plan and Disclosure Statement. For the avoidance of doubt, nothing contained in this paragraph shall exculpate prepetition or post-Effective Date acts or omissions.**

      **5.**     **Injunction**

99.     Confirmation of the Combined Plan and Disclosure Statement shall have the effect of, among other things, permanently enjoining all Persons and Entities that have held, hold, or may hold or have asserted, assert, or may assert Claims against or Interests in the Debtors with respect to any such Claim or Interest from taking any of the following actions (other than actions to enforce any rights or obligations under the Combined Plan and Disclosure Statement): (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting the Debtors, the Liquidating Trust, or any of its or their respective property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Liquidating Trust, or any of its or their respective property; (iii) creating, perfecting, or otherwise enforcing in any manner,

directly or indirectly, any encumbrance of any kind against the Liquidating Trust, or any of its or their respective property; (iv) asserting any right of setoff, directly or indirectly, against any obligation due against the Liquidating Trust, or any of its or their respective property, except with respect to any right of setoff asserted prior to the entry of the Confirmation Order, whether asserted in a Proof of Claim or otherwise, or as otherwise contemplated, Impaired, or Allowed by the Combined Plan and Disclosure Statement; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Combined Plan and Disclosure Statement; and (vi) prosecuting or otherwise asserting (A) any Claim or Interest, including any right, Claim, or Cause of Action released pursuant to the Combined Plan and Disclosure Statement, (B) any form of objection to any Claim that is Allowed by the Combined Plan and Disclosure Statement and Confirmation Order, or (C) Avoidance Actions against any Holder of a Claim that is Allowed or any Avoidance Action released by the Combined Plan and Disclosure Statement. Additionally, unless otherwise explicitly stated in the Combined Plan and Disclosure Statement, in furtherance of the releases granted by the Combined Plan and Disclosure Statement or Confirmation Order, the injunction contemplated by this paragraph shall prohibit the assertion against the Liquidating Trust and the Liquidating Trustee of all Claims or Interests, if any, related to the Debtors.

100.    For the avoidance of doubt, no party bound by the releases in Article XI.A.1, Article XI.A.2, or Article XI.A.3 of the Combined Plan and Disclosure Statement may commence, continue, or otherwise pursue, join in, or otherwise support any other party commencing, continuing, or pursuing, a Claim or Cause of Action of any kind against any Released Party or any Third-Party Released Party that are Debtor Released Claims or Third-Party Released Claims.

101.    Confirmation of the Combined Plan and Disclosure Statement shall further have the effect of permanently enjoining all Persons and Entities from obtaining (a) any documents or other materials from current counsel for the Debtors that are in the possession of such counsel as a result of or arising in any way out of its representation of the Debtors and are subject to attorney-client privilege (or other any other form of privilege asserted by counsel), (b) any documents or other materials from current counsel for the Committee that are in the possession of such counsel as a result of or arising in any way out of its representation of the Committee and are subject to attorney-client privilege (or other any other form of privilege asserted by counsel), or (c) books and records, except in accordance with Article VIII.C of the Plan.

102.    Article XI.A.4 of the Combined Plan and Disclosure Statement releases and waives all Non-Insider Preference Actions regardless of whether any Person, who may be sued for any such Non-Insider Preference Action, opted into the Third-Party Release.

**FF.    Post-Confirmation Notices and Bar Dates**

103.    On or within two (2) Business Days of the Effective Date, the Debtors shall file and serve a notice of Effective Date and entry of this Order (the "Notice of Effective Date").  The Debtors will serve the Notice of Effective Date on the following parties: (a) the U.S. Trustee, (b) all entities that are party to executory contracts and unexpired leases with the Debtors, (c) all entities that are party to litigation with the Debtors, (d) all current and former employees, directors and officers (to the extent that contact information is available), (e) all regulatory authorities that regulate the Debtors' businesses, (f) the office of the attorney general for the states in which the Debtors maintain or conduct business, (g) the taxing authorities for the jurisdictions in which the Debtors maintain or conduct business, (i) the Department of Justice, and (j) all parties who filed a request for service of notices under Bankruptcy Rule 2002.

