```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE

                                  .  Chapter 11
IN RE:                            .
                                  .  Case No. 24-10443(TMH)
SC HEALTHCARE HOLDING, LLC, .
et al,                            .
                                  .  824 Market Street
                                  .  Wilmington, Delaware 19801
                  Debtors.  .
. . . . . . . . . . . . . . .  Tuesday, June 10, 2025
```

                    TRANSCRIPT OF HEARING RE:
   CONFIRMATION OF THE DEBTORS' COMBINED DISCLOSURE STATEMENT
              AND CHAPTER 11 PLAN OF LIQUIDATION
            BEFORE THE HONORABLE THOMAS M. HORAN
                UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:            Andrew L. Magaziner, Esq.
                            Shella Borovinskaya, Esq.
                            YOUNG, CONAWAY, STARGATT
                             & TAYLOR, LLP
                            Rodney Square
                            1000 North King Street
                            Wilmington, Delaware 19801

                            Daniel J. McGuire, Esq.
                            WINSTON & STRAWN, LLP
                            200 Park Avenue
                            New York, New York 10166

(Appearances Continued)

Audio Operator:             Electronically Recorded
                            by Ian Willoughby, ECRO

Transcription Company:      Reliable
                            1007 N. Orange Street
                            Wilmington, Delaware 19801
                            (302)654-8080
                            Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

APPEARANCES:   (Continued)

For the U.S. Trustee:            Jonathan Lipshie, Esq.
                                 OFFICE OF THE U.S. TRUSTEE
                                 844 King Street, Suite 2207
                                 Wilmington, Delaware 19801

For the Official Committee
of Unsecured Creditors:          Dennis A. Meloro, Esq.
                                 GREENBERG TRAURIG, LLP
                                 222 Delaware Avenue, Suite 1600
                                 Wilmington, Delaware 19801

                                 Nancy A. Peterman, Esq.
                                 GREENBERG TRAURIG, LLP
                                 360 North Green Street
                                 Suite 1300
                                 Chicago, Illinois 60607

For Hartford Fire
Insurance Company, et al:        Gary D. Bressler, Esq.
                                 MCELROY, DEUTSCH, MULVANEY
                                  & CARPENTER, LLP
                                 300 Delaware Avenue, Suite 1014
                                 Wilmington, Delaware 19801

For Martin Brothers
Distributing Company,
Inc.:                            Aaron Applebaum, Esq.
                                 DLA PIPER, LLP (US)
                                 1201 North Market Street
                                 Suite 2100
                                 Wilmington, Delaware 19801

For the Patient Care
Ombudsman:                       Robert M. Schechter, Esq.
                                 PORZIO, BROMBERG & NEWMAN, P.C.
                                 100 Southgate Parkway
                                 Morristown, New Jersey 07962

For Mark B. Petersen:            John D. Demmy, Esq.
                                 Paige Topper, Esq.
                                 SAUL EWING, LLP
                                 1201 North Market Street
                                 Suite 2300
                                 Wilmington, Delaware 19899

(Appearances Continued)

APPEARANCES:  (Continued)

For the New Operators:          Jason S. Levin, Esq.
                                MORRIS JAMES, LLP
                                500 Delaware Avenue, Suite 1500
                                Wilmington, Delaware 19801

For Column Financial,
Inc.:                           Joshua B. Brooks, Esq.
                                LANDIS, RATH & COBB, LLP
                                919 Market Street, Suite 1800
                                Wilmington, Delaware 19899

For Wells Fargo Bank,
N.A.:                           J. Cory Falgowski, Esq.
                                BURR & FORMAN, LLP
                                222 Delaware Ave, Suite 1030
                                Wilmington, Delaware 19801

APPEARANCES VIA ZOOM:  (On the Record)

For Bank of Rantoul:            John A. Lipinsky, Esq.
                                CLINGEN, CALLOW & MCLEAN, LLC
                                2300 Cabot Drive, Suite 500
                                Lisle, Illinois  60532

INDEX

|  | PAGE |
|---|---|
| COLLOQUY AND ARGUMENT RE:  PETERSEN SETTLEMENT | 7 |
| COLLOQUY AND ARGUMENT RE:  HARTFORD OBJECTION | 30 |
| PRESENTMENT/ARGUMENT BY MR. MCGUIRE | 40 |
| ARGUMENT BY MR. LIPSHIE | 43 |
| COMMENTS BY MS. TOPPER | 46 |
| FURTHER COMMENTS BY MR. MCGUIRE | 48 |
| COMMENTS BY MS. PETERSON | 49 |
| COMMENTS BY MR. SCHECHTER | 51 |
| COMMENTS BY MR. LEVIN | 52 |
| COURT DECISION | 53 |

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR THE DEBTORS |  |  |  |  |
| DAVID RICHARDS CAMPBELL, JR. | * | 22 |  |  |

*Direct via Declaration

| EXHIBIT |  | EVID. |
|---|---|---|
| Estrada Declaration at D.I. 1662 |  | 20 |
| Campbell Declaration at D.I. 1665 |  | 20 |
| Hartford 7 | Proof of Claim | 35 |
| Hartford 6 | Redacted Daily Declaration at D.I. 601-1 | 36 |

1          (Proceedings commence at 10:00 a.m.)

2          (Call to order of the Court)

3               THE COURT:  Good morning.  Please be seated.

4               Mr. McGuire.

5               MR. MCGUIRE:  Good morning, Your Honor.

6               THE COURT:  Good morning.

7               MR. MCGUIRE:  Dan McGuire for the debtors.

8               Your Honor, we're here today to attempt to confirm

9     our plan in the Petersen Health Care cases.

10              We have, I think, one live objection from the

11    Office of the United States Trustee relative to proceeding

12    today.  The other objections, with some clarifications and

13    things I'll make on the record, I believe are resolved.

14              So -- and it's up to Your Honor, of course, but it

15    sounds like there's sort of argument the U.S. Trustee might

16    want to make relative to continuing this, and whether or not

17    Your Honor agrees with that or not will determine whether

18    they want to cross-examine our witnesses or not.

19              THE COURT:  Okay.

20              MR. MCGUIRE:  So I thought it might make sense to

21    address that first, so we can determine the order of going

22    through things.  I can give a summary of where we are, what

23    the plan is, what's happening, let them make their point, and

24    then we can decide what will happen, if that works for you,

25    Your Honor.

1          THE COURT:  Yes, it does.  Yeah.

2          MR. MCGUIRE:  Okay.  So, yes, Your Honor, we're

3     here today seeking to confirm our liquidating plan in this

4     case.

5          And it's a fairly simple liquidating plan in many

6     ways.  We sold all of the assets here at the beginning of

7     December, after an auction that we had in June, that Your

8     Honor approved in July.  And the operators took over in the

9     beginning of November, closed in December, and we've been

10    working since then to, frankly, clean things up with the new

11    operators and the buyer and see if we could come to the terms

12    of a liquidating plan.

13         From when we initially filed it to where we are

14    here today, a few things have been accomplished to try to

15    make this confirmable today, and they're reflected in the

16    documents filed.

17         We came to agreements with Arcadia and Wells Fargo,

18    two of our secured creditors, who had potential

19    administrative claims relative to how the DIP was allocated

20    in the case.

21         THE COURT:  Uh-huh.

22         MR. MCGUIRE:  And we've come to resolutions of

23    those that are proposed stipulations that are just, you know,

24    monetary settlements that resolved those and leave us with

25    cash to be able to confirm the plan and move forward with a

1    feasible plan.

2            Secondarily, we had some issues with Cascade, our

3    buyer, and some escrows that were being held relative to the

4    sale and the new operators, in exchange for the money flowing

5    back and forth between those two.

6            THE COURT:  Uh-huh.

7            MR. MCGUIRE:  And we've come to an agreement there.

8            The escrows are going to be released.

9            Certain fines and penalties owed by the debtors

10   with respect to pre-petition periods that are owed by the

11   debtors pursuant to the asset purchase agreement will be paid

12   immediately upon release of those escrows.

13           And some money that's owed back and forth between

14   the new operators and the debtors is all, hopefully, being

15   done today, wires are, you know, hopefully going back and

16   forth today.  It's largely outside the plan, Your Honor, but

17   it needed to happen for us to have the money to fund the plan

18   and make the payments to secured creditors required under the

19   plan.