104.    The Notice of Effective Date shall be in substantially the form annexed to the Combined Plan and Disclosure Statement as Exhibit A.  The form of the Notice of Effective Date substantially in the form attached to the Combined Plan and Disclosure Statement as Exhibit A is approved.

## GG.    Administrative Expense Claims

105.    Except as otherwise provided in the Plan or this Order, requests for payment of Administrative Expense Claims must be filed no later than the Administrative Claims Bar Date in accordance with the Plan.

## HH.    Professional Fees

106.    Each Professional set forth on **Schedule 1** attached hereto shall take the fee reduction set forth for such professional therein.   In exchange, each Professional listed on **Schedule 1** and Mark Petersen each waive their respective right to object to the final fee application of any Professional set forth on **Schedule 1**.

## II.    Privilege

107.    The Liquidating Trust shall be given access by the Debtors and their professionals (at the expense of the Liquidating Trust with respect to any expenditure of resources that is more than de minimis) to all information the Liquidating Trustee determines is necessary to prosecute, investigate, sell, transfer, or convey any of the Retained Causes of Action and to benefit from any relevant privileges.  Any attorney-client privilege, work-product privilege, or other privilege or immunity of any Debtor attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust.  The Liquidating Trustee's receipt of any information subject to any privilege or similar protection shall not waive any applicable privileges or protections, and all such privileges and protections are expressly preserved.  To the extent that any privilege is not or was not previously waived, Mark Petersen

retains any individual privilege that may exist as to the prepetition documents in the Debtors' possession and may assert any such privilege, subject to the Liquidating Trustee's right to object and seek court relief as to such asserted privilege.

**JJ.     Liquidating Trust Expenses**

108.     Expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of this Bankruptcy Court.

**KK.     Notice of Subsequent Pleadings**

109.     The Notice of Effective Date may provide that to continue receiving service of documents filed in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, parties must file a renewed request to receive such service, *provided*, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without further action being necessary. Except as otherwise provided in the Plan, the Plan Administrator Agreement, the Liquidating Trust Agreement, or this Order, notice of all subsequent pleadings in these Chapter 11 Cases after the Effective Date will be limited to the following parties: (a) the U.S. Trustee; (b) the Plan Administrator; (c) the Liquidating Trustee; (d) any party known to be directly affected by the relief sought by such pleadings, and (e) any party that has filed a renewed request under Bankruptcy Rule 2002.

**LL.     Reports and Statutory Fees**

110.     All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors, the Reorganized Debtors, the Liquidating Trustee, the Plan Administrator and any other entity making disbursements on behalf of any Debtor or any Reorganized Debtor, or making disbursements on account of an obligation of any Debtor or any

Reorganized Debtor (each a "Disbursing Entity"), shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with this Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. Within five (5) business days of the Effective Date, the Reorganized Debtors and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. After the Effective Date, each Disbursing Entity shall file with this Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each Disbursing Entity shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of a particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

## MM. Binding Effect

111. On the date of and after entry of this Order and subject to the occurrence of the Effective Date, the terms of the Plan, and the final versions of the documents contained in the Plan Supplement and this Order shall be immediately effective and enforceable and deemed binding upon the Debtors, the Plan Administrator, the Liquidating Trust, any and all holders of Claims or Equity Interests (irrespective of whether the holders of such Claims or Equity Interests accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan or in effect as of the date hereof, all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, and all other parties in interest. All Claims against and Equity Interests in the Debtors shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or Equity Interest has voted on the Plan.

112.     Pursuant to section 1141 of the Bankruptcy Code, subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in these Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed under such prior orders, and all motions or requests for relief by the Debtors pending before this Bankruptcy Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Plan Administrator, the Liquidating Trust, and each of their respective successors and assigns.