20           So those have happened.

21           And then we also have a proposed settlement with

22   Mark Petersen.  The estate had potential causes of action;

23   and if the plan is confirmed, gets the benefit of a guarantee

24   of our unsecured creditors column under the plan.

25           And as Your Honor may recall, we had potential

1     mediation of this with Judge Sontchi.

2                THE COURT:  Uh-huh.

3                MR. MCGUIRE:  That -- you know, we came to a

4     potential number, but it involved resolving a bunch of

5     guarantees that don't relate directly to the debtors.  We

6     could not get that done.  But then, you know, we were able to

7     get what I'll call an "estate only transaction" done.

8                And you know, in its simplest terms, Mr. Petersen

9     will liquidate certain of his assets and contribute $6.7

10    million to the bankruptcy estates.

11               The first 1.2 million of that will go into what

12    will be called the "plan administrator pot," to fund

13    administrative costs of the estates and of the administrating

14    -- the plan administrator portion of things, after

15    confirmation.

16               And the next 5.5 will go directly to the

17    liquidating trust for the benefit of general unsecured

18    creditors, for them to be paid.

19               There are contours around that, in terms of some

20    collateral that's being pledged and a process to get to that

21    by date-certain, December 7th, I believe it is, and interest

22    accrues if it isn't done by then.

23               The estate has preserved the dollar amount of the

24    full claims against Mr. Petersen in theory, just insofar as

25    if there's a proceeding against him, that it wouldn't be, you

1    know, reduced to the amount that we have agreed to here as

2    the claim in that case.

3         But under all circumstances, the amount that can be

4    collected from Mr. Peterson is capped at $6.7 million, plus,

5    if applicable, interest.  There's no scenario where, even

6    with the claims being retained, there could be -- there could

7    be a recovery of anything greater than that, under any

8    scenario.  That is simply the terms of the deal.

9         There's other contours to that, but they're mostly,

10   you know, minor details.  The main point is that 6.7, with

11   some collateral and some rights to pursue it, if he doesn't

12   get the payments by -- the beginning of December of this

13   year.

14        And frankly, that money is what makes the plan

15   feasible and made it acceptable to the committee and got us,

16   you know, money here to do our plan, which is largely, you

17   know, a pot plan to distribute that money and give a

18   preference waiver of the trade creditors.

19             THE COURT:  Uh-huh.

20             MR. MCGUIRE:  That's, effectively, what this plan

21   is, as Your Honor -- and it also, we believe, is better than

22   conversion because there's still some ongoing work with the

23   accounts receivable.  And some of those belong to the secured

24   creditors, but some of those belong to the estate, for

25   properties that were over-secured.

1          And the process with the couple remaining employees

2     that will be rehired if we get the plan confirmed and the

3     people at Getzler Henrich and the CRO that have been working

4     on that, that's a complicated process with, you know, 80

5     facilities, to figure out what receivables are whose.  And we

6     think, in a conversion, that asset would be loss, that it's

7     just -- it's going to be almost impossible for a Chapter 7

8     Trustee to step in here with almost no assets and decide, you

9     know, I'm going to figure out how to reconcile this.  So we

10    really think that asset would be lost.

11         So that's what we're here today, trying to do, Your

12    Honor.  If we get to the point where we're able to go forward

13    with this today, I'll go over a couple other little

14    settlement items that we've reached that aren't quite

15    reflected in the documents, relative with the surety, in

16    terms of providing documents, et cetera.  But that's the gist

17    of where we are and what we're doing and what we're trying to

18    do today, and that we'd like to move forward on, Your Honor.

19              THE COURT:  Okay.

20              MR. MCGUIRE:  And with that background, I'll let

21    the U.S. Trustee speak.

22              THE COURT:  Okay.

23              MR. MCGUIRE:  Thank you.

24              THE COURT:  Mr. Lipshie, good morning.  Good to see

25    you.

1          MR. LIPSHIE:  Good morning, Your Honor.  Jonathan

2     Lipshie, Office of the United States Trustee.  I'm here pinch

3     hitting for Linda Casey of my office, who --

4          THE COURT:  Yes.

5          MR. LIPSHIE:  -- inherited the case from Linda

6     Richenderfer.

7          So I'll be brief, Your Honor, with respect to, as

8     counsel said, our position is, with respect to this -- the

9     Petersen settlement, effectively, we've gotten 12 hours'

10    notice of this settlement.  It was filed late last night, I

11    believe.  Stakeholders, including the United States Trustee,

12    have not had an opportunity to vet this, to look at it, to

13    scrub the document.

14         The document itself is a settlement termsheet; it's

15    not a contract, it's not signed.  I think it would be prudent

16    to adjourn the confirmation hearing until the document is

17    papered in full, until it's a binding contract.  If you look

18    at the document itself, it says it's non-binding, it's for

19    settlement purposes only, not all the material terms are

20    there.  It's, you know, a first step, a proposal.  I don't

21    know what you want to call it.

22         But there's an issue of notice.  Notwithstanding

23    that, what it is, I mean, there's a feasibility issue, as

24    well, because it's not binding.  I mean, what will happen if

25    it falls apart, two, three weeks from now, and we have a

1   confirmation order?  That would be a problem, as well.  So

2   that's what I have to say at this point, Your Honor.

3           THE COURT:  Okay.  Mr. McGuire, can the plan go

4   effective if the settlement doesn't get reduced to a --

5           MR. MCGUIRE:  I was going to say, Your Honor --

6           THE COURT:  -- settlement agreement.

7           MR. MCGUIRE:  -- I think that is the -- you're

8   hitting on -- you're a step ahead of me.  That's what I think

9   is the simple solution here, is that, as condition to

10  effectiveness, that we have a binding settlement with Mr.

11  Petersen, I think resolves that issue.

12          I believe we're there.  I don't -- he's -- Mr.

13  Lipshie is absolutely right.  The termsheet says it's non-

14  binding, that's correct.  That's because, you know, this

15  document has been worked on for several days, and it's 12

16  pages long.  People don't want like one word to be used as

17  like an ah-hah against you.

18          But as someone who's in the conversations and

19  having the discussions, the things that we're talking about

20  now, in terms of this, are on the edges.  They are not

21  economic points, they are not the terms of it.  They are

22  like, you know, how does the privilege -- they're very small

23  issues, in terms of that people just want to make sure

24  they're preserving their rights until the documentation.

25          But I think that we can make the definitive

1    documentation a condition to the effective date, and that

2    resolves it.  If we don't get there, we don't get there.  But

3    it is -- I don't think that we have to show that it's a

4    hundred percent; I think we have to show that it's incredibly

5    likely, and it's incredibly likely that we have a deal here

6    on this.  It is -- we believe we have a deal and it's just a

7    question of the documentation and people (indiscernible) to

8    say, geez, this document that, you know, they first got on

9    Friday that memorialized what we've been talking about for

10   several weeks is -- you know, is it.

11          So, you know, that -- those words, candidly, were

12   added last night, the non-binding.  It was written as binding

13   before.  We're comfortable with that just because we

14   understand what was happening.  And we think that that solves

15   the issue of, you know, this -- of confirming a plan that

16   then can't be executed, is we make it a condition to

17   effectiveness, and then there we are.

18          THE COURT:  Okay.  Well, the Office of the United

19   States Trustee's other point, though, is that parties haven't

20   had a chance to vet it.

21          MR. MCGUIRE:  Right.  Yeah.

22          THE COURT:  How do you respond?

23          MR. MCGUIRE:  Yeah.  Section 8(e)(3) of our

24   combined plan and disclosure statement alerted parties to the

25   fact that there might be a settlement with Mr. Petersen that

would be embodied in the plan.  And 97 percent in dollar

amount and 90 percent of the unsecured creditors voted for

that plan knowing, when we solicited, that there might be a

deal with him that is just embodied, you know, come

confirmation time and, you know, that will be in there.

With -- if the plan is confirmed today, the two

secured -- for -- the two secured creditors want to know,

we'll be changing their vote to yes, a hundred percent of the

secured creditors will then have voted for the plan.

So I think the fact that creditors had notice at

the time of solicitation that there could be a resolution

with Mr. Petersen that would be embodied through the plan, as

opposed to that litigation being dumped into the trust, that

was out there for them.  And they overwhelmingly said yes, we

will still sign up for this.  So we think that that was

sufficient notice.  And the creditors, in fact, voted eyes

wide open that this could, in fact, be the case.

THE COURT:  Okay.  Is there anyone else who wants

to be heard just on this one issue?