113.     The Plan, all documents and agreements executed by the Debtors in connection therewith, this Order, and all prior orders of this Bankruptcy Court in these Chapter 11 Cases shall be binding against and binding upon and shall not be subject to rejection or avoidance by any chapter 7 or chapter 11 trustee appointed in any of these Chapter 11 Cases or any successor case or the Liquidating Trustee or IP/Austria Assets Trustee.

## NN.     Nonseverability of Plan Provisions upon Confirmation

114.     Each term and provision of the Plan, as may have been altered or interpreted by this Bankruptcy Court prior to the entry of this Order in accordance with the Plan, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified except in accordance with the Plan, and (c) nonseverable and mutually dependent.

## OO.     Injunctions and Automatic Stay

115.     Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in these Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect to the maximum extent permitted by law.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

**PP. Dissolution of Creditors' Committee**

116.     On the Effective Date, the Committee and any other statutory committee appointed in these Chapter 11 Cases shall dissolve automatically and the members thereof and the Professionals retained by the Committee shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, these Chapter 11 Cases and under the Bankruptcy Code; *provided*, that, the Committee shall continue to exist, and its Professionals shall continue to be retained, after the Effective Date and have standing and a right to be heard for the following limited purposes: (a) requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date, and (b) any appeals of this Order or other appeal to which the Committee is a party.

**QQ. Substantial Consummation and Effectiveness of the Plan**

117.     The Debtors are authorized to consummate the Plan at any time after the entry of this Order subject to satisfaction or waiver, in accordance with the terms of the Plan, of the conditions precedent to the occurrence of the Effective Date set forth in Article X of the Plan.  The substantial consummation of the Plan, within the meaning of sections 1101(2) and 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.  The Plan shall not become effective unless and until the conditions set forth in Article X.A of the Plan have been satisfied or waived in accordance with Article X.C of the Plan.

**RR. Effect of Non-Occurrence of Conditions to the Effective Date**

118.     If the Effective Date does not occur (except as provided in Article XIII.D of the Plan), the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, including any right to seek an extension of the exclusivity periods under

section 1121(d) of the Bankruptcy Code, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking by the Debtors or any other Entity.

**SS.  Other Provisions**

119.  One or more of the Debtors may continue to exist after the Effective Date in accordance with the respective laws of the state under which any such Debtor was formed and pursuant to any such Debtor's certificates of incorporation, bylaws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, to the extent necessary to comply with the Debtors' obligations under the Plan (including the payment of Allowed Professional Fee Claims) or otherwise until such date as reasonably mutually determined by the Liquidating Trustee.  The Liquidating Trustee is authorized to effectuate any such obligations or services through the post-Effective Date Debtors, rather than the Liquidating Trust, in its sole discretion.

**TT.  Effect of Conflict Between Plan, the Plan Supplement, and this Order**

120.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each other.  If there is any direct conflict between the terms of the Plan (including the Plan Supplement) and the terms of this Order, the terms of this Order shall govern and control.  Except as set forth in the Plan or any such document, in the event of any inconsistency among the Plan and any document or agreement filed in the Plan Supplement, the Plan shall control.

**UU.  Retention of Jurisdiction**

121.  Notwithstanding entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, this Bankruptcy Court retains jurisdiction over these Chapter 11 Cases, all matters arising out of or related to these Chapter 11 Cases and the Plan (except as otherwise provided in the Plan, Plan Administrator Agreement, or Liquidating Trust Agreement).

**VV. Headings**

122. Headings utilized herein are for convenience and reference only and shall not constitute a part of the Plan or this Order for any other purpose.

**WW. Waiver of 14-Day Stay**

123. Notwithstanding Bankruptcy Rule 3020(e), and, to the extent applicable, Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 and any other Bankruptcy Rule, this Order is effective immediately and not subject to any stay.

**XX. Final Order**

124. This Order is intended to be a final order, shall take effect immediately and be enforceable immediately upon entry, and its provisions shall be self-executing and the period in which an appeal must be filed will commence upon entry of this Order. In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

*Thomas M. Horan*

**Dated: June 11th, 2025**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**