MR. LIPINSKY:  Your Honor?

THE COURT:  Ms. Peterman, welcome.

Let me hear from Ms. Peterman first, please, Mr.

Lipinsky.

MS. PETERMAN:  Good morning, Your Honor.  Nancy

Peterman on behalf of the committee.

1    I did -- I stand in support of the debtors'

2  arguments, in terms of moving forward with the confirmation.

3    We did ask the debtors -- which they modified the

4  confirmation order last night -- to add a condition to the

5  effective date that we have final documentation on the

6  Petersen settlement.

7    This has gone back and forth.  The committee is

8  supportive of this settlement.  It's not as much as we would

9  like, but it's the best we can do under the circumstances.

10    And I also echo Mr. McGuire's comments that, from

11  our perspective, the termsheet is done.  The open item,

12  really, to work on between now and effective date is where

13  we're going to record our mortgages, against which

14  properties, so just kind of putting together that security

15  package to secure payment of the monies that are due and

16  owing to the estate.

17    So we would support moving forward.  And really,

18  this is the only option, standing here today, for the case to

19  move forward with a confirmed plan.

20    THE COURT:  Okay.  Thank you, Ms. Peterman.

21    Mr. Lipinsky, good morning.  Welcome.

22    **(Zoom participants not adequately recorded)**

23    MR. LIPINSKY:  Good morning, Your Honor.  John

24  Lipinsky on behalf of Bank of Rantoul.

25    I didn't get this termsheet until 15 minutes ago.

1    I just don't consider that proper notice.  We didn't vote for

2    the plan.

3         I'm concerned that, somehow, that this

4    (indiscernible) would impact my client's guarantee claims,

5    that's my primary concern.  But I haven't even had a chance

6    to go through this.

7         THE COURT:  Okay.  Is there anybody else who wishes

8    to be heard before we turn to Mr. McGuire?

9       (No verbal response)

10        THE COURT:  Okay.  I hear no response.

11        How do you respond to Mr. Lipinsky's concerns?

12        MR. MCGUIRE:  Well, the concerns sound like they're

13   relative to things other than his claims in this bankruptcy

14   case.  It's relative to his guarantee claims against Mr.

15   Petersen, which are completely unaffected by this.  This

16   doesn't waive or alter any other party's rights against Mr.

17   Peterson.

18        This -- we tried to do that deal, the bigger deal

19   of having one larger pot that would then be divvied up and

20   resolve claims of guarantors against Mr. Petersen; we could

21   not get to that point.  So this, on its face, very clearly,

22   only deals with estate causes of action and estate claims.

23   It has absolutely no impact on the Bank of Rantoul's claims

24   against Mr. Petersen at all.

25        THE COURT:  Okay.  I haven't seen the termsheet,

1    right?  It wasn't part of the plan supplement, I don't think.

2              MR. MCGUIRE:  It is; it's Exhibit E to the order.

3              THE COURT:  Oh, it's an exhibit to the order?

4    Okay.

5              MR. MCGUIRE:  Yes, sir.

6              THE COURT:  Okay.

7         (Pause in proceedings)

8              THE COURT:  Ms. Borovinskaya or Mr. Magaziner, do

9    you know what the page number is, beginning with that, at the

10   top of the --

11             MS. BOROVINSKAYA:  It's -- Your Honor, it starts at

12   Page 188 of 257.

13             THE COURT:  Oh, thank you very much.

14        (Participants confer)

15             THE COURT:  I'm sorry.

16        (Participants confer)

17             THE COURT:  Okay.  Were you going to say something?

18             MR. MCGUIRE:  Well, Ms. Peterman pointed out that

19   we also did describe this settlement in the brief that we

20   filed Friday.  This wasn't -- you know, I know this was filed

21   late last night; of course, we wanted to file it sooner; and,

22   of course, as typically happens in these cases, it ends up

23   getting done at midnight last night.  But you know, the

24   contours of this were out there --

25             THE COURT:  Yeah --

1        MR. MCGUIRE:  -- at the end --

2        THE COURT:  -- I thought --

3        MR. MCGUIRE:  -- of last week.

4        THE COURT:  -- that I read that.

5        MR. MCGUIRE:  Yeah.

6        THE COURT:  Yeah.

7        Mr. Lipinsky, is there anything in the termsheet

8  that gives you concern about the guarantees?

9        MR. LIPINSKY:  Your Honor, as Mr. McGuire stated,

10  it does not impact anything (indiscernible)

11        THE COURT:  Okay.

12        MR. LIPINSKY:  It's unusual (indiscernible) notice,

13  but I get it.

14        THE COURT:  Okay.  Look, I think that this is an

15  issue that has been out there for quite some time.  Anybody

16  who's receiving notice in the case knew that there were

17  discussions going on, there was a mediation.  I believe I

18  entered an order approving the appointment of Mr. Sontchi as

19  the mediator.

20        And while I appreciate the concern, there was

21  discussion of this in the confirmation brief.  And with the

22  consummation of the settlement or arriving at final terms on

23  the settlement is a condition to the plan becoming effective,

24  I think there are adequate safeguards built in, and I'm going

25  to go forward with the hearing this morning.

1          MR. MCGUIRE:  Thank you, Your Honor.

2          Can I have one moment, please, Your Honor?

3          THE COURT:  Yeah, certainly.

4      (Participants confer)

5          THE COURT:  Okay.  Mr. Lipinsky, I'll just request

6  that you turn off the camera until you wish to be recognized

7  again, and I'll be happy to hear from you then.

8          MR. LIPINSKY:  Okay.  Thank you.

9          THE COURT:  Thank you, sir.

10      (Participants confer)

11          MR. MCGUIRE:  Your Honor, if it's acceptable to

12  Your Honor, what we'd like to do is move to the evidence

13  portion --

14          THE COURT:  Yes, please.

15          MR. MCGUIRE:  -- and move into the evidence the two

16  declarations we have and then offer the witnesses for cross-

17  examination --

18          THE COURT:  Yes.

19          MR. MCGUIRE:  -- if that's acceptable to Your

20  Honor.

21          We have Mr. Estrada and Mr. Campbell here.

22          Mr. Estrada's declaration is at Docket 1662, it's

23  the voting declaration.  As I referenced earlier, 90 percent

24  in number and 97 percent in dollar amount of the creditors

25  accepted the plan.  And we would ask that his declaration be

1   moved into evidence in support of the plan.

2          THE COURT:  Okay.  Does anybody object to the

3   admission of Mr. Estrada's declaration in support of plan

4   vote?

5       (No verbal response)

6          THE COURT:  Okay.  I hear no response.  It is

7   admitted.

8       (Estrada Declaration at D.I. 1662 received in evidence)

9          THE COURT:  Is there anyone who would like to

10  cross-examine Mr. Estrada?

11      (No verbal response)

12         THE COURT:  Okay.  I hear no response.

13         MR. MCGUIRE:  Thank you, Your Honor.

14         Docket Number 1665 is the declaration of David

15  Campbell, our Chief Restructuring Officer, in support of

16  confirmation.  Likewise, Your Honor, we'd like to move that

17  into evidence in support of confirmation and offer it for

18  cross-examination.

19         THE COURT:  Okay.  Does anybody object to the

20  admission of Mr. Campbell's declaration in support of plan

21  confirmation?

22      (No verbal response)

23         THE COURT:  Okay.  I hear no response.  It is

24  admitted.

25      (Campbell Declaration at D.I. 1665 received in evidence)

1          THE COURT:  Is there anyone who would like to

2     cross-examine Mr. Campbell?

3          MR. LIPSHIE:  Yes, Your Honor.

4          THE COURT:  Yes, okay.  Okay.  Mr. Campbell, why

5     don't you come up here, please?  You can just stand next to

6     the witness box and remain standing for a moment.

7          THE COURT OFFICER:  Good morning.  Would you please

8     raise your right hand?

9       DAVID RICHARDS CAMPBELL, JR., WITNESS FOR THE DEBTORS,

10                          AFFIRMED

11         THE COURT OFFICER:  Would you please state your

12     full name and spell your last name for the record?

13         THE WITNESS:  David Richards Campbell, Jr., C-a-m-

14     p-b-e-l-l.

15         THE COURT:  Thank you.  You may be seated.

16         THE WITNESS:  Thank you.

17         THE COURT:  Okay.  Mr. Lipshie.

18         MR. LIPSHIE:  Your Honor, to speed things up, could

19     I just confer with debtors' counsel --

20         THE COURT:  Oh, certainly.

21         MR. LIPSHIE:  -- for a second --

22         THE COURT:  Yeah.

23         MR. LIPSHIE:  -- to see where ...

24         MS. BOROVINSKAYA:  (Not identified) Your Honor, may

25     I approach the witness box just to drop off a binder?

1          THE COURT:  Yes, you may.

2        (Participants confer)

3          MR. LIPSHIE:  Your Honor, I'll try to speed things

4    up.

5                    CROSS-EXAMINATION

6    BY MR. LIPSHIE:

7    Q    Good morning, sir.

8    A    Good morning.

9    Q    You are the Chief Restructuring Officer of the debtors.

10   Is that correct?

11   A    I am.

12   Q    Okay.  And were you involved in the negotiations of the

13   termsheet that we were discussing before?

14   A    I was involved in some of it.

15   Q    Okay.  Do you know what the terms are?

16   A    I do.

17          MR. LIPSHIE:  Okay.  Your Honor, I don't believe

18   that's in the record, as far as the binders go, because it

19   was filed late last night.  It's part of the confirmation

20   order, I believe.

21          THE COURT:  Right.

22          MR. LIPSHIE:  I'm going to refer to it.  I assume

23   it's in the record, but I -- there's no exhibit to refer to.

24   So I'm going to generally ask him questions about it, I think

25   he'll be able to answer them.  They're simple questions.

1          (Participants confer)

2     BY MR. LIPSHIE:

3     Q    Sir, the settlement sheet.  The first sentence, the

4     first few words are, it says, "this non-binding termsheet."

5     Is that correct?  It's a non-binding termsheet, correct?

6     A    That is -- that is correct.

7     Q    Okay.  It also says, and I'll quote from the third

8     paragraph:

9               "This termsheet does not address or include, nor is

10              it intended to, all the material terms, provisions,

11              and conditions of the settlement, all of which

12              remain subject to definitive documentation."

13         Is that correct?

14    A    That is correct.

15    Q    Okay.  And to your --

16    A    I'm -- I'm sorry.  If I can just -- I want to open up

17    the termsheet, if you don't --

18    Q    That's fine.

19    A    -- if you don't -- if you don't mind.

20    Q    That's fine.  and I have a copy of it, as well.

21    A    The ...

22         (Pause in proceedings)

23              MS. BOROVINSKAYA:  Your Honor, may I approach?

24              THE COURT:  Yes, you may.

25              MS. BOROVINSKAYA:  Okay.

1            THE COURT:  Is that a copy of the --

2            MS. BOROVINSKAYA:  It's the settlement --

3            THE COURT:  -- a standalone --

4            MS. BOROVINSKAYA:  -- termsheet, yeah.

5            THE COURT:  -- copy of the settlement --

6            MS. BOROVINSKAYA:  Yes.

7            THE COURT:  -- termsheet?

8         (Pause in proceedings)

9            THE COURT:  Please proceed.

10    BY MR. LIPSHIE:

11    Q    Okay.  And Mr. Campbell, did I read that correctly, that

12    --

13    A    That --

14    Q    -- that's in --

15    A    I you don't mind re-reading that.

16    Q    Well, let me ask you this.  This has not been signed by

17    Mr. Petersen.  Is that correct?

18    A    I --

19    Q    It's a termsheet, correct?

20    A    It has not been signed by Mr. Petersen, correct.

21    Q    Okay.  And it is subject to further documentation.  Is

22    that correct?

23    A    That is correct.

24    Q    Okay.  And in addition, if you skip down a little bit,

25    it says that:

1          "This settlement will be approved pursuant to Rule

2          9019 of the Federal Rules of Bankruptcy Procedure."

3     Did I read that correctly?

4     A    Yes.  Under "General Framework and Implementation," the

5     first paragraph.

6     Q    Okay.  And to your knowledge, no motion has been filed

7     to approve this settlement, correct?

8     A    I am unaware that a motion has been filed.

9     Q    Okay.  And this settlement termsheet was filed late last

10    night, correct?

11    A    Yes.

12    Q    Okay.  And it will fund -- now I'm going to paraphrase.

13    It's going to fund the payment of the administrative claims

14    to the extent of $1.2 million.  Is that correct?

15    A    That is correct.

16    Q    Okay.  And is it true, without this agreement, the plan

17    would not be feasible?

18    A    I believe that, without the agreement with Mr. Petersen

19    and the $1.2 million used for the administrative expenses,

20    that it would be unconfirmable.

21         MR. MCGUIRE:  Your Honor, I'm going to object.

22    That calls for a legal conclusion.

23         THE COURT:  I mean, yeah, sustained.  He's already

24    answered.

25         (Participants confer)

1          MR. LIPSHIE:  Your Honor, I wanted to refer to

2     something else that's in the confirmation order.

3          THE COURT:  Yes.

4          MR. LIPSHIE:  I don't have adequate -- quite

5     frankly, Your Honor, I read this, you know, an hour before I

6     got here, so my preparation is limited.  However, counsel has

7     been kind enough to give me one of the documents, which I'll

8     refer to, which I believe is Page 161 of the confirmation

9     order.

10          THE COURT:  Thank you.

11          MR. LIPSHIE:  And I just have a couple of

12     questions.  May I approach, Your Honor?  I just have this

13     one?

14          THE COURT:  Yes, certainly.

15       (Pause in proceedings)

16     BY MR. LIPSHIE:

17     Q    Mr. Campbell, I handed you a document.  Do you -- are

18     you familiar with that document?

19     A    I am.

20     Q    Okay.  And what is it?

21     A    It is a -- it's our -- a cash flow statement.

22     Q    Okay.  And this is attached to the confirmation order.

23     Is that correct?

24     A    That is correct.

25     Q    Okay.  And were you involved in the preparation of this

1    document or did you supervise the preparation of the

2    document?

3    A    Both.

4    Q    Okay.  Great.

5         If you look, in the bottom-right corner, the very

6    bottom-right corner, there's a figure in parenthesis, one

7    point -- $1,205,571.  Do you see that?

8    A    I do.

9    Q    And what does that represent?  Does that represent the

10   cash flow as of the filing -- as of the filing of the

11   confirmation order?

12   A    It would representation the cash flows as of the

13   confirmation order, without Mr. Petersen's contribution of

14   $1.2 million.

15   Q    Okay.  And in fact, you'd still be short about $5,000,

16   correct?  Give or take.

17   A    On -- on paper, yes.  I am pretty confident that we

18   would be able to figure out $5,000, in order to make the

19   confirmation work.

20   Q    I'm sure you could.

21        But my point is:  Without Mr. Petersen's settlement,

22   this case would not be able to be confirmed, correct?

23             MR. MCGUIRE:  Objection.  Calls for a legal

24   conclusion.

25             MR. LIPSHIE:  I'll rephrase, Your Honor.

1          THE COURT:  Okay.

2     BY MR. LIPSHIE:

3     Q    Would the debtor be able to meet the obligations under

4     the plan without the Petersen settlement?

5     A    I do not believe so.

6     Q    Okay.  And if, in fact, for some reason, the plan -- not

7     the plan -- the settlement is not documented and signed by

8     Mr. Petersen, the plan would fail.  Is that correct?

9     A    We would -- we would have insufficient funds to pay for

10    the administrative expenses.

11          MR. LIPSHIE:  Okay.  No further questions, Your

12    Honor.

13          THE COURT:  Thank you, Mr. Lipshie.

14          Would anybody else like to cross-examine Mr.

15    Campbell?

16        (No verbal response)

17          THE COURT:  Okay.  I hear no response.

18          Any redirect?

19        (Pause in proceedings)

20          MR. MCGUIRE:  No, Your Honor.

21          THE COURT:  Okay.  All right.  Mr. Campbell, you

22    are excused.

23          THE WITNESS:  Thank you, Your Honor.

24          THE COURT:  Thank you.

25        (Witness excused)

1        (Participants confer)

2              MR. MCGUIRE:  Your Honor, I think we've -- that

3    concludes our evidence, Your Honor --

4              THE COURT:  Okay.

5              MR. MCGUIRE:  -- with respect to the plan.

6              THE COURT:  Well, let me just ask as a matter of

7    course.  Mr. Lipshie, does the Office of the United States

8    Trustee have any evidence that it wishes to put on?

9              MR. LIPSHIE:  No.

10             THE COURT:  Okay.  Thank you.

11             MR. BRESSLER:  Your Honor?

12             THE COURT:  Mr. Bressler, good morning.

13             MR. BRESSLER:  Hi, good after -- good morning.

14   Gary Bressler for Hartford Fire Insurance Company and its

15   affiliated sureties.

16             We filed an objection to confirmation.  We've

17   resolved two of our three issues, but I don't believe we've

18   resolved our third issue.

19             THE COURT:  Okay.

20             MR. BRESSLER:  Therefore, I'd like to put on

21   limited evidence, but I think it makes sense if I go through

22   the three issues again, if Your Honor is okay with that.

23             THE COURT:  To go through the three issues?

24             MR. BRESSLER:  Just to tell you what's resolved and

25   what isn't and why.

1          THE COURT:  Okay.  What evidence do you plan to put

2    on this morning?

3          MR. BRESSLER:  Proofs of claim filed on behalf of

4    my client.

5          And if Your Honor will permit, the committee and

6    debtor had agreed that a prior declaration, except one

7    paragraph, could be introduced without the witness, who's

8    away on vacation.  I should have also contacted Your Honor,

9    and I apologize for that.  But they -- but there's nothing

10   controversial in there, and that's why they agreed.

11         THE COURT:  Okay.  Is the declaration on the

12   docket?

13         MR. BRESSLER:  Yes.

14         THE COURT:  Okay.  What's the docket number, Mr.

15   Bressler?

16         MR. BRESSLER:  601-1.

17         THE COURT:  Okay.  Thank you very much.

18         MR. BRESSLER:  And as I said, it's relatively

19   limited.

20         THE COURT:  Okay.  Yeah, if you'd like to make a

21   few comments before moving to the evidence, that's fine by

22   me.

23         MR. BRESSLER:  Okay.  The -- we filed three

24   objections:

25         One was to protect the setoff and recoupment rights

1    of our client and its bond beneficiaries.  The debtors put in

2    language in the order to address that.  Because the paragraph

3    numbers of the order changed, they have to change the

4    paragraph number, but that's resolved.  We also -- I can

5    point out the number, if Your Honor is interested, but ...

6              THE COURT:  Okay.

7              MR. BRESSLER:  But that's resolved.

8              We asked that, if a -- our client is a bonding

9    company and has given bonds to various beneficiaries.

10             THE COURT:  Uh-huh.

11             MR. BRESSLER:  We asked that, if there's a claim

12   against the bond, we be given access to the books and records

13   going forward; and also that, if they're going to destroy the

14   books and records, we get reasonable notice.  This morning,

15   counsel has told me that he's willing to put on the record

16   that they agree to that.

17             THE COURT:  Okay.

18             MR. MCGUIRE:  Yes, Your Honor, we agreed to that.

19             THE COURT:  Okay.

20             MR. BRESSLER:  The third issue is as follows:

21             So residents give money to the debtor when they're

22   staying in the debtors' location.  Under the Code of Federal

23   Regulation, that's a trust fund; so, therefore, residents

24   would have a trust fund claim, or, if residents brought a

25   claim on the bond against my client and my client paid it, it

1  would have a trust fund claim.

2          The debtors' plan says what happens to allowed

3  secured claims, but doesn't say what happens if there's an

4  allowed trust fund claim.  We're not asking the Court to find

5  that there are any allowed trust fund claims, but just that

6  there be treatment that, if there is such an allowed claim,

7  the plan provide that it gets paid.

8          The debtor, so far, hasn't been willing to do that.

9  They have put in the declarations that no residences have

10  asserted a proof of claim for that as of right now.  But that

11  does not necessarily preclude residents from filing such a

12  claim against my client; and, if they did, we would -- we had

13  in our proof of claim this trust fund claim.  That's why I

14  wanted to introduce the proofs of claim.

15          And in addition, it's always possible a resident

16  will come out of the woodwork, because you're dealing with

17  residents in a nursing home, and try to assert it late.

18  Again, I don't know that Your Honor would allow it.  But all

19  I'm asking is that there be something -- you have to put how

20  you're treating all the claims in a plan, and since it's not

21  really a secured claim, you can't really all under that

22  definition if the claim exists under the plan, so there has -

23  - I would submit that there has to be something just saying

24  how they're treated if and one -- when such claim is allowed,

25  which, agian, I'm certainly not ask -- we're certainly not

1   asking Your Honor to find, at this point, that there are any

2   allowed trust fund claims, only that they be provided for

3   under the plan.

4            THE COURT:  If they're trust fund claims, then are

5   they not -- they're not claims against property of the

6   estate, are they?

7            MR. BRESSLER:  They're not claims against property

8   of the estate, but the debtor would have been holding them,

9   and then, possibly, the successor would have been holding

10  them, so that it would be a floating trust.

11           The debtors, when they sold the prop -- the sales

12  when they sold their different properties, they supposedly

13  did turn over to the buyer any trust funds they were holding

14  at that time.  But there was one instance where the ombudsman

15  filed something saying some of that money had been sold once

16  in the past.  I'm not saying that that doesn't mean that all

17  the residents, they get their money, but there's no way to

18  know for sure.

19           THE COURT:  Okay.

20           MR. BRESSLER:  And I don't know if Your Honor wants

21  me to move the admission of the proofs of claim and the

22  declaration now or ...

23           THE COURT:  Yeah, we'll do evidence now --

24           MR. BRESSLER:  Okay.

25           THE COURT:  -- and then we'll move to argument.

1          MR. BRESSLER:  So I submitted to Your Honor the

2    proofs of claim.  We only filed -- I have a binder if Your

3    Honor wants all the documents --

4          THE COURT:  Yeah.

5          MR. BRESSLER:  -- that we --

6          THE COURT:  Where do I find the proofs -- you said

7    you submitted them.  Where, where are they?  Are they in the

8    objection?

9          MR. BRESSLER:  No.  We were asked to submit them

10   separately to Your Honor.

11         THE COURT:  Oh, in your witness and exhibit list.

12         MR. BRESSLER:  Yes, but --

13         THE COURT:  Yeah.  Sorry.

14         MR. BRESSLER:  But if --

15         THE COURT:  That's fine.

16         MR. BRESSLER:  -- Your Honor wants, I can give you

17   a list of all our exhibits or not.

18         THE COURT:  Yeah.  No, it's just find.

19         MR. BRESSLER:  All right.

20         THE COURT:  I have --

21         MR. BRESSLER:  So --

22         THE COURT:  -- those handy.

23         MR. BRESSLER:  -- we only submitted 1 full proof of

24   claim because there were 20, so we didn't submit the addendum

25   to the 20 others because it just would have been extra paper.

1          THE COURT:  Yeah.

2          MR. BRESSLER:  So I would move the admissions of

3    the proofs of claim and also of the declaration that I've

4    already told Your Honor about.

5          THE COURT:  Okay.  Is there any objection to the

6    admission of Hartford Fire Insurance Company's proofs of

7    claim?

8          (No verbal response)

9          THE COURT:  Okay.  I hear no response.  They are

10   admitted.

11         (Hartford Exhibit 7 received in evidence)

12         THE COURT:  And the declaration was the declaration

13   of Gregory Daily.  It was filed about a year ago in

14   connection with another matter.  But is there any objection

15   to the admission of Mr. Daily's declaration?

16         MR. MCGUIRE:  With the exclusion of paragraph ...

17         (Participants confer)

18         MR. BRESSLER:  7.  I think it's 7.  I did -- let me

19   double-check.

20         MR. MCGUIRE:  The one paragraph that was agreed to

21   --

22         MR. BRESSLER:  So we did --

23         MR. MCGUIRE:  -- be excluded, Your Honor.

24         MR. BRESSLER:  We did agree to that, that's

25   correct.

1            THE COURT:  Okay.  So that's by agreement.  Okay.

2            MR. BRESSLER:  Yes, it's -- it is Paragraph 7.

3            THE COURT:  Okay.  Mr. Daily's declaration is

4    admitted, with the exception of Paragraph 7 of that

5    declaration.

6        (Hartford Exhibit 6 received in evidence)

7            THE COURT:  And I take it nobody wished to cross-

8    examine Mr. Daily?

9            MR. MCGUIRE:  No, Your Honor.

10           THE COURT:  Okay.  I hear no response and the

11   debtors -- other than the debtors saying they do not wish to

12   cross-examine Mr. Daily.

13           MR. BRESSLER:  Thank you, Your Honor.

14           THE COURT:  Okay.  Okay.  Just I'll ask one more

15   time.  Is there anybody else who wishes to put on any

16   evidence in connection with plan confirmation?

17       (No verbal response)

18           THE COURT:  Okay.  I hear no response.

19           MR. MCGUIRE:  Your Honor, to address the sureties'

20   issues, our view is that, you know, trust fund claim isn't a

21   category under the Bankruptcy Code.  Our plan treats secured

22   creditors, it treats administrative claims, it treats general

23   unsecured claims.  They have a proof of claim on file, it

24   will fall into one of those categories, if there is such a

25   claim that comes about.

1          I believe what's really being asked for is a

2     prospective ruling on the type and character of their claim,

3     if they have one.  We don't know that that's true.  You know,

4     a lot of the money was -- the resident money was handed over

5     to the operators, you know, in the beginning of November,

6     when they took over operations here, or maybe the beginning

7     of December, one of the two.  But we don't know that we don't

8     hve a claim against the new operators or the buyer, if

9     there's an issue with one of these things, that it isn't

10    just, you know, a claim against the estate.

11         So we just aren't looking -- we're not looking to

12    prejudice their rights at all.  We're just not looking to

13    agree, today, under the plan, what the treatment of this

14    unlikely, but possible, claim that could arise would be.  But

15    it's -- I don't -- I agree it's not a secured claim, and

16    they've got a proof of claim on file.  And there's been two

17    admin claim bar dates set by this court, and no one -- none

18    of the residents have filed any claims with respect to this

19    by that time.

20         So we just don't think we need special treatment of

21    these, where we prearrange, you know, what the treatment will

22    be, in the unlikely event that this arises in the future.  We

23    think it's covered for as a -- either a pre-petition claim or

24    an admin claim.

25         THE COURT:  Okay.  Yeah, I'm just not sure it's an

1    actual issue, Mr. Bressler, for today.  And I mean, the

2    Bankruptcy Code doesn't address trust fund claims.  Well, it

3    does indirectly; it does in 541, there, trust funds are not

4    property of the estate, so they're not deal with as part of

5    the administration of the estate.

6         Is there anything I'm not getting?

7         MR. BRESSLER:  My --

8         THE COURT:  I think this could be -- and I

9    apologize.  I asked you a question and then I just kept

10   talking.

11      (Laughter)

12        THE COURT:  But it strikes me that, if a live issue

13   does arise, that certainly I'm here and I could address it in

14   that context.  But I'm not sure that there is any, you know,

15   sort of provision of the Bankruptcy Code that provides the

16   hook here for why I would have to address it, in connection

17   with confirming a plan.

18        MR. BRESSLER:  We have filed other types of claims

19   and alternative claims, too, unsecured, administrative,

20   secured, so Your Honor knows.

21        THE COURT:  Understood.

22        MR. BRESSLER:  As long as -- as long as we're not

23   precluded from asserting such a claim and the right to

24   payment, that's just the other only concern, that the plan

25   not, in effect, preclude a claim that's not treated because,

1    for example, there's case law out there that says, if you

2    don't -- if it doesn't say a lien survives under a plan, you

3    -- it can change the treatment.

4           So my only concern is, if Your Honor doesn't feel

5    that, if there is such a claim, that it's not precluding it,

6    that's really the only concern I have.

7           THE COURT:  Yeah.  I wouldn't say it's precluding

8    it because, again, I don't think the -- well, the plan is not

9    addressing funds that may be subject to a trust, and which,

10   therefore, would not be property of the estate.  So, if you

11   come back later --

12          MR. BRESSLER:  Hope --

13          THE COURT:  -- you certainly have --

14          MR. BRESSLER:  Hopefully --

15          THE COURT:  -- have this transcript --

16          MR. BRESSLER:  -- I won't have to.

17          THE COURT:  -- in hand.  Yeah.

18          MR. BRESSLER:  Hopefully I won't have to on this

19   issue.

20          THE COURT:  Yeah.

21          MR. BRESSLER:  But I don't know for sure.

22          THE COURT:  Right.

23          MR. BRESSLER:  Thank you very much.

24          THE COURT:  No, I understand and I appreciate your

25   raising it, Mr. Bressler.

1          MR. BRESSLER:  Thank you.

2          THE COURT:  Okay.  Thank you, sir.

3          Okay.  Mr. McGuire.

4          MR. MCGUIRE:  Your Honor, I'll be brief and open

5    the floor to others and questions that you have here because

6    this is -- while it, candidly, has been a little bit

7    difficult in getting to this point, it's, in many ways, not

8    that complicated.  We are where we are at this point in this

9    case.

10          We've -- you know, we've got a plan that I think

11   the evidence demonstrates is very tight, but feasible.  We

12   have the money, if the Petersen settlement goes forward, to

13   make -- you know, have money for a distribution to unsecured

14   creditors, get the preference waiver for them, cover the

15   admins, and do what we need to do to collect the remaining

16   estate assets through the plan administrator process.

17          And we think the creditors voted overwhelmingly in

18   favor of this for a reason:  Because it's better than

19   conversion.  Is it perfect?  No.  Do we wish we had more

20   money to distribute?  Yes, we do.  We wish we sold the

21   properties for more money, you know, last June, but I can't

22   do anything about that.  That's the point of what we're doing

23   here, trying to make the best out of the situation that we

24   have here.

25          And you know, we think the evidence supports

1   confirmation, that the creditors were fully aware of what we

2   were doing here and what they were voting for and that this

3   is in their best interests.

4           But it is tight, Your Honor.  We just don't have

5   time to, you know, wait another month to get to confirmation.

6   You know the way these cases are, time is just money; that,

7   if you try to do very little, and we just don't have it, Your

8   Honor.  It's really, really tight as it is.

9           So, you know, we would request confirmation of the

10  plan today.  We believe it's in the best interests of the

11  estate.  We believe that the support from creditors and the

12  evidence supports confirmation of the plan.

13          And the main issue, which I understand and fully

14  appreciate the notion of, if we don't get the Mark Petersen

15  settlement done, it -- how does this work; it's a very valid

16  point.  But I think we've covered that by the fact that it's

17  conditioned to effectiveness.  If we don't get that money, we

18  will convert the cases, if that doesn't happen.  And I don't

19  think that's a reason to kick confirmation.  I think that

20  conditions to effectiveness are just that and, if we don't

21  get there, then we won't get there and we'll convert the

22  cases.  But we wouldn't be here before you, Your Honor,

23  asking you to approve this if we didn't have a high degree of

24  confidence that we are, in fact, going to get there on that

25  documentation and are going to make this plan effective.

1          So I'll answer questions now or later that Your

2     Honor may have, or let others speak first and then take any

3     questions, whatever you prefer, Your Honor.

4          THE COURT:  Yeah, I think, you know, a sort of

5     logical follow-on from Mr. Lipshie's concerns -- and he may

6     even have prepared to stand up raise this -- but if the

7     termsheet is not definitive at this point, what happens if

8     material terms are changed, but I have -- I've sort of pre-

9     approved it through a plan confirmation order?

10          MR. MCGUIRE:  That's a good point.

11          I think that the debtors -- and I would ask Mr.

12     Petersen's counsel to do the same -- I think we can represent

13     on the record that there will be no changes to the material

14     terms of the deal, that that is not the -- the non-binding is

15     simply hey, these are words on a page and, as miss -- you

16     know, Ms. Peterman pointed out, like which collateral are we

17     going to get, but that there will be no changes to the dollar

18     amounts, you know, here or the character of the settlement,

19     in terms of the fact that we're getting security for it, that

20     none of those points can be modified without subsequent court

21     approval because that is not what's going on here.  It's

22     things on the edges, Your Honor.

23          But it's a good point.  If -- you know, we'd be

24     more than willing to represent and to agree that there can't

25     be any changes.  I think it's mostly the dollar amounts and

1    the fact of the security and the timing of payment that's

2    really at the heart of it --

3            THE COURT:  Yes, it is.

4            MR. MCGUIRE:  -- that we cannot change those things

5    without further court approval, that those have to be

6    included in the definitive documentation because that's

7    giving the creditors the benefit of bargain that's agreed to

8    here, is like, you know, you can't take that, you know, five-

9    five for them down to $5 million.  That's changing things.

10   But as long as they're getting the five-five, they have

11   collateral for it, so they get it, there's a deadline by

12   which it needs to be paid, that's what's going on here.  So I

13   think we can agree that we those points cannot be modified in

14   the definitive documentation.

15           THE COURT:  Okay.  Okay.  Thank you, Mr. McGuire.

16           Mr. Lipshie.

17           MR. LIPSHIE:  Thank you, Your Honor.  Jonathan

18   Lipshie, Office of the United States Trustee.

19           I think the Court knows our position.  There's no

20   contract here, there's no settlement here.  They're just

21   talking about talking about a settlement.  Notwithstanding --

22   and I believe what debtors' counsel is saying.

23           THE COURT:  Uh-huh.

24           MR. MCGUIRE:  But the Court points out we don't

25   know what the final terms are going to be.  You know?

1          And the Court runs -- if the confirmation order is

2    entered right now -- and quite honestly, Your Honor, I

3    haven't looked at the plan and when, or the entire plan.  But

4    --

5          THE COURT:  Yeah.

6          MR. LIPSHIE:  -- could this take weeks?  Could this

7    take months?  You know, I know a little bit about the history

8    of this case and Mr. Petersen.  And you know, he hasn't

9    signed on that line which is dotted.  And until that happens,

10   I don't know if we have finality or we have the security that

11   this is what's going to happen.

12         And it's already administratively insolvent; I

13   think that's what the testimony is.  And that's why we're

14   here today and that's why --

15         THE COURT:  Uh-huh.

16         MR. LIPSHIE:  -- debtors' counsel, you know,

17   doesn't want to bump it off, and I understand that.  But if

18   we're two months down the road, there are more administrative

19   costs, we're more administratively insolvent, et cetera, and

20   that risk is here, notwithstanding what counsel said.

21         So our argument, there's a feasibility issue under

22   (a)(11), 1129(a)(11).  I don't think the testimony is

23   anything other than, if this deal doesn't go through, the

24   game is over.  So that's all I have, Your Honor.

25         THE COURT:  Right.  Well, you know, the -- Mr.

1   McGuire has agreed that the order would be revised to provide

2   that it doesn't go effective until -- unless -- and Mr.

3   McGuire will tell me if I'm getting it wrong.  But we're not

4   going to go -- you're not going to go effective until the

5   settlement agreement with Mr. Petersen is definitively

6   documented and executed.

7           MR. MCGUIRE:  That is correct, Your Honor.

8           THE COURT:  Right.

9           Does that affect your analysis of the feasibility

10  question that you've raised?

11          MR. LIPSHIE:  Not at this moment, Your Honor,

12  because where we sit right now, it's not feasible.  There's

13  no contract here.

14          I understand what the plan says, but you know, a

15  confirmation orders is a confirmation order.  Is it feasible

16  today?  And you know, that -- I don't think the evidence is

17  quite so solid that we have -- there is a deal here and what

18  the deal is.  So that's really the conundrum, Your Honor.

19          And we got past the notice issue, I understand

20  that.  And you know, it wasn't done under a motion under

21  9019.  It was an exhibit to the confirmation order.  You had

22  to dig through that.  And I understand -- you know, I'm not

23  as well versed in the history that everybody knew this was

24  coming.  But what were the terms of what was coming?  And it

25  was just hours ago.

1          So I have nothing further, Your Honor.

2          THE COURT:  I understand.

3          Is there anybody else who wishes to be heard?

4     (Participants confer)

5          THE COURT:  Good morning.

6          MS. TOPPER:  Good morning, Your Honor.  For the

7     record, Paige Topper with Saul Ewing on behalf of Mark

8     Petersen, in connection with these cases.

9          Your Honor, as Mr. McGuire noted at the outset, and

10     I think unsurprisingly to this Court, my client does support

11     confirmation of the debtors' plan.

12          While I respect to the U.S. Trustee's objection,

13     Your Honor, the parties are not merely talking about a

14     potential settlement here; the parties have been engaged in

15     extensive negotiations that have spanned many months, and

16     they've culminated in, ultimately, the settlement termsheet

17     that is attached as Exhibit E to the confirmation order.

18          We can agree with Mr. McGuire's representations

19     made a few moments ago that, generally, the material terms

20     are in there.  Should unforeseen circumstances occur and

21     material terms need to change, which I do not expect, we

22     would have to come back before the Court.

23          With respect to Mr. McGuire's other representations

24     about the deal, generally, we agree that those accurately

25     reflect the deal that was reached between the estates, the

1    committee, as well as Mr. Petersen.  The settlement

2    termsheet, Your Honor, does resolve Mr. Petersen's plan

3    objection.  It also resolves the administrative claim motion

4    that was filed a couple of months ago, as well as the motion

5    to dismiss two of the cases, War Drive and Knoxville &

6    Pennsylvania.

7            We've reviewed the revised confirmation order that

8    was filed last night.  We have agreed to -- if your court --

9    if the Court is inclined to enter the confirmation order,

10   we've agreed to language with the committee that will be

11   baked in -- excuse me -- that's designed to preserve Mr.

12   Petersen's rights as to certain documents that Mr. Petersen

13   may have an individual privilege.  As to -- we further

14   understand that that revised order would, of course, be

15   submitted with the Court under certification of counsel.

16           I only want to mention one additional procedural

17   thing, Your Honor, and that's with respect to the

18   administrative claim motion.  The settlement termsheet does

19   resolve that; however, the termsheet reflects that the

20   parties have agreed to a revised proposed order that

21   essentially allows the claim and amount.  But Mr. Petersen

22   has agreed to waive any distribution of that claim --

23           THE COURT:  Understood.

24           MS. TOPPER:  -- as part of the settlement.  So we

25   would be submitting sort of a revised proposed order again,

1    if confirmation was approved today.

2            I'm happy to answer any questions that the Court

3    has.

4            THE COURT:  A question for, I guess, both you and

5    Mr. McGuire, and it could be a little tricky.  But when would

6    you anticipate that a signed settlement agreement wuld be

7    completed?

8            MS. TOPPER:  So I will say that my client is aware

9    of the liquidity issues that are facing the debtors' case.

10   Obviously, there was the motion to convert.  My client is

11   willing and able to work quickly and efficiently to resolve

12   the open items, which I do agree are sort of immaterial at

13   this point.  We are -- as Ms. Peterson mentioned, we are

14   working through a few open items on those, but we will move

15   as efficiently as possible.

16           THE COURT:  Okay.  Thank you, Ms. Topper.

17           Mr. McGuire.

18           MR. MCGUIRE:  On the timing issue, Your Honor, you

19   know, we could easily -- in case confirmation doesn't work,

20   you know, we could carry the motion to convert to the June

21   26th hearing because I expect we're going to have signed

22   documentation.  There might not be -- like other mortgages

23   might not be done or something, but I'm confident that we'll

24   have a binding agreement relative to these terms by then.  So

25   I think that this is, you know, a very short-term, you know,

1    process here, to just get a binding agreement -- like I said,

2    we have all the -- you know, the exhibits relative to, you

3    know, the -- we're doing to do the notes and mortgages and

4    things like that.  But we can get that termsheet to a binding

5    agreement, for sure, by then, so that there will be certainty

6    that we, you know, can effectuate this.

7         THE COURT:  Okay.  Okay.  Thank you.

8         Ms. Peterman.

9         MS. PETERMAN:  Good morning again, Your Honor.

10   Nancy Peterman on behalf of the committee.

11        And I'll echo the comments.  I mean, from the

12   committee's perspective, we need to go effective on the plan

13   as quickly as possible.  Every day costs money, and this case

14   is tight.  Part of the settlement is all the professionals

15   are taking discounts.  We've already taken, across the board,

16   a 15 percent discount on the committee side, and we're taking

17   more.  So we really need to get this across the finish line.

18        So, from the committee's perspective, the termsheet

19   sets out all the material terms.  We're working on a form of

20   mortgage, a form of note.  It's really a matter of sitting

21   down and determining which properties are going to be

22   adequate for securing the payments.  That's really the main

23   open point, and that's left to the discretion of the debtors,

24   the committee, and obviously Mark Petersen to work out, but

25   hopefully work out quickly.  And we've had some productive

1    discussions about that already.

2           With respect to the plan and confirmation,

3    generally, it obviously took time to get here.  I do think

4    that this is the better option, versus conversion, for the

5    creditors.

6           So there's been mention that, you know, there's

7    non-insider avoidance actions being waived, which is

8    beneficial to vendors who are not getting paid in the case.

9    It's never a good thing to also get sued and pay money back.

10          THE COURT:  Yeah.

11          MS. PETERMAN:  But on top of that, we have people

12   who have 503(b)(9) claims that will be paid.

13          We have personal injury claimants who now will have

14   the stay and confirmation injunction lifted, so they can

15   liquidate their claims against Neely, which is a captive

16   insurance carrier, and start getting some cash into the hands

17   of the personal injury claimants; that's part of the

18   settlement with Mark Petersen because he is the sole owner of

19   that captive insurance company.

20          And then the trust is getting $400,000 to hopefully

21   cover administrative costs, on top of the other money coming

22   in from Mark Petersen, which will generate, not the recovery

23   that the unsecured creditors would like, but at least a

24   recovery here.

25          So we worked hard, everybody contributed, you know,

1        in terms of making some concessions here to get it across the

2        finish line.

3              And you know, from a notice perspective, I do think

4        parties had notice of the material terms of the deal at least

5        by Friday, which still isn't a lot of time, but it was at

6        least summarized at the beginning of the debtors'

7        confirmation brief, and we have been talking about a

8        settlement for some time in this case.

9              So, if you have any questions -- otherwise, the

10       committee would support confirming the plan and moving as

11       quickly as possible to an effective date.

12             THE COURT:  Okay.  Thank you, Ms. Peterman.

13             Is there anyone else who would like to be heard?

14       Good morning.

15             MR. SCHECHTER:  Good morning, Your Honor.  Thank

16       you.  Robert Schechter on behalf of the patient care

17       ombudsman.

18             First, I'd just like to say I commend the debtors'

19       counsel and committee counsel for all the work that I know

20       they've put in to take a tough case and try to get it here.

21             I just wanted to note, and we've spoken to debtors'

22       counsel about it, there is some minor reconciliation on

23       Schedule 1 to the proposed form of order, which has

24       professional fees listed and amounts.  The PCO's

25       professionals, just like others, agreed to a discount here.

1    But there's just a minor reconciliation there, so I wanted to

2    make that part of the record, so folks know that.

3            THE COURT:  Okay.

4            MR. SCHECHTER:  Thank you.

5            THE COURT:  Thank you, Mr. Schechter.

6            Mr. Levin, good morning.

7            MR. LEVIN:  Good morning, Your Honor.  Jason Levin

8    as counsel to the new operators.

9            I rise briefly just to put a statement on the

10   record.  We appreciate everyone's efforts so far and echo the

11   debtors' sentiments and statements.

12           So the new operators do consent to confirmation,

13   should Your Honor agree to enter it today, which is based on

14   the agreed-upon release of escrow funds to pay CMS

15   liabilities, which was set forth in a release letter signed

16   by the debtors and the portfolio sale buyer, and the agreed

17   distribution of accounts receivable set forth in the flow of

18   funds memo exchanged amongst the parties.  However, as we

19   stated at last week's hearing and as was put on the record

20   earlier, there will be further reconciliation of the new

21   operator's accounts receivable as addressed in the

22   confirmation order.

23           And with that, we have no other comment.

24           THE COURT:  Okay.  Thank you, Mr. Levin.

25           MR. LEVIN:  Thank you, Your Honor.

1          THE COURT:  Okay.  Anyone else?

2       (No verbal response)

3          THE COURT:  Mr. McGuire, any further comments?

4          MR. MCGUIRE:  No, Your Honor.

5          THE COURT:  Okay.  I'm going to take a few minutes,

6    it won't be long.  Okay?  We're in recess.

7       (Recess taken at 10:58 a.m.)

8       (Proceedings resume at 11:13 a.m.)

9       (Call to order of the Court)

10         THE COURT:  Please be seated.

11         Okay.  Before I speak, did anybody wish to address

12   me?

13      (No verbal response)

14         THE COURT:  No?  Okay.

15         Here's what I'm going to do.  I am prepared to

16   approve the plan, to confirm the plan, but this is what --

17   this is what I need:

18         We're going to add language into the confirmation

19   order providing that the plan cannot go effective until the

20   settlement agreement has been documented and filed with the

21   Court.  And so you'll file a settlement agreement with a

22   notice, and that notice should contain a certification that

23   there are no material modifications to the termsheet; if

24   there are, the plan doesn't go effective.

25         And you know, I would note that it's not

1    necessarily unusual to confirm a plan where there are some

2    issues that are contingent that have to be dealt with; for

3    instance, exit facilities are often -- they come to us in the

4    form of a termsheet, and it's subject to being finally

5    documented in order to go effective.  And I view this as

6    being analytically quite similar to that.

7             So I certainly appreciate the concerns.  But the

8    settlement agreement is, as the evidence shows, necessary to

9    make the plan feasible.  But with that and with the

10   understanding now that the -- there's going to be a

11   settlement agreement, it's going to be substantial -- or it

12   will, in all material respects, be exactly what it says in

13   the termsheet, I have comfort confirming this plan and making

14   the effectiveness subject to the definitive documentation and

15   the filing of the settlement agreement with the Court, along

16   with the certification.

17            MR. MCGUIRE:  Thank you, Your Honor.  We will

18   revise the documents to incorporate that.  I wish I had

19   thought of the exit facility analogy, that's a good one, that

20   is exactly what this is like.  So we will do that and submit

21   a revised order that incorporates these requirements under

22   certification of counsel --

23            THE COURT:  Okay.

24            MR. MCGUIRE:  -- Your Honor.

25            THE COURT:  Let me ask you this.  You do have a --

1    you do have a hearing scheduled for the 26th.  If you find

2    that you need any help or you want to update the Court on

3    what's happening next week, feel free to reach out and we'll

4    set up a Zoom --

5             MR. MCGUIRE:  Okay.

6             THE COURT:  -- hearing, but otherwise, I'll leave

7    you to it.

8             And you know, everybody here has an incentive to go

9    effective quickly, so --

10            MR. MCGUIRE:  We sure do, Your Honor.

11            THE COURT:  -- I will -- I'll anticipate that, you

12   know, by the time the 26th rolls around, this will have been

13   well in hand and --

14            MR. MCGUIRE:  It sure better be, Your Honor.

15            THE COURT:  Yeah.

16            MR. MCGUIRE:  I do not anticipate any problems with

17   that happening.

18            THE COURT:  Okay.  All right.  Well, then please

19   make the modifications to the confirmation order that we

20   discussed and submit that under certification of counsel, and

21   I'll enter the order.

22            Anything else for me then?

23            MR. MCGUIRE:  Not today, Your Honor.  There are

24   other items on the agenda, Mr. Petersen's motion.  But Ms.

25   Topper, you know, explained how those are addressed and dealt

1    with, you know, pursuant to the confirmation order and, you

2    know -- and otherwise.  So we'll be submitting that order

3    that she described on that one, as well.  But those are the

4    only items on the agenda, and so I will take up no more of

5    your time, Your Honor.

6         THE COURT:  Okay.  Well, I'd be lying if I didn't

7    tell you I'm a little surprised that we got here today.

8         (Laughter)

9         THE COURT:  But I'm happy to see it.  It -- you

10   know, it shows the really good work that everybody is doing.

11   And you know, most of the attorneys who have worked on this

12   are certainly well known to me, and I'm not surprised that

13   there was a lot of give and take and good, practical

14   solutions to the problems.  And I hope it all works in the

15   end.

16        But based on the evidence before me, you know, I do

17   feel confident, certainly, that there's --

18        MR. MCGUIRE:  I --

19        THE COURT:  -- a feasible plan here.

20        MR. MCGUIRE:  Your Honor, about 3 weeks ago, maybe

21   4, I was telling people 70/30 we'd be converting the cases.

22   I didn't think we were going to get here a point in time,

23   either, Your Honor.  So I'm pleasantly surprised we are where

24   we are today, but I am highly confident we will get this plan

25   to go effective.

57

1          THE COURT:  Good.  Okay.  Well --

2          MR. MCGUIRE:  Thank you.

3          THE COURT:  -- well done all around.  Have a great

4     day.

5        (Proceedings concluded at 11:18 a.m.)

6                          *****

7                       CERTIFICATION

8          I certify that the foregoing is a correct

9     transcript from the electronic sound recording of the

10    proceedings in the above-entitled matter to the best of my

11    knowledge and ability.

12

13

14

15

16    _____        June 11, 2025

17    Coleen Rand, AAERT Cert. No. 341

18    Certified Court Transcriptionist

19    For Reliable

20

21

22

23

24

25